1  Hugh R. Whiting (admitted *pro hac vice*)
   hrwhiting@JonesDay.com
2  JONES DAY
   901 Lakeside Ave.
3  Cleveland, Ohio 44114
   Telephone: (216) 586-1023
4  Facsimile: (216) 579-0212

5  Peter J. Biersteker (admitted *pro hac vice*)
   pbiersteker@JonesDay.com
6  JONES DAY
   51 Louisiana Avenue, N.W.
7  Washington, D.C.  20001-2113
   Telephone:  (202) 879-3939
8  Facsimile:    (202) 626-1700

9  Erik K. Swanholt (State Bar No. 198042)
   ekswanholt@JonesDay.com
10 JONES DAY
   555 South Flower Street
11 Fiftieth Floor
   Los Angeles, CA  90071.2300
12 Telephone: (213) 489-3939
   Facsimile: (213) 243-2539
13
   Attorneys for Defendant
14 MATTEL, INC. and FISHER-PRICE, INC.

15                UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17                   WESTERN DIVISION

| | |
|---|---|
| 18  BRANDON BUTLER, individually and on behalf of all others similarly situated, | Case No. 13-00306 DSF (SSx) Case No. 13-01700 DSF (SSx) |
| 19 | (Consolidated) |
| 20          v. | And related consolidated cases |
| 21  MATTEL, INC., a Delaware corporation, FISHER-PRICE, INC., a Delaware corporation, and Does 1–10. | Assigned to The Honorable Dale S. Fischer for all purposes |
| 22 | |
| 23 | |
| 24 | **DECLARATION OF ERIK K. SWANHOLT IN SUPPORT OF FISHER-PRICE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| 25 | |
| 26 | |

27

28

## **DECLARATION OF ERIK K. SWANHOLT**

I, Erik K. Swanholt, hereby declare as follows:

1.     I am an attorney licensed to practice law in the State of California and this Court, and I am a partner with the law firm of Jones Day, counsel of record for Fisher-Price, Inc. ("Fisher-Price") and Mattel, Inc., Defendants in this action.  I make this declaration in support of Fisher-Price's Opposition to Plaintiffs' Motion for Class Certification.  I have personal knowledge of the matters set forth herein and am competent to testify to those matters.

2.     Attached hereto as **Exhibit 13** is a true and correct copy of a picture of the Rock 'n Play Sleeper ("Sleeper"), produced in this litigation with bates number FP-RNPS-0009392.

3.     Attached hereto as **Exhibit 14** is a true and correct copy of excerpts from the deposition of Plaintiffs' expert, Dr. Chin S. Yang, taken in this matter on January 3, 2014.

4.     Attached hereto as **Exhibit 15** is a true and correct copy of the January 13, 2014 declaration of Defendants' expert, Dr. Coreen A. Robbins.

5.     Attached hereto as **Exhibit 16** is a true and correct copy of the January 14, 2014 declaration of Defendants' expert, Dr. Michael Phillips.

6.     Plaintiff Mary Fran Torpey was deposed in this matter on October 14, 2013.  Attached hereto as **Exhibit 17** is a true and correct copy of excerpts from her October 14, 2013 deposition, with relevant portions of the testimony highlighted.

7.     Plaintiff Nicole Kilpatrick was deposed in this matter on December 11, 2013.  Attached hereto as **Exhibit 18** is a true and correct copy of excerpts from her December 11, 2013 deposition.

8.     Plaintiff Erin Ellis was deposed in this matter on December 17, 2013. Attached hereto as **Exhibit 19** is a true and correct copy of excerpts from her December 17, 2013 deposition, with relevant portions of the testimony highlighted.

9.     Plaintiff Holly Robertson was deposed in this matter on October 18,

2013.  Attached hereto as **Exhibit 20** is a true and correct copy of excerpts from her October 18, 2013 deposition, with relevant portions of the testimony highlighted.

10.  Attached hereto as **Exhibit 21** is as true and correct copy of the March 14, 2011 New York Times article, titled "Harnessing the Power of the Mom Blogger."

11.  Attached hereto as **Exhibit 22** is a true and correct copy the December 10, 2013 Florida News Channel 8 article, updated on January 7, 2014, titled "Dunedin woman says 'Mommy' blogs hit the target."

12.  Attached hereto as **Exhibit 23** is a true and correct copy of a survey regarding consumer protection laws in the 50 states and the District of Columbia.

13.  Attached hereto as **Exhibit 24** is a true and correct copy of a survey regarding manifestation of defect laws in the 50 states and the District of Columbia.

14.  Attached hereto as **Exhibit 25** is a true and correct copy of a survey regarding implied warranty of merchantability laws in the 50 states and the District of Columbia.

15.  Attached hereto as **Exhibit 26** is a true and correct copy of a survey regarding express warranty laws in the 50 states and the District of Columbia.

16.  Attached hereto as **Exhibit 27** is a true and correct copy of excerpts from the deposition of the Fisher-Price 30(b)(6) designee regarding Fisher-Price's warranty policy, Mark James Efstation, taken in this matter on October 29, 2013, with relevant portions of the testimony highlighted.

I declare under penalty of perjury under the laws of United States that the foregoing is true and correct.

Executed January 16, 2014, at Los Angeles, California.

_____
/s/
Erik K. Swanholt

LAI-3206824

DECLARATION OF E. SWANHOLT ISO OPPN. TO MOTION FOR CLASS CERTIFICATION
**SWANHOLT DECL. 189**

# EXHIBIT 13



SWANHOLT EXH. 13 -190

CONFIDENTIAL

FP-RNPS-0009392

# EXHIBIT 14

# In The Matter Of:

*BRANDON BUTLER*

*v.*

*MATTEL, INC.*

_____

## *YANG, DR. CHIN S. - Vol. 1*
### *January 3, 2014*

_____

**MERRILL CORPORATION**

**LegaLink, Inc.**

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

**SWANHOLT EXH. 14 -191**

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 12:24:05 | 1 | at, you know, a lot of their background, a |
| 12:24:06 | 2 | lot of them don't even have a biology |
| 12:24:10 | 3 | background.  So you know, industrial |
| 12:24:12 | 4 | hygienist, it's a profession, they do a lot |
| 12:24:15 | 5 | of different things. |
| 12:24:16 | 6 | BY MR. BIERSTEKER: |
| 12:24:18 | 7 | Q.  You're not a product engineer; is that |
| 12:24:19 | 8 | right? |
| 12:24:20 | 9 | A.  No, I'm not an engineer, by training or |
| 12:24:23 | 10 | in practice, no. |
| 12:24:24 | 11 | Q.  And so you are not qualified to give an |
| 12:24:26 | 12 | expert opinion, are you, on the design of the Rock |
| 12:24:28 | 13 | 'N Play Sleeper? |
| 12:24:32 | 14 | MR. SCHWARTZ:  Objection, |
| 12:24:33 | 15 | overbroad. |
| 12:24:34 | 16 | THE WITNESS:  What do you mean |
| 12:24:35 | 17 | design?  I mean the rock and sleeper, the |
| 12:24:39 | 18 | way it's designed, it's already designed by |
| 12:24:43 | 19 | Mattel.  But, you know, my opinion would be |
| 12:24:46 | 20 | is that where the mold grows and may have |
| 12:24:51 | 21 | something to do with the design itself, but |
| 12:24:55 | 22 | I'm not discussing the design of the rocker |
| 12:25:01 | 23 | and sleeper itself, no. |
| 12:25:02 | 24 | BY MR. BIERSTEKER: |
| 12:25:04 | 25 | Q.  Well, I'm not sure I understand the |

**SWANHOLT EXH. 14 -192**

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 12:25:07 | 1 | distinction you're drawing.  Isn't it true that you |
| 12:25:11 | 2 | have previously testified you're not qualified to |
| 12:25:13 | 3 | give an opinion on product design? |
| 12:25:18 | 4 | A.  That's correct.  I'm not, I'm not |
| 12:25:21 | 5 | talking about a design itself.  But what I'm saying |
| 12:25:26 | 6 | is that mold grows on particular products or |
| 12:25:31 | 7 | equipments or toy or whatever, may have something to |
| 12:25:35 | 8 | do with the design itself. |
| 12:25:39 | 9 | Q.  I understand.  And are you capable of |
| 12:25:41 | 10 | assessing what aspects of the design contribute to |
| 12:25:46 | 11 | mold growth on a product? |
| 12:25:49 | 12 | A.  It really depends. |
| 12:25:51 | 13 | Q.  And on what does it depend? |
| 12:25:53 | 14 | A.  Well, it depends on the situations. |
| 12:25:55 | 15 | Q.  What about the situation? |
| 12:25:56 | 16 | MR. SCHWARTZ:  Objection, |
| 12:25:57 | 17 | overbroad.  If you want to ask him about his |
| 12:25:59 | 18 | opinions with respect to this case, that |
| 12:26:01 | 19 | might be more concrete.  If you want to talk |
| 12:26:04 | 20 | about it generally, I think you're going to |
| 12:26:05 | 21 | have vague objections going forward. |
| 12:26:10 | 22 | MR. BIERSTEKER:  You may answer |
| 12:26:10 | 23 | it. |
| 12:26:11 | 24 | THE WITNESS:  Well, my point of |
| 12:26:14 | 25 | view is this, mold or microbiology grows, |

SWANHOLT EXH. 14 -193

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 12:50:04 | 1 | devoted 12 hours to this matter? |
| 12:50:08 | 2 | A.   If you say 12 hours, yes, roughly 12. |
| 12:50:10 | 3 | Q.   If my math is right, yeah, I added it |
| 12:50:13 | 4 | up. |
| 12:50:13 | 5 | A.   Yes. |
| 12:50:14 | 6 | Q.   Okay.  Fine.  We'll mark that as an |
| 12:50:15 | 7 | exhibit later. |
| 12:50:17 | 8 | Did you request any additional |
| 12:50:19 | 9 | documents beyond those that had been provided to you |
| 12:50:22 | 10 | by plaintiff's counsel or that you found on the |
| 12:50:26 | 11 | Consumer Product Safety Commission web site? |
| 12:50:29 | 12 | A.   No, because I don't know what, what |
| 12:50:31 | 13 | information is available, I don't -- I mean I don't |
| 12:50:34 | 14 | know inventory of the documents. |
| 12:51:00 | 15 | Q.   You mentioned a couple of times that |
| 12:51:07 | 16 | when you're talking about mold, you're really |
| 12:51:09 | 17 | talking about water or words to that effect.  Do you |
| 12:51:11 | 18 | remember that? |
| 12:51:12 | 19 | A.   Yes. |
| 12:51:12 | 20 | Q.   And is that because mold spores are |
| 12:51:16 | 21 | ubiquitous? |
| 12:51:18 | 22 | A.   Yes, mold spores are ubiquitous, yes. |
| 12:51:21 | 23 | Q.   Is it true that mold is capable of |
| 12:51:24 | 24 | growing anywhere that remains damp and has I guess a |
| 12:51:29 | 25 | nutrient source? |

**SWANHOLT EXH. 14 -194**

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 12:51:31 | 1 | A.   Well, if you're talking about mold, it |
| 12:51:33 | 2 | really depends.  I mean some molds, it's very |
| 12:51:37 | 3 | selective.  But there are certain molds have great |
| 12:51:42 | 4 | common and those are molds, if I can use the term, |
| 12:51:45 | 5 | saprophytes.  I mean there are some mold or fungi, |
| 12:51:54 | 6 | they are obligate parasites, so they only grow on |
| 12:52:03 | 7 | certain planned hosts. |
| 12:52:05 | 8 | Q.   I see.  Okay.  But for most common |
| 12:52:07 | 9 | molds, if there's water, they'll grow, is that fair? |
| 12:52:10 | 10 | A.   Well, then, again, it still depends. |
| 12:52:12 | 11 | For example, there are some Aspergillus species, |
| 12:52:17 | 12 | xerophilics, X-E-R-O-P-H-I-L-I-C. |
| 12:52:26 | 13 | THE COURT REPORTER:  I'm sorry, |
| 12:52:26 | 14 | X -- |
| 12:52:20 | 15 | THE WITNESS: |
| 12:52:20 | 16 | X-E-R-O-P-H-I-L-I-C.  And later it means dry |
| 12:52:28 | 17 | loving.  And those type of fungi, if you |
| 12:52:31 | 18 | give it too much water, they actually won't |
| 12:52:35 | 19 | grow. |
| 12:52:36 | 20 | BY MR. BIERSTEKER: |
| 12:52:36 | 21 | Q.   Let me ask it this way.  Would you agree |
| 12:52:39 | 22 | with me that the molds identified by Bureau Veritas |
| 12:52:46 | 23 | that had developed on the sleepers they tested were |
| 12:52:49 | 24 | common household molds? |
| 12:52:53 | 25 | A.   Yes. |

**SWANHOLT EXH. 14 -195**

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 12:52:53 | 1 | Q.   Okay.   For those common household molds |
| 12:52:57 | 2 | that were identified, will they grow just about |
| 12:53:00 | 3 | anywhere where there's sufficient moisture for a |
| 12:53:04 | 4 | long enough period of time? |
| 12:53:05 | 5 | A.   Again, it really depends.   You know, |
| 12:53:09 | 6 | because see, they are identified only to the genus. |
| 12:53:10 | 7 | Q.   Right. |
| 12:53:12 | 8 | A.   For example, they were Aspergillus |
| 12:53:12 | 9 | identified. |
| 12:53:13 | 10 | Q.   The genus, right. |
| 12:53:14 | 11 | A.   Yes. |
| 12:53:14 | 12 | Q.   No species? |
| 12:53:15 | 13 | A.   That's right. |
| 12:53:15 | 14 | Q.   That's right. |
| 12:53:15 | 15 | A.   But when I'm using Aspergillus as an |
| 12:53:18 | 16 | example, because I don't want to generalize it. |
| 12:53:21 | 17 | Okay.  And Aspergillus as a genus has about 150 -- |
| 12:53:24 | 18 | 80 species roughly.  I mean these things, there's |
| 12:53:28 | 19 | always new species described and published.  And |
| 12:53:32 | 20 | there are some of what we call xerophilics and they |
| 12:53:35 | 21 | grow only in very specific conditions. |
| 12:53:38 | 22 |        In some way, I can use plants in |
| 12:53:41 | 23 | vegetation to give you an example.  Like for example |
| 12:53:44 | 24 | some succulents and cacti grow in dessert.  In fact, |
| 12:53:50 | 25 | if you give it too much water, you're going to drown |

SWANHOLT EXH. 14 -196

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 13:04:34 | 1 | BY MR. BIERSTEKER: |
| 13:04:34 | 2 | Q.  My point is, is it fair to say that high |
| 13:04:37 | 3 | propensity to develop mold is not something that is |
| 13:04:46 | 4 | a technical, a recognized technical term in the |
| 13:04:49 | 5 | field of mycology? |
| 13:04:53 | 6 | MR. SCHWARTZ:  Objection to form. |
| 13:04:56 | 7 | THE WITNESS:  I can agree with |
| 13:04:57 | 8 | what you say, it's not a technical term. |
| 13:05:01 | 9 | But it's a word, I mean I never, I cannot |
| 13:05:04 | 10 | tell if any other mycologists is going to |
| 13:05:07 | 11 | use that for certain, certain situations in |
| 13:05:11 | 12 | their publications.  I mean it's, it's an |
| 13:05:14 | 13 | English language word, so. |
| 13:05:16 | 14 | BY MR. BIERSTEKER: |
| 13:05:16 | 15 | Q.  I understand. |
| 13:05:17 | 16 | A.  I mean so it's available there. |
| 13:05:19 | 17 | Q.  Okay.  So -- |
| 13:05:19 | 18 | A.  I mean, you know, I could have picked it |
| 13:05:21 | 19 | up by working with too many lawyers, I don't know. |
| 13:05:24 | 20 | Q.  That's always an occupational hazard. |
| 13:05:27 | 21 | Is there a low propensity to develop mold? |
| 13:05:37 | 22 | A.  It's kind of difficult to use the low |
| 13:05:39 | 23 | propensity to grow mold. |
| 13:05:42 | 24 | Q.  Why is that difficult to use any more so |
| 13:05:45 | 25 | than high propensity? |

**SWANHOLT EXH. 14 -197**

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 13:05:52 | 1 | A.   I just have not picked it up or think of |
| 13:05:56 | 2 | it that way. |
| 13:05:57 | 3 | Q.   Well, let me ask the question this way. |
| 13:05:59 | 4 | What distinguishes a high, medium and low propensity |
| 13:06:02 | 5 | to develop mold as you use the terms? |
| 13:06:08 | 6 | A.   Well, in this case, to me is that I look |
| 13:06:11 | 7 | at so many cases reported to Consumer Product Safety |
| 13:06:16 | 8 | Commission's recalls and Mattel's and others.   And |
| 13:06:23 | 9 | that's just how I believe. |
| 13:06:28 | 10 | Q.   Okay.   And so your belief that there's a |
| 13:06:31 | 11 | high propensity to develop mold, is that based upon |
| 13:06:34 | 12 | the absolute number of products sold that reportedly |
| 13:06:40 | 13 | developed mold? |
| 13:06:41 | 14 | A.   No, I don't have any absolute number. |
| 13:06:43 | 15 | It's based on some of the -- those numbers available |
| 13:06:47 | 16 | to me and by looking at the products and you know, |
| 13:06:52 | 17 | if you have only one or two cases, or one or two |
| 13:06:57 | 18 | rockers, then clearly, I would not use the high |
| 13:07:00 | 19 | propensity. |
| 13:07:03 | 20 | Q.   Okay. |
| 13:07:04 | 21 | A.   But once you have even so many cases, or |
| 13:07:09 | 22 | so many reported cases, you know, to me, that's more |
| 13:07:16 | 23 | become a pattern. |
| 13:07:17 | 24 | Q.   Right.   I think I understand what you're |
| 13:07:19 | 25 | saying.   Let me try to see if I'm right. |

**SWANHOLT EXH. 14 -198**

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 13:07:22 | 1 | A.   Okay. |
| 13:07:23 | 2 | Q.   My wife often says I don't understand |
| 13:07:29 | 3 | anything unless I say it myself. |
| 13:07:32 | 4 | MR. SCHWARTZ:  Objection to the |
| 13:07:32 | 5 | extent you're going to disagree with your |
| 13:07:34 | 6 | wife. |
| 13:07:35 | 7 | BY MR. BIERSTEKER: |
| 13:07:35 | 8 | Q.   And so let me see if I got it.  Would |
| 13:07:36 | 9 | there be a high propensity to develop mold if there |
| 13:07:40 | 10 | were one or two cases and only one or two products |
| 13:07:44 | 11 | had been sold? |
| 13:07:47 | 12 | A.   If you have only one or two products |
| 13:07:50 | 13 | were sold and most developed it, then I would say |
| 13:07:53 | 14 | yes. |
| 13:07:54 | 15 | Q.   Okay.  So does the propensity of a |
| 13:07:55 | 16 | product to develop mold depend not only on how many |
| 13:08:00 | 17 | instances of mold growth occur, but also on the |
| 13:08:04 | 18 | number of products that have been sold? |
| 13:08:07 | 19 | MR. SCHWARTZ:  Objection. |
| 13:08:07 | 20 | Incomplete hypothetical. |
| 13:08:10 | 21 | THE WITNESS:  To a certain |
| 13:08:11 | 22 | degree. |
| 13:08:12 | 23 | BY MR. BIERSTEKER: |
| 13:08:13 | 24 | Q.   Okay.  Does a high propensity, as you |
| 13:08:22 | 25 | used the term, to develop mold involve a comparison |

SWANHOLT EXH. 14 -199

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 13:13:15 | 1 | A.   Yes. |
| 13:13:15 | 2 | Q.   So you did basically a swab or a wipe |
| 13:13:18 | 3 | sample? |
| 13:13:19 | 4 | A.   No. |
| 13:13:21 | 5 | Q.   No? |
| 13:13:21 | 6 | A.   Sticky, those are the transparent 3M |
| 13:13:25 | 7 | clear tape. |
| 13:13:26 | 8 | Q.   Yes. |
| 13:13:27 | 9 | A.   These are very similar to the Scotch |
| 13:13:30 | 10 | tape, but it's not frosted. |
| 13:13:32 | 11 | Q.   Okay. |
| 13:13:32 | 12 | A.   And you use the sticky surface to make |
| 13:13:36 | 13 | contact with the discoloration or mold growth and |
| 13:13:40 | 14 | look at it under the microscope. |
| 13:13:42 | 15 | Q.   And you did that for the three sleepers |
| 13:13:44 | 16 | of unknown providence that you looked at; is that |
| 13:13:47 | 17 | right? |
| 13:13:48 | 18 | A.   That's right. |
| 13:13:48 | 19 | Q.   Okay.  And when you looked at them under |
| 13:13:49 | 20 | the microscope, were you able to confirm mold growth |
| 13:13:52 | 21 | on those three sleepers? |
| 13:13:54 | 22 | A.   I can confirm two. |
| 13:13:56 | 23 | Q.   Confirm two.  Okay.  Was the sleeper |
| 13:14:04 | 24 | that was sent to you from plaintiff's counsel in |
| 13:14:06 | 25 | California one of the three on which mold growth was |

**SWANHOLT EXH. 14 -200**

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 13:14:11 | 1 | confirmed or not confirmed? |
| 13:14:12 | 2 | A.   That one was confirmed. |
| 13:14:20 | 3 | Q.   You said you could not confirm mold |
| 13:14:22 | 4 | growth on one of the three sleepers that you tested. |
| 13:14:28 | 5 | Were you able to ascertain based upon your |
| 13:14:33 | 6 | examination what the substance was that was on the |
| 13:14:35 | 7 | sleeper, if it was not mold? |
| 13:14:38 | 8 | A.   No, it was discoloration, but I cannot, |
| 13:14:41 | 9 | I cannot tell you what, what the discoloration was. |
| 13:14:45 | 10 | Q.   How did you obtain the sleeper on which |
| 13:14:49 | 11 | you found, could find no mold? |
| 13:14:53 | 12 | A.   Excuse me? |
| 13:14:53 | 13 | Q.   How did you obtain the sleeper that you |
| 13:14:56 | 14 | examined on which you found no mold? |
| 13:14:59 | 15 | A.   Well, that sleeper was sent from |
| 13:15:01 | 16 | Mr. Schwartz's office. |
| 13:15:07 | 17 | Q.   Did you record the model number of the |
| 13:15:10 | 18 | sleeper that you examined? |
| 13:15:12 | 19 | A.   I believe it was in my report. |
| 13:15:15 | 20 | Q.   I don't recall seeing this, but I may be |
| 13:15:18 | 21 | misremembering it.  So if you could point it out to |
| 13:15:21 | 22 | me, that would be great. |
| 13:15:27 | 23 | A.   If you look at 17.  The last, the second |
| 13:15:33 | 24 | half of the start with, and three used Rock 'N Play |
| 13:15:37 | 25 | Sleeper product number. |

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 15:15:07 | 1 | Q.   Well, is the article right? |
| 15:15:11 | 2 | A.   Yeah, I mean the article, it's only |
| 15:15:14 | 3 | right to what's in this article.  I mean what I'm |
| 15:15:16 | 4 | saying is that the article tests wool, cotton and |
| 15:15:19 | 5 | silk.  These are natural fiber and polyester fabric |
| 15:15:24 | 6 | is manmade.  It did not test, for example, nylon. |
| 15:15:30 | 7 | Q.   Okay. |
| 15:15:30 | 8 | A.   It did not test for like cellulose |
| 15:15:34 | 9 | fiber, the paper fiber, for example. |
| 15:15:39 | 10 | Q.   I understand.  So all right.  And then |
| 15:15:40 | 11 | you say, "furthermore, once contaminated with fungal |
| 15:15:44 | 12 | growth," this is the next sentence, "polyester is |
| 15:15:47 | 13 | easiest to clean."  Do you see that first? |
| 15:15:49 | 14 | A.   Yes. |
| 15:15:49 | 15 | Q.   Is that true? |
| 15:15:50 | 16 | A.   Yes, based on what was in this article. |
| 15:15:53 | 17 | Q.   Okay.  Well, in the article you assessed |
| 15:15:58 | 18 | fungal growth and removal, right? |
| 15:16:00 | 19 | A.   Yes. |
| 15:16:01 | 20 | Q.   Okay.  So would you agree that the |
| 15:16:09 | 21 | fabrics used on the sleeper were less likely than |
| 15:16:23 | 22 | wool, cotton and silk to support fungal growth? |
| 15:16:30 | 23 | A.   Yes, in general. |
| 15:16:31 | 24 | Q.   Okay.  And would you agree that they, |
| 15:16:32 | 25 | that the polyester used on the sleeper was easier to |

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 15:16:37 | 1 | clean if fungal contamination occurred than it would |
| 15:16:41 | 2 | have been if wool, cotton or silk were used on the |
| 15:16:45 | 3 | sleeper? |
| 15:16:46 | 4 | A.   Yes, if it based on the type of cleaning |
| 15:16:54 | 5 | methods used here. |
| 15:16:59 | 6 | Q.   How does the evaporation rate of |
| 15:17:01 | 7 | polyester compare to the evaporation rate of cotton, |
| 15:17:06 | 8 | wool or silk? |
| 15:17:08 | 9 | MR. SCHWARTZ:  Objection to form. |
| 15:17:11 | 10 | Objection, incomplete hypothetical. |
| 15:17:14 | 11 | THE WITNESS:  Well, I have not |
| 15:17:16 | 12 | done that comparison.  Because you know, I |
| 15:17:19 | 13 | have not considered that for the case, |
| 15:17:22 | 14 | because I don't remember seeing cotton or |
| 15:17:26 | 15 | wool is used in the -- in the, what do you |
| 15:17:29 | 16 | call it, Rock 'N Play Sleeper, so. |
| 15:17:34 | 17 | BY MR. BIERSTEKER: |
| 15:17:34 | 18 | Q.   Okay.  So but here's my question, just |
| 15:17:37 | 19 | under the same conditions -- |
| 15:17:39 | 20 | A.   Okay. |
| 15:17:39 | 21 | Q.   -- would moisture evaporate more or less |
| 15:17:41 | 22 | quickly from cotton, wool and silk as it would from |
| 15:17:46 | 23 | polyester? |
| 15:17:46 | 24 | MR. SCHWARTZ:  Objection.  Vague |
| 15:17:47 | 25 | as to which side of the fabrics. |

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 15:45:48 | 1 | THE WITNESS:  Excuse me. |
| 15:45:48 | 2 | Because, because, you know, I cannot speak |
| 15:45:51 | 3 | for everybody else.  Some people, my |
| 15:45:54 | 4 | experience is some people are much more |
| 15:45:57 | 5 | observant.  Some may not be.  So I mean I |
| 15:46:01 | 6 | cannot speak for all.  But, you know, it's |
| 15:46:06 | 7 | possible some people will notice it. |
| 15:46:08 | 8 | BY MR. BIERSTEKER: |
| 15:46:39 | 9 | Q.   Do you know if there is any individual |
| 15:46:41 | 10 | who has been diagnosed by a medical doctor with a |
| 15:46:45 | 11 | physical injury that was caused by mold on the |
| 15:46:47 | 12 | sleeper? |
| 15:46:54 | 13 | A.   I don't believe I have seen those |
| 15:46:56 | 14 | information.   Are you talking about individuals? |
| 15:47:07 | 15 | Q.   Yes, as I said. |
| 15:47:10 | 16 | A.   I believe there is a, I saw a few |
| 15:47:12 | 17 | complaints, I think some parents associated that |
| 15:47:16 | 18 | with their infant's respiratory -- |
| 15:47:18 | 19 | Q.   Right. |
| 15:47:19 | 20 | A.   -- symptoms, but I, these are reported |
| 15:47:22 | 21 | case.   So I don't know if they have any actual |
| 15:47:27 | 22 | medical diagnosis or not.   I cannot tell you that. |
| 15:47:31 | 23 | Q.   If there were no consumer that had a |
| 15:47:39 | 24 | medical condition that a doctor had diagnosed as |
| 15:47:42 | 25 | being caused by mold on the sleeper, would that |

Page 222

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 17:14:58 | 1 | A.   Yes. |
| 17:14:59 | 2 | Q.   You say the quote, that appears in |
| 17:15:03 | 3 | paragraph 30 of the last sentence of your report, |
| 17:15:07 | 4 | right? |
| 17:15:07 | 5 | A.   Yes. |
| 17:15:08 | 6 | Q.   Okay.  Let me ask the question.  The |
| 17:15:10 | 7 | Reponen study did not prove or claim that any mold |
| 17:15:16 | 8 | causes asthma; isn't that true? |
| 17:15:18 | 9 | A.   They say increased likelihood. |
| 17:15:21 | 10 | Q.   Right. |
| 17:15:22 | 11 | A.   It's an association. |
| 17:15:23 | 12 | Q.   An association. |
| 17:15:24 | 13 | A.   Yes. |
| 17:15:24 | 14 | Q.   And in fact, do you recall whether or |
| 17:15:26 | 15 | not they commented in the article the results |
| 17:15:30 | 16 | described here do not prove that these specific |
| 17:15:33 | 17 | molds cause asthma? |
| 17:15:34 | 18 | A.   Yes, I think I remember the language, |
| 17:15:36 | 19 | something to that effect. |
| 17:15:39 | 20 | Q.   Can you identify a single peer-reviewed |
| 17:15:42 | 21 | article that concludes that infants exposure to any |
| 17:15:47 | 22 | species of Aspergillus actually causes asthma later |
| 17:15:52 | 23 | in life? |
| 17:15:53 | 24 | A.   No, I don't think I have those |
| 17:15:54 | 25 | information.  You know, that's why I say it's |

**SWANHOLT EXH. 14 -205**

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 17:15:58 | 1 | increased likelihood. |
| 17:16:04 | 2 | Q.   Well, you talked about the particular -- |
| 17:16:05 | 3 | you talked about certain species of Aspergillus, |
| 17:16:16 | 4 | right? |
| 17:16:16 | 5 | A.   Yes. |
| 17:16:17 | 6 | Q.   And in fact, the article found no |
| 17:16:20 | 7 | association with other species of Aspergillus and |
| 17:16:22 | 8 | childhood asthma; is that right? |
| 17:16:24 | 9 | A.   Yes, that's why I say certain species. |
| 17:16:26 | 10 | Now, that study, actually, it's based on PCR.  It's |
| 17:16:31 | 11 | DNA based on -- |
| 17:16:32 | 12 | Q.   I'm sorry, based on what? |
| 17:16:34 | 13 | A.   PCR. |
| 17:16:34 | 14 | Q.   PCR? |
| 17:16:35 | 15 | A.   Yes.  It's a DNA based identification, |
| 17:16:39 | 16 | detection and identification system. |
| 17:16:47 | 17 | Q.   Do you know whether or not the article |
| 17:16:49 | 18 | reported that the species of Aspergillus that had |
| 17:16:52 | 19 | been associated, but not proven to cause asthma, |
| 17:16:56 | 20 | were ones that were common to water damaged |
| 17:17:00 | 21 | buildings? |
| 17:17:03 | 22 | A.   I remember one of the species, |
| 17:17:05 | 23 | Aspergillus ochraceus, yes, Aspergillus ochraceus |
| 17:17:07 | 24 | has been I know of associated with water-damaged |
| 17:17:12 | 25 | condition. |

SWANHOLT EXH. 14 -206

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 18:02:12 | 1 | for speculation. |
| 18:02:14 | 2 | THE WITNESS:  I don't have, I |
| 18:02:15 | 3 | don't know if they have an early design of |
| 18:02:17 | 4 | such. |
| 18:02:18 | 5 | BY MR. BIERSTEKER: |
| 18:02:18 | 6 | Q.   No, no, we talked about how there are |
| 18:02:20 | 7 | different designs, right? |
| 18:02:21 | 8 | A.   Yes. |
| 18:02:21 | 9 | Q.   I said the earlier, not the most recent. |
| 18:02:24 | 10 | So let me ask the question this way.  Do you know |
| 18:02:27 | 11 | whether or not if you had made the fabric sleeve a |
| 18:02:30 | 12 | removable, so that it could be washed in the |
| 18:02:33 | 13 | products as originally designed, that there was a |
| 18:02:35 | 14 | risk that parents would remove the plastic seat and |
| 18:02:38 | 15 | there would be a suffocation risk for their infants? |
| 18:02:42 | 16 | A.   It's possible. |
| 18:02:44 | 17 | MR. SCHWARTZ:  Objection.  Calls |
| 18:02:44 | 18 | for speculation.  Beyond the scope. |
| 18:02:50 | 19 | BY MR. BIERSTEKER: |
| 18:02:51 | 20 | Q.   A question with respect to do you know |
| 18:02:53 | 21 | whether or not does not call for speculation.  It |
| 18:02:56 | 22 | calls for an answer, which any got. |
| 18:02:58 | 23 | Even if it were possible to remove all |
| 18:03:01 | 24 | mold spores, isn't it sort of a Sisyphean task in |
| 18:03:06 | 25 | the sense that mold spores are going to be back on |

DR. CHIN S. YANG - 1/3/2014

| | | |
|---|---|---|
| 18:03:09 | 1 | it as soon as it dries out any way, if not before? |
| 18:03:12 | 2 | A.   Yes. |
| 18:03:19 | 3 | Q.   Would you agree that the cleaning |
| 18:03:21 | 4 | process described in the -- in connection with the |
| 18:03:26 | 5 | recall to inspect, Exhibit 17 I think. |
| 18:03:32 | 6 | MR. SCHWARTZ:  Eighteen. |
| 18:03:33 | 7 | BY MR. BIERSTEKER: |
| 18:03:33 | 8 | Q.   Eighteen, sorry, 18, will likely, |
| 18:03:36 | 9 | because it involves use of a bleach solution will |
| 18:03:39 | 10 | likely kill most actively growing mold? |
| 18:03:45 | 11 | A.   It depends. |
| 18:03:46 | 12 | Q.   On what? |
| 18:03:46 | 13 | A.   Well, it depends if you have enough |
| 18:03:49 | 14 | concentration.  Depending on if you have enough |
| 18:03:52 | 15 | contact time.  It depends on if what's the organic |
| 18:03:58 | 16 | load.  How much organic matter is in there.  How |
| 18:04:03 | 17 | thick the mold growth is.  I mean there are several |
| 18:04:07 | 18 | different issues. |
| 18:04:16 | 19 | Q.   I think there was a 10 percent bleach |
| 18:04:18 | 20 | solution, is that what -- isn't that what it was? |
| 18:04:20 | 21 | A.   I don't believe they used 10 percent. |
| 18:04:22 | 22 | They used -- |
| 18:04:24 | 23 | Q.   One gallon of water, one and a half cups |
| 18:04:27 | 24 | of bleach, that's .35 liters? |
| 18:04:32 | 25 | A.   Yeah, 1.06. |

**SWANHOLT EXH. 14 -208**

DR. CHIN S. YANG — 1/3/2014

```
1                    CERTIFICATE OF REPORTER

2            I, Robin Clark, a Certified Shorthand

3    Reporter, hereby certify that the witness in the

4    foregoing deposition was by me duly sworn to tell

5    the truth, the whole truth, and nothing but the

6    truth in the within-entitled cause;

7            That said deposition was taken down in

8    shorthand by me, a disinterested person, at the time

9    and place therein stated, and that the testimony of

10   the said witness was thereafter reduced to

11   typewriting, by computer, under my direction and

12   supervision;

13           That before completion of the deposition,

14   review of the transcript [x] was [  ] was not

15   requested. If requested, any changes made by the

16   deponent (and provided to the reporter) during the

17   period allowed are appended hereto.

18           I further certify that I am not of counsel

19   or attorney for either or any of the parties to the

20   said deposition, nor in any way interested in the

21   event of this cause, and that I am not related to

22   any of the parties thereto.

23       DATED:  January 6th, 2014           , 20

24

25              Robin L Clark
```

                         Robin L. Clark
                  Registered Professional Reporter

SWANHOLT EXH. 14 -209

# EXHIBIT 15

## DECLARATION OF COREEN A. ROBBINS, Ph.D., CIH

I, Coreen A. Robbins, Ph.D., CIH, declare as follows:

### I.   Qualifications

1.  I am an Industrial Hygienist at Veritox, Inc. in Redmond, Washington. I have more than twenty years of experience in industrial hygiene and I have served as a consultant in numerous industrial hygiene matters throughout the United States. I hold a master's degree in Occupational Safety and Health and a Ph.D. in Environmental Science. I am also a Certified Industrial Hygienist (CIH). I am a full member of the American Academy of Industrial Hygiene and the American Industrial Hygiene Association (AIHA). I am a member of the American Conference of Governmental Industrial Hygienists (ACGIH) and full member of the Society of Toxicology (SOT). My current CV is attached to this report (Appendix A).

2.  Industrial hygiene (IH) is the science of anticipation, recognition, evaluation, and control of physical, chemical, or other hazards.[1] One of the main tasks of the industrial hygienist is the evaluation, or assessment, of exposure or potential for exposure. To carry out this task, the industrial hygienist must understand exposure assessment methods and strategies, the likely exposure pathway, the relevant toxicological issues, and the potential health effects of the agent(s) they are to assess.

3.  As part of my industrial hygiene-related activities, I have been frequently asked to address the issue of exposure to and potential adverse health effects from chemicals and other agents, including mold.

4.  In their Complaint, the Plaintiffs assert a class of all persons in the United States who acquired a Fisher-Price Rock 'n Play Sleeper that was sold prior to January 8, 2013,[2] alleging that the potential for mold to develop on the Sleeper poses "direct health and safety risks."[3]

5.  In this matter, I am providing opinions to a reasonable degree of scientific certainty about issues related to exposure to mold and potential health effects of mold exposure.

### II.   Materials Reviewed

6.  I reviewed the following materials specific to the matter of Butler *et al.* v. Mattel, Inc. and Fisher-Price Inc. (Appendix B).

---

[1] Harris, R.L. (2000). Patty's Industrial Hygiene John Wiley & Sons, Inc., New York.
[2] Consolidated Class Action Complaint, p. 30
[3] Consolidated Class Action Complaint, p. 6

SWANHOLT EXH. 15 -210

7.  I base my opinions in this case on my review of these case-specific materials; my training, education, and experience; and on research I have conducted and publications I have written specifically regarding mold and indoor air quality issues.

## III.   Opinions

### I.   *The Fisher-Price Rock 'n Play Sleeper has not been shown to have a high propensity to develop mold growth.*

#### A.   *Molds are ubiquitous organisms.*

8.  Fungi, including molds, are ubiquitous in every environment on the planet. They are found in the air, water, and soil.[4] Fungi are major components of the world's ecosystem and it has been suggested that they make up 25% of the world's biomass (the percent of total living organisms).[5] As of 2008, approximately 98,000 species of fungi had been identified,[6] although estimates suggest there are 1.5 million species of fungi on earth, most of which have yet to be identified or described.[7]

9.  The number and type of spores in the air indoors is heavily influenced by the spores present in outdoor air, especially in buildings without mechanical ventilation and air filtration systems. Shelton *et al.* found that across the US, median indoor fungal spore concentration was approximately 80 $CFU/m^3$ with a range from zero to 10,000 $CFU/m^3$. Median outdoor fungal spore concentrations were highest in the fall and summer and lowest in the spring and winter. Indoor fungal spore concentrations varied in a similar manner.[8] Additional sources of mold spores indoors include transport from outdoors on people and pets, mold growth on home contents such as carpets, fabrics, fruit, vegetables, indoor plants, and due to small colonies that grow on household dust in moist areas of homes (basements, kitchens, bathrooms, etc.).[9] Virtually all normal indoor environments contain some surface and airborne mold spores.

---

[4] Hawksworth, D.L. (1991). The fungal dimension of biodiversity: magnitude, significance, and conservation. Presidential address 1990. Mycol Res 95(6), 641-6.
[5] Miller, J.D. (1992). Fungi as contaminants in indoor air. Atmospheric Environment 26A(12), 2163-2172; Sorenson, W.G. (1999). Fungal spores: Hazardous to health? Environ Health Persp 107 Suppl 3, 469-472.
[6] Kirk, P.M. *et al*. (2008). Ainsworth & Bisby's Dictionary of the Fungi CABI Europe-UK.
[7] Hawksworth, D.L. and Rossman, A.Y. (1997). Where are all the undescribed fungi? Phytopathology 87(9), 888-891.
[8] Shelton, B.G. *et al.* (2002). Profiles of airborne fungi in buildings and outdoor environments in the United States. Appl Environ Microbiol 68(4), 1743-1753.
[9] Gots, R.E. *et al.* (2003). Indoor health: Background levels of fungi. AIHAJ 64(4), 427-438; Hirsch, S.R. and Sosman, J.A. (1976). A one-year survey of mold growth inside twelve homes. Annals of Allergy 36, 30-38; Pasanen, A.L. *et al.* (1992). Fungal microcolonies on indoor surfaces: An explanation for the base-level fungal spore counts in indoor air. Atmospheric Environment 26B(1), 117-120; Scheff, P.A. *et al.* (2000). Indoor air quality in a middle school. Part II: Development of emission factors for particulate matter and bioaerosols. Applied Occupational and Environmental Hygiene 15(11), 835-842.

**B. *Fisher-Price Rock 'n Play Sleepers that are maintained in a clean and dry condition will not support mold growth.***

10. Fisher-Price Rock 'n Play Sleepers that remain in a clean and dry condition will not support mold growth.

11. Two conditions generally are necessary for mold growth: a food or nutrient source and available water.[10]

12. Sleepers are made of polyester and plastic materials that cannot provide a nutrient or food source for mold on their own. Polyester fabric and batting are man-made and do not contain carbon atoms that are available as a food source for molds to digest.[11] Polyester fabric and batting, like plastic containers, are highly resistant to biodegradation from fungi or bacteria because these organisms can't "eat" plastic. Any mold spores alighting on these materials cannot grow into a colony without an added food source (such as dust or baby formula). While it is possible that a spore could germinate if it lands on wet polyester fabric, there would be no continued growth or development of mycelia and spores in the absence of a food source for energy and continued moisture.

13. Mold requires a continuous supply of free water to grow. That is why mold and "mildew"[12] growth commonly occurs, for example, in showers, bath tubs, clothing or other fabric items that remain wet and soiled for more than a few days,[13] and, of course, on stored fruits and vegetables.

14. The experimental data collected by Dr. Gots and Fisher Price reflect this common experience and knowledge.

15. Fisher-Price subjected Rock 'n Play Sleepers to varying conditions of added moisture and nutrients (baby formula), maintained in an environment with high humidity and at room temperature, and exposed the Sleepers to assorted drying intervals in attempting to replicate mold growth that had been reported by some consumers. Mold growth was not

---

[10] Garraway, M.O. and Evans, R.C. (1991). Growth of fungi. In Fungal Nutrition and Physiology (Garraway, M. O. and Evans, R. C.), 231-263. Krieger Publishing Company, Malabar, FL.

[11] The textile material of the pad of the Fisher-Price Rock 'n Play Sleeper is composed of 100% polyester and the sling is 95% plastic stiffener, 5% polyester fiber batting (Fisher-Price Newborn Rock 'n Play Sleeper, Product specifications on product packaging box). Textiles composed of synthetic fibers such as polyester are subject to microbial degradation to a slight or very slight degree (Szostak-Kotowa, J. (2004). Biodeterioration of textiles. International Biodeterioration and Biodegradation 53, 165-170. ). Absent an external food source, mold growth on synthetic textiles is unlikely.

[12] "Mildew" is the common term for mold growth, usually on fabrics. In horticulture, mildew is fungus in the order *Erysiphales* (Kirk (2008). *loc. cit.*).

[13] High fabric relative humidity (above 65%) and fabric storage temperature (20-35°C) favor the development of microorganisms on fabrics (Gutarowska, B. and Michalski, A. (2012). Microbial degradation of woven fabrics and protection against biodegradation. In Woven Fabrics (Jeon, H. Y.), 267-296. InTech.); however, free water and nutrients are required for mold growth (Garraway, M.O. and Evans, R.C. (1991). *loc. cit.*).

**SWANHOLT EXH. 15 -212**

observed on the Sleepers until between three and fourteen days, depending on the testing conditions to which the Sleepers were subjected.[14]

16. Dr. Gots was unable to grow mold on the Fisher-Price Rock 'n Play Sleepers or other infant care products that he tested when, for 15 days, he subjected these products to carpet dust (mold spores), baby formula (nutrients), regular misting every two hours, and continuous room humidification with vaporizers.[15] After 15 days with no mold growth, Dr. Gots subsequently did develop mold on the Sleeper, as well as other tested infant care products, after 2 more days, when he *additionally* subjected these products to more carpet dust and baby formula, placed a damp towel on each product, and covered each product with plastic.[16]

17. The growth and appearance of mold colonies on the Sleeper and other infant care products after days of being subjected to added and maintained moisture and food (at room temperature), and at room or elevated humidity would be expected. Virtually any fabric and most surfaces would support mold growth under these conditions, consistent with our own experiences with showers, tubs, damp fabrics, fruits and vegetables.

18. In Dr. Gots' experiments, mold colonies did not develop on the Sleeper or other infant care products in the absence of added moisture and food source.

19. These results are also consistent with available data on actual consumer use of the Sleeper.

20. According to the CPSC's Recall Notice: "Mold can develop between the removable seat cushion and the hard plastic frame of the sleeper when it remains wet/moist or is infrequently cleaned…"[17]

21. The available consumer report data underscore the point. Even with the publicity attendant to the Recall to Inspect, unsubstantiated reports of mold or "mildew" growth on the Sleeper have been received from fewer than one-percent of consumers.[18]

---

[14] Mold growth experiments 1 to 4 – Rock n Play Sleeper [FP-RNPS-000343-356]
[15] CPSC Third Supplemental Submission, 8/20/12 [FP-RNPS-0000272-360]
[16] CPSC Third Supplemental Submission, 8/20/12 [FP-RNPS-0000272-360]
[17] U.S. Consumer Product Safety Commission – Recall. "Fisher-Price Recalls to Inspect Rock 'N Play Infant Sleepers Due to Risk of Exposure to Mold" Recall date: 1/8/13. Recall number: 13-087. [FP-RNPS-0001018-1020]
[18] There were a total of approximately 6,500 reports, compared to the approximately 1,200,000 Sleepers sold. Spreadsheet [FP-RNPS-0041505]; Spreadsheet [FP-RNPS-0041506]. Some of these unsubstantiated consumer reports of perceived mold almost certainly were erroneous. Plaintiffs' expert, Dr. Yang, for example, examined under an electron microscope samples of what was perceived to be mold from the Sleepers apparently owned by three of four named class representatives. In one out of the three instances, the presence of mold could not be confirmed by Dr. Yang. More generally, the presence of mold must be determined by microbial analysis. (Deposition of Chin Yang, Ph.D., 1/3/14, 85:22-88:9)

22. More than 99 percent of consumers did not report the presence of the mold or "mildew" on their Sleepers under conditions of actual use.

23. The available observational and experimental data supports the conclusion that under conditions of typical usage and maintenance the Fisher-Price Rock 'n Play Sleeper does not develop mold growth. Instead, mold will only grow on the Sleeper when, as the CPSC observed in its press release, the Sleeper gets and "remains wet/moist or is infrequently cleaned."

24. Dr. Yang's conclusion that the Sleeper has a "high propensity" to develop mold is based primarily on the raw total number of unsubstantiated consumer reports of mold,[19] without comparison to any data to demonstrate that the proportion of Sleepers that actually developed mold, because they become and remain wet or are infrequently cleaned, is higher than the proportion of other infant care products that would develop mold under either the same laboratory conditions or conditions of actual use or misuse.

II. *Whether exposure to mold results in adverse health effects depends on the dose received from the exposure and the health status of the individual exposed.*

A. *Potential Adverse Health Effects of Mold Generally*

25. There are three potential human health effects of mold:

(1) Infection – *i.e.,* growth of mold in or on the body.

(2) Toxicity – *i.e.,* cell or organ damage.

(3) Allergy – an immune response (specific allergic reactions in the form of hay fever, asthma; immune response in the form of hypersensitivity pneumonitis, HP).[20]

26. Opportunistic fungal infections pose a risk to people with severely impaired immune function.[21] Most fungi are not pathogenic to healthy humans.[22]

27. Human and animal toxicity from molds occurs nearly exclusively from ingestion of molds and mycotoxin[23]-contaminated food[24] (or foods such as meat or milk from animals

---

[19] Report of Chin Yang, Ph.D., dated 11/31/13 [*sic*]; Deposition of Chin Yang, Ph.D., 1/3/14, 89:9-23
[20] ACOEM . (2011). Adverse Human Health Effects Associated with Molds in the Indoor Environment. Revised Position Statement. www.acoem.org.
[21] ACOEM. (2011). *loc. cit.*
[22] Some fungal infections, such as ring worm or athlete's foot occur in healthy persons; the fungi causing these infections are not generally classed as "molds."
[23] Mycotoxins are secondary metabolites that may be produced by some molds under certain environmental conditions; these compounds are not volatile and do not produce a vapor or gas; thus, exposure to mycotoxins via inhalation only occurs when particles that contain them are inhaled (Burge, H.A. (2001). The Fungi. In Indoor Air Quality Handbook (Spengler, J.D. *et al.*), 45.1-45.33. McGraw Hill; Rao, C.Y. (2001). Toxigenic Fungi in the

**SWANHOLT EXH. 15 -214**

ingesting moldy fodder). Toxicity from inhaled mold spores and particles in indoor environments is unlikely because spore concentrations that occur indoors are too low to produce a dose of mycotoxins sufficient to produce adverse health effects (as shown in animal studies).[25] The American College of Occupational and Environmental Medicine (ACOEM) reported that "Current scientific evidence does not support the existence of a causal relationship between inhaled mycotoxins in home, school, or office environments and adverse human health effects."[26]

28.  Individuals who are allergic to mold can experience allergic health effects such as hay fever and asthma when they are exposed to the mold allergen.[27] Since mold spores are present in indoor and outdoor environments, allergic responses can result from exposures to mold spores both indoors and/or outdoors. Unless mold types to which an individual is allergic are present indoors at levels substantially higher than outdoors, it is usually not possible to conclude that allergic symptoms are due to spores originating from an indoor source (as opposed to spores from outdoors, or a combination of spores from both indoor sources and outdoors).

**B.  *Methods for assessing exposure and dose generally***

29.  With any substance (not just mold) there can be no dose or effect without exposure to the substance.

30.  In order for exposure to occur, there must be a pathway from the source of the agent to the individual and the substance must also be present in a form that can gain entry to the body.[28]

31.  Industrial hygienists attempt to collect samples in a way that corresponds to the human exposure route. Since inhalation is the more important route of exposure with mold spores, air sampling is the normal technique to determine exposure potential. Air samples of mold spores are compared to background air mold spore levels (usually outdoor air) and if indoor air sample results are elevated compared to background, then it is not scientifically supported that there would be an increased risk of adverse health effects, such as allergic symptoms, from mold spores in the tested environment.

---

Indoor Environment. In Indoor Air Quality Handbook (Spengler, J. D. *et al.*), 46.1-46.17, McGraw Hill, New York, NY.
[24] ACOEM. (2011). *loc. cit.*
[25] Kelman, B. J. *et al.*  (2004). Risk from inhaled mycotoxins in indoor office and residential environments. International Journal of Toxicology 23(1), 3-10.
[26] ACOEM. (2011). *loc. cit.*
[27] ACOEM. (2011). *loc. cit.*
[28] Klaassen, C. D. (2013). Casarett and Doull's Toxicology: The Basic Science of Poisons. 8th ed. New York, McGraw-Hill.

32. While samples of surface mold spores can sometimes be used to determine potential sources of exposure, there is no way to predict what, if any, airborne concentration will result from surfaces found to have mold growth or settled mold spores (out of the air) on them.

> "Because bulk samples are not good estimators of actual exposure, measurements of biological agents in bulk samples do not allow conclusions as to the air concentration of material that would be associated with a given disease outcome."[29]

### C.  Assessing mold exposure from the Fisher-Price Rock 'n Play Sleeper

33. It is unlikely that infants and caregivers are at risk of exposure to substantial numbers of airborne mold spores from the Sleepers.

34. There is no potential for increased exposure to mold from the Sleeper unless the Sleeper has developed mold.

35. For the Sleepers in which mold developed, it is unlikely that exposure to mold would be increased significantly above ordinary background levels.

36. When mold develops on the Sleeper, it typically is found, as noted in the CPSC's press release, "between the removable seat cushion and the hard plastic frame of the Sleeper."[30] Mold growth on the fabric sleeve of the plastic seat is underneath the removable soft, fabric-covered padded layer. As a result, the removable pad forms a barrier between the mold growth and the clothing or skin of an infant, making direct dermal exposure unlikely. Mold growth in that location on the Sleeper is unlikely to result in significant exposure either by inhalation of airborne mold or by direct dermal exposure to the mold growth.

37. With the padded, removable cover in place, the pathway for a substantial amount of the mold spores to escape into the air is also significantly occluded or blocked when the seat is in use.

38. This is consistent with the only available data that actually measured whether mold growth on the Sleepers elevate airborne concentrations of mold above background levels in the breathing zone of infants.

39. As reported by Fisher Price to the CPSC, Dr. Gots induced mold growth on the plastic seat and its fabric sleeve by (1) adding dust, water, formula; and (2) covering the seat

---

[29] Macher, J. and ACGIH. (1999). Bioaerosols: Assessment and Control ACGIH, Cincinnati, OH.
[30] U.S. Consumer Product Safety Commission – Recall. "Fisher-Price Recalls to Inspect Rock 'N Play Infant Sleepers Due to Risk of Exposure to Mold" Recall date: 1/8/13. Recall number: 13-087. [FP-RNPS-0001018-1020]

**SWANHOLT EXH. 15 -216**

with a damp towel and sheet of plastic. From these Sleepers as well as some Sleepers returned by consumers, air samples were collected from the theoretical breathing zone of an infant in the Sleeper after placing a 12-pound weight in the Sleeper (to simulate an infant) and after rocking the Sleeper for 10 minutes.[31] There was no measured increase in airborne mold spores above background levels.[32]

40. In contrast, Dr. Yang's report improperly relies on surface sample results to infer that mold on the Sleeper must increase exposure by some amount that he admits he has not quantified.[33]

41. In support of the conclusion that mold growth on Sleepers results in inhalation exposure to airborne mold spores and a significant risk of adverse health effects, Dr. Yang cites the results of the surface samples analyzed by Bureau Veritas: "Bureau Veritas Consumer Product Services, Inc. produced five reports for the testing of 14 samples that were sent by Fisher-Price for mold analysis…Bureau Veritas identified and reported the fungal genera *Acremonium, Alternata [sic], Aspergillus, Cladosporium, Epicoccum, Phoma*, and yeasts from the samples. They did not identify the specific species of fungi/mold." But, as discussed, neither the presence of visible mold growth nor the Bureau Veritas reports of "mold growth/colonization"[34] on surface samples taken from a number of Fisher-Price Rock 'n Play Sleepers are a reliable indicator that there is any measureable increased exposure to airborne mold spores above background, much less a significant increase in any such exposure.[35]

42. Chin Yang, Ph.D., testified in deposition that he was not aware of a single consumer who was diagnosed with a disease or medical condition actually caused by exposure to mold from the Sleeper.[36]

43. Parents whose Sleepers developed mold can minimize any potential exposure to mold from the Sleeper by following the cleaning instructions that were part of the CPSC's Recall to Inspect. The Recall to Inspect urged consumers to remove the pad from their Sleepers to inspect for potential mold growth, and, if there was perceived mold growth, to utilize the approved instructions to clean their Sleepers.[37]

---

[31] CPSC Second Supplemental Submission, 3/5/12 [FP-RNPS-0000184-266]
[32] CPSC Supplemental Submission, 2/24/12 [FP-RNPS-0000072-183]
[33] Deposition of Chin Yang, Ph.D., 1/3/14, 65:25-66:11, 178:12-20
[34] Report of Chin Yang, Ph.D., dated 11/31/13 [sic]
[35] AIHA. (2004). Assessment, Remidiation, and Post-Remediation Verification of Mold in Buildings; Macher, J. and ACGIH (1999). *loc. cit.*
[36] Deposition of Chin Yang, Ph.D., 1/3/14, 168:9-22
[37] U.S. Consumer Product Safety Commission – Recall. "Fisher-Price Recalls to Inspect Rock 'N Play Infant Sleepers Due to Risk of Exposure to Mold" Recall date: 1/8/13. Recall number: 13-087. [FP-RNPS-0001018-1020]; Recall to Inspect Cleaning Instructions

**SWANHOLT EXH. 15 -217**

44. Following these instructions will not only prevent mold growth from occurring, but will also remove mold spores and particles and would kill most if not all mold spores on the seat surfaces.[38] In addition, the bleach solution will destroy much of the antigenic potential of any remaining mold particles.[39]

45. The cleaning instructions advise consumers needing advanced care of the Fisher-Price Rock 'n Play Sleeper to (1) mix 1 gallon (4L) of water with 1.5 cups (0.35L) chlorine bleach and (2) apply the mixture to the liner with a sponge and wipe clean.[40]

46. Bleach sold for household use contains the active ingredients sodium hypochlorite (NaClO) (5-10%) and sodium hydroxide (<1%) of (Chlorox MSDS). Dilution of this product with water as described in the cleaning instructions would produce a hypochlorite solution of approximately 0.5-1%.

47. Thus, the cleaning instructions are consistent with mold clean-up instructions provided by the U.S. Centers for Disease Control[41] and the Federal Emergency Management Agency (FEMA).[42] Sodium hypochlorite is widely used in water and surface decontamination.

48. Indeed, recent studies on household molds have found it effective in this concentration range for killing molds, reducing their antigenic potential, and inactivating any mycotoxins present.[43]

---

[38] Reynolds *et al.* (2012) used culture and immunoassays were to measure the viability and reduction of allergenic properties of *Aspergillus fumigatus* following 2.4% NaOCl treatment. They found that five-minute exposures to 2.4% NaOCl resulted in a >3 to >6-$\log_{10}$ reduction of culturable mold counts in controlled laboratory studies. Organisms were non-culturable after 5- and 10-min contact times on non-porous and porous ceramic carriers, respectively, and *A. fumigatus* spore-eluted allergen levels were reduced by an average 95.8% in 30 sec, as indicated by immunoassay. They recommended the use of low concentrations (2.4%) of NaOCl as an effect way to reduce culturable indoor mold and related allergens.

[39] Wilson *et al.* (2004) examined the efficacy of three different treatments (gamma irradiation, a detergent/bleach (2%) wash, and steam cleaning) on the reduction of selected fungal spore and mycotoxin levels on Paper, cloth, wood, and carpet inoculated with either fungal spores at 240,000 spores/2.54 cm² (*Stachybotrys chartarum*, *Aspergillus niger*, *Penicillium chrysogenum*, or *Chaetomium globosum*) or with the mycotoxins roridin A, T-2, and verrucarin A at 10 microg per 2.54 cm² of material. Contaminated materials were placed in test tubes with the washing solution and agitated 3 times per minute for 10 minutes. The washing technique inactivated or removed 100% of spores on all materials except for C. globosum, which was statistically significantly reduced on all items except paper (p < 0.05). Washing with bleach/water solution inactivated all mycotoxins on paper and cloth but not on carpet or untreated wood (p < 0.001). The bleach/detergent washing technique was more effective overall in reducing spore and mycotoxin levels.

[40] Recall to Inspect Cleaning Instructions

[41] Recommendations from the Centers for Disease Control and Prevention. "Get Rid of Mold" Accessed at http://emergency.cdc.gov/disasters/pdf/flyer-get-rid-of-mold.pdf on 1/6/14

[42] FEMA. "Dealing with mold & mildew in your flood damaged home." Accessed at http://www.fema.gov/pdf/rebuild/recover/fema_mold_brochure_english.pdf on 1/6/14

[43] Reynolds, K.A. *et al.* (2012). Occurrence of household mold and efficacy of sodium hypochlorite disinfectant. J Occup Environ Hyg 9(11), 663-669; Wilson, S.C. *et al.* (2004). An investigation into techniques for cleaning mold-contaminated home contents. JOEH 1(7), 442-447.

49. Since the release of mold spores originating from mold growth on the Fisher-Price Rock 'n Play Sleeper would be inhibited by the padded fabric top layer of the Sleeper, exposure to substantial numbers of mold spores, dead or alive, that might remain after cleaning is highly unlikely.

## IV.   Conclusions

50. The development of mold on a Sleeper depends on a number of individual factors, including the type of mold spores present naturally in the environment, the concentration of background mold spores from indoor[44] and outdoor[45] sources, temperature, relative humidity, the amount of water (moisture) on the seat, the length of time that the water is present, and the availability and type of nutrients (organic material such as baby milk formulas, sweat, urine, etc.).

51. These environmental conditions vary among users of the Fisher-Price Rock 'n Play Sleepers and will affect the likelihood of the occurrence of mold growth on the individual Fisher-Price Rock 'n Play Sleeper. For example, Fisher-Price Rock 'n Play Sleepers that are stored in a damp environment and had food or formula that was not promptly cleaned and dried might support mold growth whereas Fisher-Price Rock 'n Play Sleepers that were maintained clean and dry do not.

52. Notwithstanding this variability, mold will not develop on the Sleeper if it is kept clean and dry. Instead, mold will only grow when the Sleeper gets and "remains wet/moist or is cleaned infrequently."

53. Under conditions of actual use, fewer than one-percent of consumers have reported unsubstantiated claims of mold growth.[46]   More than 99 percent have not reported mold growth.

54. If a Sleeper does develop mold, there has been no data that show that the Sleeper will result in a measureable, much less substantial, increase in exposure to mold either by direct contact or through the air.

55. Consumers can effectively prevent any potential for increased exposure to mold from the Sleeper by maintaining it in a clean and dry condition; and, if it becomes soiled and wet, by inspecting their Sleeper and, if mold is present or a parent otherwise desires, by cleaning the product pursuant to the cleaning instructions that issued as part of the CPSC's Recall to Inspect.

---

[44] Gots, R.E., Layton, N.J., and Pirages, S.W. (2003). *loc. cit.*; Hirsch, S.R. and Sosman, J.A. (1976). *loc. cit.*; Scheff, P.A. *et al.* 2000. *loc. cit.*
[45] Shelton, B.G. *et al.* (2002). *loc. cit.*
[46] Claims of mold growth were self-reported by consumers and unsubstantiated by microbial analysis. Stains and dark spots can be the result of dirt, soot, or other materials (Macher, J. and ACGIH. (1999). *loc. cit.*).

**SWANHOLT EXH. 15 -219**

56. Plaintiffs' expert, Chin Yang, Ph.D., was unaware of a single instance in which an infant was diagnosed with a disease or medical condition caused by mold from the Sleeper.

57. These opinions are based on the materials received and analyzed to date. Should additional information become available, I reserve the right to amend and/or supplement my opinions accordingly.

## V.   Trial Testimony

58. A list of my expert testimony for the last four years is attached (Appendix C).

## VI.   Compensation

59. My company charges $425 per hour for my time to consult in this matter, and charges $600 per hour, with a one hour minimum, for deposition and trial testimony.

_____          1/13/14
Coreen A Robbins, PhD, CIH                          Date
Principal, Industrial Hygienist

**SWANHOLT EXH. 15 -220**

# APPENDIX A

SWANHOLT EXH. 15 -221



REDMOND, WA  •  HILTON HEAD, SC  •  CAPE ELIZABETH, ME

# Coreen A. Robbins, M.H.S., Ph.D., C.I.H.

## Education

B.S., Zoology, Michigan State University, 1983
M.H.S., Occupational Safety and Health, The Johns Hopkins University, 1989
Ph.D., Environmental Health Science, The Johns Hopkins University, 1995

## Affiliations

Academy of Industrial Hygiene
American Industrial Hygiene Association (AIHA)
   - Bioremediation Task Force
   - Pacific Northwest Section
   - Toxicology Committee
American Conference of Governmental Industrial Hygienists (ACGIH)
ASTM International
   - D22 Indoor Air Quality Committee
Society of Toxicology (SOT)
   - Sub Specialty Section: Occupational and Public Health
   - Pacific Northwest Chapter

## Certifications

Certified Industrial Hygienist #5605

## Experience

| | | |
|---|---|---|
| 1999 - Present | **Veritox®, Inc.** **(formerly GlobalTox, Inc.)** <br> *Principal – Senior Industrial Hygienist* | **Redmond, Washington** |
| 1998-1999 | **McConnell and Associates** <br> *Industrial Hygienist* | **Bellevue, Washington** |
| 1994-1998 | **International Center for Toxicology and Medicine** (formerly National Medical Advisory Service) <br> *Senior Industrial Hygienist* | **Bethesda, Maryland** |

## Publications

(1) = Research Articles; (2) = Abstracts; (3) = Other

1.   (1) Robbins, C.A., M.W. Krause, R H. Atallah, and M.J. Plisko. 2012. Comparison of exposure measurements to near-field, far-field modeled results for benzene and base solvents during a cleaning process using plain or 0.1% benzene spiked toluene and xylene. *Journal of Chemical Health and Safety*, 19(6):3-11.

SWANHOLT EXH. 15 -222



# Coreen A. Robbins, M.H.S., Ph.D., C.I.H.

## Publications (Continued)

2.  (1) Hardin, B.D., C.A. Robbins, P. Fallah and B.J. Kelman. 2009. The concentration of No Toxicological Concern (CoNTC) and airborne mycotoxins. *Journal of Toxicology and Environmental Health,* Part A 72(9):585-598.

3.  (3) Robbins, C.A., L.J. Swenson, and S. Arnold. 2008. Chapter 23: Exposure Assessment, pp. 285-299. In: *Toxicology Principles for the Industrial Hygienist*, W.E. Luttrell, W. W. Jederberg, and K.R. Still (eds.), AIHA, Fairfax, VA.

4.  (1) Krause, M.W., W.T. Geer, L.J. Swenson, P. Fallah, and C.A. Robbins. 2006. Controlled study of mold growth and cleaning procedure on treated and untreated wet gypsum wallboard in an indoor environment. *Journal of Occupational and Environmental Hygiene* 3:435-441.

5.  (3) Robbins, C.A. and J. Morrell. 2006 (original published in 2002). *Mold, Housing and Wood*. Western Wood Products Association, Portland, OR.

6.  (1) Kelman, B.J., C.A. Robbins, L.J. Swenson, and B.D. Hardin. 2004. Risk from Inhaled Mycotoxins in Indoor Office and Residential Environments. *International Journal of Toxicology* 23(1):3-10.

7.  (1) Van Loo, J., C.A. Robbins, L.J. Swenson, and B.J. Kelman. 2004. Growth of Fungi on Fiberglass Insulation Building Materials – A Review of the Literature. *Journal of Occupational and Environmental Hygiene* 1:349-354.

8.  (3) Robbins, C.A., L.J. Swenson, W.T. Geer and B.J. Kelman. 2003. Mold in Indoor Environments: A Critical Review of Research Studies. *Injury Insights,* April/May: 1-2.

9.  (2)  Jarand, C.W., C.A. Robbins, and B.J. Kelman.  2003.  Evaluation of Potential Exposure to Volatile Organic Compounds Emitted from a Spray Grade Contact Cement. *Toxicological Sciences* 72:301.

10. (3) Hardin, B.D., A. Saxon, C. Robbins, and B.J. Kelman. 2003. *The Growing Hazard of Mold Litigation. A Scientific View of the Health Effects of Mold*. US Chamber of Commerce Institute for Legal Reform, Manhattan Institute Center for Legal Policy, Washington, DC, 17 July 2003.

11. (3) Swenson, L, W. Geer, M. Krause, C. Robbins. 2003. Poster session: Tape-Lift: Survey of Settled Dust in Non-Water-Damaged Homes, American Industrial Hygiene Conference and Exposition (AIHCE), Dallas, TX. 12 May 2003.

12. (2)  Kelman, B.J., C.A. Robbins, and L. Swenson. 2002.  Evaluation of potential health effects from inhalation exposure to mycotoxins in indoor office and residential environments. *Toxicological Sciences* 66: 267.

13. (1) Robbins, C.A., L.J. Swenson, W.T. Geer, and B.J. Kelman, 2001. Mycotoxins in Indoor Environments. *ASHARE IAQ Applications.* Winter 2001, p. 9-11.

14. (3) Swenson, L.J., C.A. Robbins, and W.T. Geer. 2002. Poster session: Variability in Viable and Non-viable Mold Spore Sampling Results, AIHCE, San Diego, CA. June 2002.

15. (3) Swenson, L.J., C.A. Robbins, and W.T. Geer. 2001. Poster session: What's Growing in the Pacific Northwest?, AIHCE, New Orleans, LA, June 2001.

0813

**SWANHOLT EXH. 15 -223**



# Coreen A. Robbins, M.H.S., Ph.D., C.I.H.

## Publications (Continued)

16.  (1) Breysse, P.N., P.S.J. Lees, B.C. Rooney, B.R. McArthur, M.E. Miller, and C.A. Robbins. 2001. End-user exposures to synthetic vitreous fibers: II. Fabrication and installation fabrication of commercial products. *Applied Occupational and Environmental Hygiene* 16(4):464-470.

17.  (1) Robbins, C.A., L.J. Swenson, M.L. Nealley, R.E. Gots, and B.J. Kelman. 2000. Health Effects of Mycotoxins in Indoor Air: A Critical Review. *Applied Occupational and Environmental Hygiene* 15(10):773-784. (Awarded "Best Indoor Environmental Quality Publication in 2000" by the American Industrial Hygiene Association Indoor Environmental Quality Committee, June 2001).

18.  (1) Robbins, C.A. and P.N. Breysse. 1996. The effect of vapor polarity and boiling point on breakthrough for binary mixtures on respirator carbon. *American Industrial Hygiene Association Journal* 57(8):717-723.

19.  (3) Robbins, C.A. 1995. The Adsorption of Binary Organic Vapor Mixtures on Respirator Carbon. Ph.D. Thesis, The Johns Hopkins University.

20.  (1) Lees, P.S.J., P.N. Breysse, B.R. McArthur, M.E. Miller, B.C. Rooney, C.A. Robbins and M. Corn. 1993. End user exposures to man-made vitreous fibers: I. Installation of residential insulation products. *Applied Occupational and Environmental Hygiene* 8(12):1022-1030.

21.  (1) Robbins, C.A., P.N. Breysse, M. Francis, P.S.J. Lees, N. Chopra, and M. Corn. 1992. Comparison of size characteristics of fibers found on sample filters and cassette cowls from personal samples of airborne man-made mineral fibers. *Applied Occupational and Environmental Hygiene* 7(10):659-664.

## Selected Presentations

1.  Invited Faculty Speaker: *Mold and IAQ in Buildings: Update from the Environmental Health Perspective,* Washington State Bar Association, CLE. Water Intrusion and Mildew, Seattle, WA, 20 October 2011.

2.  *Investigation and Resolution of Air Quality Complaints Associated with the Breakdown of Carpet Materials in a New School Building,* Podium Session 117: Indoor Environmental Quality I, American Industrial Hygiene Conference and Exposition (AIHCE), Portland, OR, 17 May 2011.

3.  *Exposure and Airborne Fiber Concentrations Due to Environmental Asbestos and Erionite,* Podium Session 101: Asbestos Exposure Assessment Strategies, AIHCE, Portland, OR, 16 May 2011.

4.  Invited Speaker: *Glass Fibers,* Seattle Chapter of the Indoor Air Quality Association (IAQA) meeting, 22 March 2011.

5.  Invited Speaker: *Health Effects of Environmental Mold: Evaluation and Legal Aspects,* Workshop at American College of Allergy, Asthma and Immunology (ACAAI) Annual Meeting, Seattle, WA, 8 November 2008.

6.  Invited Faculty Speaker: *Mold and IAQ in Buildings: "Green" or Not,* Washington State Bar Association, CLE. Mold, Mildew & Moisture: Views from Plaintiff, Defense, Expert, and ADR Professionals, Seattle, WA, 15 November 2007.

0813

**SWANHOLT EXH. 15 -224**



# Coreen A. Robbins, M.H.S., Ph.D., C.I.H.

### Selected Presentations (Continued)

7. *Take-Home Exposure to Asbestos: Are Family Members of Auto Mechanics at Risk?* Podium Session 124: From Meth Labs to Lead: Policies and Practices in Community Environmental Health, AIHCE, Philadelphia, PA, 6 June 2007.

8. *Developments in Sampling and Analysis of Mycotoxins in the Indoor Environment,* Roundtable 213: Indoor Mycotoxins Update: IH Issues, Biomonitoring, Occupational Medicine, AIHCE, Philadelphia, PA, 6 June 2007.

9. Invited Speaker: *Mold: a "Hot Topic"?* American Bar Association, Toxic Torts and Environmental Law Committee Annual Meeting, Phoenix, AZ, 31 March 2007.

10. *Sands of Time – A History of Occupational and Non-Occupational Silica Exposures,* Roundtable 241: Silica Sandstorm: Causation and Legal Controversy, AIHCE, Chicago, IL, 18 May 2006.

11. Invited Speaker: *Mold in Schools and Commercial Buildings: Exposure Assessment and Health Effects of Mold,* State of Washington Governor's Industrial Safety and Health Conference, Olympia, WA, 28 September 2005.

12. Invited Faculty Speaker: *Mold Remediation and Clean Up.* Washington State Bar Association, CLE. Water Intrusion and Mold: Addressing Recent Mold Claims From all Angles of the Case, Seattle, WA, 22 March 2005.

13. *Toxicological and Occupational Medicine Perspective on Molds and Mycotoxins: Update and Implication for IH,* AIHA, On-line seminar, 16 February 2005.

14. Invited Speaker: *Health Aspects of Indoor Fungal Contamination, NAS Report*. California Industrial Hygiene Council (CIHC), 14th Annual Conference, Redondo Beach, CA, 3 December 2004.

15. Invited Speaker: *Health and Scientific Basis of Assessment and Remediation Techniques*. American Society for Testing Materials (ASTM) Mold Symposium, Boulder, CO, 22 July 2004.

16. *Development of the Current Industrial Hygiene Perspective on Molds and Mycotoxins,* Roundtable 236: Toxicological and Occupational Medicine Perspective on Molds and Mycotoxins: Update and Implications for Industrial Hygiene, AIHCE, Atlanta, GA, 12 May 2004.

17. *Diagnosis of Building-Related Illnesses,* Emerging Issues in Washington Indoor Air Quality and Toxic Mold Litigation, National Business Institute, Inc., 2003

18. Invited Speaker: *Dispelling the Myths: Understanding the Health Effects of Mold,* Washington Insurance Council, Building Industry Association of Washington, October 2002.

19. *Mold in Indoor Environments: Exposures and Health Effects,* Emerging Issues in Washington Indoor Air Quality and Toxic Mold Litigation, National Business Institute, Inc., 2002

20. Invited Faculty Speaker: *Mold in the Indoor Air Environment: Exposure and Health Effects,* University of Washington School of Medicine Continuing Medical Education, Occupational & Environmental Medicine: New developments for primary care clinicians, Seattle WA, April 6, 2001.

0813

SWANHOLT EXH. 15 -225



## Coreen A. Robbins, M.H.S., Ph.D., C.I.H.

21. *Toxicology, Stachybotrys, and the Industrial Hygienist,* Roundtable 243: Forum on a Critical Review of Health Hazards from Exposure to Mycotoxic Fungi in Indoor Environments, AIHCE, Orlando, FL, 25 May 2000.

0813

**SWANHOLT EXH. 15 -226**

APPENDIX B

SWANHOLT EXH. 15 -227

Materials Received for Review
*Butler v. Fisher-Price and Mattel*

- Consolidated Class Action Complaint, 10/4/13

- Plaintiffs' Memorandum of Points and Authorities in Support of Their Motion for Class Certification with exhibits A-H, K-U, X-LL, OO, QQ, TT, YY-OOO
  - Exhibit A: Excerpts of deposition of Katherine Pilarz, 10/31/13
  - Exhibit B: Fisher-Price document [FP-RNPS-0018248-18249]
  - Exhibit C: Excerpts of deposition of Michael Francis Fenn, 10/29/13
  - Exhibit D: Excerpt of deposition of Jerome L. Miller, 10/30/13
  - Exhibit E: Fisher-Price Shop-at-Home Summer 2010 catalog [FP-RNPS-0003452-3471]
  - Exhibit F: Fisher-Price Newborn Rock 'n Play Sleeper brochure [FP-RNPS-0002262]
  - Exhibit G: CPSC Recall Summary
  - Exhibit H: Fisher-Price production information [FP-RNPS-0001362-1369]
  - Exhibit K: Email from J. Miller to K. Pilarz, 12/21/11 with attached draft summary of mold growth experiment document (not provided) [FP-RNPS-0009348]
  - Exhibit L: Mold Growth Experiment [FP-RNPS-0009349-9352]
  - Exhibit M: Mold Growth Experiment 2 [FP-RNPS-0003347-3349]
  - Exhibit N: Mold Growth Experiment 3 [FP-RNPS-0003350-3352]
  - Exhibit O: Mold Growth Experiment 4 [FP-RNPS-0003353-3356]
  - Exhibit P: Newborn Rock 'n Play Sleeper Mold Contacts [FP-RNPS-0038863-38882]
  - Exhibit Q: Email from J. Taton to C. Hattler, 10/21/10 [FP-RNPS-0009962]
  - Exhibit R: Email chain from C. Hattler to J. Taton, 12/1/10 [FP-RNPS-0009904-9905]
  - Exhibit S: Email from J. Taft to K. Pilarz, 2/1/12 [FP-RNPS-0039052]
  - Exhibit T: Email chain from A. Chen to J. Taton, 12/16/10 [FP-RNPS-0009883-9886]
  - Exhibit U: Rock and Play Sleeper CPSC Timeline [FP-RNPS-0040934-40936]
  - Exhibit X: CDC, Facts about *Stachybotrys chartarum* and Other Molds, last updated 2/8/10 [FP-RNPS-0040420-40425]
  - Exhibit Y: American Academy of Pediatrics, Policy Statement on Toxic Effects of Indoor Molds (RE9736), 1998 [FP-RNPS-0040426-40429]
  - Exhibit Z: State of Wisconsin, General Mold Information [FP-RNPS-0040430-40432]
  - Exhibit AA: Bureau Veritas, Report, 12/12/11 [FP-RNPS-0003363-3365]
  - Exhibit BB: Email from M. Brown to D. Fest, 11/17/11 [FP-RNPS-0039280-39282]
  - Exhibit CC: List of returned products [FP-RNPS-0039300-39301]
  - Exhibit DD: Email from L. Chapman to C. Pochatek, 2/14/12 [FP-RNPS-0012874]
  - Exhibit EE: Email chain from M. Moulin to J. Shuen, 12/13/11 [FP-RNPS-0014196-14199]
  - Exhibit FF: Email from K. Pilarz, 1/5/12 [FP-RNPS-0039056]
  - Exhibit GG: Bureau Veritas, Report, 1/4/12 [FP-RNPS-0003369-3374]

SWANHOLT EXH. 15 -228

Materials Received for Review
*Butler v. Fisher-Price and Mattel*

- o Exhibit HH: Bureau Veritas, Report, 1/24/12 [FP-RNPS-0003375-3379]
- o Exhibit II: Bureau Veritas, Report, 1/24/12 [FP-RNPS-0003375-3379]
- o Exhibit JJ: Email chain from A. Chen to C. Smith, 5/17/12 [FP-RNPS-0014445-14450]
- o Exhibit KK: Rock 'n Play Sleeper Product Improvement, 7/17/12 [FP-RNPS-0039015-39017]
- o Exhibit LL: Rock and Play Experimental Studies Summary (DRAFT), 5/14/12 [FP-RNPS-0003357-3362]
- o Exhibit OO: Email from D. Fest to M. Moulin, 10/10/12 [FP-RNPS-0038883-38884]
- o Exhibit QQ: Email chain from K. Moore to K. Pilarz, 2/23/12 [FP-RNPS-0040132-40134]
- o Exhibit TT: CPSC letter, 9/6/12 [FP-RNPS-0000361-364]
- o Exhibit YY: Email from T. Nelson to C. Possenti, 4/29/13 with CPSC letter, 4/29/13[FP-RNPS-0000867-873]
- o Exhibit ZZ: Rock 'N Play Recall to Inspect flowchart [FP-RNPS-0040790]
- o Exhibit AAA: Email from D. Fest to Johnston, et al., 5/4/12 [FP-RNPS-0014990-14991]
- o Exhibit BBB: Email from M. Morseon to K. Pilarz, 1/11/13 [FP-RNPS-0038944]
- o Exhibit CCC: Email from G. Cocchiarella to Pilarz & Fest, 1/8/13 [FP-RNPS-0038950]
- o Exhibit DDD: Rock 'n Play Returns/Replacements/Refunds chart [FP-RNPS-0000061]
- o Exhibit EEE: Excerpts of deposition of Susan Marie Greene, 10/29/13
- o Exhibit FFF: Chimicles & Tikellis LLP, Firm Resume
- o Exhibit GGG: Declaration of Holly Robertson in Support of Plaintiffs' Motion for Class Certification
- o Exhibit HHH: Declaration of Erin Ellis in Support of Plaintiffs' Motion for Class Certification
- o Exhibit III: Declaration of Nicole Kilpatrick in Support of Plaintiffs' Motion for Class Certification
- o Exhibit JJJ: Declaration of Mary Fran Torpey in Support of Plaintiffs' Motion for Class Certification
- o Exhibit KKK: Letter from D. Kasnoff (Fisher-Price VP) to Rock 'n Play owners, 1/8/13
- o Exhibit LLL: Samples of Rock 'n Play warranties from retailers' websites
- o Exhibit MMM: Chin S. Yang, PhD, Report, 11/31/13
- o Exhibit NNN: Mauriello Law Firm, APC, Firm Resume
- o Exhibit OOO: Shepherd, Finkelman, Mill & Shah, LLP, Firm Resume

- Declaration of Christina Donato Saler in Support of Plaintiffs' Motion for Class Certification

- Declaration of John R. Parker, Jr. in Support of Plaintiffs' Motion for Class Action Certification

- Plaintiffs' Notice of Motion for Class Certification and Motion for Class Certification

**SWANHOLT EXH. 15 -229**

Materials Received for Review
*Butler v. Fisher-Price and Mattel*

- [Proposed] Order Granting Plaintiffs' Motion for Class Certification
- Deposition of Holly Robertson, Vol. 1, 10/18/13
- Deposition of Mary Fran Torpey, Vol. 1, 10/14/13
- Deposition of Nicole Kilpartrick, Vol. 1, 12/11/13
- Deposition of Erin Ellis, Vol. 1, 12/12/13
- Bureau Veritas, Report, 6/20/11 [FP-RNPS-0039342-39344]
- Bureau Veritas , Report, 12/12/11 [FP-RNPS-0003363-3365]
- Bureau Veritas , Report, 1/4/12 [FP-RNPS-0003369-3374]
- Bureau Veritas, Report, 1/17/12 [FP-RNPS-0040522-40527]
- Bureau Veritas, Report, 1/24/12 [FP-RNPS-0003375-3379]
- Fisher Price Assembly Instructions (model R6070), 2009 [FP-RNPS-0001370-1385]
- Fisher Price Assembly Instructions (model BBF05), 2012 [FP-RNPS-0001034-1045]
- Fisher Price Cleaning Instructions
- RNP Sleep, Snug-A-Monkey, Textile Information, 11/22/11 [FP-RNPS-0037763-37772]
- US Consumer Products Safety Commission, Fisher-Price Recalls to Inspect Rock 'N Play Infant Sleepers Due to Risk of Exposure to Mold, 1/8/13 [FP-RNPS-0001018-1020]
- Rock and Play Experimental Studies Summary (DRAFT), 5/14/12 [FP-RNPS-0003357-3362]
- Mold growth experiment 1 – Rock n Play Sleeper [FP-RNPS-0003343-3346]
- Mold growth experiment 2 – Rock n Play Sleeper [FP-RNPS-0003347-3349]
- Mold growth experiment 3 – Rock n Play Sleeper (version 2) [FP-RNPS-0003350-3352]
- Mold growth experiment 4 – Rock n Play Sleeper [FP-RNPS-0003353-3356]
- Email by Kelley Moore (CPSC) to Kitty Pilarz, 2/17/12 [FP-RNPS-0040137]
- Fisher-Price, Information Report Pursuant to Section 15(b), Fisher-Price, Inc. Newborn Rock 'n Play Sleeper (Full Report, Product Photos, Exhibits), 12/21/11 [FP-RNPS-0000001-69]
- Fisher-Price, Supplemental Submission, Fisher-Price Inc. Newborn Rock 'n Play Sleeper, 2/24/12 [FP-RNPS-0000072-183]
- Letter by Ronald E. Gots, MD, PhD, DABT to Cheryl Possenti, Esq., 2/24/12 [FP-RNPS-0000446-454]

**SWANHOLT EXH. 15 -230**

Materials Received for Review
*Butler v. Fisher-Price and Mattel*

- Ronald E. Gots, MD, PhD, DABT, Powerpoint presentation entitled "Mold Generally & The Rock 'n Play Sleeper Specifically" [FP-RNPS-0000455-504]

- Fisher-Price, Second Supplemental Submission, Fisher-Price Inc. Newborn Rock 'n Play Sleeper, 3/5/12 [FP-RNPS-0000184-266]
- Emails between Cheryl Possenti and Kelly Moore, 8/13/12 [FP-RNPS-0000558-562]

- Fisher-Price, Third Supplemental Submission, Fisher-Price Inc. Newborn Rock 'n Play Sleeper, 8/20/12 [FP-RNPS-0000272-360]
- Emails between Theresa Nelson (CPSC) and Cheryl Possenti dated 8/20/12, with letter from Cheryl Possenti, 8/20/12 [FP-RNPS-0000565-578]

- Letter from Theresa Nelson (CPSC), 9/7/12 [FP-RNPS-0000585-589]

- Letter from Cheryl Possenti, 9/21/12 with letter from Ronald Gots, 2/24/12 [FP-RNPS-0000365-378]

- Emails between Cheryl Possenti and Theresa Nelson, 9/27/12 with Letter from Cheryl Possenti, 9/21/12 [FP-RNPS-0000590-609]

- CPSC, Response to Fisher Price Letter, Summary of Mold Data Review [10/4/12] [FP-RNPS-0000625-631]

- Spreadsheet [FP-RNPS-0041505]

- Spreadsheet [FP-RNPS-0041506]

- Deposition of Chin X. Yang, PhD, 1/3/14

- Fisher-Price Newborn Rock 'n Play Sleeper

**SWANHOLT EXH. 15 -231**

APPENDIX C

**SWANHOLT EXH. 15 -232**

**Coreen A. Robbins, M.H.S., Ph.D., C.I.H.**
**Testimony List**

1. **Holbrook, et al. v. Ciapponi, et al.**
   Superior Court of the State of California in and for the County of San Mateo
   Case No. CIV 514158
   Deposition taken on November 14, 2013

2. **Brantley v. Borg-Warner Morse Tec, Inc. et al.**
   United States District Court for the Southern District of California
   Case No. 3:12-CV-0540-BTM-JMA
   Deposition taken on October 16, 2013

3. **Stults, et al. v. American Pop Corn Company, et al.**
   United States District Court for the Northern District of Iowa, Western Division
   Case No.: C11-4077-MWB
   Deposition taken on October 3, 2013

4. **Gregory v. Arvinmeritor, Inc., et al.**
   Superior Court of the State of California for the County of Alameda
   No. RG 12-636648
   Deposition taken on August 7, 2013

5. **Pope Hudson, et al. v. Spectra-Physics, Inc.**
   Superior Court of the State of California for the County of Santa Clara
   Case No.: 110-CV-188516
   Deposition taken on May 15, 2013

6. **Estenson v. AGCO Corporation et al.**
   Superior Court of Washington for King County
   No. 11-2-25571-9 SEA
   Deposition taken on March 22, 2013

7. **Schram (Estate of Robert Taylor) v. A.W. Chesterton, Co., et al.**
   Court of Common Pleas, Cuyahoga County, Ohio
   Case No. 731159
   Deposition taken on November 29, 2012

8. **McIntyre v. 3M Company, et al**.
   Superior Court of Washington for King County
   No. 12-2-15555-1-SEA
   Deposition taken on November 19, 2012

9. **Daughetee v. Chr. Hansen, Inc., et al.**
   United States District Court, Northern District of Iowa, Western Division
   Case No. C09-4100 MWB

Deposition taken on November 14, 2012

10.   **Conney v. Remington Plaza Homeowners Association, et al.**
      Superior Court of the State of California, County of Los Angeles
      Case No. SC110194
      Deposition taken on June 13, 2012

11.   **Orona v. A.W. Chesterton, et al.**
      Superior Court of the State of California, County of Alameda
      No. RG-11-581118
      Deposition taken on May 10 and 16, 2012

12.   **Bouchard v. CSK Auto, Inc., et al.**
      Superior Court of the State of Washington, County of King
      Case No. 10-2-32587-5SEA
      Deposition taken on April 25, 2012

13.   **Channing v. Brake & Clutch Supply, Inc., et al.**
      Superior Court of the State of Washington, County of Snohomish
      Case No. 11-2-06764-3
      Deposition taken on February 22, 2012

14.   **Gleckler v. Meritage Homes Corporation**
      Superior Court of the State of Arizona, County of Pima
      Case No. C20099727
      Deposition taken on January 16, 2012

15.   **Aasen v. Sweatman-Young**
      Superior Court of the State of Washington, County of Pierce
      Case No.: 10-2-05711-6
      Deposition taken on October 18, 2011

16.   **Chaney v. ACF Industries, LLC, et al.**
      South Carolina Court of Common Pleas, County of Charleston
      Case No. 2011-CP-10-0028
      Deposition taken on September 13, 2011

17.   **Kendrick v. BorgWarner, et al.**
      Superior Court of the State of California, County of San Francisco
      Case No. CGC-09-275318
      Deposition taken on September 9, 2011

18.   **Steiner v. Advance Auto Parts, et al.**
      Superior Court of California, County of Los Angeles – Central District
      Case No. BC434437
      Deposition taken on July 29, 2011

**SWANHOLT EXH. 15 -234**

19.     **Aspen Grove Owners Association v. Kabili**
        United States District Court, Western District of Washington at Seattle
        Case No. CV09-1110
        Deposition taken on February 18, 2011

20.     **Morrison v. Alfa Laval, Inc.**
        Superior Court of California, County of Los Angeles
        Case No. BC 441029
        Deposition taken on February 1, 2011

21.     **Ogard v. EC-Timber Ridge, LLC**
        Superior Court of Washington for King County
        Case No. 08-2-17079-9SEA
        Deposition taken on January 19, 2011

22.     **Waniss v. American Honda Motor Company, et al.**
        Superior Court of California, County of Los Angeles
        Case No. BC 424811
        Deposition taken on October 14, 2010

23.     **Bankhead v. Allied Packing & Supply, Inc., et al.**
        Superior Court of California, County of Alameda
        Case No. RG10502243
        Deposition taken on October 12, 2010

24.     **Eddolls v. Allstate**
        Superior Court of Arizona, County of Maricopa
        Case No. CV2007-010209
        Deposition taken on July 28, 2010

25.     **FEMA Trailer Formaldehyde Products Liability Litigation (Lewis v Gulfstream Coach, Inc.)**
        United States District Court, Eastern District of Louisiana
        Case No. MD-1873, Civil Action No. 09-8320
        Deposition taken on July 20, 2010

26.     **Boger v. Asbestos Defendants, et al.**
        Superior Court of California, County of San Francisco
        Case No. 459163
        Deposition taken on June 14, 2010

27.     **Delgado v. Rockwell, LLC**
        Superior Court of California, County of Sonoma
        Case No. SCV-242059
        Deposition taken on April 27, 2010

28.     **Khieu v. Age Refining, Inc. et al.**

**SWANHOLT EXH. 15 -235**

District Court of Dallas County, Texas, 193rd Judicial District
Cause No. 08-10425
Deposition taken on March 17, 2010

29. **Palmer v. AC&S, Inc. et al.**
Superior Court of the State of California, County of San Francisco
Case No. CGC-09-275247
Deposition taken on February 11, 2010

30. **Newkirk v. ConAgra Foods, Inc., et al.**
United States District Court for the Eastern District of Washington
Case No. CV-08-273-FVS
Deposition taken on February 4, 2010

31. **FEMA Trailer Formaldehyde Products Liability Litigation (Wright v. Forest River, Inc., et al.)**
United States District Court, Eastern District of Louisiana
Case No. MD-1873
Deposition taken on December 14, 2009

32. **Holcomb v. Bondex International, Inc., et al.**
District Court, Clark County, Nevada
Case No. A556412
Deposition taken on December 9, 2009

# EXHIBIT 16

# S. Michael Phillips, M.D., F.A.C.P.
Professor of Medicine and Neurology
Lead Clinical Physician
Director of Allergy Programs
Senior Scholar in Clinical Epidemiology
University of Pennsylvania
School of Medicine

January 14, 2014

Re: BRANDON BUTLER vs. MATTEL, INC.
Case No: 2-13-cv-306-DSF-SS
Case No: 2:13-cv-1700-DSF-SS

1.   My opinions below are based on over 30 years of clinical and
basic science experience in the field of Internal Medicine, Allergy
and Immunology and Neurology. I am currently a Professor of
Medicine in the Pulmonary Allergy Critical Care Division of The
University of Pennsylvania School of Medicine and a Lead Clinical
Physician at the University of Pennsylvania, Department of
Medicine. I am Director of Allergy Services at the University of
Pennsylvania and a Consultant in Medicine and Immunology to
the Philadelphia Veterans Administration Hospital. I am Board
Certified in Allergy and Immunology and Internal Medicine. I am
a Professor of Neurology in the Neurology Department of the
University of Pennsylvania. In addition, I am a Senior Scholar in
Clinical Epidemiology at The University of Pennsylvania and a
Fellow of the American College of Physicians. In 2010-2013 I
have been named the "Top Doc" in Allergy and Immunology in
Philadelphia and designated to be in the top 1% of Allergy-
Immunologists by U.S. News and World Reports.

**SWANHOLT EXH. 16 - 237**

2.     I served as a Senior Research Associate, Lt. Colonel, in the Division of Communicable Disease and Immunology at the Walter Reed Army Institute of Research. I have also done extensive research in international health and served as a Consultant to the Surgeon General, World Health Organization, The Rockefeller Foundation, International Clinical Epidemiology Network, United States Aide for International Development, and United States National Institutes of Health. I am the former Director of the Geographic Medicine (International Health) Department at the University of Pennsylvania and have extensive experience in international health. In addition, I have served as a Consultant in Immunology and Vaccine Development for pharmaceutical organizations including Smith Kline Corp., the Welcome Trust, AstraZeneca, Merck, Pfizer, and Wyeth Pharmaceuticals. Vaccine development and utilization was a major focus of all these activities.

3.     As Director of the Clinical Allergy and Immunology Section, I am very familiar with the effects of molds on human beings; i.e., mechanisms and specificities of responses, diagnoses, treatment and morbidity. Molds are the major focus of my specialty of Allergy and Immunology.

4.     As a Clinical Immunologist and member of the Pulmonary Allergy Critical Care Division of the University of Pennsylvania, I am also very familiar with the various illnesses that can be caused by molds. I am specifically familiar with the presenting clinical signs and symptoms, finite risks, modes of clinical presentation, proper clinical monitoring, treatment, expectant morbidity, and clinical course of a wide variety of the spectrum of mold-

**SWANHOLT EXH. 16 - 238**

associated diseases, their relationship to mold exposure, and the putative or projective manifestations. I am also familiar with the appropriate therapy for these conditions and the complications of such therapy. I evaluate patients with these problems on a daily basis. I maintain an active clinical practice devoting over 95 percent of my time to the clinical evaluation and treatment of patients.

5.     As a Senior Scholar in Clinical Epidemiology, I evaluate diseases at the population level. By evaluating the prevalence, incidence and severity of illnesses and concomitant events, epidemiology is the specific tool used to measure the strength and consistency of relationships between postulated etiologies and subsequent disease manifestations. Epidemiology is the major tool used to establish clinical causal relationships and differentiate them from chance co-occurrences. As a Senior Scholar in Clinical Epidemiology, I am called upon to review disease manifestations not only on an individual patient basis but also on a population basis.

6.     As a Lead Clinical Physician for the Department of Medicine, I am responsible for assuring that all evaluations and treatments are predicated on Evidence Based Medicine. The University of Pennsylvania Medical Center is consistently listed as within the "Top Ten" Medical Institutions in the United States by U.S. News and World Reports. My experience includes both human and animal models in terms of theoretical concepts, experimental models, and epidemiologic evidence.

7.     My Curriculum Vitae is attached hereto (Ex. 1).

**SWANHOLT EXH. 16 - 239**

8.    I have testified on various occasions in the past and append a summary of my testimony (Ex. 2). I have testified for both plaintiffs and defendants with regard to mold and disease. The testimony that supported claims of mold induced injury was in the context of established significant exposure to mold, such as resulting from water intrusion in homes or the workplace.

9.    My fees are: $495/hour for review, discussion, and written reports and $650/hour for depositions and testimony.

10.   I have reviewed the following:

   - FP-RNPS-0041505
   - Bureau Veritas Reports: FP-RNPS-0003363, FP-RNPS-0003369, FP-RNPS-0003375, FP-RNPS-0039342, FP-RNPS-0040522
   - US CPSC Recall to Inspect: 1/8/2013
   - The Consolidated Class Action Complaint
   - Plaintiffs' Memorandum of Points and Authorities
   - Expert Report of Dr. Chin S. Yang
   - Deposition of Dr. Chin S. Yang
   - Articles and Studies referenced in my declaration
   - F-P Sleeper, Version 2

11.   In addition to reviewing the items listed above, I have also performed a Medline search of the National Library of Medicine: OVID. I have also investigated various literature, online information databases, including PubMed, UPTODATE, Google, Medical Science Liaison, the Cochrane Database, and various other University of Pennsylvania Drug Information Center and information accessible online.

**SWANHOLT EXH. 16 - 240**

12.    Significant health risks due to mold are found under two conditions, water intrusion or concomitant immunosuppression.

13.    Finding mold does not imply disease. For example, mold grows normally on human skin and can be part of normal respiratory flora. It usually causes no issues but may on occasion be pathogenic. Two examples are diaper rash on children and when women develop vaginal yeast infections after taking broad spectrum antibiotics that kill the normal competing bacterial flora, thereby allowing mold to grow.

14.    A number of excellent reviews have addressed the true status of mold associated disease:

15.    "The Medical Effects of Mold Exposure:" Bush, R.K., et al: Position paper of the American Academy of Allergy, Asthma, and Immunology: JACI 2005: 12.001. The leading clinical experts on the effects of molds on human disease prepared this report. The report is the current "state of the art" and widely accepted as authoritative. Less the 1% of the members of the American Academy of Allergy, Asthma, and Immunology, questioned the report. This publication has certain conclusions, which are germane to this case:

a.    Allergic responses to inhaled outdoor mold are a recognized factor in lower airway disease (asthma); however the effect of indoor mold is less clearly established.

b.    Current studies do not conclusively prove that exposure to outdoor mold plays a role in allergic rhinitis and studies on

the contribution of indoor mold to upper airway allergy are even less compelling.

c. Exposure to mold is not recognized as a contributing factor in atopic dermatitis or other rashes.

d. Patients with a suspected mold allergy require confirmation by an accepted method of detection.

e. Data supporting the role of fungi in chronic rhinosinusitis are lacking at this time.

f. The occurrence of severe mold-related irritant reactions from exposure to fungal irritants in non-occupational settings is theoretically possible, although unlikely to occur in the general population given exposure and dose considerations.

g. Such irritant reactions would produce transient symptoms related to mucus membranes of the eyes and upper and lower respiratory tracts but would not be expected to manifest in other organs or in a system fashion.

h. Exposure to molds or their products does not induce a state of immune dysregulation (e.g. immunodeficiency or autoimmunity).

i. Measurement of antibodies to specific molds has scientific merit in the assessment of IgE-mediated allergic disease, HP, and allergic bronchopulmonary mycosis.

j. Measurement of antibodies to molds cannot be used as an immunologic marker to define dose, timing, and/or

location of exposure to mold antigens in a noninfectious
setting.

k.    Testing for antibodies to mycotoxins is not scientifically
validated and should not be relied on.

l.    Sampling of both indoor and outdoor mold spores provides
a measure of potential exposures and can be useful in
certain clinical conditions.

m.    Bulk, surface, and within-wall cavity measurement of
molds or mycotoxins, although having potential relevance
for other purposes, cannot be used to assess exposure.

n.    Testing for airborne mycotoxins in nonagricultural
environments cannot be used to infer mold exposure.

16.    An amazingly consistent spectrum of potential mold-associated
illness was summarized in other articles including: Adverse
Human Health Effects Associated with Molds in the Indoor
Environment, Journal of Occupational and Environmental
Medicine, 45:470, 2003; and ACOEM Evidence-based statement:
Position Statement/Guidelines, 1-10, 10-2-2002 and 10-25-
2006. A second ACOEM position paper on Adverse Human Health
Effects Associated with Molds, in the Indoor Environment,
2/24/2011 (ACOEM.org) is consistent with the first paper and
makes a number of other cogent observations:

a.    Molds are ubiquitous and cannot be avoided.

b.    Molds can cause allergies in the form of IgE mediated
immediate hypersensitivity in genetically susceptible
(atopic) individuals, hypersensitivity pneumonitis, allergic

**SWANHOLT EXH. 16 - 243**

bronchopulmonary Aspergillus, infection, toxic reactions to food borne exposures, and infections in immuno-suppressed individuals or with inordinate exposure.

c.    Other forms of respiratory disease are multifactorial and cannot be attributed to mold per se, even in the presence of moisture contamination.

d.    Mycotoxins cause human disease either by ingestion or in industrial or agricultural exposure.

e.    Respiratory exposure to mycotoxins is nearly impossible in usual human habitation settings. A review of toxicological studies in animals clearly shows that respiratory exposure to mycotoxins, such as those of Stachybotrys, does not cause disease. Epidemiological studies in humans support this conclusion. Mold mycotoxin levels in the air are too low to cause toxic effects.

f.    Molds may cause infections in immunocompromised individuals; however molds which cause infections in non-immunocompromised individuals rarely are found in indoor environments.

17.    There is an implication in the Complaint and by Plaintiffs' expert, Dr. Yang, who is a Microbiologist with no apparent formal training in Clinical Medicine, Immunology, or Epidemiology, that children may be uniquely sensitive to mold due to an inadequate immune system. This is simply not true.

18.    Children have the same physical barriers to infection such as skin, mucus membranes, defensins, digestive secretions, etc.

19.  Children also have protective IgG antibodies from their mother, which pass the placenta and last for months after delivery. Antibody production by the fetus begins in utero and can be demonstrated in the blood of fetuses in the first trimester of pregnancy. Antibodies are also obtained by the child through colostrum and maternal milk during breast feeding. Cellular immunity can be stimulated from birth.

20.  Finally, the primordial innate immune system recognizes a wide variety of pathogens including molds. This system is functional from birth allowing children to recognize molds. A child is not "immunosuppressed or immunodeficient" and does not exhibit the same types of augmented susceptability to mold that an immunosuppressed or immunodeficient patient would show. Children have more infections because they have not seen the infectious agent before. Their actual response to the agent is quicker and more effective than their parents. For example, the average child is ill for 4-5 days with a viral infection while his or her parent is sick for 6-8 days.

21.  Plaintiffs and Dr. Yang contend that an environment in which mold is prominent can be associated with the development of subsequent disease and cite a study by Reponen as support. However, this article, "Infant origins of childhood asthma associated with specific molds", Reponen, T., et al; JACI, 130:639, 2012, is not germane to this case.

22.  First, the authors themselves concluded that their study did not establish a causal relationship between any species of mold and the subsequent development of asthma. The Reponen study found that three mold species common to water-damaged

buildings, and no other species, were associated with subsequent childhood asthma. It ultimately concluded, however, that "the results described here do not prove that these specific molds cause asthma..."

23.   Second, one ordinarily expects to see a "dose-response" relationship between causal agents and disease outcomes. Yet, in the Reponen study, the level of exposure to mold at 8 months was not related to the level of mold sensitivity at 7 years.

24.   Third, the study measured mold levels in dust. Namely, the Environmental Relative Moldiness Index, which quantifies mold in dust samples, using molecular techniques, and subtracts for baseline levels of mold from random control samples, giving a measure of stratified mold content in the dust of that home. In addition to total mold content, the technology allows the quantification of specific species of molds.

25.   But, there is no reason to believe that a distil dust level, which is related to general moisture in the home, has any relationship, quantitatively or qualitatively to the mold found under the protective barrier of the Sleeper nor that this mold per se would have contaminated the general living space.

26.   Fourth, for a child to be included in the study, at least one parent must have had allergies. Allergies and asthma are largely determined genetically. The study consequently selected disproportionately allergic children for inclusion, which was confirmed when 24% of the children in the study later developed asthma, a percentage that is much higher than in the general population (10%), and there was a higher percentage of allergy

in the parents of the asthmatic as opposed to non-asthmatic groups. Accordingly, the results of this study cannot be extrapolated to the majority of children, who are non-allergic.

27.    Fifth, various species of molds were associated with significantly different effects on the risk of asthma, and no information is available on the species of molds which were found on any Sleepers.

28.    Finally, there is evidence of uncontrolled confounding in the study by unmeasured risk factors since 58% of the asthmatic children had allergies to various substances but only 12% were allergic to major pathogenic molds.

29.    In his report, Dr. Yang also cites a number of studies to support his opinions that molds can cause a variety of human illnesses, yet examination of the underlying studies reveals that, in some instances, these studies do not support the broad contentions in Dr. Yang's report for which they are cited.

30.    For example, Dr. Yang cites a case study by Schell et al. (Fatal, Disseminated Acremonium Strictrum Infection in a Neutropenic Host, Journal of Clinical Microbiology, 34:5 (1996)) that discussed the three known cases of infection, all of which occurred in immunocompromised patients, from a particular species of mold that was never identified as having grown on a F-P Sleeper.

31.    Similarly, Dr. Yang cites a study discussing infection in children who have cystic fibrosis by a mold species never identified as having grown on the F-P Sleeper. LiPuma, J., The Changing

Microbial Epidemiology in Cystic Fibrosis, Clinical Microbiology Reviews, 23:2 (2010).

32. More generally, the mere presence of mold does not necessarily mean there is any health risk to an individual.

33. Molds are ubiquitous in both the indoor and outdoor environment. They occur naturally both indoors and outdoors. They generally occur at higher concentrations outdoors, but can be transported indoors via mechanical ventilation, movement through open doors and windows, transport on materials, or carried on humans, animals, or plants.

34. The majority of molds capable of causing human disease are found in the majority of homes in the United States (Vesper et al, Development of an environmental relative moldiness index for US homes, JOEM, 49:8, 2007).

35. Arbitrary surface sampling is subject to massive selection bias, expected to be positive, and not correlated to the presence of any human disease.

36. As to the F-P Sleeper, specifically, fewer than 1% of consumers reported mold growth on their Sleeper. FP-RNPS-0041505. Approximately 6,500 consumers out of approximately 1.2 Million reported mold growth on their Sleeper.

37. Of those, approximately 800 consumers self-reported an associated health effect secondary to mold, and, in only 28

**SWANHOLT EXH. 16 - 248**

instances, did the consumer self-report that a doctor indicated that a health effect may have been related to mold.[1]

38.    Again, all of these reports were self-reported by the consumers. The actual illnesses, never mind their causes, were not documented by medically trained professionals nor were validated medical questionnaires used. There generally are substantial concerns over the reliability of such consumer self-reported medical information.

39.    That concern is particularly acute here.

40.    First, a number of consumers attributed alleged health conditions to mold that are medically known as having no relationship to mold, such as Respiratory Syncitial Virus or "RSV," other viruses and eczema.

41.    Second, the majority of the alleged health effects were non-specific and more likely were caused by viral infections, bacterial infections, irritant exposures, etc.

42.    Third, significant illness due to mold is associated with significant water intrusion in homes or with immunosuppression, neither of which have been demonstrated as being relevant to the F-P Sleeper.

43.    Indeed, there is no good evidence to suggest any significantly increased mold exposure from the use of a F-P Sleeper.

---

[1]FP-RNPS-0041505, Case Numbers 20005873, 20748238, 20878978, 20895838, 20909974, 21018002, 21217521, 21219351, 21220533, 21231317, 21231702, 21243836, 21255186 (duplicate entry of 21255295), 21255295, 21258789, 21263309, 21295686, 21346503, 21361877, 21426951, 21431905, 21460701, 21499800, 21524891, 21609667, 21650950, 21664705, 21765609.

a. There are, for example, no monitoring studies that show that the levels of mold in the air in any consumer's home was actually higher than levels which would be expected to occur at random.

b. The general proposition, discussed above, that one cannot reliably infer that mold on any solid surface will lead to more airborne mold in the air applies with special force here. The CPSC's press release for the Recall to Inspect reports that the mold growth on the Sleeper occurs under its removable seat cushion, making any inference that mold from a consumer's Sleeper significantly elevated extant background levels of airborne mold especially unreliable.

44. The unsubstantiated, self-reported complaints from consumers do not show a significantly elevated exposure to airborne mold above background levels in the child's environment due to any mold on a Sleeper, establish a causal relationship between mold exposure from any source and any actual disease in an infant, or enable one to rule out other potential causes or a mere chance association with any alleged disease or condition.

45. My opinions in the fields of Allergy and Immunology, Neurology and Epidemiology are based on Reasonable Medical Certainty. I reserve the right to modify these conclusions based on receipt of additional documents or information.

1/14/2014

S. MICHAEL PHILLIPS, M.D., F.A.C.P

SWANHOLT EXH. 16 - 250

EXHIBIT 1

SWANHOLT EXH. 16 - 251

# UNIVERSITY OF PENNSYLVANIA - SCHOOL OF MEDICINE

## Curriculum Vitae

January 2014

### S. Michael Phillips, M.D.

| | |
|---|---|
| Office Address: | University of Pennsylvania |
| | School of Medicine |
| | Allergy & Immunology Section |
| | 5 Mutch, U of Penn |
| | 51 N 39th Street |
| | Philadelphia, PA 19104 |

**Social Security Number: 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**

Citizenship:   U.S.A.

Education:
1958-62 B.S., University of Wisconsin
1962-66 M.D., University of Wisconsin
1966-69 Intern, Resident, Research Fellow, University of Pennsylvania
1969-72 Research Fellow, Instructor, Harvard Medical School

**Postgraduate Training and Fellowship Appointments:**
7/66 - 6/67    Straight Medical Internship, Hospital of the University of Pennsylvania, Phila., PA
7/67 - 6/68    Straight Medical Residency, Hospital of the University of Pennsylvania, Phila., PA
7/68 - 6/69    Fellow-Allergy & Immunology, Hospital of the University of Pennsylvania, Phila., PA
7/69 - 6/72    Fellow-Nephrology & Immunology, Peter Bent Brigham Hospital, Harvard Medical School, Boston, MA

**Military Service:**
1972-75    Lt. Col., M.C., Dept. Immunology, Div. Communicable Diseases and Immunology, Sr. Research Assoc., Walter Reed Army Institute of Research, Washington, DC

**Faculty Appointments:**
Teaching Fellow and Instructor in Medicine, Harvard Medical School, Boston, MA
Instructor in Medicine, Harvard Medical School, Boston, MA
Assistant Professor of Medicine and Consultant in Immunology & Nephrology, George

1

SWANHOLT EXH. 16 - 252

Washington University Medical School, Washington, DC
Assistant Professor of Medicine, University of Pennsylvania, Philadelphia, PA
Consultant in Medicine, PVAH, Philadelphia, PA
Associate Professor of Medicine, University of Pennsylvania, Philadelphia, PA
Senior Scholar in Clinical Epidemiology, University of Pennsylvania, Philadelphia, PA
Professor of Medicine, University of Pennsylvania, Philadelphia, PA
Professor of Neurology, University of Pennsylvania, Philadelphia PA
Director of Medical International Health Program, University of Pennsylvania
Director of Allergy and Immunology Clinical Services: University of Pennsylvania
 Lead Clinical Physician: University of Pennsylvania

## Hospital and University Administrative Appointments:

Assistant Technical Director, Tissue Typing Lab., Boston Intra-hospital Organ Bank, Boston, MA
Clinical Research Center Advisory Committee, Hospital of the University of Pennsylvania, Philadelphia, PA
Institutional Animal Care and Use Committee;   University of Pennsylvania

## Specialty Certification:

06/19/1974        American Board of Internal Medicine:  #36044
10/23/1979        American Board of Allergy & Immunology:  #1934

Licensure:     WI (15983), MA (31618), D.C. (3820) and PA (0171 62 E)

## Awards, Honors and Memberships in Honorary Society:

Wisconsin: Phi Eta Sigma; Phi Kappa Phi; Phi Beta Kappa; Soph., Jr., Sr. honors

Univ. Wisconsin President Medical School Class: Upper 10% Scholastic Ranking

Outstanding Medical Resident, University of Pennsylvania
Walter Reed Army Institute of Research: Outstanding Classification: Efficiency Reports
Amer. Assoc. Immunologists: Travel Award to attend 3rd Int. Congress of Immunology
American Association of Immunologists: Travel Award to attend 4th
American Society for Clinical Investigation
Honorary Masters of Science, University of Pennsylvania
Univ. PA Alpha Omicron Chapter of Phi Beta Delta, the Honor Society of Int. Scholars
Clinical Immunology Society
Fellow, American College of Physicians
The John Morgan Society, University of Pennsylvania
Clinical Lead Physician, Department of Medicine, U of P
US News and World Report:  Top 1% National Ranking in Allergy and Immunology
Top Doc:  Philadelphia in Allergy and Immunology
SuperDoc  Philadelphia

2

SWANHOLT EXH. 16 - 253

***Membership in Professional and Scientific Societies:***

National Societies:

American Academy of Allergy, Asthma & Immunology
American Association for the Advancement of Science
American Association of Immunologists
American College of Physicians
American Federation for Clinical Research
American Society for Clinical Investigation
American Society of Nephrology
American Society of Parasitology
American Society of Tropical Medicine & Hygiene: Committee on Public Affairs; Committee on the Future of Tropical Medicine; Representative Council of Medical Subspecialties, American College of Physicians;  Chairman, Committee on Nominations

Reticuloendothelial Society
Transplantation Society
Clinical Immunology Society

***Editorial and Consultative Positions:***

Consultant to the Surgeon General in Immunology, U.S. Army Medical Research & Development Command
Chairman, Scientific Advisory Board, Edna McConnell Clark Foundation
Member, Tropical Medicine and Hygiene Study Section, National Institute of Allergy & Infectious Disease, National Institute of Health
Editorial Board: Immunopharmacology
Editorial Board: American Journal of Tropical Medicine and Hygiene
Chairman, Scientific Advisory Group: International Atomic Energy Agency for Radiobiology of Parasites
Consultant to WHO in Immunoparasitology
Editorial Board: The Reticuloendothelial System: A Comprehensive Treatise, Plenum Press
American College of Physicians: Committee on Immunization Policies; Council of Medicine Subspecialties
Advisory Committee on Immunization Policies

Chairman, Review Committee on Allergy & Immunology, American College of Physicians and Surgeons
United States Army Medical Research Development Command: Advisory Committee on Parasitic Diseases
International Network of Clinical Epidemiology: Rockefeller Foundation, New York, NY
Senior Scholar in Clinical Epidemiology, University of Pennsylvania
Consultant to Minister of Health, Egypt, Schistosomiasis Research Project
Member: Joint Council of Allergy and Immunology
Chairman, Scientific Advisory Board, CRI

3

**SWANHOLT EXH. 16 - 254**

***Academic Committees at the University of Pennsylvania:***

      Molecular Cell Biology Graduate Group
      Clinical Research Center Advisory Committee
      Immunology Graduate Group
      International Relations Advisory Board
      Medical House Staff Selection Committee
      Parasitology Graduate Group
      Council on International Medical Programs
      Cell and Molecular Graduate Group
      Institute for Human Gene Therapy
      Center for Molecular Studies in Digestive and Liver Disease
      Clinical Practice Leader

***Major Teaching and Clinical Responsibilities at the University of Pennsylvania:***

      General Medical Attending: H.U.P/P.M.H.: 1-2 mon/yr
      Allergy/Immunology Attending: H.U.P/P.M.C.: 3 mon/yr
      Allergy/Immunology Clinic: Supervise U.P. Clinic 2,5 days/week, 6 months/year
      Clinical Immunology Conferences - participate: U.P. 2 hours/week
      Department of Medicine: Medical Student Rotations, 1-4 year
      Visiting Professor's Program: 1 Lecture/month
      Medical Group - Allergy/Immunology: U.P. 3/4 day/week

**Consultant for Pharmaceutical Organizations:**

      Smith Kline Corp.,
      Welcome Trust,
      AstraZeneca,
      Merck,
      Pfizer,
      Wyeth

SWANHOLT EXH. 16 - 255

**Original Papers**

1. Phillips, S.M., Kornguth, S.E., and Thompson, H.G.: Serum haptoglobulin changes in multiple sclerosis. Neurology 15:415, 1965.
2. Phillips, S.M., and Silvers, N.P.: Glucose-6-phosphate dehydrogenase deficiency, infectious hepatitis, acute hemolysis and renal failure. Ann. Int. Med. 70:99, 1969.
3. Phillips, S.M., and Zweiman, B.: Response of guinea pig lymphocytes to PHA and antigen. J. Immunol. 105:204, 1970.
4. Zweiman, B., and Phillips, S.M.: *In vitro* lymphocyte reactivity during depression of tuberculin hypersensitivity by 6-mercaptopurine. Science 169:284, 1970.
5. Carpenter, C.B., Phillips, S.M., Boylston, A.W., and Merrill, J.P.: Immunosuppressive alpha globulin from bovine thymus: Mechanism of action. Transplant. Proc. 3:929, 1971.
6. Carpenter, C.G., Phillips, S.M., and Merrill, J.P.: Immunosuppressive alpha globulin from bovine thymus: II. Mode of action. Cell. Immunol. 2:435, 1971.
7. Phillips, S.M., Martin, W.J., Shaw, A.R., and Wegmann, T.G.: Serum mediated immunologic non-reactivity between histoincompatible cells in tetraparental mice. Nature 234:146, 1971.
8. Phillips, S.M., Carpenter, C.B., and Merrill, J.P.: Cellular immunity in the mouse. I. *In vitro* lymphocyte reactivity. Cell. Immunol. 5:235, 1972.
9. Phillips, S.M., Carpenter, C.B., and Merrill, J.P.: Cellular immunity in the mouse. II. Correlation of *in vivo* and *in vitro* phenomena. Cell. Immunol. 5:249, 1972.
10. Hirsch, M.S., Phillips, S.M., Solnik, C., Black, P.H., and Schwartz, R.S.: Activation of leukemia viruses by graft vs. host and mixed lymphocyte reactions *in vitro*. Proc. Natl. Acad. Sci. USA 69:1069, 1972.
11. Phillips, S.M., Strom, T.B., Corson, J.M., Carpenter, C.B., and Merrill, J.P.: Enhancing anti-body: *In vitro* studies on mechanisms of action and specificity upon mouse lymphocytes. Proc. 7th Leukocyte Conf. 601, 1973.
12. Phillips, S.M., Strom, T.B., Corson, J.M., Carpenter, C.B., and Merrill, J.P.: Enhancing anti-body: *In vitro* studies on mechanisms of action upon the sensitization and effector arc. Transplant. Proc. V:577, 1973.
13. Phillips, S.M., and Wegmann, T.G.: Active suppression as a possible mechanism of tolerance in tetraparental mice. J. Exp. Med. 137:291, 1973.
14. Garavoy, M.R., Phillips, S.M., Carpenter, C.B., and Merrill, J.P.: Antibody modulation of cellular reactivity post renal transplantation. Transplant. Proc. V:129, 1973.
15. Phillips, S.M., and Zweiman, B.: Mechanisms in the suppression of delayed hypersensitivity in the guinea pig by 6-Mercaptopurine. J. Exp. Med. 137:1494, 1973.
16. Strom, T.B., Carpenter, C.B., Phillips, S.M., Garavoy, M.R., and Merrill, J.P.: Rejection and enhancement of an *in vitro* model of alloimmunity: Comparisons of $F_1$ and parental strains. Transplantation 16:103, 1973.
17. Andre-Schwartz, J., Schwartz, R.S., Hirsch, M.S., Phillips, S.M., and Black, P.H.: Activation of leukemia viruses by graft vs. host and mixed lymphocyte culture reactions: Electron micro-scopic evidence of C-type particles. J. Natl. Cancer Inst. 51:507, 1973.
18. Phillips, S.M., Carpenter, C.B., and Strom, T.B.: Cellular immunity in the mouse. III. *In vitro* ki-netic studies on the relationship between recognition and effector phases. Transplant. Proc. 5:1699, 1973.

5

19.    Phillips, S.M., Lane, P., and Carpenter, C.B.:  Immunosuppressive alpha globulin from bovine thymus and blood:  *In vitro* studies on mechanisms of action upon the sensitization and effector arcs.  Ann. N.Y. Acad. Sci. 249:236, 1975.

20.    Strom, T.B., Hirsch, M.S., Black, P.H., Carpenter, C. B., Phillips, S.M., and Merrill, J.P.:  Modulation of GvH proliferation by cyclic nucleotides.  Transplant. Proc. VII Suppl. 1:305, 1975.

21.    Phillips, S.M., Gleichmann, H., Hirsch, M.S., and Carpenter, C.B.:  Cellular immunity in the mouse. IV. Altered thymic dependent lymphocyte reactivity in the chronic graft vs. host reaction. Cell. Immun. 15:169, 1975.

22.    Phillips, S.M., Hirsch, M.S., Andre-Schwartz, J., Solnik, C., and Carpenter, C.B.:  Cellular immunity in the mouse. V. Further studies on leukemia virus activation in allogenic reactions of mice: Stimulatory parameters.  Cell. Immunol. 15:169, 1975.

23.    Phillips, S.M., Reid, W.A., Campbell, R.A., Bruce, J. I., Hedlund, K., Diggs, C.L., and Sadun, E.H.: The cellular and humoral immune response to *Schistosoma mansoni* infections in inbred rats. I. Mechanisms during initial exposure.  Cell. Immunol. 19:99, 1975.

24.    Greenberger, J.S., Phillips, S.M., Stephenson, J.R., and Aaronson, S.A.:  Induction of mouse type-C RNA virus by liopolysaccharide. J. Immunol. 115:317, 1975.

25.    Phillips, S.M., Stephenson, J.R., Greenberger, J.S., Lane, P.E., and Aaronson, S.A.: Release of xenotrophictype-C RNA virus in response to lipopolysaccharide: Activity of lipid-A portion upon "B" lymphocytes.  J. Immunol. 116:1123, 1976.

26.    Shirai, A., Catanzaro, P.J., Phillips, S.M., and Osterman, J.V.: Host defenses in experimental scrub typhus. Role of cellular immunity in heterologous infections.  Infect. and Immun. 14:39(1), 1976.

27.    Catanzaro, P.J., Graham, R.C., Jr., Powell, E.A., and Phillips, S.M.: Characteristics of a xenogeneic lymphocyte transfer reaction: Its use in the study of graft vs. host capability of mouse lymphoid cells from various anatomic sites. Cell. Immunol. 22:140, 1976.

28.    Catanzaro, P.J., Brandt, W.E., Hogrefe, W.R., Phillips, S.M., and Top, F.H.: Virus enhanced modulation of cell surface antigen: Effect on immune lytic susceptibility.  J. Immunol. 117:1104, 1976.

29.    Campbell, G.H., and Phillips, S.M.:  Immune mechanisms in African Tropanosomiasis. I. Adoptive transfer of variant specific resistance to *Trypanosoma rhodesiense* with "B" lymphocytes and serum.  Infect. and Immun. 14:1144, 1976.

30.    Phillips, S.M., Reid, W.A., and Sadun, E.H.:  The cellular and humoral immune response to *Schistosoma mansoni* infection in inbred rats. II. Mechanisms during reexposure.  Cell. Immunol. 28:75, 1977.

31.    Wells, R.W., Diggs, C.L., and Phillips, S.M.: Cyclophosphamide induced specific immunosuppression of protective immunogens of malaria.  J. Immunol. 118:472, 1977.

32.    Phillips, S.M., Stephenson, J.R., and Aaronson, S.A.: Genetic factors influencing mouse type-C RNA virus induction by naturally occurring B-cell mitogens.  J. Immunol. 118:662, 1977.

33.    Phillips, S.M., DiConza, J.J., Gold, J.A., and Reid, W. A.: Schistosomiasis in the congenitally athymic (nude) mouse. I. Thymic dependency of eosinophilia, granuloma formation, and host morbidity.  J. Immunol. 118:594, 1977.

34.    Reid, W.A., Phillips, S.M., and Roscinski, R.J.: Radioisotropic uptake and retention by cercariae and developing worms.  Exp. Parasitol. 42:331, 1977.

35.    Phillips, S.M., Reid, W.A., Khoury, P.B., and Doughty, B.L.:  The immune response to *Schistosoma mansoni* in inbred rats.  IV. A posteriori interpretations. Am. J. Trop. Med. Hyg. 26:48, 1977.

SWANHOLT EXH. 16 - 257

36. Cantanzaro, P.J., Agniel, L.D., Jr., Hogrefe, W.R., and Phillips, S.M.: Interaction of peritoneal eudate lymphocytes with histocompatibility antigens. Cell. Immunol. 29:394, 1977.

37. Cantanzaro, P.J., Agneil, L.D., Jr., Hogrefe, W.R., and Phillips, S.M.: Evidence that circulating lymphocytes are not related to the recirculating pool of lymphocytes. J. Reticuloendothel. Soc. 23:459, 1978.

38. Phillips, S.M., Reid, W.A., Doughty, B.L., and Khoury, P.B.: The immune response to Schistosoma mansoni infections in inbred rats. III. Mechanisms of optimal development of protective immunity. Cell. Immunol. 38:225, 1978.

39. Phillips, S.M., Reid, W.A., Doughty, B.L., and Khoury, P.B.: The cellular and humoral immune response to Schistosoma mansoni infections in inbred rats. V. Prerequisite mechanisms for the development of optimal protective immunity. Cell. Immunol. 38:239, 1978.

40. Lisak, R.P., Zweiman, B., and Phillips, S.M.: Thymic and peripheral blood T- and B-cell levels in myasthenia gravis. Neurology 1298:1309, 1978.

41. Campbell, R.A., Esser, K.L., and Phillips, S.M.: Trypanosoma rhodesiense infection in the congenitally athymic (nude) mouse resistance and morbidity. Infect. and Immun. 20:714, 1978.

42. Phillips, S.M., Catanzaro, P.J., Carpenter, C.B., and Zweiman, B.: Mechanisms in the suppression of delayed hypersensitivity in the guinea pig by 6-mercaptopurine. II. Kinetic and morphologic studies on the monocyte-macrophage component. Immunopharmacology 1:277, 1979.

43. Neilson, E.G., and Phillips, S.M.: Cell-mediated immunity in interstitial nephritis. I. T-lymphocyte systems in nephritic guinea pigs: The natural history and diversity of the immune response. J. Immunol. 123:2373, 1979.

44. Neilson, E.G., and Phillips, S.M.: Cell-mediated immunity in interstitial nephritis. II. T-lymphocyte effector mechanisms in nephritic guinea pigs: Analysis of the renotropic migration and cytotoxic response. J. Immunol. 123:2381, 1979.

45. Phillips, S.M., Reid, W.A., Doughty, B.L., and Bentley, A.G.: The immunologic modulation of morbidity in schistosomiasis studies in athymic mice and in vitro granuloma formation. Am. J. Trop. Med. Hyg. 29:820, 1980.

46. Neilson, E.G., Phillips, S.M., and Agus, A.S.: Plasmapheresis in fulminating crescentic nephritis. Lancet 1:264, 1980.

47. Neilson, E.G., Jimenez, S.A., and Phillips, S.M.: Cell-mediated immunity in interstitial nephritis. III. T-lymphocyte-mediated fibroblast proliferation and collagen synthesis: An immune mechanism of renal fibrogenesis in interstitial nephritis. J. Immunol. 125:1708, 1980.

48. Phillips, S.M., and Reid, W.A.: Schistosoma mansoni: Immune response to normal and irradiated cercariae or soluble stage-specific surface immunogens. Intl. J. Nucl. Med. Biol. 7:173, 1980.

49. Neilson, E.G., Jimenez, S.A., and Phillips, S.M.: An immune mechanism for renal fibrosis in interstitial nephritis, in Immunoregulation and Autoimmunity, Vol. 13, (R.S. Krakauer and M.K. Cathcard, eds.), Elseiver/North Holland Publishing, New York, p. 249-250, 1980.

50. Neilson, E.G. and Phillips, S.M.: The immunobiology of nephritis. Prog. Allergy 27:167, 1980.

51. Neilson, E.G., and Phillips, S.M.: Cell-mediated immunity in interstitial nephritis. IV. Anti-basement membrane antibody functions in antibody-dependent cellular cytotoxicity reactions: Observations on a nephritogenic effector mechanism acting as an informal bridge between the humoral and cellular immune response. J. Immunol. 126:1990, 1981.

7

52.  Abdolmohammad, R., Pleasure, D.E., Lisak, R.P., Silberberg, D.H., Abramsky, O., and Phillips, S.M.: Radioimmunoassay for detection of anti-oligodendrocyte antibodies. Neuroscience Letters 23:143, 1981.

53.  Bentley, A.G., Carlisle, A.S., and Phillips, S.M.: Ultrastructural analysis of the cellular response to *Schistosoma mansoni*: Initial and challenge infections in the rat. Am. J. Trop. Med. Hyg. 30:102, 1981.

54.  Bentley, A.G., Carlisle, A.S., and Phillips, S.M.: Ultrastructural analysis of the cellular response to *Schistosoma mansoni*: II. Inflammatory responses in rodent skin. Am. J. Trop. Med. Hyg. 30:815, 1981.

55.  Khoury, P.B., Doughty, B.L., Lloyd, S.S., and Phillips, S.M.: Kinetics and characterization of antigen-binding and antibody producing cells in the regional draining lymph nodes and spleen during initial murine schistosomiasis: I. Cellular response against cercarial antigens. Cell. Immunol. 59:223, 1981.

56.  Khoury, P.B., and Phillips, S.M.: Kinetics and characterization of antigen-binding and antibody producing cells in the regional draining lymph nodes and spleen during initial murine schistosomiasis. II. Cellular responses against egg antigens. Cell. Immunol. 59:246, 1981.

57.  Khoury, P.B., and Phillips, S.M.: Characterization of the cellular responses of the pulmonary and hepatic phases of primary murine *Schistosomiasis mansoni* infections. Am. J. Trop. Med. Hyg. 30:394, 1981.

58.  Neilson, E.G., Phillips, S.M., and Jimenez, S.A.: Lymphokine modulation of fibroblast proliferation. J. Immunol. 128:1484, 1982.

59.  Neilson, E.G., and Phillips, S.M.: Suppression of interstitial nephritis by auto-anti-idiotypic immunity. J. Exp. Med. 155:179, 1982.

60.  Doughty, B.L., and Phillips, S.M.: Delayed hypersensitivity granuloma formation around *Schistosoma mansoni* eggs *in vitro*. I. Definition of the model. J. Immunol. 128:30, 1982.

61.  Doughty, B.L., and Phillips, S.M.: Delayed hypersensitivity granuloma formation and modulation around *Schistosoma mansoni* eggs *in vitro*. II. Regulatory T-cell subsets. J. Immunol. 128:37, 1982.

62.  Neilson, E.G., and Phillips, S.M.: Murine interstitial nephritis: I. Analysis of disease susceptibility and its relationship to pleiomorphic gene products defining both immune response genes and a restrictive requirement for cytotoxic T-cells at H-2K. J. Exp. Med. 155:1075, 1982.

63.  Campbell, G.H., Esser, K.M., and Phillips, S.M.: Parasite antigen specific stimulation of B- and T-cells in African trypanosomiasis. J. Immunol. 129:1272, 1982.

64.  Phillips, S.M.: Monoclonal antibodies and mechanisms of immunogenesis. Proceedings of the 5th International Congress of Parasitology, Vol. II, p. 25, 1982.

65.  Bentley, A.G., Doughty, B.L., and Phillips, S.M.: Ultrastructural analysis of the cellular response to *Schistosomiasis mansoni*. III. The *in vitro* granuloma. Am. J. Trop. Med. Hyg. 31(6):1168, 1982.

66.  Phillips, S.M., and Reid, W.A.: Nuclear techniques in the study of resistance to schistosomiasis: Studies on *in vitro* labelled cercariae. IAEA-SM-256/74, 161, 1982.

67.  Zodda, D.M., and Phillips, S.M.: Monoclonal antibody mediated resistance to *Schistosoma mansoni* infection in mice. J. Immunol. 129(6):2326, 1982.

68.  Neilson, E.G., Gasser, D.G., McCafferty, E., Zakheim, B., and Phillips, S.M.: Polymorphism of genes involved in anti-tubular basement membrane disease in rats. Immunogenetics 17:55, 1983.

8

69.  Zodda, D.M., Abdel-Hafez, S.K., and Phillips, S.M.:  Characterization of monoclonal antibodies against *Schistosoma mansoni*.  Am. J. Trop. Med. Hyg. 32(1):69, 1983.

70.  Abdel-Hafez, S.K., Phillips, S.M., and Zodda, D.M.:  *Schistosoma mansoni*:  Detection and characterization of antigens and antigenemia in inhibition enzyme-linked immunosorbent assay (IELISA).  Exp. Parasitol. 55:219, 1983.

71.  Phillips, S.M., Bentley, A.G., Linette, G., Doughty, B. L., and Capron, M.:  The immunologic response of congenitally athymic rats to *Schistosoma mansoni* infection.  I. *In vivo* studies of resistance.  J. Immunol. 131(3):1466, 1983.

72.  Capron, M., Capron, A., Abdel-Hafez, S.K., Bazin, H., Joseph, M., and Phillips, S.M.: Immunologic response of athymic rats to *Schistosoma mansoni* infection. II. Antibody-dependent mechanisms of resistance. J. Immunol. 131(3):1475, 1983.

73.  Abdel-Hafez, S.K., Zodda, D.M., and Phillips, S.M.:  Effect of monoclonal antibodies on *S. mansoni* cercarial penetration of mouse skin. Folia Parasitologica 30:351, 1983.

74.  Abdel-Hafez, S.K., Phillips, S.M., and Zodda, D.M.:  *Schistosoma mansoni*:  Detection and characterization of schistosome derived antigens by inhibition enzyme-linked immunosorbent assay (IELISA) utilizing monoclonal antibodies.  Z. Parasitenkd 70:105, 1984.

75.  Neilson, E.G., McCafferty, E., Phillips, S.M., Clayman, M.D., and Kelly, C.: Antiidiotypic immunity in interstitial nephritis. II. Rats developing anti-tubular basement membrane disease fail to make an anti-idiotypic regulatory response: The modulatory role of an RT7.1[+], OX8[-] suppressor T cell mechanism.  J. Exp. Med. 159:1009, 1984.

76.  Doughty, B.L., Ottesen, E.A., Nash, T.E., and Phillips, S.M.:  Delayed hypersensitivity granuloma formation around *Schistosoma mansoni* eggs *in vitro*.  J. Immunol. 133:933, 1984.

77.  Doughty, B.L., Zodda, D.M., Kholy, A.E., and Phillips, S.M.: Delayed type hypersensitivity granuloma formation around *Schistosoma mansoni* eggs *in vitro*. IV. Granuloma formation in human schistosomiasis.  Am. J. Trop. Med. & Hyg. 33(6):1173, 1984.

78.  Rostami, A., Eccleston, P.A., Silberberg, D.H., Hirayama, M., Lisak, R.P., Pleasure, D.E., and Phillips, S.M.:  Generation and biological properties of a monoclonal antibody to galacto-cerebroside.  Brain Research 298:203, 1984.

79.  Lammie, P.J., Linette, G.P., and Phillips, S.M.:  Characterization of *Schistosoma mansoni* antigen reactive T cell clones which form granulomas *in vitro*. J. Immunol. 134:4170, 1985.

80.  Bentley, A.G., Phillips, S.M., Kaner, R.J., Theodorides, V.J., Linette, G.P., and Doughty, B.L.: *In vitro* delayed hypersensitivity granuloma formation: development of an antigen-conjugated bead model. J. Immunol. 134:4163, 1985.

81.  Kennedy, T.L., Merrow, M., Phillips, S.M., Norman, M., Neilson, E.G.:  Macrophage chemotaxis in anti-tubular basement membrane-induced interstitial nephritis in guinea pigs.  Clin. Immunol. Immunopathol. 36:243, 1985.

82.  Lammie, P.J., Phillips, S.M., Linette, G.P., Michael, A.I., and Bentley, A.G.:  *In vitro* granuloma formation using defined antigenic nidi. Tenth International Conference on Sarcoidosis and Other Granulomatous Disorders.  Ann. N.Y. Acad. Sci. 465:340, 1986.

83.  Lammie, P.J., Michael, A.I., Linette, G.P., and Phillips, S.M.:  Production of a fibroblast-stimulating factor by *Schistosoma mansoni* antigen-reactive T cell clones.  J. Immunol. 136(3):1100, 1986.

84.  Linette, G.P., Lammie, P.J., and Phillips, S.M.:  Allogeneic substitution for nominal antigen-specific T-cell clone reactivity in schistosomiasis. Immunology 57:567, 1986.

SWANHOLT EXH. 16 - 260

85.   Kelly, C., Simpson, A.J.G., Fox, E., Phillips, S.M., and Smithers, S.R.:  The identification of *Schistosoma mansoni* surface antigens recognized by protective monoclonal antibodies.  Parasite Immunology 8:193, 1986.

86.   Phillips, S.M., Fox, E.G., Fathelbab, N.G., and Walker, D.: Epitopic and paratopically directed anti-idiotypic factors in the regulation of resistance to murine *schistosomiasis mansoni*. J. Immunol. 137(7):2339, 1986.

87.   Wyler, D.J., Lammie, P.J., Michael, A.I., Rosenwasser, L.J., and Phillips, S.M.: *In vitro* and *in vivo* evidence that autoimmune reactivity to collagen develops spontaneously in *Schistosoma mansoni* infected mice. Clin. Immunol. and Immunopathol. 44:140, 1987.

88.   Phillips, S.M., Linette, G.P., Doughty, B.L., Byram, J.E., and von Lichtenberg, F.:  *In vivo* T cell depletion regulates resistance and morbidity in murine schistosomiasis.  J. Immunol. 139:919, 1987.

89.   Mouelhi, M., Black, M., and Phillips, S.M.:  Hepatic cytochrome P-450 system in experimental schistosomiasis.  Presence of an artifact in spectrophotometric analysis.  Biochem. Pharmacol. 36:2621, 1987.

90.   Phillips, S.M., Walker, D., Abdel-Hafez, S.K., Linette, G.P., Doughty, B.L., Perrin, P.J., and Fathelbab, N.: The immune response to *Schistosoma mansoni* infections in inbred rats. VI. Regulation by T cell subpopulations. J. Immunol. 139:2781, 1987.

91.   Omer-Ali, P., Smithers, S.R., Bickle, Q., Phillips, S.M., Harn, D., and Simpson, A.J.G.: Analysis of the anti-*Schistosoma mansoni* surface antibody response during murine infection and its potential contribution to protective immunity.  J. Immunol. 140:3273, 1988.

92.   Lammie, P.J., Monroe, J.G., Michael, A.I., Johnson, G. D., Phillips, S.M., and Prystowsky, M.B.:  Partial characterization of a fibroblast-stimulating factor produced by cloned murine T lymphocytes.  Am. J. Path. 130:289, 1988.

93.   Phillips, S.M., Perrin, P.J., Walker, D.J., Fathelbab, N.G., Linette, G.P., and Idris, M.A.:  The regulation of resistance to *Schistosoma mansoni* by auto-anti-idiotypic immunity.  J. Immunol. 141:1728, 1988.

94.   Perrin, P.J., and Phillips, S.M.:  The molecular basis of granuloma formation in schistosomiasis. I. T cell derived regulatory factors. J. Immunol. 141:1714, 1988.

95.   Mishra, B.B., Phillips, S.M., Patrick, H., and Israel, H.L.:  *In vitro* sarcoid granulomas differences between active and inactive disease; In *Sarcoidosis and Other Granulomatous Diseases*, Grassi, C., Rizzato, G., and Pozzi, E., eds., Milan, Elsevier Science Publishers B.V., 1988.

96.   Perrin, P.J., Prystowsky, M.B., and Phillips, S.M.: The molecular basis of granuloma formation in schistosomiasis. II. Analogies of a T suppressor effector factor to the T cell receptor.  J. Immunol. 142:985, 1989.

97.   Perrin, P.J., and Phillips, S.M.:  The molecular basis of granuloma formation in schistosomiasis. III. *In vivo* effects of a T cell derived suppressor effector factor and IL-2 on granuloma formation. J. Immunol. 143:649, 1989.

98.   Perrin, P.J., Phillips, R.J., and Phillips, S.M.: The molecular basis of granuloma formation in schistosomiasis. IV. T cell derived suppressor-inducer and suppressor-effector factor reactivities are regulated by a TCR $\beta$ chain analog.  Cell. Immunol. 124:345, 1989.

99.   Phillips, S.M., Lin, J., Walker, D.J., Linette, G.P., Fathelbab, N.G., and Perrin, P.J.:  The regulation of resistance to *Schistosoma mansoni* by auto-anti-idiotypic immunity.  II. Global qualitative and quantitative regulation.  J. Immunol. 144:4005, 1990.

SWANHOLT EXH. 16 - 261

100.  Phillips, S.M., Lin, J., Galal, N., Linette, G.P., Walker, D.J., and Perrin, P.J.:  The regulation of resistance to Schistosoma mansoni by auto-anti-idiotypic immunity.  III. An analysis of effects on epitopic recognition, idiotypic expression, and anti-idiotypic reactivity at the clonal level. J. Immunol. 145:2272, 1990.

101.  Emberton, K.C., Kuncio, G.S., Davis, G.M., Phillips, S.M., Monderewicz, K.M., and Guo, Y.H.:  Comparison of recent classifications of stylommatophoran land-snail families, and evaluation of large-ribosomal-RNA sequencing for their phylogenetics.  Malacologia 31:327, 1990.

102.  Phillips, S.M., Lin, J., Galal, N., Tung, A.S., Linette, G.P., and Perrin, P.J.: Resistance in murine schistosomiasis is contingent on activated IL-2 receptor bearing L3T4[+] lymphocytes, negatively regulated by Lyt-2[+] cells, and uninfluenced by the presence of IL-4.  J. Immunol. 146:1335, 1991.

103.  Phillips, S.M., Perrin, P.J., Tung, A.S., Lin, J., Diamantstein, T., and Galal, N.: Immune response to Schistosoma mansoni infections in inbred rats: VII. Resistance is contingent on OX-8[+] regulated high affinity IL-2 receptor-bearing W3/25[+] lymphocytes but not on IL-4 dependent cells.  J. Immunol. 147:330, 1991.

104.  Phillips, S.M., Perrin, P.J., Shi, L., and Gaafar, T.: Molecular basis of granuloma formation in schistosomiasis: interaction of T cells, their alpha-idiotypic regulatory and subsequent T suppressor factor activity, in Cellular and Molecular Aspects of Cirrhosis, Eds. B. Clement, A. Guillouzo, Colloque INSERM/John Libbey Eurotext Ltd., Vol. 216, p. 39-48, 1992.

105.  Phillips, S.M.:  Schistosomiasis: An immunological disease. In Aquaculture and Schistosomiasis, National Academy Press, Washington, DC, p. 160, 1992.

106.  Ndhlovu, P.D., Chandiwana, S.K., Taylor, P., Phillips, S.M., Mason, P., Sola, P.S., Kaondera, K.K., Mandaza, G., and Kubara, E.:  Human immune responses during infection with Schistosoma haematobium:  cell mediated immunity.  In Aquaculture and Schistosomiasis, National Academy Press, Washington, DC, p. 196, 1992.

107.  Perrin, P.J., and Phillips, S.M.: The regulation of resistance to Schistosoma mansoni by a soluble $\alpha/\beta$ TCR analog, produced by a cloned T cell hybridoma.  Cell. Immunol. 149:155, 1993.

108   Perrin, P.J., Fidelus, R.K., Lee, K.M., and Phillips, S.M.: The immunologic regulation of intra-cellular lymphoid differentiation during schistosomiasis: Influence of T cell derived suppressor molecules on antigen recognition, glutathione, ornithine decarboxylase, and granuloma formation.  Therapeutic Immunol. 1:257, 1994.

109.  Ramadan, A.M., Gabr, N.S., Bacha, P., Gunzler, V., and Phillips, S.M.:  Suppression of immunopathology in schistosomiasis by Interleukin-2 targeted fusion toxin, DAB$_{389}$IL-2:Studies of In vitro and in vivo efficacy.  Cell. Immunol.  166:001, 1995.

110.  Gabr, N.S., Adbel-Ghaffar, F., Ramadan, M.A., and Phillips, S.M.: Suppression of immunopathology in     schistosomiasis by antigen-daunomycin immunoconjugates I-In vitro studies on antigen specificity and genetic restriction. E. J. Immunol. 4:251, 1995.

111.  Gabr, N.S., Adbel-Ghaffar, F., Ramadan, M.A., and Phillips, S.M.: Immunoregulation of granuloma formation and fibrosis in schistosomiasis by antigen-daunomycin immunoconjugates II-In vivo studies . E. J. Immunol. 4:257, 1995.

112.  Maklad, S.S., Aly, F.T., Raid, M. Phillips, S.M., and El-Sheikh, N:  On vitro delayed hypersensitivity granuloma formation in mice vaccinated with ultra-violet attenuated cercariae of  Schistosoma mansoni.  E. J. Immunol. 4:125, 1997

SWANHOLT EXH. 16 - 262

113. Maklad, S.S., Mobdy, H.R., El-Rafaei, M.M., Galal, N., Phillips, S.M., and El-Sheikh, N: Adhesion Molecules in Human Schistosomiasis: I Their expression correlates with protection against Schistosoma mansoni. E. J. Immunol. 4:373, 1997

114. Abdel Ghaffar, A,B,, Borai, I.H., Phillips, S.M., and El-Sheikh, N.: ELISPOT analysis of pulmonary and systemic cytokins in ultra-violet attenuated cercariae vaccine model. E. J. Immunol. 5: 203, 1998.

115. Rumbley, C.A., ., Zekavat, S.A., Sugaya, H., Perrin, P.J., Ramadan, M.A., and Phillips, S.M.: The schistosome granuloma; characterization of lymphocyte migration, activation, and cytokine production . J. Immunol. 161: 4129-4137, 1998.

116. Mobdy, H.H., Manaa, W.M., Nassar, M., Phillips, S.M., and El-Sheikh, N Vaccination induced changes in adhesion molecules in murine schistosomiasis. E. J. Immunol. 6: 203, 1999.

117. Rumbley, C.A., Sugaya, H., Zekavat, S.A., El Refaei, M., Hilliard, B., Perrin, P.J. and Phillips, S.M.: Activated Eosinophils are the Major Source of Th-2   Associated Cytokines in the Schistosome Granuloma. J. Immunol., 162: 1003-1009, 1999.

118. Perrin, P.J., Lavi, E., Rumbley, C.A., Zekavat, S.A., and Phillips, S.M.:   Experimental Autoimmune Meningitis: A Novel Neurological Disease in CD28 Deficient Mice.  Clinical Immunology 91(1): 41-49, 1999.

119. Rumbley, C.A. and Phillips, S.M. The Schistosome Granuloma:  an immunoregulatory organelle. Microbes and Infection 1: 499-504, 1999.

120. Perrin, P.J., A.E. Lovett-Racke, S.M. Phillips, and M.K. Racke.  1999. Differential requirements of naive and memory T cells for CD28 costimulation in autoimmune pathogenesis. Histol. Histopathol.  14:1269-1276, 1999.

121. Perrin, P.J., S.M Phillips, and E. Heber-Katz.  1999.  Experimental autoimmune meningitis as a        model for activation and differentiation of pathogenic T cells.  Recent Res. Dev. Immunol. 1: 197-207, 1999

122. Perrin, P.J., Rumbley, C.A., Beswick, R.L., Lavi, E. and Phillips, S.M.  Differential Cytokine and Chemokine Production Characterizes Experimental Autoimmune Meningitis and Experimental Autoimmune Encephalomyelitis. Clinical Immunology: 94:114-124, 2000.

123. Rumbley, C.A., Sugaya, H., Zekavat, S.A., and Phillips, S.M.  Elimination of Granuloma but not Splenic Lymphocytes by Fas-Fas Ligand Mediated Apoptosis in S. Mansoni Infected Mice.  Journ Am. Soc. Trop Med & Hygiene: 65(5):442-449, 2001.

124. Rumbley, C.A., Silver, S.J., and Phillips, S.M.  development  of Obliterative Bronchiolitis in Murine Tracheal Transplants is CD40L Dependent. 1999 Transplantation

125. Perrin, P.J.,  E. Lavi, S.A. Zekavat, C.A. Rumbley, and S.M. Phillips.  1999. Experimental autoimmune meningitis: A novel neurological disease in CD28-deficient mice.  Clin. Immunol. 91:49.

126. Perrin, P.J., A.E. Lovett-Racke, S.M. Phillips, and M.K. Racke.  1999.  Differential requirements of naive and memory T cells for CD28 costimulation in autoimmune pathogenesis.  Histol. Histopathol. 14:1269.

127. Perrin, P.J., C.A. Rumbley, R.L. Beswick, E. Lavi, and S.M. Phillips. 2000.  Differential cytokine and chemokine production characterizes experimental autoimmune meningitis and experimental autoimmune encephalomyelitis. Clin. Immunol. 94:114.

126. Rumbley, C.A., Sugaya, H., Zekavat, S.A., and Phillips, S.M. 2001 Elimination of Granuloma but not Splenic Lymphocytes by Fas-Fas Ligand Mediated Apoptosis in S. Mansoni Infected Mice-Am. Journ. Trop. Med Hyg.. , 65:442.

SWANHOLT EXH. 16 - 263

129.  Rumbley, C.A., Silver, S.J., and Phillips, S.M.  2001 Dependence of Obstructive Airway Disease  on CD40L igand. Transplantation  72 (10): 1616-1625.

130.  Phillips, S.M. Bhopale, C. Constantinescu, B. Ciric, B. Hilliard, E. Ventura, E. Lavi, A. Rostami , 2007. Effect of DAB389IL-2 immunotoxin on the course of experimental autoimmune encephalomyelitis in Lewis rats. Journal of the Neurological Sciences, Volume 263, Issue 1-2, Pages 59-69

131.  Phillips, S.M., Bhopale, M., Hilliard, B., Zekevat, S., Ramadan Ali, M., and Rostami, M. 2010. Suppression of murine experimental autoimmune encephalomyelitis by interleukin-2 receptor targeted fusion toxin, DAB389IL-2.  Cell. Immunol. 261:144.

132.  Bhopale M. Hilliard, B., Constantinescu, C, Fujioka, T., Ventura, E.,  Phillips, S.M., and Rostami, A..  2013.  DAB IL-2 suppresses autoimmune inflammation in the DNS and inhibits T-cell-mediated lysis of  glial target cells  .Experimental and Molecular Pathology. 7/2013

**Abstracts:**
No record of previously published abstracts has been compiled.  Approximate number - 150.

**Editorials, Reviews, and Chapters:**

1.  Phillips, S.M.: Immunologic activation of oncogenic viruses. Immunology of Cancer.  Prog. Exp. Tumor Res. 19:37, 1974.

2.  Phillips, S.M., and Colley, D.G.:  The immunology of *Schistosoma mansoni* infection.  Am. J. Trop. Med. Hyg. 25:657, 1976.

3.  Phillips, S.M., and Colley, D.G.:  The immunology of *Schistosoma mansoni* infection.  Am. J. Trop. Med. Hyg. 26:826, 1977.

4.  Phillips, S.M., and Colley, D.G.:  Immunologic aspects of host response to schistosomiasis: Resistance, immunopathology and eosinophil involvement.  Prog. Allergy 24:49, 1978.

5.  Phillips, S.M., and Colley, D.G.:  The immunology of *Schistosoma mansoni* infection.  Am. J. Trop. Med. Hyg. 27:1058, 1978.

6.  Phillips, S.M., and Colley, D.G.:  The immunology of *Schistosoma mansoni* infection.  Am. J. Trop. Med. Hyg. 28:914, 1979.

7.  Neilson, E.G., and Phillips, S.M.: The immunobiology of nephritis.  Prog. Allergy 27:167, 1980.

8.  Hoffman, D.G., Phillips, S.M., and Cook, J.A.:  Vaccine development for schistosomiasis.  Am. J. Trop. Med. Hyg. 30:1247, 1981.

9.  Phillips, S.M., and Fox, E.G.:  The immunopathology of parasitic disease.  Clin. Immunol. Allergy 2(3):667, 1982.

10.  Phillips, S.M., and Zodda, D.M.:  Monoclonal antibodies and immunoparasitology, in Monoclonal Antibodies: Second Edition, Ed. Kennett, R.E., McKearn, T.J., and Bechtol, K.B., Plenum Press, NY, 1984.

11.  Phillips, S.M., and Fox, E.G.:  The immunopathology of parasitic diseases: A conceptual approach, in: Contemporary Topics in Immunobiology, ed. J.J. Marchalonis, Plenum Press, NY, Vol. 12:421, 1984.

12.  Brown, K.R., and Phillips, S.M.:  Tropical diseases of importance to the traveler, in: Advances in Internal Medicine, ed. by E. Stollerman, Vol. 29. Yearbook Medical Publishers, Chicago, IL, 1984.

13

13.   Lammie, P.J., and Phillips, S.M.: Immunopathology of granuloma    formation and fibrosis in schistosomiasis. Parasitology Today <u>2</u>:296, 1986.

14.   Phillips, S.M., Kemp, W.M., and Dissous, C.:  Discussion summary: Molecular modulators of immunity, in *Molecular Paradigms for Eradicating Helminthic Parasites*, p. 367, Alan R. Liss, Inc., New York, 1987.

15.   Perrin, P.J. and Phillips, S.M.: The molecular basis of receptor mediated regulation of granu-lomatous hypersensitivity, in *Basic mechanisms of granulomatous inflammation*. T. Yoshida and M. Torisu, eds. Excerpta Medica, Amsterdam, p. 185, 1989.

16.   Phillips, S.M.:  Nuclear applications in parasitic and communicable infections, in *Nuclear and related techniques in the control of communicable diseases*, International Atomic Energy Agency, Vienna, IAEA-TEC Doc613, p. 9, 1989.

17.   Phillips, S.M., and Perrin, P.J.:  Applications of radio nuclides in the study of cellular mecha-nisms in helminthic infections, in *Nuclear and related techniques in the control of communi-cable diseases*, International Atomic Energy Agency, Vienna, p. 17, 1989.

18.   Kunkel, S.L., Chensue, S.W., Phillips, S.M., Tarleton, R.L., and Pearson, R.D.: Mechanisms of immunopathology in parasitic infections, in *Immunology and Molecular Biology of Parasitic Infections*, ed. K.S. Warren, MacMillan, Inc., New York, NY, p. 52, 1992.

19.   Perrin, P.J. and Phillips, S.M.: Differential requirements of naive and memory T cells for CD28 costimulation in autoimmune pathogenesis, in *Histology and Histopathology* .14: 1269,, 1999.

**Books:**

Guide for Adult Immunization, First Ed., Pub. Amer. College of Physicians, Phila., PA, USA, 1985.

"The Reticuloendothelial System: A Comprehensive Treatise: Hypersensitivity", Edited by Phillips, S.M. and Escobar, M., Volume 9, Plenum Publishing Corporation, New York, NY, 1986.

**SWANHOLT EXH. 16 - 265**

EXHIBIT 2

SWANHOLT EXH. 16 - 266

## PREVIOUS MEDICAL LEGAL ACTIVITY:

## S. MICHAEL PHILLIPS, M.D.

Palumbo v. Riva Point
Deposition 7/24/09

Taylor v. RISD
Deposition 1/27/10

Dumas v. Moreland Shopping Center
Deposition 4/01/10

Williams v. Hospital of Cook County
Deposition 9/30/2010

Schwartz v. Evanston Northwestern Healthcare
Deposition  4/18/2011

Aiello v. Speedwing Investments
Daubert Hearing 12/14/2011

Judith Schafer-Condulmari  v. U.S.Airways
Deposition 11/11/11

Reginald Roberts v. Montgomery County, et al.
Deposition 3/5/2012

220 W. Rittenhouse Square v. M. Stolker
Deposition Daubert Hearing: 5/11/2012

Roberts v. Ferman, et al.
Deposition 3/8/2012

Judith Schaefer-Condulmari V. U.S. Airways Group, Inc.
Court Testimony  2/06/2013

This record represents my good faith review for depositions and trial testimony for the past 4 years, but may not be complete.

# EXHIBIT 17

# In The Matter Of:

*BRANDON BUTLER*

*v.*

*MATTEL, INC.*

_____

*TORPEY, MARY FRAN - Vol. 1*
*October 14, 2013*

_____

**MERRILL CORPORATION**

**LegaLink, Inc.**

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

**SWANHOLT EXH. 17- 268**

MARY FRAN TORPEY - 10/14/2013

Page 23

```
 1              for attorney-client privilege.  Let me say

 2              this, Peter, I know that request referred

 3              to our 26A disclosure.

 4                   MR. BIERSTEKER:  It did.

 5                   MR. MATHEWS:  Those saved

 6              retailer web pages are web pages that

 7              counsel gathered and collected and you're

 8              correct, they are not in this production.

 9              I don't believe they have been seen by

10              Miss Torpey and maybe at lunch, we can try

11              to print those off for you.

12   BY MR. BIERSTEKER:

13        Q.   Thank you.  Have you not seen the saved

14   web sites from retailers relating to the Rock 'N

15   Play Sleeper?

16        A.   No, I haven't.

17        Q.   I think you received or you acquired

18   your Rock 'N Play Sleeper in early 2012 as a baby

19   shower gift; is that right?

20        A.   That is correct.

21        Q.   When in early 2012 did you receive it

22   or acquire your sleeper?

23        A.   It was in late January, but I don't

24   know the date.

25        Q.   And as I understand it, the sleeper was
```

**SWANHOLT EXH. 17- 269**

MARY FRAN TORPEY - 10/14/2013

Page 28

```
 1                        THE WITNESS:  I gather that she

 2             did, because it was removed from our

 3             registry.

 4    BY MR. BIERSTEKER:

 5             Q.    Thank you.  Do you know if she made the

 6    purchase online or at a Toys "R" Us or Babies "R"

 7    Us retail outlet?

 8             A.    I do not know.

 9             Q.    Do you know how she paid for it?

10             A.    I don't.

11             Q.    Do you know how much she paid?

12             A.    I don't.

13             Q.    When did you first become aware that

14    there even was a product called the Rock 'N Play

15    Sleeper?

16             A.    Probably in December of 2011, we

17    visited friends who had one.  And they had just had

18    a baby in November.  Oh no, probably December of

19    2010.

20             Q.    Did your friends recommend the sleeper?

21             A.    They liked its size and that it was

22    portable.

23             Q.    But for the recommendation of your

24    friends, would you have placed the sleeper on your

25    baby registry?
```

**SWANHOLT EXH. 17- 270**

MARY FRAN TORPEY - 10/14/2013

Page 29

```
1          A.   I don't know.  It's hard to say.

2          Q.   Other than the fact that it was small

3    enough to fit in the space between your bed and the

4    wall, and that your friends had had a good

5    experience with it, is there any reason why you put

6    the sleeper on your baby registry?

7                    MR. MATHEWS:  Objection, lacks

8          foundation.

9                    THE WITNESS:  Not that I can

10         remember.

11   BY MR. BIERSTEKER:

12         Q.   If there were an important other

13   reason, would you remember it?

14         A.   I think so.

15         Q.   Did your friends have a good experience

16   with the sleeper?

17         A.   I'm, I'm not sure.  When we, at the

18   time when we saw them, and now I think it was

19   December 2011, they were staying with their in-laws

20   and they had brought it with them.

21         Q.   Wait a minute, was it 2010 or 2011?

22         A.   It was 2011.

23         Q.   Thank you.

24         A.   I'm clear now.

25         Q.   I'm sorry, I interrupted.  Go ahead.
```

**SWANHOLT EXH. 17- 271**

MARY FRAN TORPEY - 10/14/2013

Page 51

1    previously discussed on Facebook and Tim commented

2    on the post and then he sent me a private message.

3          Q.   Why did you post the recall notice on

4    Facebook?

5          A.   To share the information with my

6    friends who, my Facebook friends who may have had

7    the product or been planning to purchase the

8    product.

9          Q.   You earlier said that you advised some

10   of your friends or recommended to some of your

11   friends or acquaintances that they not acquire a

12   sleeper.  Do you know if they actually did?  Do you

13   know whether they got one or not?

14         A.   No, I don't.

15         Q.   If I understood your testimony, prior

16   to your acquisition of the sleeper, you did not

17   review any statement about the sleeper from

18   Fisher-Price; is that correct?

19         A.   I don't recall doing so.

20         Q.   The same question only with respect to

21   Mattel, prior to your acquisition of the sleeper,

22   you did not review any statement about the sleeper

23   from Mattel, did you?

24         A.   I don't recall doing so, no.

25         Q.   Let's go back to Exhibit 2 and the

MARY FRAN TORPEY - 10/14/2013

```
 1   action complaint or earlier iterations of it?

 2         A.   Yes, I have read it.

 3         Q.   When did you start using the sleeper

 4   with Emmett?

 5         A.   As soon as he came home from the

 6   hospital, so two days after he was born.

 7         Q.   So March 3, 2012 roughly?

 8         A.   Correct, yeah.

 9         Q.   When did you stop using the sleeper

10   with Emmett?

11         A.   I think it was in August of 2012.

12         Q.   At that time, had he begun to push up

13   with his arms or sit upright?

14         A.   He was getting pretty close and we were

15   aware of that limitation.

16         Q.   Right.  The instructions at Exhibit 2

17   Bates page MFT004, say under fall hazard, are you

18   ready, quote, "To prevent falls, do not use this

19   product when the infant begins to push up on hands

20   and knees, can pull up or sit up unassisted or has

21   reached 25 pounds, 11 kilograms, whichever comes

22   first."  Right?

23         A.   Correct.

24         Q.   So you stopped using the sleeper when

25   you thought Emmett was getting pretty close to
```

**SWANHOLT EXH. 17- 273**

MARY FRAN TORPEY - 10/14/2013

Page 58

```
 1    having a risk of a fall from it, is that fair?

 2         A.   Correct.

 3         Q.   And that was before you first learned

 4    that the sleeper could potentially grow mold; is

 5    that right?

 6         A.   Yes.

 7                   MR. BIERSTEKER:  Do you want to

 8         take a short break?

 9                   MR. MATHEWS:  Can we take a

10         break, I'm just going to ask the

11         landscapers --

12                   MR. BIERSTEKER:  As long as

13         they're not towing my car, I'm a happy guy.

14                   THE VIDEOGRAPHER:  Off the

15         record.

16                   - - - - -

17    (Discussion was held off the record.)

18                   - - - - -

19                   THE VIDEOGRAPHER:  We're back

20         on, 11:11.

21    BY MR. BIERSTEKER:

22         Q.   You used your sleeper for the full

23    period of time for which it was intended with

24    Emmett, didn't you?

25         A.   Yes.
```

SWANHOLT EXH. 17- 274

MARY FRAN TORPEY - 10/14/2013

1          Q.   Did Emmett ever eat in the sleeper?

2          A.   No, during the period of time we're

3     discussing, he, he didn't eat anything but breast

4     milk.

5          Q.   Did he ever have a bottle of breast

6     milk in the sleeper?

7          A.   No.

8          Q.   Approximately how many hours a day

9     would you say that Emmett spent in the sleeper on

10    average during the period that he used it?

11         A.   Over 12, maybe 14.  Especially when he

12    was younger, he slept a great deal.

13         Q.   You're lucky.

14         A.   Yeah.

15         Q.   Did your sleeper ever have what you

16    believed to be mold in it?

17         A.   I never saw visible mold on it.

18         Q.   Is that some sort of -- how is that

19    different than no?

20         A.   I'm aware that from the complaint that

21    the mold can be invisible, excuse me.  So I never

22    observed visible mold on it, but I don't know.  I

23    can't say for sure that it never had mold on it.

24         Q.   Have you ever had your sleeper tested

25    to see whether or not it has mold?

SWANHOLT EXH. 17- 275

MARY FRAN TORPEY - 10/14/2013

```
 1              CERTIFICATE OF REPORTER

 2            I, Robin Clark, a Certified Shorthand

 3    Reporter, hereby certify that the witness in the

 4    foregoing deposition was by me duly sworn to tell

 5    the truth, the whole truth, and nothing but the

 6    truth in the within-entitled cause;

 7            That said deposition was taken down in

 8    shorthand by me, a disinterested person, at the

 9    time and place therein stated, and that the

10    testimony of the said witness was thereafter

11    reduced to typewriting, by computer, under my

12    direction and supervision;

13            That before completion of the deposition,

14    review of the transcript [x] was [  ] was not

15    requested. If requested, any changes made by the

16    deponent (and provided to the reporter) during the

17    period allowed are appended hereto.

18            I further certify that I am not of

19    counsel or attorney for either or any of the

20    parties to the said deposition, nor in any way

21    interested in the event of this cause, and that I

22    am not related to any of the parties thereto.

23            DATED:                         ,20

24

25                               CSR NO.
```

**SWANHOLT EXH. 17- 276**

# EXHIBIT 18

# In The Matter Of:

*BRANDON BUTLER*

*v.*

*MATTEL, INC.*

_____

## *KILPATRICK, NICOLE - Vol. 1*
### *December 11, 2013*

_____

**MERRILL CORPORATION**

**LegaLink, Inc.**

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

**SWANHOLT EXH. 18- 277**

NICOLE KILPATRICK - 12/11/2013

| | | |
|---|---|---|
| 14:20:01 | 1 | I understand you brought your sleeper and the |
| 14:20:04 | 2 | assignment of claims; is that right? |
| 14:20:06 | 3 | A.        Right. |
| 14:20:06 | 4 | Q.        Did -- did you not have any other documents |
| 14:20:10 | 5 | responsive to the request? |
| 14:20:11 | 6 | A.        No, the sleeper was given to me as a gift. |
| 14:20:14 | 7 | Q.        I understand that. |
| 14:20:15 | 8 | A.        So I don't have a receipt or anything like |
| 14:20:18 | 9 | that. |
| 14:20:18 | 10 | Q.        And the packaging got tossed at some point |
| 14:20:21 | 11 | along the way? |
| 14:20:22 | 12 | A.        Right.  Right. |
| 14:20:23 | 13 | Q.        Were there any documents responsive to any of |
| 14:20:37 | 14 | the requests that were not produced for any reason? |
| 14:20:42 | 15 | A.        No. |
| 14:20:43 | 16 | Q.        Now, I think -- as I understand it, you |
| 14:21:00 | 17 | acquired your sleeper on or before August 2012; is |
| 14:21:03 | 18 | that right? |
| 14:21:03 | 19 | A.        Right. |
| 14:21:04 | 20 | Q.        And as I think you mentioned, it was a baby |
| 14:21:07 | 21 | shower gift, right? |
| 14:21:08 | 22 | A.        Yes. |
| 14:21:08 | 23 | Q.        When exactly was your baby shower? |
| 14:21:11 | 24 | A.        I don't -- I can't remember.  I would -- I |
| 14:21:17 | 25 | can guess.  Like August 16th would be my guess. |

SWANHOLT EXH. 18- 278

NICOLE KILPATRICK - 12/11/2013

| | | |
|---|---|---|
| 14:21:19 | 1 | Q. Is that when you acquired it? |
| 14:21:21 | 2 | A. Yes. |
| 14:21:22 | 3 | Q. Because you said on or before.  I was just |
| 14:21:26 | 4 | trying to narrow it down is all. |
| 14:21:29 | 5 | A. Right. |
| 14:21:29 | 6 | Q. So approximately August 18th? |
| 14:21:31 | 7 | A. Yes. |
| 14:21:31 | 8 | Q. Fair enough.  Did you make the decision to |
| 14:21:37 | 9 | put the Rock 'n Play Sleeper on your baby shower |
| 14:21:40 | 10 | registry? |
| 14:21:41 | 11 | A. Yes. |
| 14:21:42 | 12 | Q. And the person who gave it to you is |
| 14:21:56 | 13 | Adrianna -- |
| 14:21:57 | 14 | A. Andrea. |
| 14:21:57 | 15 | Q. Andrea, excuse me, Moreno? |
| 14:22:00 | 16 | A. Yes. |
| 14:22:01 | 17 | Q. And describe your relationship with Andrea? |
| 14:22:08 | 18 | A. She is my cousin. |
| 14:22:10 | 19 | Q. She's your cousin. |
| 14:22:12 | 20 | A. Yes. |
| 14:22:12 | 21 | Q. Okay.  Where does she live? |
| 14:22:14 | 22 | A. She lives in Roseville. |
| 14:22:16 | 23 | Q. In where? |
| 14:22:17 | 24 | A. Roseville. |
| 14:22:18 | 25 | Q. Is that near here? |

**SWANHOLT EXH. 18- 279**

NICOLE KILPATRICK - 12/11/2013

| | | | |
|---|---|---|---|
| 14:25:04 | 1 | A. | No. |
| 14:25:04 | 2 | Q. | Do you know how much she paid for it? |
| 14:25:06 | 3 | A. | I do not. |
| 14:25:07 | 4 | Q. | Do you know how she paid for it? |
| 14:25:09 | 5 | A. | No. |
| 14:25:09 | 6 | Q. | Do you know if she used any coupons or had |
| 14:25:13 | 7 | | any discounts? |
| 14:25:13 | 8 | A. | I don't know. |
| 14:25:14 | 9 | Q. | When did you first become aware that a |
| 14:25:17 | 10 | | product called the Rock 'n Play Sleeper even existed? |
| 14:25:20 | 11 | A. | I became aware of it, I want to say, spring |
| 14:25:25 | 12 | | of 2012. |
| 14:25:29 | 13 | Q. | How did you become aware of it? |
| 14:25:33 | 14 | A. | I actually purchased one for my friend for |
| 14:25:36 | 15 | | her baby shower. |
| 14:25:37 | 16 | Q. | Which friend is that? |
| 14:25:39 | 17 | A. | Her name is Melissa Popodopolis. |
| 14:25:43 | 18 | Q. | Easy for you to say. |
| 14:25:44 | 19 | A. | I don't know how to spell it, so don't ask |
| 14:25:48 | 20 | | me. |
| 14:25:48 | 21 | Q. | Melissa Popodopolis? |
| 14:25:52 | 22 | A. | No, Popodopolis. |
| 14:25:58 | 23 | Q. | Oh, Popodopolis? |
| 14:26:00 | 24 | A. | Yes. |
| 14:26:01 | 25 | Q. | And had she put the sleeper on her baby |

**SWANHOLT EXH. 18- 280**

NICOLE KILPATRICK - 12/11/2013

| | | |
|---|---|---|
| 14:26:04 | 1 | shower registry? |
| 14:26:05 | 2 | A.     I don't believe so.  I just saw it and I |
| 14:26:07 | 3 | decided to buy it. |
| 14:26:08 | 4 | Q.     Where did you see it? |
| 14:26:10 | 5 | A.     At Target. |
| 14:26:12 | 6 | Q.     Was it -- it was for a baby shower, I take |
| 14:26:16 | 7 | it. |
| 14:26:16 | 8 | A.     Yes. |
| 14:26:17 | 9 | Q.     So if I understand it correctly, you first |
| 14:26:30 | 10 | saw the sleeper at Target, you looked at it, thought |
| 14:26:33 | 11 | it might be a useful thing and you decided to get it |
| 14:26:35 | 12 | as a gift for Ms. Popodopolis. |
| 14:26:38 | 13 | A.     Yes. |
| 14:26:40 | 14 | Q.     At the time that you bought the sleeper for |
| 14:27:07 | 15 | Ms. Popodopolis, did you read anything about it other |
| 14:27:19 | 16 | than perhaps the packaging in the store? |
| 14:27:22 | 17 | A.     No. |
| 14:27:23 | 18 | Q.     Did you read the packaging? |
| 14:27:24 | 19 | A.     Yes. |
| 14:27:25 | 20 | Q.     Did you have any discussions with |
| 14:27:33 | 21 | Ms. Popodopolis after the time you gave her the |
| 14:27:38 | 22 | Rock 'n Play Sleeper as a gift in the spring of 2012 |
| 14:27:42 | 23 | and before you put the Rock 'n Play Sleeper on your |
| 14:27:46 | 24 | own baby shower registry? |
| 14:27:48 | 25 | A.     Yes. |

SWANHOLT EXH. 18- 281

NICOLE KILPATRICK - 12/11/2013

| | | |
|---|---|---|
| 14:27:48 | 1 | Q.      Tell me about those conversations, please. |
| 14:27:51 | 2 | A.      She recommended it.  She said that she really |
| 14:27:53 | 3 | liked it.  She liked that it was portable and her |
| 14:27:56 | 4 | daughter seemed to enjoy it and recommended it to me. |
| 14:28:00 | 5 | So I decided to register for it as well. |
| 14:28:03 | 6 | Q.      Did she say why she liked it other than the |
| 14:28:15 | 7 | fact that her daughter seemed to take to it and that |
| 14:28:18 | 8 | it was portable? |
| 14:28:19 | 9 | A.      Nothing other than that.  Those were the two |
| 14:28:23 | 10 | things that she liked about it, because she liked |
| 14:28:27 | 11 | that she could take it outside and her daughter could |
| 14:28:31 | 12 | still use it outside or if they were traveling they |
| 14:28:34 | 13 | could take it with them.  Those were the things that |
| 14:28:37 | 14 | she talked about. |
| 14:28:38 | 15 | Q.      When did you first seriously consider |
| 14:28:41 | 16 | requesting a Rock 'n Play Sleeper as a baby shower |
| 14:28:44 | 17 | gift? |
| 14:28:45 | 18 | A.      When I saw it at the store. |
| 14:28:47 | 19 | Q.      No, for you. |
| 14:28:48 | 20 | A.      Yeah, when I put it on my registry at the |
| 14:28:51 | 21 | store. |
| 14:28:51 | 22 | Q.      Okay.  Let me -- let me see if I get this |
| 14:28:54 | 23 | right then.  You -- in the spring of 2012, did you |
| 14:28:59 | 24 | simultaneously buy the sleeper for -- as a gift for |
| 14:29:05 | 25 | Ms. Popodopolis and put it on your own baby shower |

SWANHOLT EXH. 18- 282

NICOLE KILPATRICK - 12/11/2013

| | | |
|---|---|---|
| 15:25:58 | 1 | Q.      When did you stop using the sleeper with |
| 15:26:10 | 2 | Kaiden? |
| 15:26:10 | 3 | A.      At the end of February. |
| 15:26:14 | 4 | Q.      Kaiden would have been roughly four and a |
| 15:26:39 | 5 | half months old -- |
| 15:26:40 | 6 | A.      Right. |
| 15:26:41 | 7 | Q.      -- at the end of February 2013; is that |
| 15:26:45 | 8 | right? |
| 15:26:45 | 9 | A.      Yes, uh-huh. |
| 15:26:46 | 10 | Q.      Why did you stop using the sleeper with |
| 15:26:49 | 11 | Kaiden at the end of February 2013? |
| 15:26:53 | 12 | A.      At that time we moved him into his crib in |
| 15:26:56 | 13 | his room. |
| 15:26:58 | 14 | Q.      Did you continue to use the sleeper after you |
| 15:27:16 | 15 | moved him into his crib in his room during the day as |
| 15:27:20 | 16 | a place to put Kaiden while you had to -- let me try |
| 15:27:24 | 17 | this question over again.  I'm making a hash of it. |
| 15:27:28 | 18 |         I take it that in late February 2013 Kaiden |
| 15:27:34 | 19 | transitioned from the sleeper to his crib for |
| 15:27:38 | 20 | overnight sleeping; is that correct? |
| 15:27:39 | 21 | A.      Yes. |
| 15:27:40 | 22 | Q.      At that time did you cease all use of the |
| 15:27:42 | 23 | sleeper, or did you continue to use it as a place |
| 15:27:45 | 24 | where Kaiden could be placed periodically during the |
| 15:27:49 | 25 | course of the day? |

**SWANHOLT EXH. 18- 283**

NICOLE KILPATRICK - 12/11/2013

15:27:50  1   A.      Maybe a couple times, because after that he
15:27:55  2   started to sit up, and once he started sitting up, it
15:27:59  3   was not a safe place for him to be.
15:28:01  4   Q.      Why did you decide to transition Kaiden from
15:28:05  5   the sleeper to his crib for overnight sleep in late
15:28:10  6   February of 2013?
15:28:11  7   A.      He was just about five months old and that
15:28:14  8   was the time I felt -- I wanted to do it earlier, but
15:28:18  9   my husband wasn't ready.  So he wanted to wait to
15:28:22  10  February.  So that's why it happened like that.
15:28:24  11  Q.      In what sense was your husband not ready?
15:28:28  12  A.      He is our first born and it just scared him
15:28:33  13  not having him right next to our bed, not being able
15:28:36  14  to hear him throughout the night, you know,
15:28:40  15  breathing.  We were freaked out about SIDS and all
15:28:43  16  that kind of stuff.  So...
15:28:51  17  Q.      You continued to use the sleeper for at least
15:29:03  18  a month and perhaps longer after you had heard about
15:29:08  19  the recall to inspect; is that right?
15:29:10  20  A.      Correct.
15:29:11  21  Q.      At the time you heard about the recall to
15:29:14  22  inspect, you knew that the sleeper could develop
15:29:20  23  mold, right?
15:29:21  24  A.      No, not at that time.
15:29:23  25  Q.      I thought you said you read the recall notice

**SWANHOLT EXH. 18- 284**

NICOLE KILPATRICK - 12/11/2013

| | | |
|---|---|---|
| 15:29:26 | 1 | on Facebook. |
| 15:29:27 | 2 | A.      What I read didn't indicate that mold could |
| 15:29:33 | 3 | be produced.   It said something about cleaning it |
| 15:29:35 | 4 | properly. |
| 15:29:36 | 5 | Q.      Was the Facebook post that you read something |
| 15:29:47 | 6 | that came from the government or was it something |
| 15:29:50 | 7 | that some individual posted, if you can recall? |
| 15:29:55 | 8 | A.      It was posted by an individual.  I don't know |
| 15:29:58 | 9 | if it was from the government or... |
| 15:29:58 | 10 | (Deposition Exhibit 4 marked for |
| 15:29:58 | 11 | identification.) |
| 15:30:30 | 12 | Q.      MR. BIERSTEKER:  We have marked as Exhibit 4, |
| 15:30:31 | 13 | I think, to your deposition the -- what I'll |
| 15:30:37 | 14 | represent to you is the recall notice from the United |
| 15:30:41 | 15 | States Consumer Product Safety Commission, and I |
| 15:30:49 | 16 | would ask you to review it briefly and then tell me, |
| 15:30:53 | 17 | is this what you saw? |
| 15:30:54 | 18 | A.      No, I don't believe this is what I saw. |
| 15:31:27 | 19 | Q.      Tell me as best as you can recall what the |
| 15:31:37 | 20 | posting that you saw on Facebook said about the |
| 15:31:42 | 21 | recall to inspect. |
| 15:31:43 | 22 | A.      It said something about cleaning it and |
| 15:31:48 | 23 | checking it. |
| 15:31:50 | 24 | Q.      For what?  Did it say? |
| 15:31:52 | 25 | A.      I don't believe so.  It just talked about |

SWANHOLT EXH. 18- 285

NICOLE KILPATRICK - 12/11/2013

| | | |
|---|---|---|
| 15:34:04 | 1 | Q.      You continued to use your sleeper after you |
| 15:34:19 | 2 | saw the Facebook posting that suggested to you that |
| 15:34:25 | 3 | there could be some kind of danger to your child from |
| 15:34:28 | 4 | the sleeper; is that correct? |
| 15:34:29 | 5 | A.      Yes. |
| 15:34:30 | 6 | Q.      Why did you do that? |
| 15:34:36 | 7 | A.      I did it because it worked for us, and I know |
| 15:34:40 | 8 | it sounds bad, but as a new parent and the lack of |
| 15:34:45 | 9 | sleep that you get, you do what you got to do to make |
| 15:34:49 | 10 | sure that you get to sleep.   And I was back at work |
| 15:34:51 | 11 | at that time and my husband was working, and that's |
| 15:34:54 | 12 | what got him to sleep through the night.   It worked. |
| 15:34:57 | 13 | Q.      I don't think it sounds terrible at all and |
| 15:34:59 | 14 | we've all been there. |
| 15:35:26 | 15 |         After you stopped using the sleeper with |
| 15:35:29 | 16 | Kaiden probably in March roughly -- |
| 15:35:31 | 17 | A.      Yes. |
| 15:35:32 | 18 | Q.      -- sometime in March of 2013, what did you do |
| 15:35:37 | 19 | with it? |
| 15:35:37 | 20 | A.      I folded it up and put it under my bed. |
| 15:35:45 | 21 | Q.      Has it been there ever since? |
| 15:35:47 | 22 | A.      Until I first came into contact with them. |
| 15:35:51 | 23 | Q.      First came into contact with whom? |
| 15:35:53 | 24 | A.      The attorneys, and I brought it here. |
| 15:35:56 | 25 | Q.      Okay.   Why had you put the sleeper under your |

NICOLE KILPATRICK - 12/11/2013

| | | |
|---|---|---|
| 15:36:09 | 1 | bed? |
| 15:36:09 | 2 | A.        For lack of storage in the house. |
| 15:36:13 | 3 | Q.        No.   No.   No.   I meant -- that was a badly |
| 15:36:17 | 4 | framed question and that was a perfectly good answer |
| 15:36:19 | 5 | to a bad question.   Let me try another. |
| 15:36:22 | 6 |           Why did you decide to keep it and to store it |
| 15:36:26 | 7 | wherever you were going to store it rather than give |
| 15:36:29 | 8 | it away or sell it? |
| 15:36:30 | 9 | A.        I don't know.   I didn't even think about it. |
| 15:36:33 | 10 | I just put it under the bed and just stuck it there |
| 15:36:37 | 11 | and didn't think about it. |
| 15:36:38 | 12 | Q.        From the time that Kaiden -- from the time |
| 15:36:51 | 13 | you first put Kaiden in the sleeper for overnight |
| 15:36:55 | 14 | sleep until you began to transition to the crib in |
| 15:37:01 | 15 | late February of 2013, did he sleep overnight in the |
| 15:37:07 | 16 | sleeper every night? |
| 15:37:10 | 17 | A.        Yes. |
| 15:37:11 | 18 | Q.        And during that period, did you continue to |
| 15:37:25 | 19 | put him in the sleeper periodically during the day? |
| 15:37:28 | 20 | A.        Yes. |
| 15:37:32 | 21 | Q.        And you indicated that you would do that when |
| 15:37:35 | 22 | you needed to attend to something else, right? |
| 15:37:38 | 23 | A.        Right. |
| 15:37:39 | 24 | Q.        Did you also put him in the sleeper when it |
| 15:37:42 | 25 | was time for him to have his nap? |

SWANHOLT EXH. 18- 287

NICOLE KILPATRICK - 12/11/2013

| | | |
|---|---|---|
| 15:37:46 | 1 | A. Yes. |
| 15:37:47 | 2 | Q. Did you move the sleeper around within your |
| 15:37:56 | 3 | home from room to room depending upon where you were? |
| 15:38:00 | 4 | A. Yes. |
| 15:38:01 | 5 | Q. Did you ever use the sleeper outside of your |
| 15:38:06 | 6 | home with Kaiden? |
| 15:38:08 | 7 | A. Yes. |
| 15:38:08 | 8 | Q. Where did you use it outside of your own |
| 15:38:10 | 9 | home? |
| 15:38:11 | 10 | A. At my parents' house and when we traveled. |
| 15:38:15 | 11 | Q. Your parents, are they here in Sacramento? |
| 15:38:19 | 12 | A. Yes. |
| 15:38:20 | 13 | Q. And you said when you traveled. You mean on |
| 15:38:23 | 14 | vacations? |
| 15:38:24 | 15 | A. Yes. |
| 15:38:25 | 16 | Q. How frequently do you take vacations? |
| 15:38:32 | 17 | A. I think we went twice during that period. |
| 15:38:35 | 18 | Q. During the approximately five months that |
| 15:38:37 | 19 | Kaiden was using the sleeper. |
| 15:38:39 | 20 | A. Right. |
| 15:38:40 | 21 | Q. Did your sleeper ever have what you believed |
| 15:38:51 | 22 | to be mold on it? |
| 15:38:52 | 23 | A. Not to my knowledge, but I'm not an expert. |
| 15:39:03 | 24 | So... |
| 15:39:04 | 25 | Q. I understand. Exhibit 4, it says under |

NICOLE KILPATRICK - 12/11/2013

| | | |
|---|---|---|
| 15:43:26 | 1 | If you could basically touch or feel the -- |
| 15:43:31 | 2 | A.      This part? |
| 15:43:32 | 3 | Q.      The label.  The label.  Would you agree with |
| 15:43:34 | 4 | me it's sort of stiff and crinkly? |
| 15:43:38 | 5 | A.      Yeah. |
| 15:43:40 | 6 | Q.      Did you ever wipe down the sling that is |
| 15:43:56 | 7 | underneath the pad of your sleeper? |
| 15:43:58 | 8 | A.      This part right here? |
| 15:44:00 | 9 | Q.      Yes. |
| 15:44:01 | 10 | A.      Yes. |
| 15:44:01 | 11 | Q.      How often would you wipe it down? |
| 15:44:03 | 12 | A.      Once I found out about the defect, I would |
| 15:44:11 | 13 | say a couple times a week. |
| 15:44:13 | 14 | Q.      Prior to that, how frequently did you wipe it |
| 15:44:15 | 15 | down? |
| 15:44:16 | 16 | A.      I don't think I did. |
| 15:44:18 | 17 | Q.      Is it fair to say, as I understood your |
| 15:44:52 | 18 | testimony, that you basically used the sleeper until |
| 15:44:59 | 19 | you thought that Kaiden had reached a developmental |
| 15:45:02 | 20 | stage where it may no longer be safe for him? |
| 15:45:05 | 21 | A.      We -- yeah, and we used it until he |
| 15:45:09 | 22 | transferred to his crib, then pretty much were done |
| 15:45:12 | 23 | with it. |
| 15:45:14 | 24 | Q.      Because your sleeper never developed mold, |
| 15:45:36 | 25 | would you agree that you have no injury due to mold |

NICOLE KILPATRICK - 12/11/2013

1               CERTIFICATE OF REPORTER

2          I, WENDY E. ARLEN, a Certified Shorthand

3     Reporter, hereby certify that the witness in the

4     foregoing deposition was by me duly sworn to tell the

5     truth, the whole truth and nothing but the truth in the

6     within-entitled cause;

7          That said deposition was taken down in shorthand

8     by me, a disinterested person, at the time and place

9     therein stated, and that the testimony of the said

10    witness was thereafter reduced to typewriting, by

11    computer, under my direction and supervision.

12         That before completion of the deposition, review

13    of the transcript was not requested.  If requested, any

14    changes made by the deponent (and provided to the

15    reporter) during the period allowed are appended hereto.

16         I further certify that I am not of counsel or

17    attorney for either or any of the parties to the said

18    deposition nor in any way interested in the event of

19    this cause and that I am not related to any of the

20    parties thereto.

21         DATED:_____, 2013

22

23         _____

24         WENDY E. ARLEN CSR, No. 4355

25

SWANHOLT EXH. 18- 290

# EXHIBIT 19

# In The Matter Of:

*BRANDON BUTLER*

*v.*

*MATTEL, INC.*

———————————————————————————

*ELLIS, ERIN - Vol. 1*
*December 17, 2013*

———————————————————————————

**MERRILL CORPORATION**

**LegaLink, Inc.**

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

**SWANHOLT EXH. 19- 291**

ERIN ELLIS - 12/17/2013

| | | |
|---|---|---|
| 10:37:51 | 1 | you today for any reason? |
| 10:37:52 | 2 | A.      I do have a check that I could not find that |
| 10:37:57 | 3 | shows receipt of the purchase. |
| 10:38:01 | 4 | Q.      All right.  When did you purchase the |
| 10:38:13 | 5 | sleeper? |
| 10:38:13 | 6 | A.      It was the very beginning of March 2011. |
| 10:38:17 | 7 | Q.      You said you couldn't find the cancelled |
| 10:38:38 | 8 | check; is that right? |
| 10:38:38 | 9 | A.      Not a cancelled check, but the check. |
| 10:38:43 | 10 | Q.      Okay.  Do you have the check registry from |
| 10:38:49 | 11 | 2011? |
| 10:38:49 | 12 | A.      Possibly somewhere in our records. |
| 10:38:56 | 13 | Q.      Would you have written down -- I mean, I'm |
| 10:39:00 | 14 | pretty good about this.  My wife not so much.  But |
| 10:39:03 | 15 | would you have written down to whom you made the |
| 10:39:07 | 16 | check payable and the date -- |
| 10:39:09 | 17 | A.      Yes. |
| 10:39:09 | 18 | Q.      -- in the registry?  Did you -- were you the |
| 10:39:18 | 19 | person who purchased the Rock 'n Play Sleeper? |
| 10:39:21 | 20 | A.      No. |
| 10:39:22 | 21 | Q.      Did Mr. Ellis purchase it? |
| 10:39:24 | 22 | A.      No. |
| 10:39:24 | 23 | Q.      Who did? |
| 10:39:25 | 24 | A.      A friend of ours, Catherine Marvochick. |
| 10:39:45 | 25 | Q.      Did Ms. Marvochick purchase it for you as a |

ERIN ELLIS - 12/17/2013

| | | |
|---|---|---|
| 10:39:56 | 1 | gift because Emma had been born? |
| 10:39:58 | 2 | A.      No. |
| 10:39:59 | 3 | Q.      Why did Ms. Marvochick purchase the sleeper |
| 10:40:02 | 4 | for you, if you know? |
| 10:40:03 | 5 | A.      We asked her to. |
| 10:40:05 | 6 | Q.      Why did you ask her to purchase it instead of |
| 10:40:20 | 7 | going out and purchasing it yourself? |
| 10:40:21 | 8 | A.      I was just coming home from the hospital |
| 10:40:24 | 9 | after having a C-section. |
| 10:40:26 | 10 | Q.      And you said we asked.  Was it you or |
| 10:40:35 | 11 | Mr. Ellis who requested that she purchase the |
| 10:40:38 | 12 | sleeper? |
| 10:40:38 | 13 | A.      I believe it was me. |
| 10:40:40 | 14 | Q.      Did -- did Ms. Marvochick purchase the |
| 10:41:05 | 15 | sleeper with one of your checks? |
| 10:41:07 | 16 | A.      No. |
| 10:41:07 | 17 | Q.      Okay.  One of hers. |
| 10:41:09 | 18 | A.      Or her debit card.  I don't know. |
| 10:41:12 | 19 | Q.      And then you reimbursed her, I take it. |
| 10:41:17 | 20 | A.      Yes. |
| 10:41:17 | 21 | Q.      With a check. |
| 10:41:18 | 22 | A.      Yes. |
| 10:41:19 | 23 | Q.      Got it.  Do you know where your Rock 'n Play |
| 10:41:28 | 24 | Sleeper was purchased?  In what store? |
| 10:41:30 | 25 | A.      Target. |

**SWANHOLT EXH. 19- 293**

ERIN ELLIS - 12/17/2013

| | | |
|---|---|---|
| 10:41:31 | 1 | Q.       And where is the Target from which you |
| 10:41:37 | 2 | purchased -- or from which you arranged to have the |
| 10:41:40 | 3 | sleeper purchased? |
| 10:41:41 | 4 | A.       Reno, Nevada. |
| 10:41:43 | 5 | Q.       And I think this was in your declaration, but |
| 10:42:00 | 6 | the price was about $56; is that right? |
| 10:42:02 | 7 | A.       I believe so. |
| 10:42:03 | 8 | Q.       When had you first become aware of the |
| 10:42:12 | 9 | existence of a product, of the Rock 'n Play Sleeper? |
| 10:42:16 | 10 | A.       I don't remember the exact date.  Maybe a |
| 10:42:22 | 11 | month or two before our daughter was born. |
| 10:42:26 | 12 | Q.       So probably January or February of 2011; is |
| 10:42:32 | 13 | that right? |
| 10:42:32 | 14 | A.       Possibly. |
| 10:42:33 | 15 | Q.       Pardon me? |
| 10:42:34 | 16 | A.       Possibly. |
| 10:42:37 | 17 | Q.       How did you first become aware of the |
| 10:42:42 | 18 | existence of the Rock 'n Play Sleeper? |
| 10:42:44 | 19 | A.       We were looking for items in Target for our |
| 10:42:49 | 20 | daughter, and we happened to pass by the aisle that |
| 10:42:52 | 21 | had cribs, bassinets and swings set up, and we saw it |
| 10:42:58 | 22 | there. |
| 10:42:59 | 23 | Q.       And was the Rock 'n Play Sleeper set up in |
| 10:43:02 | 24 | the store so that you could -- or was it just in the |
| 10:43:07 | 25 | box? |

ERIN ELLIS - 12/17/2013

| | | |
|---|---|---|
| 10:43:08 | 1 | A.     It was set up. |
| 10:43:10 | 2 | Q.     I take it that you did -- you did not |
| 10:43:27 | 3 | purchase the sleeper on that occasion, correct? |
| 10:43:29 | 4 | A.     Yes. |
| 10:43:29 | 5 | Q.     Did you -- was there anything about the |
| 10:43:43 | 6 | sleeper that interested you when you saw it at Target |
| 10:43:46 | 7 | on this occasion? |
| 10:43:48 | 8 | A.     Yes. |
| 10:43:49 | 9 | Q.     What? |
| 10:43:49 | 10 | A.     We have an A-frame home.  Our room is on the |
| 10:43:54 | 11 | third story.  So space is limited.  We needed |
| 10:43:57 | 12 | something that would be small that could fit next to |
| 10:44:02 | 13 | my side of the bed, and I also liked the feature that |
| 10:44:07 | 14 | it could be rocked. |
| 10:44:12 | 15 | Q.     Anything else that caught your eye on that |
| 10:44:21 | 16 | first -- first trip to Target when you saw it? |
| 10:44:23 | 17 | A.     No. |
| 10:44:24 | 18 | Q.     Were you seriously considering purchasing the |
| 10:44:40 | 19 | sleeper on that occasion? |
| 10:44:41 | 20 | A.     We had thought about it. |
| 10:44:43 | 21 | Q.     When did you first seriously consider |
| 10:44:46 | 22 | purchasing it? |
| 10:44:47 | 23 | A.     When we saw it in the store the first time. |
| 10:44:52 | 24 | Q.     Okay.  After you saw it in the store for the |
| 10:45:04 | 25 | first time and when Ms. Marvochick -- |

**SWANHOLT EXH. 19- 295**

ERIN ELLIS - 12/17/2013

| | | |
|---|---|---|
| 10:45:13 | 1 | A.        Yes. |
| 10:45:13 | 2 | Q.        -- purchased it for you, did you do anything |
| 10:45:17 | 3 | further to investigate the Rock 'n Play Sleeper? |
| 10:45:21 | 4 | A.        We went home after first seeing it in Target |
| 10:45:26 | 5 | and like with most purchases, looked it up online on |
| 10:45:31 | 6 | the Target Web site to see what the star rating in |
| 10:45:36 | 7 | consumer reports or customer reports stated. |
| 10:45:40 | 8 | Q.        Had the sleeper received good reviews from |
| 10:45:53 | 9 | consumers that you saw on the target.com Web site? |
| 10:45:59 | 10 | A.        As far as I recall. |
| 10:46:01 | 11 | Q.        Did you see any consumer reviews on the |
| 10:46:18 | 12 | target.com Web site that mentioned mold? |
| 10:46:24 | 13 | A.        Not to my recollection. |
| 10:46:27 | 14 | Q.        If you had seen such a reference on the |
| 10:46:33 | 15 | target.com Web site, would you remember it? |
| 10:46:36 | 16 | A.        More than likely. |
| 10:46:40 | 17 | Q.        Did you visit any other Web site prior to the |
| 10:46:50 | 18 | purchase of your sleeper to -- that was an awful |
| 10:46:56 | 19 | question. |
| 10:46:56 | 20 |          Did you -- you said you went to the |
| 10:47:00 | 21 | target.com Web site and read about the sleeper in |
| 10:47:04 | 22 | some consumer reviews.  Did you visit any other Web |
| 10:47:07 | 23 | site with that purpose in mine? |
| 10:47:09 | 24 | A.        Not that I recall. |
| 10:47:09 | 25 | Q.        Did you conduct a Google search or any other |

**SWANHOLT EXH. 19- 296**

ERIN ELLIS - 12/17/2013

11:49:44   1   Q.        You're fortunate.  About how many hours on

11:49:48   2   average would you say that she slept in the sleeper

11:49:51   3   overnight during the time that she used it?

11:49:54   4   A.        Well, it was less frequent at first.

11:50:01   5   Anywhere from in the beginning six hours straight to

11:50:06   6   12 hours.

11:50:11   7              MR. PARKER:  Wow.

11:50:13   8              THE WITNESS:  She's a very good sleeper.  I'm

11:50:15   9   sorry.

11:50:15  10              MR. PARKER:  My four-year-old just started

11:50:18  11   sleeping through the night.

11:50:19  12              THE WITNESS:  She's a very good sleeper.

11:50:21  13   That's why I say I don't know if it was from that or

11:50:24  14   not because she's always been that way.

11:50:26  15   Q.        MR. BIERSTEKER:  Did you begin to use a

11:50:40  16   sleeper for Emma to sleep in overnight when you first

11:50:43  17   came home from the hospital?

11:50:44  18   A.        That's what I was trying to recall.  I

11:50:47  19   believe it was the first, second, third night that we

11:50:51  20   came home.  And like I had mentioned previously, part

11:50:56  21   of the reason we thought that might be a good idea

11:50:58  22   was the rocking motion.

11:51:02  23   Q.        When did Emma stop sleeping overnight in the

11:51:09  24   sleeper?

11:51:09  25   A.        It was right around six months.  So about

**SWANHOLT EXH. 19- 297**

ERIN ELLIS - 12/17/2013

| | | |
|---|---|---|
| 11:51:15 | 1 | ==August.   And that's when she was starting to sit up.== |
| 11:51:20 | 2 | Q.      You had no occasion, did you, of using the |
| 11:51:47 | 3 | sleeper -- I'm going to do this in multiple |
| 11:51:54 | 4 | questions.  I can't do it in one. |
| 11:51:55 | 5 |         The sleeper advises in information that comes |
| 11:51:58 | 6 | with it that it should not be used once a child can |
| 11:52:01 | 7 | sit up or can push up on their hands and knees, |
| 11:52:04 | 8 | right? |
| 11:52:05 | 9 | A.      I don't remember if that's something I read |
| 11:52:08 | 10 | or if that was just common sense as a mother. |
| 11:52:12 | 11 | Q.      You had no expectation of using the sleeper |
| 11:52:21 | 12 | beyond the point at which it was no longer safe for |
| 11:52:25 | 13 | Emma to use, did you? |
| 11:52:26 | 14 | A.      No, we would have only used it up until it |
| 11:52:30 | 15 | was what we thought safe. |
| 11:52:31 | 16 | Q.      And you didn't feel it was safe any longer |
| 11:52:34 | 17 | when she was able to start sitting up; is that right? |
| 11:52:38 | 18 | A.      Yes. |
| 11:52:39 | 19 | Q.      When you stopped using the sleeper, where did |
| 11:52:56 | 20 | Emma sleep overnight? |
| 11:52:59 | 21 | A.      Her crib. |
| 11:53:00 | 22 | Q.      I take it that's in a different room other |
| 11:53:03 | 23 | than your bedroom? |
| 11:53:03 | 24 | A.      Yes. |
| 11:53:04 | 25 | Q.      Did she have any difficulty transitioning |

ERIN ELLIS - 12/17/2013

| | | | |
|---|---|---|---|
| 12:02:07 | 1 | A. | It has grown since. |
| 12:02:10 | 2 | Q. | So it grew while the sleeper was in storage? |
| 12:02:14 | 3 | A. | It may have. |
| 12:02:16 | 4 | Q. | Well, where else did it grow? |
| 12:02:18 | 5 | A. | Then yes. |
| 12:02:22 | 6 | Q. | Have you ever had the sleeper tested to |
| 12:02:36 | 7 | | confirm that the spot that has grown is mold? |
| 12:02:41 | 8 | A. | No, I have not. |
| 12:02:43 | 9 | Q. | Have you ever spoken to a physician or other |
| 12:03:00 | 10 | | health care professional about the presence of what |
| 12:03:05 | 11 | | you believe is mold on your sleeper? |
| 12:03:07 | 12 | A. | No, I did not. |
| 12:03:09 | 13 | Q. | When you first saw this spot -- try that over |
| 12:03:23 | 14 | | again. |
| 12:03:24 | 15 | | When you first saw the dime or nickel sized |
| 12:03:28 | 16 | | spot on your sleeper, did you communicate about it |
| 12:03:30 | 17 | | with anybody? |
| 12:03:31 | 18 | A. | No. |
| 12:03:33 | 19 | Q. | How often did you wash in the washing machine |
| 12:03:54 | 20 | | the removable pad on the sleeper during the time when |
| 12:03:58 | 21 | | Emma was using it? |
| 12:03:59 | 22 | A. | A few times a month. |
| 12:04:02 | 23 | Q. | Apart from washing it in the washing machine, |
| 12:04:13 | 24 | | did you attempt to clean the removable pad on the |
| 12:04:17 | 25 | | sleeper in any other way? |

**SWANHOLT EXH. 19- 299**

ERIN ELLIS - 12/17/2013

```
 1              CERTIFICATE OF REPORTER
 2        I, WENDY E. ARLEN, a Certified Shorthand
 3   Reporter, hereby certify that the witness in the
 4   foregoing deposition was by me duly sworn to tell the
 5   truth, the whole truth and nothing but the truth in the
 6   within-entitled cause;
 7        That said deposition was taken down in shorthand
 8   by me, a disinterested person, at the time and place
 9   therein stated, and that the testimony of the said
10   witness was thereafter reduced to typewriting, by
11   computer, under my direction and supervision.
12        That before completion of the deposition, review
13   of the transcript was not requested.  If requested, any
14   changes made by the deponent (and provided to the
15   reporter) during the period allowed are appended hereto.
16        I further certify that I am not of counsel or
17   attorney for either or any of the parties to the said
18   deposition nor in any way interested in the event of
19   this cause and that I am not related to any of the
20   parties thereto.
21             DATED:_____, 2013
22
23             _____
24             WENDY E. ARLEN CSR, No. 4355
25
```

SWANHOLT EXH. 19- 300

# EXHIBIT 20

# In The Matter Of:

*BRANDON BUTLER*

*v.*

*MATTEL, INC.*

_____

# *ROBERTSON, HOLLY - Vol. 1*
## *October 18, 2013*

_____

**MERRILL CORPORATION**

**LegaLink, Inc.**

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

HOLLY ROBERTSON - 10/18/2013

```
 1      Q     -- 2013 to some sort of Yahoo list

 2   advising people that the recall to inspect had

 3   been announced; right?

 4      A     Yes.  It is my neighborhood parents'

 5   listserv.

 6      Q     Okay.  And then the last exhibit,

 7   Exhibit 5, appears to be a receipt from Target,

 8   and it looks as if the sleeper is one of the items

 9   purchased on that particular shopping excursion;

10   is that right?

11      A     Correct.

12      Q     And it seems to be dated May 30th,

13   2012; is that right?

14      A     Correct.

15      Q     Okay.  Is there a reason you didn't

16   produce the Fisher-Price Web site?

17      A     I believe it's changed in the time

18   since my rocker was produced, so to have printed

19   it out now would have been not representative of

20   perhaps what I saw.

21      Q     Okay.  In what ways do you believe that

22   it has changed?

23      A     Well, there's -- since the recall, I

24   believe the rocker has changed in design

25   considerably, so I would assume that the Web site
```

HOLLY ROBERTSON - 10/18/2013

1    Sleeper.

2            So, just to confirm, was it your

3    decision or Mr. Butler's decision to purchase the

4    sleeper?

5        A    It was my decision.

6        Q    Okay.  Given that Mr. Butler is -- was

7    entirely uninvolved in the decision to purchase

8    the sleeper, why is he a plaintiff in this case?

9            MR. PARKER:  Calls for speculation.

10       BY MR. BIERSTEKER:

11       Q    To the extent you know.

12       A    At the time of the recall, I had a

13   six-month-old baby and a barely two-year-old

14   little girl.  I was a very busy mom.  And I tasked

15   Brandon to reach out to J.R. and to -- to see what

16   we could do about this.

17       Q    Okay.  Is Mr. Butler having second

18   thoughts about serving as a named class

19   representative in this lawsuit?

20       A    No.

21       Q    How about about the lawsuit generally?

22       A    No.

23       Q    When did you first become aware that

24   there was even a product called the Rock 'n Play

25   Sleeper?

**SWANHOLT EXH. 20- 303**

HOLLY ROBERTSON - 10/18/2013

Page 28

```
 1        A      My friend received one at a baby shower
 2   in April 2012.   That was the first time I had seen
 3   it.
 4        Q      Was the person who gave the Rock 'n
 5   Play Sleeper as a baby shower gift in attendance
 6   at the baby shower?
 7        A      Yes.
 8        Q      And did -- did that person -- well,
 9   first of all, can you remember his or her name?
10        A      Yes.
11        Q      Okay.
12        A      Robin Sterling.
13        Q      Thank you.
14               Did Ms. Sterling -- I assume Robin is a
15   woman?
16        A      Yes.
17        Q      Okay.  Did Ms. Sterling say anything
18   about the Rock 'n Play Sleeper at the baby shower?
19        A      She said she had put it on her registry
20   and that she had heard good things about it.
21        Q      Did anybody else at the baby shower
22   echo or endorse the comments made by Ms. Sterling?
23        A      No, not that I recall.
24        Q      Did you decide -- I want to ask the
25   question differently.
```

**SWANHOLT EXH. 20- 304**

HOLLY ROBERTSON - 10/18/2013

Page 29

1          When did you decide to go ahead and get

2     a Rock 'n Play Sleeper for yourself?

3     A     About a month and a half later, about

4     mid-May 2012, after doing some research.

5     Q     How did you -- what kind of research

6     did you do?

7     A     I looked at her model.  I helped her

8     put it together.  I --

9     Q     This is the -- the recipient?

10    A     Yes.

11    Q     Okay.

12    A     And I looked at the Fisher-Price Web

13    site to understand the difference between the

14    various models that they had.  I Googled it, and I

15    remember specifically looking at the -- the blog

16    post that I brought along, but I'm sure that there

17    were others.  I just could not tell you which

18    ones.

19          And then I went to a store, and I

20    looked at it again on display.

21    Q     Did you discuss at all with Mr. Butler

22    the fact that you were looking into the Rock 'n

23    Play Sleeper at the time?

24    A     I'm sure I did, but probably the most

25    he learned about it was when I said, pick that up

**SWANHOLT EXH. 20- 305**

HOLLY ROBERTSON - 10/18/2013

Page 30

```
 1    and put it in the cart, at Target.

 2         Q      Okay.  Now, you said you visited the

 3    Fisher-Price Web site and looked at the different

 4    models --

 5         A      Uh-huh.  Yes.

 6         Q      -- of the sleeper; is that right?

 7         A      Yes.

 8         Q      Did you put any of the different models

 9    of the sleeper into your basket that -- that

10    exists on the -- on the Web site?

11         A      I don't think so.

12         Q      Okay.  Or shopping cart, I think it's

13    called.

14         A      I don't think I would have wanted to

15    use the Fisher-Price way of buying it.  I wanted

16    to buy it in a store to be able to see it.

17         Q      Okay.  And you certainly didn't proceed

18    to check out on the Fisher-Price.com Web site with

19    the sleeper as one of your shopping cart items; is

20    that correct?

21         A      Correct.  I did not buy it from the

22    Fisher-Price Web site.

23         Q      Isn't it true that it is only when you

24    put a product in your shopping cart and proceed to

25    check out that one sees any warranty information
```

**SWANHOLT EXH. 20- 306**

HOLLY ROBERTSON - 10/18/2013

Page 31

1    for any product on the Fisher-Price.com Web site?

2              MR. PARKER:  Lacks foundation; calls

3    for speculation.

4        BY MR. BIERSTEKER:

5        Q      "I don't know" is an answer.

6        A      I don't know.

7        Q      Thank you.

8              You did not see the waran- -- any

9    warranty on the Fisher-Price.com Web site; is that

10   true?

11       A      I don't know.

12       Q      If you had -- if -- if the existence of

13   a warranty on the Fisher-Price.com Web site for

14   the Rock 'n Play Sleeper was an important

15   consideration in your decision to purchase it, you

16   would remember whether or not you saw it; isn't

17   that true?

18             MR. PARKER:  Incomplete hypothetical;

19   calls for speculation; lacks foundation.

20             THE WITNESS:  If there was a warranty

21   on the Web site, I don't remember.  But I do

22   remember that -- thinking this is a Fisher-Price

23   item; this is not a no-brand item.  That carries a

24   certain sort of confidence having had other

25   Fisher-Price items and knowing their reputation

SWANHOLT EXH. 20- 307

HOLLY ROBERTSON - 10/18/2013

Page 32

1    for baby and children's products.

2        BY MR. BIERSTEKER:

3        Q       Since January of 2013, have you

4    acquired any Fisher-Price products?

5        A       I'm sure.   It's a tidal wave of toys at

6    our house.

7        Q       At any time prior to your acquisition

8    of the sleeper, did you visit the Wal-Mart.com Web

9    site?

10       A       No.

11       Q       You indicated that you had Googled the

12   product, as I recall.

13       A       Correct.

14       Q       Were you -- did you have a particular

15   objective in mind, such as consumer reviews or

16   other information, that you were trying to get to

17   about the product?

18       A       I was looking for both independent

19   consumer reviews and to better understand the

20   product features and, again, the differences

21   between the models.

22       Q       Did you visit Amazon.com as part of

23   your review?

24       A       I don't recall.

25       Q       Do you remember looking at any consumer

**SWANHOLT EXH. 20- 308**

HOLLY ROBERTSON - 10/18/2013

Page 33

1      reviews on Amazon.com?

2          A      I don't -- I don't recall visiting the

3      Amazon site, so, accordingly, I don't recall

4      looking at the consumer reviews.

5          Q      I thought it might jog your

6      recollection.  That's all.

7                 When you looked at consumer reviews,

8      did you just -- did you actually read them or did

9      you just look at how many stars, say, for example,

10     they may have given or not given to the product?

11         A      I was looking for not product reviews,

12     but I find blog posts to be a good way of getting

13     information on children's products.

14         Q      Do you remember visiting any retailer's

15     Web site for the Rock 'n Play Sleeper other than

16     Fisher-Price.com, I guess?

17         A      No.

18         Q      Why did you purchase the sleeper?

19         A      I wanted something that would keep a

20     baby at eye level.  The sleeper is a lot different

21     from the bouncy chairs, if you will, that are very

22     popular for newborns.  I wanted something that

23     would keep the baby inclined, up off the floor.

24                 We have two dogs, a toddler, and I

25     wanted something that was comfortable for the

**SWANHOLT EXH. 20- 309**

HOLLY ROBERTSON - 10/18/2013

Page 55

```
 1        Q     Okay.  Instruction --

 2        A     -- no.

 3        Q     -- booklet.  Okay.

 4        A     Yeah.

 5        Q     Did you start using your sleeper

 6   immediately after Sam was born, I believe you

 7   said, on July 1st, 2012?

 8        A     Yes, I did.

 9        Q     Okay.  When did Sam begin to push up on

10   hands and knees?

11        A     Late.  Not until nine -- eight --

12   around eight months.

13        Q     When was he able to pull up or sit even

14   for brief periods of time unassisted?

15        A     About the same time, seven, eight

16   months.

17        Q     When did you stop using your sleeper?

18        A     At the time of the recall to inspect.

19   Immediately.

20        Q     So, at that time, he would have been --

21        A     Just six months.

22        Q     -- six months, a little -- six months

23   plus; right?

24        A     Yes.

25        Q     Did you use the sleeper even once after
```

**SWANHOLT EXH. 20- 310**

HOLLY ROBERTSON - 10/18/2013

```
 1    environments.  So we'd either do the bassinet or

 2    sometimes the crib or -- we would try anything.

 3         Q     Is it true that on either the 8th when

 4    the recall to inspect was announced or the 9th

 5    when you -- I guess you heard it -- is that the

 6    first time that you discovered that your sleeper

 7    had what you believed to be mold?

 8         A     Yes.

 9         Q     Where -- I was looking at it earlier,

10    but where on the sleeper do you think you first

11    saw mold?

12         A     The mold is on the -- what they call

13    the frame of the sleeper on the fabric that is

14    above the plastic support piece.

15         Q     And it looked to me that it was not

16    where the baby's bottom would rest but a little

17    bit further up.

18               Would you agree with that?

19         A     I have to look at it.  Can I get up

20    and --

21         Q     Yeah --

22         A     -- look --

23         Q     -- sure.

24         A     -- at it --

25         Q     Abso- --
```

**SWANHOLT EXH. 20- 311**

HOLLY ROBERTSON - 10/18/2013

Page 69

```
1        A       -- real quick?

2        Q       -- -lutely.

3                Here, I'll actually get it for you so

4   you don't have to move as much.

5        A       Okay.

6        Q       There you go.

7        A       Yes.  Yeah.  So, yes, you're correct.

8   It is on the part where -- that would face his

9   back and head.

10       Q       Did you discover what you believed to

11  be mold on your sleeper by removing the pad?

12       A       Yes.

13       Q       Did you remove the pad on that occasion

14  because the recall to inspect had been announced

15  and you heard it?

16       A       Yes.

17       Q       Had you removed the pad from the

18  sleeper before then?

19       A       Dozens of times to wash it.

20       Q       When you did so on the previous

21  occasions, did you see any mold or mildew

22  stains -- what you thought were mild- -- mold or

23  mildew stains on the sleeper?

24       A       No, I did not notice anything.

25       Q       How long had it been since you -- how
```

HOLLY ROBERTSON – 10/18/2013

```
1              REPORTER'S CERTIFICATE
2              I, Dana C. Ryan, Certified Shorthand
3    Reporter, hereby certify that the deponent was by
4    me first duly sworn and the foregoing testimony
5    was reported by me and was thereafter transcribed
6    with computer-aided transcription; that the
7    foregoing is, to the best of my ability, a full,
8    complete, and true record of said proceedings.
9              I further certify that I am not of
10   counsel or attorney for either or any of the
11   parties in the foregoing proceedings and caption
12   named or in any way interested in the outcome of
13   the cause in said caption.
14              The dismantling, unsealing, or
15   unbinding of the original transcript will render
16   the reporter's certificate null and void.
17              In witness whereof, I have hereunto set
18   my hand this day: October 31, 2013.
19   ____X_____ Reading and Signing was requested.
20   _____ Reading and Signing was waived.
21   _____ Reading and Signing was not requested.
22
23
24   _____
25   NOTARY PUBLIC IN AND FOR THE
     DISTRICT OF COLUMBIA
```

SWANHOLT EXH. 20- 313

# EXHIBIT 21

**The New York Times** Reprints

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.



March 14, 2011

# Harnessing the Power of the Mom Blogger

### By PRADNYA JOSHI

THE latest advice on child-rearing, baby products and prenatal yoga stretches is not being found in conversations over the picket fence but rather in Twitter messages, blog rolls and on Facebook walls. To that end, marketers have been increasingly harnessing the power of mothers online to reach their intended audiences for products.

Whether it's building brand awareness or promoting television shows, advertising industry experts say that they are finding that the mother blogger niche is active, loyal and deeply involved with spreading its messages. And, the wealth of demographic information available about online users allows for better directed campaigns, marketers say.

The mother bloggers can become "ambassadors of brands," said Sarah Hofstetter, senior vice president for emerging media and brand strategy at 360i, a digital agency owned by Dentsu, the Japanese advertising agency. "These mom bloggers have tremendous personality and tremendous opinions."

The analysis firm eMarketer estimated that in 2010, there were more than 3.9 million women with children who were bloggers. In a recent report, eMarketer said that mothers were more likely to visit blogs than users in general, particularly to seek advice on parenting issues, and that the popularity of social media like Twitter and Facebook was helping to drive traffic to their postings.

"Advertisers are extremely interested in integrating 'social' into their advertising campaigns, and for certain brands, it can work really well," said Megan Calhoun, a mother of two and founder of SocialMoms, a 30,000-member community of mother bloggers, which previously was called Twitter Moms.

But as many marketers have discovered, harnessing mothers who blog for their campaigns is not as simple as asking them to encourage their followers to "buy this product." After trial and error, marketers have realized that the public can react negatively to overt marketing messages in many social media settings.

**SWANHOLT EXH. 21- 314**

Case 2:13-cv-00306-DSF-SS   Document 80-7   Filed 01/17/14   Page 138 of 259   Page ID
#:2175

In addition, the Federal Trade Commission has now imposed full-disclosure conditions on marketers online. As a result, advertisers are finding that subtle approaches work better on campaigns.

"It's not just about pushing a brand out there, but to get a two-way conversation going," said Thomas Donovan, interactive manager with Haworth Media.

Haworth, an independent agency, last September conducted a brand-awareness campaign for Mrs. Meyer's Clean Day products, owned by a subsidiary of S. C. Johnson & Son. It worked with Mrs. Meyer's, which makes environmentally friendly cleaning products that are sold in stores like Target, to increase the brand's visibility among consumers. The agency devoted 52 percent of its initial introduction budget to online media, and a big part involved the SocialMoms network.

On behalf of Mrs. Meyer's, the site, under its previous name Twitter Moms, put out a call for submissions to its network, asking bloggers for their best ideas for a "cleaner, greener home."

The bloggers didn't need to mention a single Mrs. Meyer's product in their posts or messages. In fact, many of the ideas that were part of the campaign were age-old conventional remedies.

One blogger advised readers to use baking soda to clean pet stains on carpets, while the mother who runs the Canning With Kids blog sent a message suggesting that readers "decorate with plants that clean the air." The bloggers' Twitter messages all carried the #mrsmeyers hashtag, which allowed the company to track what messages were going where.

"People were re-tweeting things that they found useful; green tips are points of passion for people," said Jim Calhoun, creative director at SocialMoms and Ms. Calhoun's husband.

The 53 bloggers in the network who were selected to participate in the campaign were given $50 Target gift cards. They in turn had an average of 1,762 Twitter followers, many of whom forwarded messages to others.

The one-month campaign resulted in 7.68 million Twitter views as well as millions more through blog rolls and display ads, Mr. Calhoun said.

Other campaigns involving the SocialMoms network recently included promotions for the juice Simply Orange, inviting mother bloggers to talk about "simple changes" they want to make in their lives.

**SWANHOLT EXH. 21- 315**

Case 2:13-cv-00306-DSF-SS   Document 80-7   Filed 01/17/14   Page 139 of 259   Page ID #:2176

A current campaign on the site is for the Hershey Company, which started a promotion soliciting blog posts of 400 words or more on "ways you share happiness with those around you" as part of a tie-in for a new product called Hershey's Drops.

"We are huge believers in paying moms for writing a thoughtful blog post on a topic of discussion," Megan Calhoun said, adding that the SocialMoms network required participants to follow the F.T.C. disclosure rules.

Even as many campaigns have found that Twitter is a great word-of-mouth strategy, other avenues of social media like Facebook are becoming more important, Ms. Calhoun said. Also, video blogs, display ads and online surveys are all integral parts of promotions on the sites.

"Brands are really mixed on Twitter," Ms. Calhoun said, partly because of the 140-character limit on posts. "Facebook is much safer for brands because it gives them a lot of control," she said.

Ultimately, marketers are hoping that by getting consumers via social media, they will engage their audience and tailor their messages.

"You can get rich information back," Mr. Calhoun said.

SWANHOLT EXH. 21- 316

**EXHIBIT 22**

A LAS VEGAS EXPERIENCE UNLIKE ANY OTHER! SUITES FROM $149/night BEGINS HERE! THE VENETIAN LAS VEGAS FIND US ON

CONNECT

Site
Web

Search WFLA.com                               GO

# Dunedin woman says 'Mommy' blogs hit the target

*Posted: Dec 10, 2013 12:13 PM PST*
*Updated: Jan 07, 2014 1:10 PM PST*

By Stacie Schaible - **bio** | **email**

TAMPA, FL - Blogs are growing in popularity and you can find a blog on just about any topic imaginable.

Three-quarters of internet users read blogs and the majority of bloggers are women.
One segment of those female bloggers, whose opinions are highly sought after, are mommy bloggers.
They have become so popular and influential that there are sites dedicated solely to aggregating that content. Sites like
Top mommy blogs.com where you can sift through the categories and find most any blog topic you want.

Social media strategist Deborah Shane, of Dunedin, is big into the blogosphere and explains why mommy bloggers are such a big deal.
"They are brand advocates. They are sought after by companies because they write about product and services that they use everyday in their families," says Shane.

According to Social Media Today, 61 percent of U.S. consumers have made a purchase based on a blog post. That might explain why some mommy bloggers are now making money at what might have started out as just a hobby.

Deborah Shane says, "Mommy bloggers are the stay at home moms who are raising their families but they want to either make a little more money or have something meaningful to do during the day."

Anyone can start a blog according to Shane. "If you can have a conversation with somebody then you can have a blog. It's a place where you can go to share ideas, thoughts, resources, information in a more personal, personable way."

Three of the easiest spots to start a blog, according to Shane, are Wordpress, Tumblr or Weebly.

*Don't miss out on the day's top Facebook conversations **http://on.fb.me/18y81Cl***

**SWANHOLT EXH. 22- 317**

ARTICLES AND OFFERS YOU JUST MIGHT LIKE                                        ADVERTISEMENT


Mountain View arrest records. Who do you know?


( California): This 1 weird "loophole" has become the car insurance companies worst nightmare!


If you don't speak Spanish, you should see this video to learn this one sneaky linguistic trick...


Buying an annuity? Wait until you learn the secret to 8% guaranteed for life


2013: The Best Sunless Tanners: You Won't Believe The Results


Mountain View - All California drivers should not pay their insurance bill, until they read this.


Frenzy over new "skinny pill". This Celeb doctor calls it the newest, fastest, fat buster...


2013: The Best Sunless Tanners: You Won't Believe The Results



Can't find something?                    Search for it here

200 South Parker Street, Tampa, FL 33606

Telephone: 813.228.8888
Fax: 813.225.2770
Email: news@wfla.com

Contact Us · Media General Terms and Conditions of Use ·

Advertising Terms and Conditions and Credit Policy · Work With Us · FCC Public File ·

For problems with the FCC Public File · EEO Public Filings ·

Children's Programming · Closed Captioning



All content © Copyright 2000 - 2014 Media General Communications Holdings, LLC. A Media General Company.

SWANHOLT EXH. 22- 318

# EXHIBIT 23

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**ALABAMA**
*Deceptive Trade Practices Act*
**Ala. Code § 8-19-1 *et seq.***

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action.** Ala. Code § 8-19-10. *Ex Parte Exxon Corp., 725 So. 2d 930, 933 (Ala. 1998); Billions v. White & Stafford Furniture Co.,* 528 So. 2d 878, 880 (Ala. Civ. App. 1988). **Class actions prohibited unless by attorney general.** Ala. Code § 8-19-10(f); *University Federal Credit Union v. Grayson,* 878 So. 2d 280, 284 n.2 (Ala. 2003) | **1 year from discovery, but no later than 4 years – unless the contract or warrant is for more than 3 years then no more than 1 year from the date of expiration or more than 1 year after discovery** Ala. Code § 8-19-14. | **"Monetary damage" required.** Ala. Code § 8-19-10(a)(1). *Billions v. White & Stafford Furniture Co.,* 528 So. 2d 878, 880 (Ala. Civ. App. 1988). | **Misconduct must cause "monetary damage."** Ala. Code § 8-19-10(a) *Billions v. White & Stafford Furniture Co.,* 528 So. 2d 878, 880 (Ala. Civ. App. 1988). | **Materiality required.** *F.T.C. v. Accent Mktg., Inc.,* 2002 WL 31257708 (S.D. Ala. July 1, 2002) | **Defense to action if defendant "did not knowingly" commit violation of the act.** Ala. Code § 8-19-13; *Strickland v. Katko Mfg., Inc.,* 512 So. 2d 714, 718 (Ala. 1987); *Sam v. Beaird,* 685 So. 2d 742, 744 (Ala. Ct. App. 1996). | **Greater of actual damages or $100; up to three times actual damages in discretion of court; no prejudgment interest unless recovery based in contract; punitive damages available.** Ala. Code § 8-19-10(a)(1), (2); *Orkin Exterminating Co., Inc. v. Jeter,* 832 So. 2d 25, 43 (Ala. 2001); Ala. Code § 8-8-10. |

1

SWANHOLT EXH. 23- 319

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**ALASKA**
*Unfair Trade Practices and Consumer Protection Act*
**Alaska Stat. § 45.50.471 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action permitted.** Alaska Stat. § 45.50.531(a) **Class actions arguably allowed.** *Neese v. Lithia Chrysler Jeep of Anchorage, Inc.*, 210 P.3d 1213 (Alaska 2009); *Weimer v. Continental Car & Truck, LLC*, 237 P.3d 610 (Alaska 2010). | **2 years from discovery.** Alaska Stat. § 45.50.531(f) | **Actual deception not required, but "ascertainable loss of money or property" is required for a private right of action.** Alaska Stat. §§ 45.50.471(b)(12), 45.50.531(a). "**Actual injury as a result of the deception is not required. Intent to deceive need not be proved. All that is required is a showing that the acts and practices were capable of being interpreted in a misleading way.**" *State v. O'Neill Investigations Inc.*, 609 P.2d 520, 534–35 (Alaska 1980) (internal citations omitted); *see Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 132 (Alaska 2000). | **Right of action requires "ascertainable loss" incurred "as a result of" violation.** Alaska Stat. § 45.50.531(a). "**Actual injury as a result of the deception is not required. Intent to deceive need not be proved. All that is required is a showing that the acts and practices were capable of being interpreted in a misleading way.**" *State v. O'Neill Investigations Inc.*, 609 P.2d 520, 534–35 (Alaska 1980) (internal citations omitted); *see Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 132 (Alaska 2000). | **The terms "unfair methods of competition" and "unfair or deceptive acts or practices" include, but are not limited to, the following acts:** **using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a** *material fact* **with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged:** Alaska Stat. § 45.50.471(b)(12). | "**Intent to deceive need not be proved.**" *State v. O'Neill Investigations Inc.*, 609 P.2d 520, 535 (Alaska 1980) **Intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods needed.** Alaska Stat. § 45.50.471(b)(12). | **Greater of three times actual damages or $500; prejudgment interest not exempted; discretionary punitive damages allowed; attorney's fees allowed; injunctive relief available.** Alaska Stat. §§ 45.50.531(a), (i); 45.50.535; Alaska Stat. § 09.30.070; Alaska Rule of Civil Procedure 82(a). **Treble damages available for willful violations.** *State v. O'Neill Investigations Inc.*, 609 P.2d 520, 524 (Alaska 1980). |

2

SWANHOLT EXH. 23- 320

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**ARIZONA**
*Consumer Fraud Act*
**Ariz. Rev. Stat. Ann. § 44-1521 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| Private right of action and class actions permitted. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1122 (Ariz. 1974). | 1 year from discovery. Ariz. Rev. Stat. Ann. § 12-541(5). *Murry v. W. Am. Mortg. Co.*, 604 P.2d 651, 654 (Ariz. Ct. App. 1979); *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1381 (Ariz. Ct. App. 1994). | Actual damage or injury required. *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992) | Reliance required, but it need not be reasonable; proximate causation of injury also required. 803 F. Supp. 237, 242 (D. Ariz. 1992) [reliance]; *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004) [proximate cause]; *Holeman v. Neils, Dunpal v. Jimmy GMC of Tuscon, Inc.*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983) [proximate cause]. | Prohibits use or employment of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation or concealment of a "material" fact. Ariz. Rev. Stat. Ann. § 44-1522(A). | Wrongful concealment must be with "intent that others rely." Ariz. Rev. Stat. Ann. § 44- 1522(A). Specific intent not required; intent to do the act is sufficient. *Flagstaff Med. Ctr., Inc. v. Sullivan*, 773 F. Supp. 1325, 1361-62 (D. Ariz.1991), *aff'd in part, rev'd in part by* 962 F.2d 879 (9th Cir. 1992); *State v. Goodyear Tire & Rubber Co.*, 626 P.2d 1115, 1118 (Ariz. Ct. App. 1981); *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1380 (Ariz. Ct. App. 1994). | Permits compensatory damages. *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992) No statutory damages in private action. *Peery v. Hansen*, 585 P.2d 574, 578 (Ariz. Ct. App. 1978). Punitive damages if violation is wanton, reckless, or involves "spite or ill will." *Holeman v. Neils*, 803 F. Supp. 237, 242-43 (D. Ariz. 1992); *Howell v. Midway Holdings, Inc.*, 362 F. Supp. 2d 1158, 1165 (D. Ariz. 2005); *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 680 (Ariz. 1986). Attorney's fees if fraud claim "arises out of contract" and in discretion of court. Ariz. Rev. Stat. Ann. § 12-341.01(A) (2011); *Bennett v. Appaloosa Horse Club*, 35 P.3d 426, 432 (Ariz. Ct. App. 2001) [contract]. |

3

SWANHOLT EXH. 23- 321

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**ARKANSAS**
*Deceptive Trade Practices Act*
**Ark. Code Ann. §§ 4-88-101 et seq., 4-88-201 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action for "any person" actually injured.** Ark. Code Ann. § 4-88-113(f). **Class actions permitted.** *Lenders Title Co. v. Chandler*, 186 S.W.3d 695 (Ark. 2004). | **5 years from violation.** Ark. Code Ann. § 4-88-115. | **"Actual damage or injury" required.** Ark. Code Ann. §§ 4-88-113(f); Ark. Code Ann. § 4-88-204. | **Right of action requires "actual damage or injury" incurred "as a result of" a violation of the act.** Ark. Code Ann. § 4-88-113(f). | **Prohibits "act, use, or employment by any person of any deception, fraud, or false pretense" or concealment of a "material" fact.** Ark. Code Ann. § 4-88-108(1)–(2). | **Prohibits "knowingly" making false representations of "benefits" of product.** Ark. Code Ann. § 4-88-107(a)(1). **Prohibits "act, use, or employment by any person of any deception, fraud, or false pretense" or concealment with "intent that others rely."** Ark. Code Ann. § 4-88-108(1)–(2). | **Allows only compensatory damages and reasonable attorney's fees.** Ark. Code Ann. § 4-88-113(f). **Allows punitive damages for elderly and disabled persons.** Ark. Code Ann. § 4-88-204. |

4

**SWANHOLT EXH. 23- 322**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**CALIFORNIA**
*Consumers Legal Remedies Act*
**Cal. Civ. Code § 1750 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class action permitted.** Cal. Civ. Code §§ 1780 [private right of action]; 1781 [class action]. **Private right of action limited to consumers who purchased product for "personal, family or household purposes."** Cal. Civ. Code § 1761(d). | **3 years from date of improper practice.** Cal. Civ. Code § 1783. | **"Any damage" required.** Cal. Civ. Code § 1780(a). | **Causation required as damages must be "as result of" the unlawful practice.** Cal. Civ. Code § 1780(a). **Reliance required where claim is based on fraudulent conduct.** *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 807–08 (2008), *disapproved on other grounds, Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) **Only permits a class wide inference of causation and reliance where a single, material misrepresentation was directly made to each class member.** *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971); *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616 (S.D. Cal. 2007). | **Materiality required.** *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 667 (1993). **"A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment. Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have acted as he did. 'It must be shown that the plaintiff actually relied upon the misrepresentation; i.e., that the representation was an immediate cause of his conduct which alters his legal relations, and that without such representation, he would not, in all reasonable probability, have entered into the contract or other transaction.'"** *Lacher v. Superior Court*, 230 Cal. App. 3d 1038, 1049 (Cal. App. 4th Dist. 1991) (quoting *Okun v. Morton*, 203 Cal.App.3d 805, 828 (1988)). | **No scienter requirement.** Cal. Civ. Code § 1770(a). **Violation must be intentional for damages.** Cal. Civ. Code § 1784. | **Greater of actual damages or $1,000 in a class action; injunctive relief permitted; punitive damages allowed.** Cal. Civ. Code § 1780(a). **Attorney's fees available.** Cal Civ. Code § 1780(e). |

5

**SWANHOLT EXH. 23- 323**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

CALIFORNIA (Cont.)
*False Advertising Law*
Cal. Bus. & Prof. Code § 17500 et seq.

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| The California Unfair Business Practices Act permits any person acting for the interests of itself, its members or the general public to initiate an action for restitutionary and/or injunctive relief against a person or business entity who has engaged in any unlawful, unfair or fraudulent business act or practice or unfair, deceptive, untrue or misleading advertising or any act prohibited by Chapter 1 (commencing with Cal. Bus. & Prof. Code § 17500 (false advertising)). *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1182 (N.D. Cal. 2001). | 3 years for false advertising claims. Cal. Bus. & Prof. Code § 17500 (False Advertising Act); Cal. Civ. Proc. Code §§ 338(a),(h). | Under the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, consumers must allege that they suffered damages as a result of the use or employment by any person of a method, act, or practice declared to be unlawful pursuant to the statute. *In re Toyota Motor Corp.*, 790 F.Supp.2d 1152 (C.D. Cal. 2011). The court may order relief without individualized proof of deception, reliance, and injury if it determines that such a remedy is necessary to prevent the use or employment of the unfair practice. *People v. Dollar Rent-A-Car Sys.*, 211 Cal. App. 3d 119, 129-31 (1989). | Under B & P C § 17500, which prohibits public use of untrue or misleading statements, a statement is false or misleading if members of the public are likely to be deceived. The statute affords protection against the probability as well as the actuality of deception or confusion. *People v. Toomey*, 157 Cal. App. 3d 1, 16 (1984). Under the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq., consumers must allege that they suffered damages as a result of the use or employment by any person of a method, act, or practice declared to be unlawful pursuant to the statute. *In re Toyota Motor Corp.*, 790 F.Supp.2d 1152, 1169 (C.D. Cal. 2011). | An inference of reliance would arise as to an entire class as long as material misrepresentations were made to the class members. Materiality of the alleged misrepresentation generally is judged by a reasonable man standard, meaning that a misrepresentation is deemed material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question. *In re Toyota Motor Corp.*, 790 F.Supp.2d 1152, 1169 (C.D. Cal. 2011). | A violation of this statute may be committed without any specific intent to deceive. *People v. Wahl*, 39 Cal. App. 2d Supp. 771, 773 (1940). "[S]ection 17500 is phrased in broad language . . . irrespective of its truth or falsity, any statement which is deceptive or merely misleading, without intent to deceive, violates the statute." (internal quotation omitted.) *People ex rel. Mosk v. Lynam*, 253 Cal.App.2d 959, 966 (1967). | Private individuals bringing suit are limited to restitution and equitable relief under Cal Bus & Prof Code § 17536. *Chern v. Bank of America*, 15 Cal. 3d 866, 876 (Cal. 1976) [injunctive relief]; *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1181 (N.D. Cal. 2001) [restitution]. |

SWANHOLT EXH. 23- 324

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

CALIFORNIA (Cont.)
*Unfair Competition Law*
Cal. Bus. & Prof. Code § 17200 et seq.

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action permitted for those injured as a result of defendant's conduct.** Cal. Bus. & Prof. Code § 17204. | **4 years from accrual of action.** Cal. Bus. & Prof. Code § 17208. | **Actual injury required for named plaintiffs.** Cal. Bus. & Prof. Code § 17204. *In re Tobacco II Cases,* 46 Cal. 4th 298, 306 (2009). | **Named plaintiffs must establish causation and actual reliance in accordance with principles of ordinary fraud actions.** *In re Tobacco II Cases,* 46 Cal. 4th 298, 306 (2009). **A class action under the UCL requires that a defendant have engaged in uniform conduct likely to mislead the entire class.** *Tucker v. Pac. Bell Mobile Servs.,* 208 Cal. App. 4th 201, 227-28 (2012). *Davis-Miller v. Auto. Club,* 201 Cal. App. 4th 106, 121 (2011). *Fairbanks v. Farmers New World Life Ins. Co.,* 197 Cal. App. 4th 544, 562 (2011). *Pfizer Inc. v. Super. Ct.,* 182 Cal. App. 4th 622, 631 (2010). | **A misrepresentation is material if a reasonable person would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction in question.** *In re Tobacco II Cases,* 46 Cal. 4th 298, 327 (2009). | **No scienter required.** *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 591 (9th Cir. 2012). . | **Only equitable relief, including restitution. Attorney fees and damages, including punitive damages, are not available under the UCL.** Cal. Bus. & Prof. Code § 17203. *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1147-48 (2003). |

SWANHOLT EXH. 23- 325

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**COLORADO**
*Consumer Protection Act*
**Colo. Rev. Stat. Ann. § 6-1-101 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class action permitted.**<br><br>Colo. Rev. Stat. Ann. § 6- 1-113; *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59 (Colo. 2005); *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). | 3 years from longer of violation or discovery, plus 1 year if defendant caused delay.<br><br>Colo. Rev. Stat. Ann. § 6-1-115; *Robinson v. Lynmar Racquet Club, Inc.*, 851 P.2d 274, 281 (1993). | Requires "injury in fact."<br><br>*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).<br><br>Colo. Rev. Stat. Ann. § 6-1-113(1)(a). | **"[F]alse representation must either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers."**<br><br>*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003).<br><br>**Requires "that the challenged practice caused the plaintiff's injury."**<br><br>*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998). Colo. Rev. Stat. Ann. § 6-1-113(1)(a). | **A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person . . . Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.**<br><br>Colo. Rev. Stat. Ann. 6-1-105(1)(u) | **Certain violations, including falsely representing "benefits" of a product, must be made "[k]nowingly."**<br><br>Colo. Rev. Stat. Ann. § 6-1-105(l)(e), (g), (u). | **In a class action, only actual damages are permitted.**<br><br>Colo. Rev. Stat. Ann. § 6-1-113(2)(a).<br><br>**In an individual action, there is a statutory minimum of $500; three times the amount of actual damages sustained; attorney fees.**<br><br>Colo. Rev. Stat. Ann. § 6- 1-113(1), (2)<br><br>**Reasonable attorney's fees allowed.**<br><br>Colo. Rev. Stat. Ann. § 6-1-113(2), (3). |

8

SWANHOLT EXH. 23- 326

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**CONNECTICUT**
*Unfair Trade Practices Act*
**Conn. Gen. Stat. Ann. § 42- 110a et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action, but class action permitted only on behalf of Connecticut Residents or individuals injured in Connecticut.**<br><br>Conn. Gen. Stat. Ann. § 42-110g(b). | **3 years "after the occurrence of a violation."**<br><br>Conn. Gen. Stat. Ann. § 42-110g(f). | **Requires "ascertainable loss of money" for private right of action.**<br><br>Conn. Gen. Stat. Ann. § 42-110g(a). | **Reliance not required.**<br><br>*Izzarelli v. R.J. Reynolds Tobacco Co.,* 117 F. Supp. 2d 167, 176 (D. Conn. 2000); *Solomon v. WMN Assocs., Inc.,* 1994 WL 597390, at \*6 (Conn. Super. Ct., Oct. 20, 1994). | **Materiality apparently not required because misrepresentation need not be part of the basis of the bargain.**<br><br>*Izzarelli v. R.J. Reynolds Tobacco Co.,* 117 F. Supp. 2d 167, 176 (D. Conn. 2000). | **Intent to deceive not required.**<br><br>*Calandro v. Allstate Ins. Co.,* 778 A.2d 212, 221 (Conn. App. Ct. 2001); *Muniz v. Kraus,* 757 A.2d 1207, 1214 (Conn. App. Ct. 2000); *Cheshire Mortg. Serv., Inc. v. Montes,* 612 A.2d 1130, 1144 (Conn. 1992). | **Permits actual and injunctive relief; punitive damages and attorney's fees within discretion of court.**<br><br>Conn. Gen. Stat. Ann. § 42- 110g(a), (d).<br><br>**Punitive damages dependent on proof of "reckless indifference to the rights of others or an intentional or wanton violation of those rights."**<br><br>*Gargano.* v. *Heyman,* 525 A.2d 1343, 1347 (1987). |

9

**SWANHOLT EXH. 23- 327**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**DELAWARE**
*Consumer Fraud Act*
**Del. Code Ann. tit. 6, § 2511 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class action permitted to "any victim of a violation" of Subchapter II.** Del. Code Ann. tit. 6, § 2525; *Young v. Joyce,* 351 A.2d 857, 859 (Del. 1975) | **3 years from discovery.** Del. Code Ann. tit. 10, § 8106 (any action for damages); *Pender v. DaimlerChrysler Corp.,* 2004 WL 2191030, at *1 (Del. Super. Ct July 30, 2004). | **Injury not required element under the act.** Del. Code Ann. tit. 6, § 2513(a). **Monetary recovery is based on damages.** *Crosse v. BCBSD, Inc.,* 836 A.2d 492, 497 (Del. 2003); *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1077 (Del. 1983). | **Reliance not required.** *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del. 1983); *S & R Assocs. v. Shell Oil Co.,* 725 A.2d 431, 440 (Del. Super. Ct. 1998). | **The Plaintiff need only prove that the Defendant intentionally concealed material facts with the intent that others would rely upon such concealment** *S&R Assocs., L.P., III v. Shell Oil Co.,* 725 A.2d 431, 440 (Del. Super. Ct. 1998) | **Neither intent to make a deceptive or untrue statement nor intent to induce reliance required, but concealment claims require intent that others rely on omission or concealment.** *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del. 1983). | **Actual damages allowed; punitive damages allowed only in cases where compensatory damages are available and where the fraud was gross, oppressive, and aggravated or involves a breach of a trust or confidence.** *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1077 (Del. 1983). **Injunctive relief permitted.** Del. Code Ann. tit. 6, § 2523. |

10

SWANHOLT EXH. 23- 328

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**DISTRICT OF COLUMBIA**
*Consumer Protection Procedures Act*
**D.C. Code § 28- 3901 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| Private right of action and class actions allowed.<br>D.C. Code Ann. § 28-3905(k)(1)(A). | 3 years.<br>D.C. Code Ann. § 12-301(8). | No actual deception or damage required.  A merchant may violate the act "whether or not any consumer is in fact misled, deceived or damaged thereby."<br>D.C. Code Ann. § 28-3904.<br>The district courts have standing requirements identical to those in Article III, requiring plaintiffs to suffer actual injury.<br>*Friends of Tilden Park, Inc. v. Dist. of Columbia*, 806 A. 2d 1201, 1206-07 (D.C. 2002). | A merchant may violate the act "whether or not any consumer is in fact misled, deceived or damaged thereby."<br>D.C. Code Ann. §28-3904. | Misrepresentation must be material and have tendency to mislead.<br>D.C. Code Ann. § 28-3904(e). | Undecided. | Once a consumer shows damages, the consumer may receive treble damages or $1,500 per violation, whichever is greater; attorney's fees; punitive damages in cases of outrageous or egregious wrongdoing proven "by clear and convincing evidence"; and an injunction.<br>D.C. Code Ann. § 28-3905(k)(1).<br>*District Cablevision Ltd. P'ship* v. *Bassin,* 828 A.2d 714, 725-26, 728 (D.C. 2003). |

11

SWANHOLT EXH. 23- 329

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**FLORIDA**
*Deceptive and Unfair Trade Practices Act*
**Fla. Stat. Ann. § 501.201 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| Private right of action for anyone "aggrieved by a violation of [the act]" or anyone "who has suffered a loss as a result of a violation of [the act]" and class actions permitted. Fla. Stat. Ann. § 501.211; *Barnhill v. Fla. Microsoft Anti-Trust Litig.*, 905 So. 2d 195 (2005); *Martinez v. Rick Case Cars, Inc.*, 278 F. Supp. 2d 1371, 1373 (S.D. Fla. 2003). | 4 years. Fla. Stat. Ann. § 95.11(3)(f). | Right of action granted "[w]ithout regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation." Fla. Stat. Ann. § 501.211. But, to recover damages, must show a "loss as a result" of violation. Fla. Stat. Ann. § 501.211(2). | Reliance and causation not required. *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (2000); *Latman v. Costa Cruise Lines N.V.*, 758 So. 2d 699, 703 (2000). | Not required. *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973-74 (2000). | Not required; must show that only conduct is "likely to mislead" reasonable consumers. *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973-74 (2000) | Actual damages plus attorney's fees and costs. Fla. Stat. Ann. § 501.211 Any party who is proved to have brought a frivolous, legally or factually meritless claim or claim for the purpose of harassment may be required "to post a bond in the amount which the court finds reasonable to indemnify the defendant for any damages incurred, including reasonable attorney's fees." Fla. Stat. Ann. § 501-211(3). |

12

**SWANHOLT EXH. 23- 330**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**GEORGIA**
*Uniform Deceptive Trade Practices Act ("UDTPA")*
**Ga. Code Ann. § 10-1¬370 et seq.**
*Fair Business Practices Act ("FBPA")*
**Ga. Code Ann. § 10-1¬390 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action for injunctive relief only under UDTPA.** Ga. Code Ann. § 10-1¬373. **Private right of action, but no class action under FBPA.** Ga. Code Ann. § 10-1¬399. | **4 years from discovery under UDTPA.** Ga. Code Ann. § 9-3-31; *Kason Indus, Inc. v. Component Hardware Group, Inc.,* 120 F.3d 1199, 1204-05 (11th Cir. 1997). **2 years from discovery under FBPA.** Ga. Code Ann. § 10-1-401(a). | **Must establish "likely to be damaged."** Ga. Code Ann. § 10-1¬373 **FBPA requires "injury or damages."** Ga. Code Ann. § 10¬1-399. | **Reliance not required under UDTPA.** Ga. Code Ann. § 10-1-372(b). **Reliance and causation required under FBPA.** Ga. Code Ann. § 10-1-399(a); *Baranco, Inc. v Bradshaw,* 456 S.E.2d 592, 594 (1995); *Zeeman v. Black,* 273 S.E.2d 910, 916 (1980). | **Material omissions required.** *Regency Nissan, Inc. v. Taylor,* 391 S.E.2d 467, 470 (1990) [FBPA]. **Misrepresentation must cause a likelihood of confusion, but need not cause actual confusion.** *Looney v. M-Squared, Inc.,* 586 S.E.2d 44, 50-51 (2003) [UDTPA]. | **Intent to deceive not required under UDTPA.** Ga. Code Ann. § 10-1-373. **Neither knowledge of deception nor intent to deceive required under FBPA.** *Regency Nissan, Inc. v. Taylor,* 391 S.E.2d 467, 470 (1990). | **No civil damages under UDTPA, including statutory damages; only injunctive relief available; attorney's fees also permitted.** Ga. Code Ann. § 10-1-373(a)-(c); *Moore-Davis Motors, Inc. v. Joyner,* 556 S.E.2d 137, 140 (2001). **FBPA permits recovery of actual damages, injunctive relief, and punitive damages if specific intent shown; no statutory damages or prejudgment interest.** Ga. Code Ann. § 10-1-399(a), (c); *Conseco Fin. Serv. Corp. v. Hill,* 556 S.E.2d 468, 473 (2001). **FBPA permits treble damages if an intentional violation is found.** *Conseco Fin. Serv. Corp. v. Hill,* 556 S.E.2d 468, 473 (2001). |

13

SWANHOLT EXH. 23- 331

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**HAWAII**
*Unfair Practices Act*
**Haw. Rev. Stat. § 480-1 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class action permitted.** Haw. Rev. Stat. § 480-13; *Leibert v. Fin. Factors, Ltd.*, 788 P.2d 833, 837-38 (1990); *Beerman v. Toro Mfg. Corp.*, 615 P.2d 749, 754 (1980). **Private right of action limited to "consumers" defined as a "natural person."** Haw. Rev. Stat. §§ 480-1, 480-13; *Hunt v. First Ins. Co. of Haw.*, 922 P.2d 976, 985-86 (1996). | **4 years from discovery.** Haw. Rev. Stat. § 480¬24. | **Suit for damages requires "private damage."** Haw. Rev. Stat. § 480¬13; *Sambor v. Omnia Credit Servs., Inc.*, 183 F. Supp. 2d 1234, 1244 (D. Haw. 2002); *Davis v. Wholesale Motor*s, 949 P.2d 1026 , 1038 (1997) (elements for recovery under § 480- 13(b)(1) are: (1) a violation of § 480-2; injury to the consumer caused by such a violation; and proof of the amount of damages). **"Monetary damage" not required to obtain injunctive relief.** Haw. Rev. Stat. § 481A-4. **"Actual confusion or misunderstanding" not required.** Haw. Rev. Stat. § 481A-3(b). | **In a suit for damages, violation must "cause" actual damage.** Haw. Rev. Stat. § 480-13; *Sambor v. Omnia Credit Servs., Inc.*, 183 F. Supp. 2d 1234, 1244 (D. Haw. 2002). | **Materiality required.** *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 262 (2006) | **Intent not required for damages.** Haw. Rev. Stat. § 480-2. **No intent required for injunctive relief.** Haw. Rev. Stat. § 481 A-4. | **A sum not less than $1,000 or three times actual damages, whichever is greater, unless plaintiff is an "elder" in which case it is the greater of $5,000 or three times damages; injunctive relief available; attorney's fees mandatory.** Haw. Rev. Stat. § 480-13; *Eastern Star, Inc. v. Union Bldg. Materials Corp.*, 712 P.2d 1148, 1151 (1985) [treble damages]; *Cieri v. Leticia Query Realty, Inc.*, 905 P.2d 29, 47 (1995) [attorney's fees]. **In class actions, only compensatory damages are awarded; $1,000 minimum does not apply.** Haw. Rev. Stat. § 480-13(c)(1). |

14

SWANHOLT EXH. 23- 332

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**IDAHO**
*Consumer Protection Act*
**Idaho Code § 48-601 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class action permitted.**<br><br>Idaho Code § 48-608. | **2 years from discovery.**<br><br>Idaho Code § 48-619. | **Requires "ascertainable loss" for private right of action.**<br><br>Idaho Code § 48-608; *In re Wiggins*, 273 B.R. 839, 856-857 (Bankr. D. Idaho 2001); *Yellowpine Water User's Ass'n v. Imel*, 670 P.2d 54, 56-57 (Idaho 1983); *Jackson v. Wood*, 859 P.2d 378, 380 (Idaho Ct. App. 1993). | **Ascertainable loss incurred "as a result" of violation.**<br><br>Idaho Code § 48-608; *Jackson v. Wood*, 859 P.2d 378, 380 (Idaho Ct. App. 1993).<br><br>**"Actual deception" not required; "tendency to deceive" is enough.**<br><br>*State ex rel. Kidwell v. Master Distribs., Inc.*, 615 P.2d 116, 122-23 (Idaho 1980). | **Material omissions required.**<br><br>*State ex rel. Kidwell v. Master Distribs., Inc.*, 615 P.2d 116, 120 (1980). | **Knowledge of falsity required for affirmative representations.**<br><br>Idaho Code § 48-603. | **In individual action, greater of actual damages or $1,000 and punitive damages if "repeated" or "flagrant"; prejudgment interest and injunctive relief available.**<br><br>Idaho Code § 48-608(1); *In re Wiggins*, 273 B.R. 839, 881−82 (Bankr. D. Idaho 2001); *Mac Tools, Inc. v. Griffin*, 126 Idaho 193, 197 (1994).<br><br>**Statutory minimum damages of $1,000 must be entered if elements of statute are established.**<br><br>*White v. Mock*, 104 P.3d 356, 364 (Idaho 2004).<br><br>**Mandatory attorney's fees to prevailing plaintiff.**<br><br>Idaho Code § 48-608(5).<br><br>**Class action damages limited to "actual damages" or "a total for the class that may not exceed one thousand dollars ($1,000), whichever is the greater."**<br><br>Idaho Code § 48-608(1).<br><br>**Attorney's fees available.**<br><br>Idaho Code § 48-608(5). |

SWANHOLT EXH. 23- 333

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**ILLINOIS**
*Consumer Fraud and Deceptive Business Practice Act*
**815 Ill. Comp. Stat. 5051/1 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class action permitted, but applies only to fraudulent transactions which take place "primarily and substantially" in Illinois.**<br><br>815 Ill. Comp. Stat. 505/10a; *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 849-50 (Ill. 2005); *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill.2d 45, 60 (2007). | **3 years from discovery.**<br><br>815 Ill. Comp. Stat. 505/10a(e). | **Actual deception and actual injury required.**<br><br>815 Ill. Comp. Stat. 505/10a; *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 155 (2002); *Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 581 (2004); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 199 (2005). | **Proximate causation required.**<br><br>*Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 155 (2002).<br><br>**The deception must occur in the course of conduct involving trade and commerce and proximately cause the damage.**<br><br>*Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 581 (2004). | **Materiality required.**<br><br>815 Ill. Comp. Stat. 505/2; *Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 54 (7th Cir. 1995). | **Intent to deceive is not required, but intent that consumer rely on the information is required.**<br><br>*Griffin v. Universal Cas. Co.*, 274 Ill. App. 3d 1056, 1065 (1995); *Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 581 (2004); *Hoke v. Beck*, 587 N.E.2d 4, 8 (1992). | **Statutory and compensatory damages permitted.**<br><br>815 Ill. Comp. Stat. 505/2S, 10a.<br><br>**Statute does allow punitive damages under "other relief" provision. Grounds for that relief must be alleged fraud, malice, or gross negligence indicating wanton disregard for the rights of others.**<br><br>*Guess v. Brophy*, 164 Ill. App. 3d 75, 81 (1987).<br><br>**Injunctive relief permitted.**<br><br>815 Ill. Comp. Stat. 505/7.<br><br>**Attorney's fees permitted.**<br><br>815 Ill. Comp. Stat. 505/2S, 2w, 10a. |

**SWANHOLT EXH. 23- 334**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**INDIANA**
*Deceptive Consumer Sales Act*
**Ind. Code Ann. § 24-5-0.5-1 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| Private right of action and class action permitted.<br><br>Ind. Code Ann. § 24-5-0.5- 4. | 2 years from occurrence of act.<br><br>Ind. Code Ann. § 24-5-0.5-5(b). | "Actual damages" required.<br><br>Ind. Code Ann. § 24-5-0.5-4(a). | Reliance and proximate causation required.<br><br>Ind. Code Ann. § 24-5-0.5-4(a); *Captain & Co. v. Steinberg*, 505 N.E.2d 88, 98 (1987). | Claims under §§ 11 and 12, like actions under the Indiana Deceptive Consumers Sales Act, **Ind. Code § 24-5-0.5-1 *et seq.*, are based on misrepresentations of material fact**<br><br>*McKinney v. State*, 693 N.E.2d 65, 72 (1998).<br><br>"The categories of deceptive acts giving rise to liability under the IDCSA are very specifically defined . . . there is no general 'fraud' category. Compare consumer protection acts in many other states, which either specifically refer to failure to state material facts or include 'catch-all' clauses . . . the IDCSA contains no such provisions<br><br>*Lawson v. Hale*, 902 N.E.2d 267, 274 (2009). | "Incurable" deceptive practices require "knowing violation" and "intent to mislead"; most "uncured" deceptive practices require defendant had "[known] or should reasonably have known."<br><br>*McKinney v. State*, 693 N.E.2d 65, 68-69 (Ind. 1998). | Damages limited to those "actually suffered" or $500, whichever is greater. Allows attorney's fees. Allows damages for a willful deceptive act of three times actual damages or $1,000, whichever is greater. Injunctive relief and discretionary attorney's fees available.<br><br>Ind. Code Ann. § 24-5-0.5-4; P.L. 165-2005; *Missi v. CCC Custom Kitchens, Inc.*, 731 N.E.2d 1037, 1041 (2000).<br><br>**Prejudgment interest recoverable.**<br><br>*Clark's Pork Farms v. Sand Livestock Sys., Inc.*, 563 N.E.2d 1292, 1301 (1990). |

SWANHOLT EXH. 23- 335

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**IOWA**
**Consumer Fraud Act Iowa Code § 714.16**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **No private right of action; attorney general only.**<br><br>*Molo Oil Co.* v. *River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 227-28 (Iowa 1998). | N/A | N/A | N/A | N/A | N/A | N/A |

SWANHOLT EXH. 23- 336

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**KANSAS**
*Consumer Protection Act*
**Kan. Stat. Ann. § 50-623, et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class action allowed.** Kan. Stat. Ann. § 50-634. **Class actions only allowed for certain claims.** Kan. Stat. Ann. § 50-634(d). | **3 years from date of violation.** Kan. Stat. Ann. § 60-512(2); *Alexander v. Certified Master Builders Corp.*, 1 P.3d 899, 824 (2000). | **Only "aggrieved" consumer may file an individual private cause of action and receive damages; only one who suffers loss or injury, may recover damages in a class action.** Kan. Stat. Ann. § 50-634(b),(d); *Finstad v. Washburn Univ. of Topeka*, 845 P.2d 685, 691 (Kan. 1993). | **Causal connection required.** Kan. Stat. Ann. §§ 50-626, 50-634(b), (d). **Reliance not required.** *Cole v. Hewlett-Packard Co.*, No. 90,164, 2004 WL 376471, at *6 (Kan. Ct. App. Feb. 27, 2004). | **Misrepresentation or omission must be of a "material fact."** Kan. Stat. Ann. § 50-626(b)(2)-(4). | **Most deceptive acts or practices require willful or knowing (or have reason to know of) misrepresentation or omission.** Kan. Stat. Ann. § 50-626(a), (b)(2)-(4). **Party need not willfully violate Act, but can merely engage in the willful use of a misrepresentation or an omission.** *York v. InTrust Bank, N.A.*, 962 P.2d 405, 420-21 (1998). | **In individual action, plaintiff may recover equitable relief or the greater of damages or civil penalty of up to $10,000 for each violation.** Kan. Stat. Ann. §§ 50-634(b), 50-636(a). **Prejudgment interest allowed.** *Schnuelle v. C&C Auto Sales, Inc.*, 99 F. Supp. 2d 1294, 1298-99 (D. Kan. 2000). **Punitive damages may be awarded.** *York v. InTrust Bank, N.A.*, 962 P. 2d 405, 429 (1998); *Equitable Life Leasing Corp. v. Abbick*, 757 P.2d 304, 307 (1988). **Attorney's fees discretionary.** Kan. Stat. Ann. § 50-634(e); *Dodson v. U-Needa Self Storage*, 96 P.3d 667, 673-74 (2004); *Watkins v. Roach Cadillac, Inc.*, 637 P.2d 458, 464 (1981). |

**SWANHOLT EXH. 23- 337**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**KENTUCKY**
*Consumer Protection Act*
**Ky. Rev. Stat. Ann § 367.110 *et seq.***

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action allowed.** Ky. Rev. Stat. Ann. § 367.220(1). **Class action likely prohibited.** *Arnold v. Microsoft Corp.,* 2001 WL 1835377 (Ky. Ct App. Nov. 21, 2001); *but see Ky. Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc.,* 24 F. Supp. 2d 755, 774 (W.D. Ky. 1998) (class action alleging among its claims, claims under the Consumer Protection Act, and dismissing such claims on other grounds). | **1 year after any action brought by attorney general terminated or within 2 years after violation of Act, whichever is later.** Ky. Rev. Stat. Ann §367.220(5). **Discovery rule does not apply.** *Cook v. State Farm Mut. Auto. Ins. Co.,* 2004 WL 2011375, at *3-4 (Ky. Ct. App. Sept. 10, 2004). | **Must suffer "ascertainable loss of money or property, real or personal, as a result of" violation.** Ky. Rev. Stat. Ann. § 367.220(1). **Does not require proof of actual deception of some person.** *Telcom Directories, Inc. v. Commonw. ex. rel. Cowan,* 833 S.W.2d 848, 850 (1991). | **Proximate causation or causal relationship between act or practice and injury.** Ky. Rev. Stat. Ann. § 367.220(1); *Ky. Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc.,* 24 F. Supp. 2d 755, 774 (W.D. Ky. 1998). | **Materiality required.** *Corder v. Ford Motor Co.,* 285 Fed. Appx. 226, 227-228 (6th Cir. 2008) | **Must show defendant's actions are intentional or grossly negligent.** *Sparks v. Re/Max Allstar Realty, Inc.,* 55 S.W. 3d 343, 348 (2000); *Capitol Cadillac Olds, Inc. v. Roberts,* 813 S.W.2d 287, 291 (1991). | **Actual damages, discretionary punitive damages, equitable relief, reasonable attorney's fees, and costs allowed.** Ky. Rev. Stat. Ann. § 367.220(1), (3). |

20

SWANHOLT EXH. 23- 338

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**LOUISIANA**
*Unfair Trade Practices Act*
**La. Rev. Stat. Ann. § 51:1401 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right for individuals only; class actions prohibited.** La. Rev. Stat Ann. § 51:1409(A); *Iberia Credit Bureau, Inc.* v. *Cingular Wireless LLC*, 379 F.3d 159, 174-75 (5th Cir. 2004). | **1 year "from the time of the transaction or act."** La. Rev. Stat. Ann. § 51:1409(E); *Mayo* v. *Simmon*, 646 So. 2d 973, 976 (1994). | **"Ascertainable loss of money or movable property" required.** La. Rev. Stat. Ann. § 51:1409(A); *Landrum* v. *Bd. of Comm'rs oof Orleans Levee Dist.*, 758 F. Supp. 387, 392 (E.D. La. 1991). | **Loss must have occurred "as a result of the use or employment by another person of an unfair or deceptive method, act or practice."** La. Rev. Stat. Ann. § 51:1409(A). | **Materiality Required.** *Berk-Cohen Assocs., LLC* v. *Orkin Exterminating Co.*, 2004 WL 1237998, at *4 (E.D. La. June 2, 2004). | **Defendant must have acted "knowingly" for treble damages.** La. Rev. Stat. Ann. § 51:1409(A). | **Permits recovery of actual damages, attorney's fees, and treble damages for knowing violations, but only if the defendant is "put on notice by the director or attorney general."** La. Rev. Stat. Ann. § 51:1409(A).<br><br>**Prejudgment interest available in all Louisiana tort actions.** La. Rev. Stat. Ann. § 13:4203.<br><br>**No punitive damages beyond treble damages.** La. Rev. Stat. Ann. § 51:1409(A). |

21

**SWANHOLT EXH. 23- 339**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**MAINE**

*Unfair Trade Practices Act*
**Me. Rev. Stat. Ann. tit. 5, § 205-A et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** Me. Rev. Stat. Ann. tit. 5, § 213. | **6 years from discovery.** Me. Rev. Stat. Ann. tit. 14, § 752; *Campbell v. Machias Sav. Bank*, 865 F. Supp. 26, 34 (D. Me. 1994); *State v. Bob Chambers Ford, Inc.*, 522 A.2d 362, 364 (Me. 1987). | **Injury "must be substantial."** *Tungate* v. *MacLean Stevens Studios, Inc.*, 714 A.2d 792, 797 (1998); *Tierney v. Ford Motor Co.*, 436 A.2d 866, 873-74 (1981). **Recovery limited to persons who actually purchased defendant's goods or services.** Me. Rev. Stat. Ann. tit.5, § 213(1); *Hoglung ex rei. Johnson v. DaimlerChrysler Corp.*, 102 F. Supp. 2d 30 (D. Me. 2000). **Injury must be "loss of money or property, real or personal."** Me. Rev. Stat. Ann. tit. 5, § 213(1). | **An injury under the Act "must be an injury that consumers themselves could not reasonably have avoided."** *Tungate* v. *MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (1998); *State v. Weinschenk*, 868 A.2d 200, 206 (2005). | **Act or practice must have "the effect of deceiving the consumer, or inducing her to purchase something that she would not otherwise purchase."** *Tungate* v. *MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (1998). | **Intent to deceive not required.** *Auto Europe, LLC v. Conn. Indem. Co.*, 321 F.3d 60, 67 (2003); *Binette* v. *Dyer Library Ass'n*, 688 A.2d 898, 906 (1996); *Courtney v. Bassano*, 733 A.2d 973, 976 (1999). | **Actual damages or restitution and equitable relief, including injunction as the court determines necessary and proper.** Me. Rev. Stat. Ann. tit. 5, § 213(1). **Attorney's fees permitted.** Me. Rev. State. Ann. tit. 5, § 213(2). **Prejudgment interest allowed.** *State* v. *Bob Chambers Ford, Inc.*, 522 A.2d 362, 366 (1987). **No punitive damages.** *Taylor* v. *Phillip Morris, Inc.*, 2001 WL 1710710, at *7 (Me. Super. Ct May 29, 2001). |

SWANHOLT EXH. 23- 340

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**MARYLAND**

*Consumer Protection Act*

**Md. Code Ann., Com. Law § 13-101 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** Md. Code Ann., Com. Law § 13-408(a); *Philip Morris Inc.* v. *Angeletti,* 752 A.2d 200, 234-36 (2000). | **3 years.** Md. Code Ann., Cts. & Jud. Proc. § 5-101; *Greene Tree Home Owners Ass'n, Inc.* v. *Greene Tree Assocs.,* 749 A.2d 806, 808 (2000). | **Private right of action may be brought to recover for injury or loss sustained as a result of prohibited practices** Md. Code Ann., Com. Law § 13-408(a). **Private right of action "may be invoked only to compensate a consumer for actual injury or loss."** *Berg v. Byrd,* 720 A.2d 1283, 1286 (1998). **Representation must have the "capacity, tendency, or effect of deceiving or misleading consumer."** Md. Code Ann., Com. Law § 13-301(1). | **Private right of action for damages requires injury or loss "as the result" of proscribed practice.** Md. Code Ann., Com. Law § 13-408(a). **Actual deception not necessary.** Md. Code Ann., Com. Law § 13-302. | **Misrepresentation or omission must be of a "material fact."** Md. Code Ann., Com. Law § 13-301(3), (4), (9). **A deceptive practice must include a material misrepresentation involving information important to consumers, and therefore likely to affect their choice of product.** *Luskin's, Inc.* v. *Consumer Prot. Div.,* 726 A.2d 702, 713 (1999). | **Scienter not required.** Md. Code Ann., Com. Law § 13-301(1); *Golt v. Phillips,* 517 A.2d 328, 332-33 (1986). | **For private right of action, compensatory damages; no punitive damages.** Md. Code Ann., Com. Law § 13-408(a); *Golt v. Phillips,* 517 A.2d 328, 333 (1986); *McGraw v. Loyola Ford, Inc.,* 723 A.2d 502, 510 (1999); *Hoffman v. Stamper,* 867 A.2d 276, 304 (2005). **Attorney's fees may also be recovered after other damages are awarded.** Md. Code Ann., Com. Law § 13-408(b). **Attorney's fees may also be where the court is satisfied that the action was brought in bad faith or is of a frivolous nature.** Md. Code Ann., Com. Law § 13-408(c). |

23

SWANHOLT EXH. 23- 341

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**MASSACHUSETTS**
*Consumer Protection Act*
**Mass. Gen. Laws ch. 93A, § 1 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** Mass. Gen. Laws ch. 93 A, § 9(1), (2); *Szymanski v. Boston Mut. Life Ins. Co.*, 778 N.E.2d 16, 19-20 (2002). | **4 years from discovery.** Mass. Gen. Laws ch. 260, § 5A (2006). | **Injury required.** Mass. Gen. Laws ch. 93A, § 9 (1); *Hershenow v. Enter. Rent-a-Car Co. of Boston, Inc.*, 840 N.E.2d 526, 535, *aff'd, Roberts v. Enterprise Rent-A-Car Co. of Boston, Inc.*, 840 N.E.2d 541 (2006). | **Causation required between unfair acts and claimed loss.** *Aspinall v. Philip Morris Cos*, 813 N.E.2d 476, 48687 (2004); *Fraser Eng'g Co. v. Desmond*, 524 N.E.2d 110, 113 (1988). **Reliance not required.** *Sebago, Inc. v. Beazer E., Inc*, 18 F. Supp. 2d 70, 103 (D. Mass. 1998). | **Materiality required.** *Sheehy v. Lipton Industries, Inc.*, 24 Mass. App. Ct. 188, 195 (1987) | **No intention to deceive need be shown; defendant need not know representation was false.** *Swanson v. Bankers Life Co.*, 450 N.E.2d 577, 580 (1983); *Fraser Eng'g Co. v. Desmond*, 524 N.E.2d 110, 113 (1988); *Golber v. BayBank Valley Trust Co.*, 704 N.E.2d 1191, 1194 (1999); *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (1975). | **Greater of actual damages or $25 and double to treble damages for "willful or knowing" violations.** Mass. Gen. Laws ch. 93A, § 9(3), 3(A); *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 490 (Mass. 2004). **Prejudgment interest allowed.** *McEvoy Travel Bur., Inc. v. Norton Co*, 563 N.E.2d 188, 196 (1990). **Attorney's fees mandatory in class actions unless a reasonable settlement was rejected.** Mass. Gen. Laws ch. 93A, § 9(4). **Court shall award injunctive and other equitable relief as deemed necessary and appropriate.** Mass. Gen. Laws ch. 93A, § 9(3). |

SWANHOLT EXH. 23- 342

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**MICHIGAN**
*Consumer Protection Act*
**Mich. Comp. Laws Ann. § 445.901 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| Private right of action and class actions allowed.<br><br>Mich. Comp. Laws Ann. § 445.911. | Later of 6 years after occurrence of act and 1 year after last payment.<br><br>Mich. Comp. Laws Ann. § 445.911(7). | Plaintiff must have "suffer[ed a] loss."<br><br>Mich. Comp. Laws. Ann. § 445.911(2), (3).<br><br>The Act allows recovery for mental distress where those damages are the "legal and natural consequences of the wrongful act and might reasonably have been anticipated."<br><br>*Lozada* v. *Dale Baker Oldsmobile, Inc.,* 136 F. Supp. 2d 719, 728 (W.D. Mich. 2001). | Loss must be "as a result of a violation" of the Act.<br><br>Mich. Compl. Laws Ann. § 445.911(2), (3).<br><br>Misleading acts or practices must be proximate cause of any damages.<br><br>*Zine* v. *Chrysler Corp.,* 600 N.W.2d 384, 399 (1999).<br><br>Members of a class action "need not individually prove reliance on the alleged misrepresentations," just show reasonable person would have relied.<br><br>*Dix v. Am. Bankers Life Assurance Co. of Fla.,* 415 N.W.2d 206, 209 (Mich. 1987). | Requires proof that a "reasonable person would have relied on the representations."<br><br>*Dix v. Am. Bankers Life Assurance Co. of Fla.,* 415 N.W.2d 206, 209 (Mich. 1987).<br><br>Actions under § 455.903(1)(s), (bb), and (cc) require omission or misrepresentation as to a material fact, which is a fact "that is important to the transaction or affects the consumer's decision to enter into the transaction."<br><br>Mich. Comp. Laws Ann. § 455.903(1)(s), (bb), (cc). *Zine* v. *Chrysler Corp.,* 600 N.W.2d 384, 398 (Mich. Ct. App. 1999). | Plaintiff must show defendant's "intent to deceive through a pattern of misrepresentations."<br><br>*Dix v. Am. Bankers Life Assurance Co. of Fla.,* 415 N.W.2d 206, 209 (Mich. 1987). | In individual actions, the greater of actual damages or $250, and attorney's fees.<br><br>Mich. Comp. Laws Ann. § 445.911(2).<br><br>Class actions are limited to actual damages.<br><br>Mich. Comp. Laws Ann. § 445.911(3).<br><br>Injunctive and declaratory relief also available.<br><br>Mich. Comp. Laws Ann. § 445.911 (1).<br><br>Person who suffers a loss under the Act may bring an action to recover reasonable attorney's fees.<br><br>*Smolen* v. *Dahlmann Apartments, Ltd.,* 186 Mich. App. 292 (1990).<br><br>Punitive damages allowed for persistent and knowing violations, not to exceed $25,000 in actions brought by the attorney general.<br><br>Mich. Comp. Laws Ann. § 445.905(1). |

25

SWANHOLT EXH. 23- 343

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**MINNESOTA**
*Prevention of Consumer Fraud Act*
**Minn. Stat. §§ 325F.68- .70.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| Private right of action and class actions allowed. Minn. Stat. § 8.31(3a). *Dahl v. Charles Schwab & Co*, 545 N.W.2d 918, 920 (Minn. 1996). | 6 years. Minn. Stat. § 541.05(1)-(2); *Estate of Riedel v. Life Care Ret. Comtys., Inc.*, 505 N.W.2d 78, 83 (1993). | Civil remedy available to "any person injured." Minn. Stat. § 8.31(3a). Not limited to actual purchaser of products, "as long as the plaintiff alleges an injury" from conduct prohibited under the Act. *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 11 (Minn. 2001). Deception not necessary only "intent that others rely . . . whether or not any person has in fact been misled, deceived, or damaged thereby" Minn. Stat. §§ 325F.69(1); *LeSage v. Norwest Bank Calhoun-Isles, N.A.*, 409 N.W.2d 536, 539 (Minn. Ct. App. 1987). Injunction available without showing actual damages. *LeSage v. Norwest Bank Calhoun-Isles, N.A.*, 409 N.W.2d 536, 539 (Minn. Ct. App. 1987). | Injury must be "by a violation" of the Act. Minn. Stat. § 8.31(3a). There must be a "proper legal nexus between the complained of acts and their alleged monetary losses." *LeSage v. Norwest Bank Calhoun-Isles, N.A.*, 409 N.W.2d 536, 539 (1987). Proof of reliance is required for damages, but not for injunctive relief. *Thompson v. Am. Tobacco* Co., 189 F.R.D. 544, 553 (D. Minn. 1999); *Parkhill v. Minn. Mut. Life Ins. Co.*, 188 F.R.D. 332, 344-45 (D. Minn. 1999); *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 13 (Minn. 2001). Causation is a necessary element in an action to recover damages under Minn. Stat. § 8.31(3a). *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 13 (Minn. 2001). | Deception must be "material" to the "buying decisions" of plaintiffs. *Nordale, Inc. v. Samsco, Inc.*, 830 F. Supp. 1263, 1272 (D. Minn. 1993). | "[I]ntent that others rely . . . whether or not any person has in fact been misled, deceived, or damaged thereby" Minn. Stat. § 325F.69(1); *LeSage v. Norwest Bank Calhoun-Isles, N.A.*, 409 N.W.2d 536, 539 (1987). | Actual damages, "costs of investigation," reasonable attorney's fees, and injunctive relief. Minn. Stat. § 8.31(3a). Actual damages are to be measured by the "out-of-pocket" loss, or the difference between the actual value of the merchandise and the price paid for the merchandise "along with any special damages naturally and proximately caused by the fraud prior to its discovery, including expenses incurred in mitigating the damages." *B.F. Goodrich Co. v. Mesabi Tire Co.*, 430 N.W.2d 180, 182 (Minn. 1988); *Higgins v. Harold-Chevrolet-Geo, Inc.*, 2004 WL 2660923 (Minn. Ct. App. Nov. 23, 2004). |

**SWANHOLT EXH. 23- 344**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**MISSISSIPPI**
*Consumer Protection Act*
**Miss. Code Ann. § 75-24-1 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action allowed, but (1) only for persons leasing or purchasing goods or services primarily for personal use; and (2) only after exhausting administrative remedies.**<br><br>**No class actions permitted.**<br><br>Miss. Code Ann. § 75-2415. | **3 years.**<br><br>Miss. Code Ann. § 15-1-49; *Clark* v. *Commercial Credit Corp.*, 357 F. Supp. 2d 962, 965 (S.D. Miss. 2005). | **Plaintiff must have suffered "any ascertainable loss of money or property."**<br><br>Miss. Code Ann. § 75-24-15(1).<br><br>**Statements need not be literally false, but only must be capable of deceiving a reasonable person.**<br><br>*Southwest Starving Artists Group, Inc.* v. *State ex rel. Summer*, 364 So. 2d 1128, 1131 (1978). | **"Ascertainable loss" must be "a result of" unlawful acts.**<br><br>Miss. Code Ann. § 75-24-15- (1). | **Materiality required [via FTCA.]**<br><br>Miss. Code Ann. § 75-24-3(c) | **Only some subsections require intent.**<br><br>Miss. Code Ann. § 75-24-5(i), (j). | **Compensatory damages only.**<br><br>Miss. Code Ann. § 75-24- 15(1).<br><br>**Court may award prevailing defendant attorney's fees and costs if plaintiffs' claims were frivolous or to harass.**<br><br>Miss. Code Ann. § 75-24- 15(3).<br><br>**Civil penalty of $10,000 if violation was knowing or willful upon petition of the Attorney General.**<br><br>Miss. Code Ann. § 75-24-19. |

27

**SWANHOLT EXH. 23- 345**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**MISSOURI**
*Merchandising Practices Act*
**Mo. Ann. Stat. § 407.010 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed; limited to "merchandise primarily for personal, family or household purposes."** Mo. Ann. Stat. § 407.025. | **5 years.** Mo. Ann. Stat. § 516.120. | **Plaintiffs must have suffered an "ascertainable loss of money or property."** Mo. Ann. Stat. § 407.025(1). **Reliance not required.** *State v. AreaCo. Inv. Co.,* 756 S.W.2d 633, 635 (Mo. App. 1988). | "Ascertainable loss" must be "a result of" unlawful acts. Mo. Ann. Stat. § 407.025(1). **Injury must be "proximately caused by defendant's actions."** *Willard* v. *Bic Corp.,* 788 F. Supp. 1059, 1070 (W.D. Mo. 1991). | **Materiality required.** Mo. Ann. Stat. § 407.020(1). | **No need to prove intent.** *E.g., State ex rel. Nixon v. Beer Nuts,* 29 S.W.3d 828, 837 (2000); *State ex rel. Webster v. AreaCo Inv. Co.,* 756 S.W.2d 633, 635 (1988) | **Actual damages and discretionary punitive damages and attorney's fees.** Mo. Ann. Stat. § 407.025(1). |

SWANHOLT EXH. 23- 346

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**MONTANA**
*Unfair Trade Practices and Consumer Protection Act*
**Mont. Code Ann. § 30-14-101 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action, but class actions not allowed.** Mont. Code Ann. § 30-14- 133(1). | **2 years.** Mont. Code Ann. § 27-2-211; *Osterman* v. *Sears, Roebuck & Co.*, 80 P.3d 435, 440 (2003). | **Plaintiff need only show an ascertainable loss of money or property.** Mont. Code Ann. § 30-14-133(1). | **Reliance probably not required.** *Durbin* v. *Ross*, 916 P.2d 758, 762 (Mont. 1996) (listing reliance as element for fraud but not specifically for CPA violations). | **Materiality required.** Mont. Code Anno., § 30-14-104 (1). | **No mention of any requirement that party must first prove malice, oppression or fraud.** *T&W Chevrolet* v. *Darvial*, 641 P.2d 1368, 1371-72 (Mont. 1982). | **Actual damages or $500, whichever is greater, recoverable by individual.** Mont. Code Ann. § 30-14- 133(1). **Discretionary attorney's fees to prevailing plaintiff; discretionary attorney's fees to defendant if action frivolous.** Mont. Code Ann. § 30-14-133(3); *Tripp* v. *Jeld-Wen, Inc.*, 112 P.3d 1018, 1026 (2005). **Treble damages available, only remedial and not punitive in nature.** *Plath* v. *Schonrock*, 64 P.3d 984, 989-90 (2003). |

SWANHOLT EXH. 23- 347

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**NEBRASKA**
*Consumer Protection Act (CPA)*
**Neb. Rev. Stat. § 59-1601 to 1623.**
*Uniform Deceptive Trade Practices Act (DTPA)*
**Neb. Rev. Stat. § 87-301 to 306**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Under the CPA, private right of action if deceptive act affects public interest.** Neb. Rev. Stat. Ann. § 591609; § 59-1601(2); *Nelson v. Lusterstone Surfacing Co.,* 605 N.W.2d 136, 141-42 (2000). **Under the DTPA, private right of action for equitable relief.** Neb. Rev. Stat. Ann. § 87-303(a); *Reinbrecht v. Walgreen Co.,* 742 N.W.2d 243, 247-48 (2007). | **Under the CPA, 4 years after the cause of action accrues.** Neb. Rev. Stat. Ann. § 59-1612. **Under the DTPA, 4 years from the date of the purchase of goods.** Neb. Rev. Stat. Ann. § 87-303.10; *Meyer Bros. Inc. v. Travelers Ins. Co.,* 250 Neb. 389, 390-91 (1996). | **Plaintiff must be injured in his business or property.** Neb. Rev. Stat. § 59-1609. | **A claim may be brought by any person who is injured by a violation of the CFA.** Neb. Rev. Stat. Ann. § 591609; *but see* Neb. Rev. Stat. Ann. § 87-303(a) (allowing injunctive relief for any person likely to be damaged by a deceptive trade practice of another.). | **No cased found.** **The CPA is patterned after the Sherman Act.** **The DTPA does not have a general material misrepresentation of fraud cause of action.** **None of the cases that discuss violating of Neb. Rev. Stat. § 87-302 mention materiality.** | **No particular scienter requirement.** Neb. Rev. Stat. Ann. § 591609; § 87-303(a). **Plaintiff must prove "the practice possessed the tendency or capacity to mislead, or created the likelihood of deception."** *Raad* v. *Wal-Mart Stores, Inc.,* 13 F. Supp. 2d 1003, 1014 (D. Neb. 1998). | **Under the CPA, recovery of actual damages allowed.** Neb. Rev. Stat. Ann. § 591609. **Court can increase the award of damages to an amount that bears to actual damages which are not susceptible of measurement, but not to exceed $1,000.** Neb. Rev. Stat. Ann. § 591609. **Under the DTPA, recovery of actual damages not allowed.** *Triple-7, Inc.* v. *Intervet, Inc.,* 338 F. Supp. 2d 1082, 1087 (D. Neb. 2004). |

SWANHOLT EXH. 23- 348

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**NEVADA**
*Deceptive Trade Practices Act*
**Nev. Rev. Stat. § 598.0903 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| Only elderly or disabled have a private right of action under the Act.<br><br>Nev. Rev. Stat. Ann. § 598.0977. | 4 years, accruing from the date facts constituting deceptive trade practice were discovered or should have been discovered.<br><br>Nev. Rev. Stat. § 11.190(2)(d). | Claim limited to recovery of "any damages" sustained.<br><br>Nev. Rev. Stat. § 41.600(3)(a). | A claim may be brought by or on behalf of "any person who is a victim of consumer fraud."<br><br>Nev. Rev. Stat. § 41.600(1) (amended by S.B. 404 (2013)) | Materiality required.<br><br>Nev. Rev. Stat. Ann. § 598.0923(2). | Requires defendant "knowingly" make a false representation.<br><br>Nev. Rev. Stat. § 598.0915.<br><br>Or "knowingly" fails to disclose a material fact.<br><br>Nev. Rev. Stat. § 598.0923(2). | Only elderly or disabled may recover: actual damages, punitive damages, and attorney's fees.<br><br>Nev. Rev. Stat. § 598.0977. |

31

**SWANHOLT EXH. 23- 349**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**NEW HAMPSHIRE**
*N.H. Consumer Protection Act ("CPA")*
**N.H. Rev. Stat. Ann. § 358-A:1 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** N.H. Rev. Stat. Ann. §§ 358-A:10, 358-A:10-a. | **3 years from date violation was known or reasonably should have been known, but evidence of conduct more than 3 years earlier may be introduced.** N.H. Rev. Stat. § 358-A:3. | **Act allows any person injured to bring a claim and to bring a class action "if the unlawful act or practice has caused similar injury to numerous other persons."** N.H. Rev. Stat. Ann § 358-A:10-a. **The Act "does not require a showing of actual damages for the claimant to be awarded the statutory minimum and attorney's fees."** *Preferred Nat'l Ins. Co. v. Docusource, Inc.*, 829 A.2d 1068, 1075 (N.H. 2003.) | **Plaintiffs must establish a "causal link" between the unlawful conduct and their injuries.** *Mulligan v. Choice Mortgage Corp. USA*, 1998 WL 544431, at *11 (D.N.H Aug. 11, 1998). | **Materiality required.** *Kalik v. Abacus Exch.*, 2001 DNH 192 (D.N.H. 2001). | **No level of scienter required for normal damages; damages doubled or trebled for "willful or knowing violations."** N.H. Rev. Stat. Ann. §358-A:10. | **In individual actions, greater of actual damages or $1,000 and attorney's fees; if the violation was "willful or knowing," court shall double or treble actual damages.** N.H. Rev. Stat. Ann. § 358-A:10. **Class action damages limited to actual damages, equitable relief, and discretionary attorney's fees.** N.H. Rev. Stat. Ann. § 358-A:10-a. |

SWANHOLT EXH. 23- 350

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**NEW JERSEY**
*Consumer Fraud Act*
**N.J. Stat. Ann. § 56:8-19 et seq**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| Private right of action and class actions allowed.<br><br>N.J. Stat. Ann. § 56:8-19; *Weinberg* v. *Sprint Corp.*, 801 A.2d 281, 283-84 (N.J. 2002). | 6 years.<br><br>N.J. Stat. Ann. § 2A:14-1; *Mirra* v. *Holland Am. Line*, 331 N.J. Super. 86, 90 (2000). | Plaintiff must show "ascertainable loss of moneys or property."<br><br>N.J. Stat. Ann. § 56:8-19.<br><br>Standing requires a plaintiff to plead a claim for damages that would survive a summary judgment motion.<br>*Weinberg* v. *Sprint Corp.*, 801 A.2d 281, 283 (N.J. 2002). | Any person who suffers ascertainable loss of moneys or property "as a result of" unlawful acts may bring an action.<br><br>N.J. Stat. Ann. § 56:8-19.<br><br>This "causation provision" requires plaintiff "to prove that the unlawful consumer fraud caused his loss."<br>*Cox* v. *Sears Roebuck & Co.*, 647 A.2d 454, 464 (N.J. 1994).<br><br>"But for" test applies for proximate cause determination.<br>*Fink* v. *Ricoh Corp.*, 839 A.2d 942, 976-77 (N.J. Super. 2003).<br><br>Liability under the Act does not require proof of reliance.<br>*DaBosh* v. *Mercedes Benz USA, Inc.*, 874 A.2d 1110, 1121 (2005); *N.J. Citizen Action* v. *Schering-Plough Corp.*, 842 A.2d 174, 178 (2003). | Materiality required.<br><br>*Talalai* v. *Cooper Tire & Rubber Co.*, 360 N.J. Super. 547, 562 (Law Div. 2001) | Defendant's intent is not an element; liability for affirmative misrepresentations requires no knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive.<br><br>*Gennari* v. *Weichert Co. Realtors*, 691 A.2d 350, 365 (N.J. 1997); *Thiedmann* v. *Mercedes-Benz USA, Inc.*, 872 A.2d 783, 791 (N.J. 2005). | Damages limited to party's "ascertainable loss of moneys or property."<br><br>N.J. Stat. Ann. § 56:8-19.<br><br>No punitive damages, but treble damages mandatory once plaintiff proves unlawful practice under Act and resulting ascertainable loss.<br><br>N.J. Stat. Ann. § 56:8-19; *Cox* v. *Sears Roebuck & Co.*, 647 A.2d 454, 465 (1994).<br><br>Attorney's fees mandatory if plaintiff proves unlawful practice defined by Act.<br><br>N.J. Stat. Ann. § 56:8-19; *BJM Insulation & Constr. Inc.* v. *Evans*, 287 N.J. Super. 513, 517 (1996). |

33

**SWANHOLT EXH. 23- 351**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**NEW MEXICO**
*Unfair Trade Practices*
**N.M. Stat. Ann. § 57-12-1 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** N.M. Stat. Ann. § 57-12-10. | **4 years from discovery of violation.** N.M. Stat. Ann. § 37-1-4; *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430 (10th Cir. 1996). | **No injury requirement for injunctive relief only.** N.M. Stat. Ann. § 57-12-10(A). **In a suit for damages, plaintiffs must have suffered a "loss of money or property."** N.M. Stat. Ann. § 57-12-10(B). **Only named plaintiffs may recover statutory damages of $100 without proving actual damages.** N.M. Stat. Ann. § 57-12-10(E). | **Any person who suffers a loss of money or property "as a result of" unlawful acts may bring an action.** N.M. Stat. Ann. § 57-12-10(B). | **Materiality required.** N.M. Stat. Ann. § 57-12-4 | **Need not be intentionally made, but defendant must know that representation is false or in exercise of reasonable diligence should have known that representation is false.** N.M. Stat. Ann. § 57-12-2(D); *Taylor v. United Mgmt., Inc.*, 51 F.Supp.2d 1212, 1216 (D.N.M. 1999); *Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (1991). | **Greater of actual damages or $100; discretionary treble damages if willful violation.** N.M. Stat. Ann. § 57-12-10(B). **Mandatory attorney's fees to successful plaintiff; attorney's fees and costs to defendant if suit was "groundless."** N.M. Stat. Ann. § 5-12-10(C). **Unnamed class members limited to actual damages.** N.M. Stat. Ann. § 57-12-10(E). |

**SWANHOLT EXH. 23- 352**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**NEW YORK**
*Consumer Protection from Deceptive Acts and Practices*
**N.Y. Gen. Bus. Law §§ 349 to 350-f-1.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** N.Y. Gen. Bus. Law § 349(h); *Small* v. *Lorillard Tobacco Co.,* 679 N.Y.S.2d 593, 598-99 (App. Div. 1998), *affd,* 720 N.E. 2d 892 (N.Y. 1999). | **3 years.** *Gaidon* v. *Guardian Life Ins. Co. of Am.,* 750 N.E.2d 1078, 1082 (N.Y. 2001). | **Plaintiff must prove actual injury but "not necessarily pecuniary harm."** *Stutman v. Chem. Bank,* 731 N.E. 2d 608, 612 (N.Y. 2000). **Plaintiff "must plead facts showing actual injury, not merely the alleged deceptive act."** *Bildstein v. MasterCard Int'l. Inc.,* 329 F. Supp. 2d 410, 415 (S.D.N. Y. 2004). | **Plaintiff must have suffered injury "as a result of the deceptive act," but "reliance is not an element" of the Act.** *Stutman* v. *Chem. Bank,* 731 N.E. 2d 608, 611-12 (N.Y. 2000); *Pelman ex. rel. Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 (2d Cir. 2005). | **"Whether a representation or omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances."** *Stutman* v. *Chem. Bank,* 731 N.E.2d 608, 611-12 (N.Y. 2000). | **Intent to defraud is not an element of a claim under the Act.** *Stutman* v. *Chem. Bank,* 731 N.E. 2d 608, 612 (N.Y. 2000). **Discretionary treble damages for willful or knowing violations.** N.Y. Gen. Bus. Law § 349(h). | **Greater of actual damages or $50 in individual action; discretionary treble damages for willful or knowing violations; discretionary attorney's fees to prevailing party.** N.Y. Gen. Bus. Law § 349(h); *Teller* v. *Hayes,* 213 A.D.2d 141, 147 (2d Dept. 1995); *Karlin v. IVF Am., Inc.,* 93 N.Y.2d 282, 291 (1999). **Class recovery limited to actual damages and injunctive relief.** *Super Glue Corp.* v. *Avis Rent A CarSys., Inc.,* 517 N.Y.S.2d 764, 767 (App. Div. 1987). |

35

SWANHOLT EXH. 23- 353

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**NORTH CAROLINA**
*Monopolies, Trusts and Consumer Protection*
**N.C. Gen. Stat. § 75-1 et seq**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** N.C. Gen. Stat. § 75-16; *Dash v. FirstPlus Home Owner Loan Trust 1996-2*, 248 F.Supp.2d 489, 494-95 (M.D.N.C. 2003). | **4 years.** N.C. Gen. Stat. § 75-16.2; *Dash v. FirstPlus Home Owner Loan Trust 1996-2*, 248 F.Supp.2d 489, 501 (M.D.N.C. 2003). | **Actual injuries required.** *Wilson v. Blue Ridge Elec. Membership Corp.*, 578 S.E.2d 692, 694 (N.C. Ct. App. 2003). | **Defendant's misrepresentations must have "proximately caused actual injury to plaintiff."** *Wilson v. Blue Ridge Elec. Membership Corp.*, 578 S.E.2d 692, 694 (N.C. Ct. App. 2003). **Unclear whether reliance is required.** *Tucker v. Boulevard at Piper Glen, LLC*, 564 S.E.2d 248, 251 (2002) (stating that "actual reliance on the alleged misrepresentation" was required for proximate causation); *but see Cullen v. Valley Forge Life Ins.*, 589 S.E.2d 423, 431 (N.C. Ct. App. 2003) (indicating that proof of reliance may not be required). | **In determining whether a representation is deceptive, its effect on the average consumer is considered.** *Spartan Hearing, Inc. v. Pollard*, 400 S.E.2d 476, 482 (1991). | **No particular scienter requirements.** *Excel Staffing Serv., Inc. v. HP Reidsville, Inc.*, 616 S.E.2d 349, 355 (2005). | **Actual damages that were proximate result of prohibited conduct.** N.C. Gen. Stat. § 75-16; *Ellis v. Northern Star Co.*, 388 S.E.2d 127, 131 (N.C. 1990). **Mandatory treble damages.** N.C. Gen. Stat. § 75-16; *Standing v. Midgett*, 850 F. Supp. 396, 402 (E.D.N.C. 1993). **Discretionary attorney's fees upon a finding that defendant's conduct was willful and defendant refused to negotiate settlement.** N.C. Gen. Stat. § 75-16.1. |

36

SWANHOLT EXH. 23- 354

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**NORTH DAKOTA**
*Consumer Fraud*
**N.D. Cent. Code § 51-15-01 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** N.D. Cent. Code § 51-1509; *Hanson v. Acceleration Life Ins. Co,* 1999 WL 33283345, at *7 (D.N.D. July 1, 1999). | **6 years.** N.D. Cent. Code § 28-01-16(2). | **Plaintiffs must have suffered a loss of money or property.** *N.D. Fair Hous. Council, Inc. v. Haider,* 1999 WL 33283355, at *3 (D.N.D. Mar. 9, 1999). **Requires actual injury.** *Ziegelmann v. Daimler-Chrysler Corp.,* 649 N.W.2d 556, 559 (N.D. 2002). | **Reliance not required.** N.D. Cent. Code § 51-15-02. | **Materiality required.** *A & R Fugleberg Farms, Inc. v. Triangle Ag, LLC,* 2010 U.S. Dist. LEXIS 34325 (D.N.D. 2010). | **Deceptive act must be made with the "intent that others rely" upon it.** N.D. Cent. Code § 51-15-02. **Knowing conduct may subject defendant to treble damages.** N.D. Cent. Code § 51-15-09. | **Actual damages; if conduct was "knowingly" treble damages allowed; reasonable attorney's fees and costs are mandatory if violation found.** N.D. Cent. Code § 51-15-09. |

37

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**OHIO**
*Ohio Consumer Sales Practices Act*
**Ohio Rev. Code Ann. § 1345.01 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** Ohio Rev. Code Ann. § 1345.09; *Parker* v. *I&F Insulation Co.,* 730 N.E.2d 947, 978-79 (Ohio 2000). **Must be a "consumer" - -a person who engages in a consumer transaction with a supplier.** Ohio Rev. Code Ann. § 1345.01(D). **"Consumer transaction" means a sale of primarily personal, family, or household goods.** Ohio Rev. Code Ann. § 1345.01(A). **Class actions not allowed for claims based upon atty. gen. opinion or court decision and not express violation of Act.** Ohio Rev. Code Ann. § 1345.09(B). | **2 years from occurrence or 1 year after government enforcement action, whichever is later.** Ohio Rev. Code Ann. § 1345.10(C). | **Plaintiff must have suffered some damages or engaged in a transaction to be rescinded.** Ohio Rev. Code Ann. § 1345.09(A). **Remedies of cancellation of contract and statutory damages do not require actual damages.** *New Phila., Inc.* v. *Sagrilla,* 2002 WL 1467771, at *5 (Ohio Ct. App. June 26, 2002). | **Deceptive act or practice need only be "in connection with" a consumer transaction.** Ohio Rev. Code Ann. § 1345.02(A). | **Materiality Required** *Mannix v. DCB Service, Inc.,* 2004 WL 2848921, at *6 (Nov. 24, 2004) (Ohio App. Ct.) | **"Intent to deceive is not an element required for a violation of the deceptive- practices portion of the act."** *Rose* v. *ZaringHomes, Inc.,* 702 N.E.2d 952, 956 (Ohio Ct. App. 1997). | **In individual action, actual damages or rescission; statutory damages available.** Ohio Rev. Code Ann. § 1345.09(A), (B). **If the defendant has a practice of violations, a consumer may recover treble damages.** Ohio Rev. Code Ann. § 1345.09(B). **Discretionary attorney's fees to prevailing party if action brought in bad faith or act committed knowingly.** Ohio Rev. Code Ann. § 1345.09(F). |

SWANHOLT EXH. 23- 356

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**OKLAHOMA**
*Consumer Protection Act*
**Okla. Stat. Ann. tit. 15, § 751 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** Okla. Stat. Ann. tit. 15, § 761.1(A),(B); *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000). | **3 years for damages claims, 1 year for penal claims.** *Brashears* v. *Sight 'N Sound Appliance Ctrs.*, 981 P.2d 1270, 1273-79 Okla. 1999. | **Deceptive trade practice is a misrepresentation or omission that "could reasonably be expected to deceive or mislead a person" to that person's detriment.** Okla. Stat. Ann. tit. 15, § 752(13). | **The challenged practice must have caused the plaintiff's injuries.** Okla. Stat. Ann. tit. 15, §§ 753, 761.1(A); *Patterson* v. *Beall*, 19 P.3d 839, 846-47 (2000) | **Misrepresentation or omission must have "the capacity to deceive the consumer."** *Patterson v. Beall*, 19 P.3d 839, 847 n.12 (2000). | **Whether knowledge is required depends on the particular provision alleged to have been violated.** *Patterson v. Beall*, 19 P.3d 839, 847 n.12 (Okla. 2000). *See* Okla. Stat. Ann. tit. 15, § 752(13), (14) (not requiring knowledge); Okla. Stat. Ann. tit. 15, § 753(2)-(5); tit. 78, § 53(5) (requiring knowledge of a false representation). | **Actual damages and reasonable attorney's fees; up to $10,000 in costs if the other party asserts a claim or defense in bad faith.** Okla. Stat. Ann. tit. 15, § 761.1(A). **For individual actions only, if unlawful acts "unconscionable" (consistent with circumstances specified by Act), discretionary award up to $2,000 per act.** Okla. Stat. Ann. tit. 15, § 761.1(B). |

SWANHOLT EXH. 23- 357

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**OREGON**
*Unlawful Trade Practices Act ("UTPA")*
**Or. Rev. Stat. § 646.605 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| Private right of action and class actions allowed. Or. Rev. Stat. § 646.638(1), (8). Applies to goods obtained primarily for personal, family, or household purposes. Or. Rev. Stat. § 646.605(6)(a). | 1 year from discovery of deceptive practice. Or. Rev. Stat. § 646.638(6). | Must suffer "ascertainable loss of money or property" to recover "actual damages." Or. Rev. Stat. § 646.638(1). Plaintiff is required to plead and prove some actual injury. *Creditors Protective Ass'n* v. *Britt*, 648 P.2d 414, 416 (Or. Ct. App. 1982). | Ascertainable loss must be "as a result of willful use or employment" of unlawful "method, act or practice." Or. Rev. Stat. § 646.638(1). Plaintiff must have "relied in fact" on certain misrepresentations. *Feitler v. Animation Celection, Inc.*, 13 P.3d 1044, 1050 (2000). | Materiality required. Or. Rev. Stat. § 646.608(t) | While scienter is not required to establish violation of the UTPA, plaintiff must prove "willful use or employment" of unlawful practice in order to recover damages. Or. Rev. Stat. § 646.638(1). However, "willful violation" means only that the actor should have known the act was unlawful. Or. Rev. Stat. § 646.605(10). | In individual actions, greater of actual damages or $200; reasonable attorney's fees may be awarded to prevailing party. Or. Rev. Stat. § 646.638(1), (3). Discretionary punitive damages are awardable only when jury finds deterrence is necessary and document is aggravated. Or. Rev. Stat. § 646.638(1), (3); *Crooks* v. *Payless Drug Stores*, 592 P.2d 196, 199 (1979). Attorney's fees are available in class actions. Or. Rev. Stat. § 646.638(4). Statutory damages may be recovered on behalf of class members only if "ascertainable loss" resulting from reckless or knowing acts. Or. Rev. Stat. § 646.638(8)(a). |

40

**SWANHOLT EXH. 23- 358**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**PENNSYLVANIA**
*Unfair Competition, Acts or Practices*
**73 Pa. Cons. Stat. § 201¬1 et seq**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| Private right of action and class actions allowed. 73 Pa. Cons. Stat. § 201-9.2; *Agliori* v. *Met. Life Ins. Co*, 879 A.2d 315, 319(2005). | 6 years. *Drelles v. Mfrs. Life Ins. Co.*, 881 A.2d 822, 831 (2005). | Must suffer "ascertainable loss of money or property" to recover "actual damages." 73 Pa. Cons. Stat. § 201-9.2(a); *Weinberg v. Sun Co., Inc.,* 777 A.2d 442, 446 (Pa. 2001). | Plaintiff must show "justifiable reliance" for common-law fraud. *Toy v. Metro. Life, Ins. Co.,* 863 A.2d 1, 11 (Pa. Super. 2004); *Weinburg* v. *Sun Co,* Inc., 777 A.2d 442, 444 (Pa. 2001). **Causal connection between unlawful practices and damages required.** 73 Pa. Cons. Stat. § 201-9.2(a). | Plaintiff must show materiality for common- law fraud-based deceptive acts and practices. *Zwiercan v. General Motors Corp.,* 2003 WL 1848571, at *1-2 (2003); *Debbs v. Chrysler Corp.,* 810 A.2d 137, 155 (2002). | Plaintiff must show elements of common-law fraud, including knowledge of fraud or reckless disregard thereto. *Debbs v. Chrysler Corp.,* 810 A.2d 137,155 (2002). | Actual damages or $100, whichever is greater; discretionary treble damages and reasonable attorney's fees. 73 Pa. Cons. Stat. § 201-9.2(a). **Discretionary punitive damages are recoverable.** *Arsonson* v. *Creditrust Corp.,* 7 F. Supp. 2d 589, 594 (W.D. Pa. 1998). **Discretionary attorney's fees are recoverable.** *In re Bryant,* 111 B.R. 474, 480 (E.D. Pa. 1990) (unfair conduct breaching parties' contract Justified attorney's fees). |

SWANHOLT EXH. 23- 359

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**RHODE ISLAND**
*Unfair Trade Practices & Consumer Protection Act*
**Ri. Gen. Laws § 6-13.1-1 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** R.I. Gen. Laws § 6-13.1-5.2(a), (b); *Park v. Ford Motor Co.*, 844 A.2d 687, 691-92 (R.I. 2004). **Class certification governed by special rules.** *Park v. FordMotor Co.*, 2004 WL 2821312, at *2- 3 (R.I. Super. Ct Oct. 7, 2004). | **10 years.** R.I. Gen. Laws § 9-1-13. | **Must suffer "ascertainable loss of money or property" to recover "actual damages."** R.I. Gen. Laws § 6-13.1-5.2(a). | **Ascertainable loss must be "as a result of the use or employment . . . of a method, act or practice declared unlawful."** R.I. Gen. Laws § 6-13.1-5.2(a). | **Covers material misrepresentations.** *Groff v. Am. Online, Inc.*, 1998 WL 307001, at *5 (R.I. Super. Ct. May 27, 1998). | **Undecided.** | **Actual damages or $200, whichever is greater; discretionary punitive damages and reasonable attorney's fees.** R.I. Gen. Laws § 6-13.1-5.2(a), (d); *Park v. FordMotor Co.*, 844 A.2d 687, 691-92 (R.I. 2004). **Must show malice, bad faith, or intent to harm for punitive damages.** *Ross-Simons of Warwick, Inc.* v. *Baccarat, Inc.*, 182 F.R.D. 386, 400 (D. R.I. 1998). |

SWANHOLT EXH. 23- 360

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**SOUTH CAROLINA**
*Unfair Trade Practices Act*
**S.C. Code Ann. § 39-5-10, et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action, but class actions not allowed.**<br>S.C. Code Ann. § 39-5-140(a). | **3 years after discovery of conduct.**<br>S.C. Code Ann. § 39-5-150; *Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship,* 503 S.E.2d 184, 188 (1998). | **Requires "ascertainable loss of money or property."**<br>S.C. Code Ann. § 39-5-140(a). | **Ascertainable loss must be "as a result of the use or employment . . . of an unfair or deceptive method, act or practice."**<br>S.C. Code Ann. § 39-5-140(a). | **Must be material misrepresentations of fact.**<br>*Wingard* v. *Exxon Co., USA,* 819 F. Supp. 497, 506 (D.S.C. 1992); *Clarkson* v. *Orkin Exterminating Co.,* 761 F.2d 189, 191 (4th Cir. 1985) (puffing not misrepresentation). | **Violation need not be knowing or willful to recover actual damages; must be willful for treble damages.**<br>*Inman v. Ken Yuatt Chrysler Plymouth, Inc.,* 363 S.E.2d 691, 692 (S.C. 1988) (noting that intent to deceive is not required); *Haley Nursery Co.* v. *Forrest,* 381 S.E.2d 906, 909 (S.C. 1989). | **Actual damages; discretionary treble damages for willful or knowing violations.**<br>S.C. Code Ann. § 39-5-140(a); *Payne v. Holiday Towers, Inc.,* 321 S.E.2d 179 (1984).<br>**Punitive damages are not permitted.**<br>*Tousley v. N. Am. Van Lines,* Inc., 752 F.2d 96, 104-05 (4th Cir. 1985).<br>**Attorney's fees awarded to prevailing plaintiff, reasonability determined by six enumerated factors.**<br>*Rowel v. Whisnant,* 600 S.E. 2d 96, 99 (2004). |

43

SWANHOLT EXH. 23- 361

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**SOUTH DAKOTA**
*Deceptive Trade Practices and Consumer Protection Act*
**S.D. Codified Laws § 37-24-1 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** S.D. Codified Laws § 37-24-31; *Wyman* v. *Terry Schulte Chevrolet Inc.*, 584 N.W.2d 103, 105 (S.D. 1998); *Nygaard v. Sioux Valley Hospitals & Health System*, 731 N.W. 2d 184 (2007) | **4 years after occurrence or discovery of conduct.** S.D. Codified Laws § 37-24-33. | **Plaintiff must claim to be "adversely affected" by an unlawful act of practices and have "actual damages."** S.D. Codified Laws § 37-24-31. | **Requires "proof of an intentional misrepresentation or concealment of a fact on which plaintiff relied and that caused an injury to plaintiff."** *Nw. Pub. Serv. v. Union Carbide Corp.*, 236 F. Supp. 2d 966, 973-74 (D.S.D. 2002). | **Materiality required.** S.D. Codified Laws § 37-24-6(1). | **A deceptive act/omission must be knowing and intentional.** S.D. Codified Laws § 37-24-6(1). | **Actual damages only; no punitive damages.** S.D. Codified Laws § 37-24-31; *Wyman* v. *Terry Schulte Chevrolet, Inc.*, 584 N.W.2d 103, 107 (S.D. 1998). **Actual damages synonymous with compensatory damages.** *Wyman v. Terry Schulte Chevrolet, Inc.*, 584 N.W.2d 103, 107 (S.D. 1998). |

SWANHOLT EXH. 23- 362

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**TENNESSEE**
*Consumer Protection Act*
**Tenn. Code Ann. f 47-18-101 et seq..**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| Private right of action, but class actions not allowed. Tenn. Code Ann. 47-18-109(a)(1); *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 308-11 (2008). **Plaintiff must have purchased goods for individual, personal, family, or household purpose.** Tenn. Code Ann. 47-18-103. | 1 year after discovery of deceptive act, but not more than 5 years after conduct. Tenn. Code Ann. 47-18-110. | Requires "ascertainable loss of money or property." Tenn. Code Ann. 47-18-109(a)(1). | Requires an "ascertainable loss ... as a result of the use or employment ... of an unfair or deceptive act or practice." Tenn. Code Ann. 47-18-109(a)(1). **No reliance requirement, but plaintiffs must show proximate cause of harm.** *Harvey* v. *Ford Motor Credit Co.*, 1999 WL 486894, at *2 (Tenn. Ct. App. July 13, 1999) (proximate cause required). | Materiality required. *Haverlah v. Memphis Aviation, Inc.*, 674 S.W. 2d 297 (1984) | Unfair or deceptive act "need not be willful or knowingly made to recover actual damages"; statute contemplates recovery for negligence. *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W. 2d 9, 12-13 (Tenn. Ct. App. 1992). **Willful and knowing acts required for trebled damages.** *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 12 (Tenn. Ct. App. 1992). | Actual damages and attorney's fees; discretionary treble damages for "willful and knowing" violation. Tenn. Code Ann. 47-18-109(a)(1), (3); *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 12 (Tenn. Ct. App. 1992). **Punitive damages not available.** *Paty* v. *Herb Adcox Chevrolet Co.*, 756 S.W.2d 697 (Tenn. Ct. App. 1988). |

45

SWANHOLT EXH. 23- 363

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**TEXAS**
*Deceptive Trade Practices Act*
**Tex. Bus. & Com. Code § 17.41 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** Tex. Bus. & Com. Code § 17.50; *Mahoney v. Cupp*, 638 S.W. 2d 257, 261 (Tex. App. 1982). | **2 years after occurrence or discovery by reasonable diligence.** Tex. Bus. & Com. Code § 17.565; *McAdams v. Cap. Prods. Corp.*, 810 S.W.2d 290, 292-93 (Tex. App. 1991). | **Must cause "economic damages or damages for mental anguish."** Tex. Bus. & Com. Code § 17.50(a). | **Act or practice must be a "producing cause" of damages and "relied on by a consumer to the consumer's detriment."** Tex. Bus. & Com. Code § 17.50(a). | **The misrepresentation must be of a material fact.** *Church & Dwight Co.* v. *Huey*, 961 S.W.2d 560, 567 (Tex. App. 1997). | **Knowledge or intent is not an element unless required by a particular provision.** *Smith v. Herco, Inc.*, 900 S.W.2d 852, 859 (Tex. App. 1995). **To recover treble damages, defendant's actions must have been intentional.** Tex. Bus. & Com. Code § 17.50(b). | **Actual damages, mental anguish (if intentional); reasonable and necessary attorney's fees.** Tex. Bus. & Com. Code § 17.50(b), (d); *Gunn Infiniti, Inc.* v. *O'Bryne*, 996 S.W.2d 854, 860-61 (Tex. 1999). **Punitive damages of not more than three times actual damages available for intentional acts.** Tex. Bus. & Com. Code § 17.50(b). |

**SWANHOLT EXH. 23- 364**

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**UTAH**
*Consumer Sales Practices Act*
**Utah Code Ann. § 13-11-1 et seq..**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action allowed.** Utah Code Ann. § 13-11-19 *et seq.* **Act contains specific class action requirements.** Utah Code Ann. § 13-11-20; Utah Code Ann. § 13-11-19(4). | **2 years.** Utah Code Ann. § 13-11-19(8). | **Requires that plaintiff suffer a "loss."** Utah Code Ann. § 13-11-19(2). **"Loss" should be construed more broadly than "damages."** *Andreason* v. *Felsted,* 137 P.3d 1, 4 (Utah Ct. App. 2006). | **Requires plaintiff suffer loss as a result of violations of the Act.** Utah Code Ann. § 13-11-19(2). | **Materiality required.** Utah Code Ann. § 13-11-2. | **Requires knowing or intentional deceptive act or practice.** Utah Code Ann. § 13-11-4(2). | **In individual actions, greater of actual damages or $2,000; reasonable attorney's fees.** Utah Code Ann. § 13-11-19(2), (5). |

47

SWANHOLT EXH. 23- 365

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**VERMONT**
*Consumer Fraud Act*
**9 Vt. Stat. Ann. § 2451 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.**<br><br>9 Vt. Stat. Ann. § 2461(b); *Vermont Mobile Home Owners Ass'n, Inc.* v. *Lapierre*, 94 F.Supp.2d 519 (D. Vt. 2000). | **6 years.**<br><br>12 Vt. Stat. Ann. § 511. | **Suit can be brought by "[a]ny consumer who contracts for goods or services in reliance upon false or fraudulent representations ... or who sustains damages or injury as a result of any false or fraudulent representations."**<br><br>9 Vt. Stat. Ann. § 2461(b). | **Cause of action available to consumer who contracts for goods or services in reliance upon false or fraudulent representations or who sustains damages or injury as a result of such representations.**<br><br>9 Vt. Stat. Ann. § 2461(b).<br><br>**Actual reliance not required; a statement need only be capable of misleading the consumer.**<br><br>*Jordan* v. *Nissan N. Am.*, 853 A.2d 40, 44 (Vt. 2004). | **The misleading effects must be material measured by an objective standard, that is, likely to affect a reasonable consumer's conduct or decision with regard to a product.**<br><br>*Carter* v. *Gugliuzzi*, 716 A.2d 17, 23 (Vt. 1998). | **No intent or bad faith required.**<br><br>*Winston* v. *Johnson & Dix Fuel*, 515 A.2d 371, 376 (Vt. 1986).<br><br>**If defendant knows or should know that omission is important, materiality is presumed.**<br><br>*Carter* v. *Gugliuzzi*, 716 A.2d 17, 23-24 (Vt. 1998). | **Actual damages, reasonable attorney's fees, exemplary damages not to exceed three times actual damages.**<br><br>9 Vt. Stat. Ann. § 2461(b); *Gramatan Home Investor's Corp. v. Starling*, 470 A.2d 1157, 1161-62 (1983). |

SWANHOLT EXH. 23- 366

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**VIRGINIA**

*Consumer Protection Act*

Va. Code Ann. § 59.1¬196 et seq.

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action allowed, but class actions generally not allowed.** Va. Code Ann. § 59.1-204(A); *Almeter v. Va Dep't of Taxation,* 2000 WL 1687589 at *1 n. 1 (Va.Cir.Ct. 2000). | **2 years.** Va. Code Ann. § 59.1-204.1(A). **Right of action runs from the date of injury and not from the date of discovery unless claim is solely equitable.** Va. Code Ann. § 8.01-230. | **Actual loss required to initiate an action.** *Gavin v. Koons Buick Pontiac GMC Inc.,* 28 Fed.Appx. 220, 223 (4th Cir. 2002); *Alston v. Crown Auto, Inc.,* 224 F.3d 332, 336 (4th Cir. 2000). | **Requires "loss as the result of a violation" of the Act.** Va. Code Ann. § 59.1-204(A); *Polk v. Crown Auto, Inc.,* 228 F.3d 541, 543 (4th Cir. 2000); *Alston v. Crown Auto, Inc.,* 224 F.3d 332, 336 (4th Cir. 2000). **Reliance element of fraud is necessary to state a claim.** *Cooper v. GGGR Invs., LLC,* 334 B.R. 179, 188 (E.D. Va. 2005); *Weiss v. Cassidy Dev. Corp.,* 2003 WL 22519650, at *2 (Va. Cir. Ct. Aug. 18, 2003). . | **"Under Virginia law, a false misrepresentation must be of an existing fact, not a mere expression of an opinion."** *Graham v. RRR, LLC,* 202 F.Supp.2d 483, 491 (E.D. Va. 2002), aff'd per curiam sub nom *Graham v. Geneva Enters., Inc.,* 55 Fed. App'x. 135 (4th Cir. 2003). | **Intent requirement of fraud applies.** *Cooper v. GGGR Invs., LLC,* 334 B.R. 179, 188 (E.D. Va. 2005); *Weiss v. Cassidy Dev. Corp.,* 2003 WL 22519650, at *2 (Va. Cir. Ct. Aug. 18, 2003). **Misrepresentation by omission of a material fact requires evidence of a "knowing and a deliberate decision" to conceal the fact.** *Lambert v. Downtown Garage, Inc.,* 553 S.E.2d 714, 718 (Va. 2001). | **Greater of actual damages or $500, reasonable attorney's fees, and costs; if the violation was willful, greater of discretionary treble damages or $1,000.** Va. Code Ann. § 59.1-204(A)-(B). |

49

SWANHOLT EXH. 23- 367

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**WASHINGTON**
*Unfair Business Practices—Consumer Protection Act*
**Wash. Rev. Code Ann. § 19.86.010 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions available.** Wash. Rev. Code Ann. § 19.86.090; *Smith v. Behr Process Corp.*, 54 P.3d 665, 675 (2002). | **4 years.** Wash. Rev. Code Ann. § 19.86.120. | **Allows cause of action by "[a]ny person who is injured in his or her business or property by a violation" of the Act.** Wash. Rev. Code Ann. § 19.86.090. | **A "causal link" must exist "between the unfair or deceptive act and the injury suffered."** *Pickett v. Holland Am. LineWestours, Inc.*, 35 P.3d 351, 360 (Wash. 2001); *Leingang* v. *Pierce County Med. Bureau, Inc.*, 930 P.2d 288, 296 (Wash. 1997).  **A plaintiff establishes causation by showing that he or she "relied upon a misrepresentation of fact."** *Robinson* v. *AvisRent-A-Car Sys. Inc.*, 22 P.3d 818, 823 (Wash. Ct. App. 2001).  **Other cases indicate that a plaintiff need not prove reliance to establish an unfair trade practice.** *State* v. *A.N. W. Seed Corp.*, 802 P.2d 1353 (1991); *Washington* v. *Williams Chrysler Plymouth*, 553 P.2d 423 (Wash. 1976). | **Materiality of fact required.** *Testo* v. *Russ Dunmire Oldsmobile*, 16 Wn. App. 39, 51 (Wash. Ct. App. 1976). | **Intent not required "if the action has the capacity to deceive a substantial portion of the purchasing public."** *Haner* v. *Quincy Farm Chems., Inc.*, 649 P.2d 828, 831 (Wash. 1982). | **Actual damages, attorney's fees, discretionary treble damages not to exceed $25,000.** Wash. Rev. Code Ann. § 19.86.090. |

50

SWANHOLT EXH. 23- 368

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**WEST VIRGINIA**
*Consumer Credit and Protection Act*
**W. Va. Code Ann. § 46A- 1-101 et seq.**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| Private right of action and class actions allowed.<br><br>W.Va. Code Ann. § 46A-6- 106(a); *In re W. Va. Rezulin Litig.*, 585 S.E.2d 52, 74 (W. Va. 2003). | **2 years.**<br><br>W.Va. Code Ann. § 552-12.<br><br>**Statute of limitations begins to run when fraud discovered or should have been discovered by reasonable diligence.**<br><br>*Brumbaugh v. Princeton Partners*, 985 F.2d 157, 161-62 (4th Cir. 1993). | **Plaintiff must suffer "ascertainable loss of money" in order to bring a claim.**<br><br>W.Va. Code Ann. § 46A-6-106(a).<br><br>**A consumer is not required to list a specific amount of actual damages.**<br><br>*In re W. Va. Rezulin Litig.*, 585 S.E.2d 52, 75 (W.Va. 2003). | **"Ascertainable loss" as a result of prohibited act.**<br><br>W.Va. Code Ann. § 46A-6-106(a).<br><br>**Deceptive acts prohibited "whether or not any person has in fact been misled, deceived or damaged thereby."**<br><br>W.Va. Code Ann. § 46A-6-102(7)(M).<br><br>**Reliance on affirmative misrepresentations must be proven in certain instances.**<br><br>*White v. Wyeth*, 705 S.E.2d 828, 837 (W.Va. 2010) | **In false advertising claims, the offending misrepresentation must be a "material fact."**<br><br>W.Va. Code Ann. § 46A-6-102(7)(M). | **In false advertising claims, the offending misrepresentation must be made "with intent that others rely upon" it.**<br><br>W.Va. Code Ann. § 46A-6-102(7)(M). | **Greater of actual damages or $200.**<br><br>W.Va. Code Ann. § 46A-6-106(a).<br><br>**Punitive damages and attorney's fees are not allowed.**<br><br>*Virden v. Altria Group, Inc.*, 304 F.Supp.2d 832, 850 (N.D. W.Va. 2004). |

51

SWANHOLT EXH. 23- 369

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**WISCONSIN**
*Deceptive Trade Practices Act*
**Wis. Stat. Ann. § 100.18**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| **Private right of action and class actions allowed.** Wis. Stat. Ann. § 100.18(11)(b)(2); *Tietsworth v. Harley-Davidson, Inc.,* 2003 WI App. 75, 661 N.W.2d 450 (Wis. Ct. App. 2003), *overruled on other grounds by* 2004 WI 33, 677 N.W.2d 233 (Wis. 2004). | **3 years.** Wis. Stat. Ann. § 100.18(11)(b)(3). **Discovery rule does not apply.** *Skrupky v. Elbert,* 526 N.W.2d 264, 273-74 (Wis. Ct. App. 1994); Wis. Stat. Ann. § 100.18(11)(b)(3). | **A plaintiff must have suffered "pecuniary loss."** Wis. Stat. Ann. § 100.18(11)(b)(2); *Reusch v. Roob,* 2000 WI App 76, 610 N.W.2d 168, 176 (Wis. Ct. App. 2000). | **Pecuniary loss must be "because of a violation" of Section 100.18 in order to state a claim.** Wis. Stat. Ann. § 100.18(11)(b)(2). **Plaintiffs must "show a causal connection between the defendants' alleged conduct and any pecuniary loss suffered."** *Valente v. Sofamor, S.N.C.,* 48 F.Supp.2d 862, 874 (E.D. Wis. 1999). **Individual reliance required.** *Valente v. Sofamor,* 48 F. Supp. 2d 862, 874 (E.D. Wis. 1999). | **Representation must be untrue, deceptive or misleading.** *State v. Am. TV & Appliance of Madison, Inc.,* 430 N.W.2d 709, 712 (Wis. 1988). | **Representation must be made with knowledge the representation was false.** *Tietsworth v. Harley Davidson,* 677 N.W.2d 233, 239 (Wis. 1999). **There is strict liability for misrepresentations.** *Shephard Invs. Int'l, Inc. v. Verizon Commc'ns. Inc.,* 373 F. Supp.2d 853, 872 (E.D. Wis. 2005). **"Plaintiffs must show that the defendants intentionally induced the public to purchase merchandise."** *Valente v. Sofamor, S.N.C.,* 48 F.Supp.2d 862, 874 (E.D. Wis. 1999). | **Allows only actual damages, costs and reasonable attorney's fees.** Wis. Stat. Ann. § 100.18(11)(b)(2); *Sydney v. Badgerland Mobile Homes, Inc.,* 659 N.W.2d 887 (Wis. App. 2003). **Discretionary doubling of pecuniary damages.** Wis. Stat. Ann. § 100.20(5). **Punitive damages are recoverable but plaintiffs cannot get duplicative recovery through Wis. Stat. Ann. § 100.20(5).** *Seay v. Gardner,* 541 N.W.2d 837 (Wis. App. Ct. 1995). |

SWANHOLT EXH. 23- 370

DIFFERENCES IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

**WYOMING**
*Consumer Protection*
**Wyo. Stat. Ann. § 40-12-101 et seq..**

| Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Materiality | Scienter & Level of Culpability | Damages & Remedies |
|---|---|---|---|---|---|---|
| Private right of action and class actions allowed. Wyo. Stat. Ann. § 40-12-108. **Cause of action only for "uncured unlawful deceptive trade practices."** Wyo. Stat. Ann. §§ 40-12- 108(a); 40-12-109. **An "uncured" practice is one that remains unresolved after the consumer provides statutory notice to the alleged violator.** Wyo. Stat. Ann. § 40-12-102(a)(ix). | Written notice of the alleged violation must be given to defendant within one year of discovery or two years of occurrence, whichever is first. Wyo. Stat. Ann. § 40-12-109. | Plaintiff may bring an action for "the damages he has actually suffered." Wyo. Stat. Ann. § 40-12-108(a). | Damages "actually suffered as a consumer as a result of such unlawful deceptive trade practice." Wyo. Stat. Ann. § 40-12-108(a). | Materiality of fact required. *Big-O Tires* v. *Santini*, 838 P.2d 1169, 1177 (Wyo. 1992). | Requires that defendant "knowingly . . . engages in unfair or deceptive acts or practices." Wyo. Stat. Ann. § 40-12-105(a). | Allows only actual damages and reasonable attorney's fees; any monies recovered in a class action which cannot be restored to consumers within one year after final judgment shall be returned to the defendants. Wyo. Stat. Ann. § 40-12-108(b). **May receive attorney's fees in class action only if actual damages found and awarded.** Wyo. Stat. Ann. § 40-12-108(b). |

LAI-3205428

SWANHOLT EXH. 23- 371

# EXHIBIT 24

**DIFFERENCES IN STATE LAW REGARDING MANIFESTATION OF A PRODUCT DEFECT**

| Jurisdiction | Is Manifestation of a Product Defect Required? |
|---|---|
| AL | **Manifestation of Defect Required** <br><br> *Ford Motor Co. v. Rice*, 726 So. 2d 626, 630-31 (Ala. 1998) (holding that car owners could not recover for fraudulent suppression based solely on the theory that their vehicles could potentially malfunction in the future). <br><br> *Pfizer, Inc. v. Farsian*, 682 So. 2d 405, 407 (Ala. 1996) ("Alabama courts have never allowed a recovery based on a product that, like [plaintiff's heart] valve, is and has been working properly"). |
| AK | **No Case Law on the Issue** |
| AZ | **No Case Law on the Issue** |
| AR | **Manifestation of Defect Required** <br><br> *Wallis v. Ford Motor Co.*, 362 Ark. 317, 208 S.W.3d 153, 161 (Ark. 2005) (holding that the plaintiff could not maintain a cause of action under the Arkansas Deceptive Trade Practices Act (ADTPA) Ark. Code Ann. §§ 4-88-101 *et seq.* because the only injury complained of was a diminution in value of the vehicle:  "[A]ctual damage or injury is sustained when the product has actually malfunctioned or the defect has manifested itself. Where the only alleged injury is the diminution in value of the product, a private cause of action is not cognizable under the ADTPA."). <br><br> *Roberts v. Sunbeam Prods.*, No. 405C000183JMM, 2005 WL 3447609, at *1 (E.D. Ark. Dec. 14, 2005) ("[T]he undisputed fact that she has not suffered an injury based upon defendants' product either malfunctioning or containing a defect, plaintiff cannot establish a Deceptive Trade Practices Act claim.  This same reasoning would apply to plaintiffs strict liability and breach of implied warranty claims."). |
| CA | **"Substantial Certainty to Fail" Required for Implied Warranty Claims** <br><br> *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal App. 4th 908, 923 (2001) (a plaintiff may recover for breach of implied warranty where he or she can prove that the product at issue is "substantially certain" to fail during its useful life). <br><br> *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1298 (1995) ("Because the vast majority of the Samurais sold to the putative class 'did what they were supposed to do for as long as they were supposed to do it,' we conclude that these vehicles remained fit for their ordinary purpose. . . .  To hold otherwise would, in effect, contemplate indemnity for a potential injury that never, in fact, materialized."  . |
| CO | **No Case Law on the Issue** |

**DIFFERENCES IN STATE LAW REGARDING MANIFESTATION OF A PRODUCT DEFECT**

| Jurisdiction | Is Manifestation of a Product Defect Required? |
|---|---|
| **CT** | **No Case Law on the Issue** |
| **DC** | **Manifestation of Defect Generally Required**<br><br>*Barbarin v. Gen. Motors Corp.*, No. 84-0888 (TPJ), 1993 WL 765821, at *2 (D.D.C. Sept. 22, 1993) (dismissing the warranty claims of those plaintiffs whose vehicles never experienced a manifestation of the defect: "a contrary rule would, in effect, contemplate indemnity for a potential injury that never, in fact, materialized; compensation would have to be paid for a product 'defect' that was never made manifest, in a product that for the life of as the warrantor guaranteed it would").<br><br>*Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176 (D.D.C. 2003) (dismissing Consumer Protection Procedures Act claims for failure to allege injury in fact: "Without alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs.").<br><br>*But see Quality Air Servs., LLC v. Milwaukee Valve Co.*, 671 F. Supp. 2d 36, 43-46 (D.D.C. 2009) (holding that the plaintiffs could state express and implied warranty claims even though their air conditioning valves had not yet manifested the defect where there was expert evidence that each valve "is a 'time bomb' because of the 'intrinsic design and manufacturing defects in every valve'"). |
| **DE** | **Manifestation of Defect Generally Required**<br><br>*Cf. Dalton v. Ford Motor Co.*, No. 00C-09-155WCC, 2002 WL 338081, at *5-6 (Del. Super. Ct. Feb. 28, 2002) (dismissing plaintiffs' negligence and fraud claims based on the fact that plaintiffs' vehicles had been operating without any indication of a defect and continue to properly operate, thus they have not suffered any damages; the plaintiffs' claim that they suffered a diminution in value of their vehicles should they ever attempt to re-sell them in the future was too speculative) |
| **FL** | **No Case Law on the Issue But No Class Certification Where There Is a Mixture of Plaintiffs With and Without a Manifested Defect**<br><br>*Breakstone v. Caterpillar, Inc.*, No. 09-23324-CIV, 2010 WL 2164440, at *6 (S.D. Fla. May 26, 2010) (applying Florida and federal class certification principles to reject class certification where some plaintiffs' vehicles have "manifested a deficiency" while others have "performed satisfactorily" and only have speculative damages).<br><br>*Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1139 (Fla. Dist. Ct. App. 2008) (where Plaintiffs brought a class action against an automobile manufacturer on claims under the Florida Deceptive and Unfair Trade Practices Act and for breach of warranty, denying class certification because, among other things, "the class representative in this case seeks compensation not only for class members whose brakes have manifested a deficiency, but also for those whose brakes have performed satisfactorily"). |

**SWANHOLT EXH. 24- 373**

## DIFFERENCES IN STATE LAW REGARDING MANIFESTATION OF A PRODUCT DEFECT

| Jurisdiction | Is Manifestation of a Product Defect Required? |
|---|---|
| GA | **No Case Law on the Issue** |
| HI | **No Case Law on the Issue** |
| ID | **No Case Law on the Issue** |
| IL | **Manifestation of Defect Not Required**<br><br>*Haenisch v. Gen. Motors Corp. (In re Gen. Motors Type III Door Latch Litig.)*, No. 98 C 5835,2001 WL 103434, at *2-*3 (N.D. Ill. Jan. 31, 2001) ("As a general rule, the Illinois Appellate Court has allowed product defect claims in the absence of product malfunction only when the damages claim stems from the diminished value of the defective product.").<br><br>*Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 505 (1996) (reinstating consumer fraud claim where only damages alleged were diminution of value due to the vulnerability of the increased risk of Suzuki vehicles rolling over). |
| IN | **Manifestation of Defect Required**<br><br>*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) (applying Indiana and other states' law); *see Kantner v. Merck & Co.*, No. 49D06411PL002185, 2007 WL 3092779 (Ind. Super. Ct. Apr. 18, 2007) (plaintiff "has identified no Indiana case which would support her diminished value claim.  Our [Deceptive Consumer Sales Act], unlike that of some other states, expressly mandates both reliance and actual damages."). |
| IA | **No Case Law on the Issue** |
| KS | **No Case Law on the Issue** |
| KY | **Unclear**<br><br>*Cf. Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 192 (Ky. 1994) (holding, in the tort context, that "[n]o cause of action accrues until the potentially harmful exposure actually 'causes injury that produces loss or damage'"); *Wood v. Wyeth-Ayerst Labs.*, 82 S.W.3d 849, 855-56 (Ky. 2002) (interpreting *Capital Holding* to extend beyond personal injury cases to tort cases where no physical injury is alleged).<br><br>*But see In re Sigg Switzerland (USA), Inc. Aluminum Bottles Mktg. and Sales Practice Litig.*, No. 10-MD-2137, 2011 WL 159940, at *3-5 (W.D. Ky. Jan. 12, 2011) (in a warranty case, holding that *Wood* was inapposite because it involved "speculative physical injuries" as opposed to "potential economic injuries"). |

3

**DIFFERENCES IN STATE LAW REGARDING MANIFESTATION OF A PRODUCT DEFECT**

| Jurisdiction | Is Manifestation of a Product Defect Required? |
|---|---|
| LA | **Manifestation of Defect Not Likely Required.**<br><br>*Stroderd v. Yamaha Motor Corp., USA*, No. Civ. A. 04-3040, 2005 WL 2037419, at *4 (E.D. La. Aug. 4, 2005) (holding that plaintiffs could bring Louisiana redhibition claim even if defect does not manifest itself because "Plaintiffs need only allege that they would have purchased the motorcycles but for a lesser price").<br><br>*But see White v. Gen. Motors Corp.*, 718 So. 2d 480, 505 (La. Ct. App. 1998) (recognizing that whether "the malfunction of a product is . . . a prerequisite for breach of warranty" was a substantial legal obstacle to prevailing on the merits, which was a factor weighing in favor of approving class settlement). |
| ME | **Manifestation of Defect Required for Breach of Warranty Claims**<br><br>*See Everest v. Leviton Mfg. Co.*, No. CV-04-612, 2006 WL 381832, at *2 (Me. Super. Ct. Jan. 13, 2006) (unlike breach of warranty claims, in which the product must malfunction before a cause of action lies, in a fraud claim a plaintiff's injury is sustained at the time he makes the purchase in reliance on Defendant's purposeful misrepresentations). |
| MD | **Manifestation of Defect Not Always Required**<br><br>*Lloyd v. General Motors Corp.*, 397 Md. 108, 117-19, 149-50, 160 (2007) (where a significant number of others had been severely injured or died as a result of a allegedly defective vehicle seat backs, plaintiffs' cost of repairing the seat backs constituted damages sufficient to state consumer protection act and warranty claims). |
| MA | **Manifestation of Defect Not Required for Consumer Protection or Implied Warranty Claims**<br><br>*Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 624-25 (2008) ("We do not consider the lack of accident-related injury or manifested defect a bar to recovery under G.L. c. 93A, § 9, in this case.").<br><br>*Holtzman v. Gen. Motors Corp.*, No. 02-1368, 2002 WL 34538155 (Mass. Super. Ct. July 2, 2002) (holding that plaintiffs can claim economic damages for implied warranty claims where tire jacks were prone to failure and stating that "Massachusetts cases allowing recovery of purely economic for breach of warranty are legion."). |
| MI | **Manifestation of Defect Not Likely Required for Express and Implied Warranty Claims**<br><br>*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1099-1101 (S.D. Ind. 2001) (holding that manifestation of vehicle defect is not required under Michigan law for recovery under express and implied warranty theories). |

4

**DIFFERENCES IN STATE LAW REGARDING MANIFESTATION OF A PRODUCT DEFECT**

| Jurisdiction | Is Manifestation of a Product Defect Required? |
|:---:|:---|
| MN | **Manifestation of Defect Required**<br><br>*O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009) ("It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own.").<br><br>*Cannon Techs., Inc. v .. Sensus Metering Sys., Inc.*, 734 F. Supp. 2d 753,763 (D. Minn. 2010) (recognizing that the rule in *O'Neil* is consistent with the UCC because the contrary interpretation of the UCC would mean that "[a] plaintiff could always claim that a defect manifesting itself after the express-warranty period was endemic to the product on the date it was purchased, and hence the produce was "defective" when bought.  Such a rule is nonsensical.").<br><br>*Carey v. Select Comfort Corp.*, No. 27CV 04-015451, 2006 WL 871619, at *2-4, *5-6 (Minn. Dist. Ct. Jan. 30, 2006) (dismissing consumer fraud, false advertising, and warranty claims where the plaintiff had alleged a product's "propensity" to form mold: "this Court agrees with those cases that find that an allegation of diminished value due to a propensity to fail is too remote, conjectural and speculative" to support a claim for relief). |
| MS | **Manifestation of Defect Required**<br><br>*Jarman v. United Industries Corp.*, 98 F. Supp. 2d 757, 768 (S.D. Miss. 2000) (dismissing plaintiff's claims for common law fraud, negligent misrepresentation, unjust enrichment, breach of warranty, RICO, and civil conspiracy claims for failure to allege damages:  the "[ m]ere suspicion of a lost bargain . . . will not support an award of damages"). |
| MO | **Manifestation of Defect Required**<br><br>*Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 87 (Mo. Ct. App. 2011) ("'It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own.'").<br><br>*See also Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999) ("Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies.  Since the Plaintiffs have failed to allege any manifest defect and their vehicles perform in a satisfactory manner, the District Court was correct when it dismissed the Plaintiffs' Original Complaint alleging fraud, warranty, and consumer protection statute claims."). |
| MT | **No Case Law on the Issue** |
| NE | **No Case Law on the Issue** |
| NV | **No Case Law on the Issue** |

SWANHOLT EXH. 24- 376

**DIFFERENCES IN STATE LAW REGARDING MANIFESTATION OF A PRODUCT DEFECT**

| Jurisdiction | Is Manifestation of a Product Defect Required? |
|---|---|
| NH | **Manifestation of Defect Required**<br><br>*Nichols v. Gen. Motors Corp.*, No. 99-C-566, 1999 WL 33292839, at *3 (N.H. Super. Ct. Dec. 13, 1999) ("The requirement of a manifestation of the defective condition applies to causes of action for defective and unsafe products in Negligence, Strict Liability, Breach of Implied Warranty of Merchantability, Fraud, Negligent Misrepresentation and Concealment, and violation of the Consumer Protection Act."). |
| NJ | **Manifestation of Defect Generally Required**<br><br>*Crouch v. Johnson & Johnson Consumer Co.*, No. 09-CV-2905, 2010 WL 1530152, at *6-*7 (D.N.J. Apr. 15, 2010) (the New Jersey Product Liability Act subsumes defect-centered breach of warranty (except express warranty), consumer fraud, and unjust enrichment claims and does not allow for purely economic injury).<br><br>*Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 872 A.2d 783, 793, 795 n.8 (2005) (granting summary judgment in favor of defendant manufacturer on consumer fraud claim because plaintiff had not tried to sell the vehicle at issue or otherwise prove loss of value but declining to address whether benefit-of-the bargain damages are sufficient to constitute an "ascertainable loss").<br><br>*Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 657 (D.N.J. 1986) (dismissing on the pleadings a putative class action under New Jersey law for breach of warranty and fraud seeking lost value of allegedly defective vehicles because plaintiffs failed to allege that they suffered damages through resale or other evidence of devaluation:  "All [plaintiff] is able to allege is that the potential leak is 'likely' to cause damage and 'may' create potential safety hazards.").<br><br>In *Strzakowlski v. Gen. Motors Corp.*, No. Civ.A. 04-4740, 2005 WL 2001912, at *8 (D.N.J. Aug. 16, 2005) (distinguishing *Yost* and held that, although plaintiff does not have damages for defects not yet manifested, he could get past the pleadings stage by alleging diminution of value). |
| NM | **Unclear**<br><br>*Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 446 (N.M. Ct. App. 2007) ("Plaintiff may proceed with his [Unfair Practices Act] claim even if his prayer for damages appears rather speculative. . . . Plaintiff's UPA claim does not appear to be premised on an unmanifested defect . . . . "). |
| NY | **Manifestation of Defect Required**<br><br>*Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9, 17 (App. Div. 2002) (dismissing plaintiff's negligence, strict liability, breach of implied warranty of merchantability, negligent concealment and misrepresentation, fraud, unfair or deceptive business practices, and civil conspiracy claims for failure to allege manifestation of defect). |

**SWANHOLT EXH. 24- 377**

**DIFFERENCES IN STATE LAW REGARDING MANIFESTATION OF A PRODUCT DEFECT**

| Jurisdiction | Is Manifestation of a Product Defect Required? |
|:---:|:---|
| | *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *3 (S.D.N.Y. May 22, 1996) ("Purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own."). |
| | *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99 (S.D.N.Y. 1997) (dismissing warranty claim based on defective integrated child safety seats brought under New York law where plaintiff had experienced no problem with the child seat in his vehicle and stating that "[i]t is well established that "purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own."). |
| | *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982) ("The majority of the tires sold to putative class members, by doing what they were supposed to do for as long as they were supposed to do it, clearly lived up to that 'minimum level of quality' which is all U.C.C. s 2-314(2)(c) requires.  Thus no claim for breach of an implied warranty is maintainable in respect of such tires.  Plaintiffs' bald assertion that a common defect which never manifests itself '*ipso facto* caused economic loss' and breach of implied warranty is simply not the law."). |
| NC | **Manifestation of Defect Required for Breach of Implied Warranty of Merchantability**<br><br>*Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 623-24 (M.D.N.C. 2006) (plaintiff failed to allege that his vehicle was not "merchantable" as is required to state a claim for breach of the implied warranty of merchantability because he had not alleged that the defect complained of had actually manifested). |
| ND | **Manifestation of Defect Required**<br><br>*Ziegelmann v. DaimlerChrysler Corp.*, 649 N.W.2d 556, 564-65 (N.D. 2002) (affirming the dismissal of all claims, including those brought under false advertising and consumer fraud statutes, where "[plaintiff] has not alleged that his vehicle has actually manifested the alleged defect causing injury or damage"). |
| OH | **Manifestation of Defect Required**<br><br>*Gentek Bldg. Prods., Inc. v. Sherwin Williams Co.*, No.1:02CV00013, 2005 U.S. Dist. LEXIS 45312, at *31-*34 (N.D. Ohio Feb. 22, 2005) (holding that for allegations in contract, express warranty, implied warranty, and tort, of steel peel failures there must be evidence of present injury, even if the product in question contains a latent defect that has manifested in other, identical products).<br><br>*Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 807 (N.D. Ohio 2002) (in product liability case involving a strict liability claim regarding the diet drug dexfenfluramine hydrochloride, the court found that "Ohio law does not permit recovery for the 'mere possibility' that a plaintiff may develop a condition") |

SWANHOLT EXH. 24- 378

**DIFFERENCES IN STATE LAW REGARDING MANIFESTATION OF A PRODUCT DEFECT**

| Jurisdiction | Is Manifestation of a Product Defect Required? |
|:---:|:---|
| OK | **Manifestation of Defect Required**<br><br>*Harrison v. Leviton Mfg. Co.*, No. 05-CV-0491-CVE-FHM, 2006 WL 2990524, at *4-8 (N.D. Okla. Oct. 19, 2006) (dismissing plaintiff's consumer protection, breach of warranty, and strict liability claims where the alleged defect had not manifested). |
| OR | **No Case Law on the Issue** |
| PA | **Manifestation of Defect Required for Implied Warranty Claim but not Consumer Protection Law Claim**<br><br>*Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992) (an implied warranty of merchantability plaintiff must establish, inter alia, "that the product malfunctioned.").<br><br>*Grant v. Bridgestone/Firestone Inc.*, 57 Pa. D. & C. 4th 72, 81-83 (Ct. Com. Pl. 2002) (an UTPCPL claim does not require that the alleged defect has manifested itself, but a claim for breach of the implied warranty of merchantability does). |
| RI | **No Case Law on the Issue** |
| SC | **Manifestation of Defect Required for Breach of Warranty Claims**<br><br>*Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989) (affirming the trial court's dismissal of those plaintiffs who alleged damages attributable only to lost resale value because under South Carolina law there is no recovery for breach of implied warranties where a vehicle had never manifested the alleged defect).<br><br>*Wilson v. Style Crest Prods., Inc.*, 367 S.C. 653, 627 S.E.2d 733, 735-37 (S.C. 2006) (holding that when a product never manifests a defect, it is merchantable, and therefore there can be no claim for breach of express or implied warranty). |
| TN | **Manifestation of Defect Not Likely Required**<br><br>*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1099-1101 (S.D. Ind. 2001) (holding that manifestation of vehicle defect is not required under Tennessee law for recovery under express and implied warranty theories). |
| TX | **Manifestation of Defect Required**<br><br>*In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 805 (E.D. La. 1998) (dismissing implied warranty claim based on defective air bags brought under Texas law where plaintiffs never alleged that the air bags functioned improperly)<br><br>*Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 854-55 (Tex. App. 2005) (holding that plaintiffs' allegations of economic loss damages from a product that had not yet manifested did not have standing to bring a claim for breach of the implied warranty of |

8

SWANHOLT EXH. 24- 379

**DIFFERENCES IN STATE LAW REGARDING MANIFESTATION OF A PRODUCT DEFECT**

| Jurisdiction | Is Manifestation of a Product Defect Required? |
|---|---|
| | merchantability:  "[t]o cause redressable injuries in the breach of the implied warranty of merchantability context, a 'defect' must either have manifested during the product's normal use or such manifestation must be inevitable when the defective feature of the product is used." <br><br> *Martin v. Ford Motor Co.*, 914 F. Supp. 1449, 1455 (S.D. Tex. 1996) (in case where vehicle owners brought action against Ford for breach of implied and express warranty, fraud, negligent misrepresentation, and violation of state consumer protection law based on alleged inadequacy of in-vehicle warning that passengers use lap belt, the court held that none of the plaintiffs' claims were viable absent showing of injury or causation). |
| UT | **Manifestation of Defect Required** <br><br> *Winzler v. Toyota Motor Sales USA, Inc.*, No. 1:.10-cv-00003-TC, 2010 WL 3064364, at *3 (D. Utah Aug. 3, 2010) (dismissing claims for defective design, defective manufacture, failure to warn, negligence, breach of implied warranty of merchantability, and breach of express warranty where the plaintiff faced only the possibility that the engine in the car she had purchased might be defective because some similar vehicles had defective engines), *vacated as moot*, 681 F.3d 1208 (10th Cir. 2012). |
| VT | **No Case Law on the Issue** |
| VA | **No Case Law on the Issue** |
| WA | **No Case Law on the Issue** |
| WV | **No Case Law on the Issue** |
| WI | **Manifestation of Defect Generally Required** <br><br> *See Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 677 N.W.2d 233, 240-41 (Wis. 2004) (where the plaintiffs sought damages for diminution in value of allegedly defective motorcycles, the Wisconsin Supreme Court held that plaintiffs had not adequately pled damages for a fraud claim when they alleged that the motorcycles had a propensity to manifest a defect that diminished the value of the motorcycles; plaintiffs' Deceptive Trade Practices Act claim failed because the defendant had made no misrepresentations that were not puffery and the Act does not apply to failures to disclose). |
| WY | **No Case Law on the Issue** |

**SWANHOLT EXH. 24- 380**

# EXHIBIT 25

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| Alabama | **Yes**<br><br>*Rampey v. Novartis Consumer Health, Inc.*, 867 So.2d 1079, 1087 (Ala. 2003) ("There is no right of action on an implied warranty theory against a *manufacturer* for property damage without privity of contract."); *Copenhagen Reinsurance Co. v. Champion Home Builders Co.*, 872 So.2d 848, 855 (Ala. Civ. App. 2003) (same). | **Yes for third-party beneficiary**<br><br>ALA. CODE § 7-2-318 – "A sellers' warranty, whether express or implied, extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty."<br><br>**But:**<br><br>The rule has been clarified to apply when "the product has been specially manufactured for a particular customer and the manufacturer can reasonably expect the customer to be affected by any problems with the product." *Horton Homes, Inc. v. Brooks*, 832 So.2d 44, 48 (Ala. 2001).<br><br>**No for unsafe products**<br><br>*Rampey v. Novartis Consumer Health, Inc.*, 867 So.2d 1079,1089-91 (Ala. 2003); *Medley v. U.S*, 480 F. Supp. 1005, 1010 (D. Ala. 1979). | **Four years**<br><br>ALA. CODE § 7-2-275(1).<br><br>**But:**<br><br>By the original agreement, the parties may reduce the period of limitation to not less than one year but may not extend it. | **Yes**<br><br>The Alabama Supreme Court has recognized that pre-litigation notice, as required by Alabama Code § 7-2-607(3)(a), is a "condition precedent to recovery" for a breach of warranty action. *See Parker v. Bell Ford, Inc.*, 425 So. 2d 1101, 1102 (Ala. 1983); *see also Hobbs v. Gen. Motors Corp*, 134 F. Supp. 2d 1277, 1285 (M.D. Al. 2001) ("[A]t least in the context of economic harm rather than personal injury, the filing of a lawsuit is not considered to be sufficient notice under Alabama law.")<br><br>Additionally, in *Hobbs,* the court held that "a non-privity consumer buyer must timely notify a remote manufacturer of alleged defects, at least when the buyer seeks recovery for economic loss …. remote manufacturers should be afforded the same protections as sellers, either by way of notice provided directly to them, or through notice provided to them by the direct seller from the buyer." *Id.* at 1284-85. |
| Alaska | **No**<br><br>"There is no longer any requirement that privity exist between the buyer and seller for recovery of property damage or economic loss under a breach of warranty theory." *Shooshanian v.* | N/A | **Three years**<br><br>ALASKA STAT. § 09.10.053. | **No**<br><br>*Shooshanian v. Wagner*, 672 P.2d 455, 462-63 (Alaska 1983) (stating that the filing of a complaint can constitute notice). |

---

[1] Note:  This chart does not outline what constitutes a "third party beneficiary" in each state.

[2] Note:  This chart does not outline when a claim accrues in each state.

[3] All states require notice to maintain actions for breach of express warranty and breach of implied warranty of merchantability.  State statutes and case law, however, do not draw any distinctions between the notice requirements to maintain these actions.  *See e.g.*, *U.S. Tire-Tech, Inc. v. Borean, B.V.*, 110 S.W.3d 194 (Tex Ct. App. 2003) (stating that "[t]he notice requirement for both breach of implied warranty and breach of express warranty springs from the same source – section 2.607(c)(1) of the Texas Business and Commercial Code); *Christian v. Sony Corp. of Am.*, 152 F. Supp. 2d 1184 (D. Minn. 2001) (barring claims for breach of express and implied warranties based on plaintiffs' failure to comply with MINN. STAT. ANN. § 336.2-607).

**SWANHOLT EXH. 25- 381**

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | *Wagner*, 672 P.2d 455, 462 (Alaska 1983) (citing *Morrow v. New Moon Homes*, 548 P.2d 279, 288-89 (Alaska 1976)). | | | |
| Arizona | **Yes** *Flory v. Silvercrest Indus., Inc.*, 129 Ariz. 574,579-81,633 P.2d 383, 388-90 (1981) (holding that economic losses are not recoverable for breach of an implied warranty absent privity of contract). | **Yes, only for food, beverages, and drugs** "We hold that in the case of food, beverages, and drugs an implied warranty by the manufacturer that the goods are pure and free from deleterious foreign substances inures to the benefit of the ultimate consumer of those goods by operation of law even in the absence of privity of contract." *Crystal Coca-Cola Bottling Co. v. Cathey*, 83 Ariz. 163, 169, 317 P.2d 1094, 1097 (1957). | **Four years** ARIZ. REV. STAT. ANN. § 47-2725. **But:** By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required** ARIZ. REV. STAT. ANN. § 47-2607; *see also Mountain-Aire Refrig. & Air Cond. Co. v. Gen. Elec. Co.*, 703 P.2d 577, 579 (Ariz. 1995) (noting that the UCC requires the buyer, within a reasonable time, to notify the seller of the breach or be barred from any remedy). |
| Arkansas | **No** Privity is not a bar to implied warranty claims in Arkansas. *Mack Trucks of Ark., Inc. v. Jet Asphalt and Rock Co.*, 437 S.W.2d 459, 462 (Ark. 1969). | N/A | **Four years** ARK. CODE ANN. § 4-2-725. **But:** By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Yes** *Williams v. Mozark Fire Extinguisher Co.*, 888 S.W.2d 303, 306 (Ark. 1994) ("We have additionally stated that the notice must be more than a complaint."). |
| California | **Yes** "In California, a plaintiff alleging breach of warranty claims must stand in 'vertical privity' with the defendant. The term 'vertical privity' refers to links in the chain of distribution of goods. If the | **Yes for third-party beneficiary** *See Gilbert Financial Corp. v. Steelform Contracting Co.*, 82 Cal.App.3d 65, 69 (Cal. App. 2d. Dist. 1978) (holding that plaintiff was a third party beneficiary of the contract and could therefore sue for breach of implied warranty and court therefore did not have to | **Four years** CAL. COM. CODE § 2725. **But:** By the original agreement the parties | **No** *In re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practices, and Prod. Liab. Litig.* 2010 WL 4867562, at *25 (C.D. Cal. 2010) ("Notice may be given consistent with *Hampton v. Gebhardt's Chili Powder Co.*, 294 F.2d 172, 174 (9th Cir. 1961), which permits post-filing notice if |

SWANHOLT EXH. 25- 382

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | buyer and seller occupy adjoining links in the chain, they are in vertical privity with each other." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) (internal citations and quotation marks omitted); *All West Electronics, Inc. v. M-B-W, Inc.*, 64 Cal. App. 4th 717, 725 (Cal. App. 5th Dist. 1998) ("Privity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability"). | decide privity issue). **No for dangerous instrumentality** *Peterson v. Lamb Rubber Co.*, 54 Cal. 2d 339, 346-47 (1960) (analyzing cases and concluding that none support the proposition "that privity is not required where the item sold is inherently dangerous"). | may reduce the period of limitation to not less than one year but may not extend it. | notice is otherwise within a reasonable time, and Plaintiffs are granted leave to amend to allege such notice."). |
| Colorado | **No** *Bradford v. Bendix-Westinghouse Auto. Air Brake Co.*, 33 Colo. App. 99, 108, 517 P.2d 406, 411 (1973) ("[W]e have not discovered any Colorado cases requiring privity of contract in the products liability context, whether the theory asserted be negligence, implied warranty, or strict liability."). | **N/A** | **Three Years** COLO. REV. STAT. ANN. § 4-2-725. | **Probably** *See Fiberglass Component, Prod, Inc. v. Reichhold Chem., Inc.*, 983 F. Supp. 948 (D. Colo. 1997) ("The purposes of the notice requirement are to allow seller to: 1) correct any defect; 2) *prepare for negotiation and litigation*; and 3) protect itself against stale claims asserted after it is too late for the seller to investigate them.") (emphasis added). |
| Connecticut | **Yes** "In Connecticut, privity of contract is required . . . and is waived only in certain circumstances." *TD Props. v. VP Bldgs., Inc.*, 602 F. Supp. 2d 351, 362 (D. Conn. 2009) (citing *Harmon v. Digliani*, 148 Conn. 710, 712, 174 A.2d 294(1961) ("[I]n order to sustain an action for breach of express or implied warranty there has to be evidence of a contract between the parties, | **No for third-party beneficiary, unless Plaintiffs allege an agency relationship between the manufacturer and dealer and Plaintiffs have no other remedies** "Despite the trend in other jurisdictions to dispense with the privity requirement in contractual breach of implied warranty actions, Connecticut maintains the requirement except under limited circumstances which are not present in this case. There is no allegation in the complaint of an agency relationship between the Dealership and manufacturer nor is it alleged that the plaintiff has no alternative | **Four Years** CONN. GEN. STAT. ANN. § 42a-2-725. **But:** By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Yes** CONN. GEN. STAT. ANN. § 42a-2-607; *see also Zeigler v. Sony Corp. of Am.*, 849 A.2d 19, 24 (Conn. Sup. Ct. 2004) ("The defendants have argued that this count is insufficient because the plaintiff failed to provide individualized notice of the defect prior to suit as required by General Statutes 42a-2-607. … By its terms, the plaintiff, as well as the other class members, is required to give individualized notice and the notice required is not simply notice of a defect of which the defendants may already be aware but notice of this plaintiff's claim the alleged |

SWANHOLT EXH. 25- 383

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | for without a contract there [can] be no warranty.")). | means to obtain a remedy. The no alternative remedies exception also appears particularly inapplicable in light of the plaintiff's claim of breach of express warranty claim set forth in the second count of her complaint." *Kahn v. Volkswagen of Am., Inc.*, 45 Conn. L. Rptr. 31, (Ct. Sup. 2008). | | defects constituted a breach of warranty.") |
| Delaware | **Yes, but third-party beneficiary exception swallows the rule**<br><br>*Moore v. Douglas Aircraft Co.*, 282 A.2d 625, 626-27 (Del. Sup. Ct. 1971) (holding that privity of contract is required to maintain a breach of warranty claim). | **Yes for third-party beneficiary**<br><br>"A seller's warranty whether express or implied extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section." Del. Code Ann. § 2-318; *see also Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1200 (Del. 1992).<br><br>**No for dangerous instrumentality**<br><br>While there is a dangerous instrumentality exception, it only applies to tort, rather than contract, claims. *Fine v. Mayor & Council of Wilmington*, 94 A.2d 393, 395-96 (Del. Sup. Ct. 1953). | **Four Years**<br>DEL. CODE ANN. tit. 6 § 2-725.<br>**But:**<br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required**<br><br>DEL. CODE ANN. tit. 6 § 2-607; *see also Gunzl v. CJ Pony Parts*, 2008 WL 755272, at *2 (Del. Sup. Ct. March 20, 2008) ("Gunzl can only recover damages for a breach of implied or express warranty where there is privity between the parties, notice is established, and the applicable statute of limitations has not run."). |
| D.C. | **No**<br><br>Privity is not a requirement in an implied warranty action. Picker X-Ray Corp. v. Gen. Motors Corp., 185 A.2d 919, 923 (D.C. 1962) (holding that "regardless of the lack of contractual privity, the implied warranty of fitness and merchantability runs to the ultimate consumer for whose use the article or personal property had been purchased."). | **N/A** | **Four Years**<br>D.C. CODE ANN. § 28:2-725.<br>**But:**<br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required**<br><br>D.C. CODE ANN. § 28:2-607; *see also Witherspoon v. Phillip Morris Inc.*, 964 F. Supp. 455, 464-65 (D.D.C. 1997) (Notice required, but constructive notice may occur when seller receives "numerous inquiries"; additionally, notice cannot be raised as a defense where seller "willfully fails to disclose a defect."). |
| Florida | **Yes** | **No for third-party beneficiary, but there are** | **Five Years** | **Probably** |

SWANHOLT EXH. 25- 384

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | "It is now well-settled that, barring certain exceptions, under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Smith v. Wrn. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1342 (S.D. Fla. 2009) (internal citations and quotations omitted). | **two other exceptions**<br><br>No Alternative Remedy<br><br>An exception to the privity rule for implied warranty claims was recognized when there is no alternate remedy. *A.R. Moyer, Inc. v. Graham*, 285 So.2d 397 (Fla. 1973); *but see Airport Rent-A-Car, Inc. v. Prevost Car, Inc.*, 660 So.2d 628, 630-32 (Fla. 1995) (limiting Moyer and refusing to create an exception to this rule for "sudden calamitous events").<br><br>Direct Contacts<br><br>There is an exception to the privity requirement where a buyer relies on "direct contacts" with a manufacturer in purchasing a product. *Am. Coach Lines of Orlando, Inc. v. N. Am. Bus. Indus., Inc.*, 6:09-cv-199-Orl-19GJK, 2010 WL 3958692, at *9 (Oct. 8, 2010). | FLA. STAT. ANN. § 95.011. | *See Dunham-Bush, Inc. v. Thenno-Air Service, Inc.*, 351 So.2d 351 (Fla. Dist Ct. App. 4th 1977) (stating that to properly plead a cause of action for breach of warranty under the UCC, complaint should at least contain allegations in regard to the facts in respect to sale of the goods, identification of the types of warranties created, facts in respect to creation of the particular warranty, facts in respect to breach of the warranty, *notice to seller of breach*, and the injuries sustained by buyer as a result of the breach of warranty) (emphasis added). |
| Georgia | **No**<br><br>"While ordinarily ... there is no implied warranty existing between a manufacturer and an ultimate consumer, this is due to the fact that no privity of contract exists between the two. However, where an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as part of the sale a warranty [sic] by the manufacturer running to the purchaser, privity exists...." *Chrysler Corp. v. Wilson Plumbing Co.*, 132 Ga, App. 435, 437, 208 S.E. 2d 321, 323-24 (1974); *see also Lauria v. Ford Motor Co.*, 169 Ga. App. 203, 205, 312 S.E. 2d 190, 192 (1983). | **N/A** | **Four Years**<br><br>GA. CODE ANN. § 11-2-725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **No**<br><br>*Hudson v. Gaines*, 403 S.E.2d 852, 854 (Ga. Ct. App. 1991) (holding that service of a suit was reasonable notice). |

SWANHOLT EXH. 25- 385

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| Hawaii | **Yes, but may be completely consumed by the third-party beneficiary rule**<br><br>*See Larsen v. Pacesetter Systs., Inc.*, 74 Haw. 1, 837 P.2d 1273 (Haw. 1992); *Ontai v. Straub Clinic and Hosp. Inc.*, 66 Haw. 237, 659 P.2d 734 (Haw. 1983). | **Yes in personal injury claims, unclear in economic loss claims**<br><br>"A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends." Haw. Rev. Stat. §490:2-318; *see also Ontai v. Straub Clinic and Hosp. Inc.*, 66 Haw. 237, 249, 659 P.2d 734, 743 (Haw. 1983).<br><br>*Brown v. Chapman*, 304 F.2d 149, 151 (9th Cir. 1962) (holding that the Supreme Court of Hawaii would rule that privity is not required when the goods sold constitute a dangerous instrumentality). | **Four Years**<br><br>HAW. REV. STAT.§ 490:2-725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required**<br><br>HAW. REV. STAT. § 490:607(3)(a). |
| Idaho | **Yes**<br><br>"The requirement of privity of contract in a contract action to recover economic loss for broach of implied warranty is consistent with previous decisions of this court in products liability actions to recover economic loss." *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 91 Idaho 348, 351-55, 544 P.2d 306, 309-13 (1975); *see also Ramerth v. Hart*, 133 Idaho 194, 198, 983 P.2d 848, 852 (1999) (reaffirming Salmon Rivers after several cases questioned its holding). | **No for third-party beneficiary**<br><br>"UCC warranties apply only to those in privity of contract with the manufacturer and those who qualify as third-party beneficiaries of the underlying sales contract as defined by I.C. § 28-2.-318." *Puckett v. Oakfabco, Inc.*, 132 Idaho 816, 825, 979 P.2d 1174, 1183 (Idaho 1999). Because Idaho Code Ann. § 28-2-318 only removes privity for family or household members (and their guests), there is no third-party beneficiary exception for end consumers. | **Four Years**<br><br>ID. CODE § 28-2-725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required**<br><br>ID. CODE ANN. § 28-2-607; *see also Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 544 P.2d 306, 313 (Idaho 1975) ("Aside from the oral statement of Albert Tice, the only other notice upon which Salmon Rivers could rely to fulfill the requirements of I.C. § 64-309 is the filing of the complaint in this action. Salmon Rivers filed the complaint just one month less than four years after the accident. An unexplained delay of such length is fatal to the requirement that the notice of breach of warranty be given to the seller within a reasonable time.") |
| Illinois | **Yes**<br><br>There is a privity requirement for implied warranty of | **Yes for third-party beneficiary**<br><br>The privity rule is not a bar to a claim "where there is a direct relationship between the | **Four Years**<br><br>810 ILCS § 5/2-725. | **Yes**<br><br>*Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996) (Under Illinois' version of Uniform |

SWANHOLT EXH. 25- 386

### DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | merchantability claims, but this requirement is "relaxed" when (1) the manufacturer extended a written warranty with the product, and (2) a consumer brought an action under Magnuson-Moss. *Shoop v. DaimlerChrysler Corp.*, 371 Ill. App. 3d 1058, 1066, 864 N.E. 2d 785, 792 (2007). | manufacturer and the seller, or where, as here, the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the good specifically to meet those requirements." *Frank's. Maint. & Eng'g, Inc. v. C. A. Roberts Co.*, 86 Ill. App. 3d 980, 992-93, 408 N.E.2d 403, 412 (1980).<br><br>**No for unsafe products**<br><br>Plaintiffs can obviate the privity requirement when they allege personal injury, but not if they claim economic loss under the warranty of merchantability. *Jensen v. Bayer AG*, 371 Ill. App. 3d 682, 691, 862 N.E. 2d 1091, 1099, 1100 (2007). | **But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | Commercial Code, a buyer must in general notify a seller of troublesome nature of transaction or be barred from recovery for breach of warranty). |
| Indiana | **No**<br><br>"[A] consumer may sue a manufacturer for economic loss based on breach of the implied warranty of merchantability even if the consumer purchased the product from an intermediary in the distribution chain." *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 959 (Ind. 2005). | N/A | **Four Years**<br><br>IND. CODE ANN. § 26-1-2-725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Probably**<br><br>*Thompson Farms, Inc. v. Corno Feed Prods.*, 366 N.E.2d 3 (Ind. App. 1977) (holding that notice of breach of warranties, as required under Uniform Commercial Code provision, is a substantive condition precedent to recovery, and party claiming breach of warranty must allege that notice was given in accordance with such provision). |
| Iowa | **Yes**<br><br>Iowa courts do not allow purchasers to maintain a suit for breach of implied warranties by a remote manufacturer where the only damages sought are for economic loss. *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 108 (Iowa 1995). | **Yes for third-party beneficiary, but does not extend to purely economic loss claims**<br><br>"A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends." IOWA CODE ANN. § 554.2318.<br><br>*Tomka*, 528 N.W.2d at 108 (holding that | **Ten Years**<br><br>IOWA CODE § 614.1; *see also* IOWA CODE § 554.2725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Yes**<br><br>*Wright v. Brooke Group Ltd.*, 114 F. Supp. 2d 797, 828 (N.D. Iowa 2000) (noting that notice is a condition precedent to recovery, and under Iowa law, the notice ordinarily must be more than "a mere complaint"). |

SWANHOLT EXH. 25- 387

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | | purchasers cannot maintain implied warranty claims where only damages sought are for economic loss).<br><br>**No for unsafe products/dangerous instrumentality for economic loss**<br><br>While there is some case law in Iowa stating that "sudden and dangerous occurrences" sound in tort, thereby circumventing the privity requirement, this applies only when there is actual damage to person or property, as opposed to traditional contract remedies. *See Richards v. Midland Brick Sales Co.*, 551 N.W. 2d 649, 651 (Iowa App. 1996). | | |
| Kansas | Yes<br><br>"[U]nder K.S.A. 84-2-314 and K.S.A. 84-2-315 only a seller may be held liable for the breach of the implied warranties of merchantability and fitness for a particular purpose." *Serv. Foundry, Inc. v. M.A. Bell Co.*, 2 Kan. App. 2d 662, 671, 588 P.2d 463, 472 (1978). | **Yes for third-party beneficiary, but does not apply to economic loss only**<br><br>"A seller's warranty whether express or implied extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section." KAN. STAT. ANN. § 84-2-318.<br><br>This rule only applies when the buyer has suffered personal injuries, as opposed to economic loss (benefit of the bargain damages). *Owens-Corning Fiberglas Corp, v. Sonic Dev. Corp.*, 546 F. Supp. 533, 541 (D. Kan. 1982).<br><br>**Yes for inherently dangerous products, but does not apply to economic loss only**<br><br>Kansas law extends implied warranties to "non-privity manufacturers whose inherently dangerous products cause physical injuries to buyers." *Prof'l Lens Plan, Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 754, 675 P.2d 887, 898 (1984). This rule is limited, however, to cases where the defective product causes physical injury. *Koss Constr. v. Caterpillar, Inc.*, 25 Kan. App. 2d 200, 208, 960 P.2d 255, | **Four Years**<br><br>KAN. STAT. ANN., § 84-2-725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Probably**<br><br>*Smith v. Stewart* 667 P.2d 358 (Kan. 1983) (giving notice of defect within reasonable time is condition precedent to filing action by buyer against seller based on breach of express or implied warranty). |

SWANHOLT EXH. 25- 388

### DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | | 260 (1998). | | |
| Kentucky | **Yes**<br><br>"[A] plaintiff-buyer asserting a claim based upon an implied warranty *must establish* that it enjoyed privity of contract with the defendant-seller against whom the implied warranty claim is asserted." *Brown Sprinkler Corp. v. Plumbers Supply Co.*, 265 S.W.3d 237, 240 (Ky. Ct. App. 2007) (emphasis in original). | **No**<br><br>The only exception to the privity requirement requires the injured party to be part of the family or household of a buyer who was in privity with the manufacturer. *Compex Intern. Co., Ltd. v. Taylor*, 209 S.W.3d 462, 264-5 (Ky. 2006). | **Four Years**<br><br>KY. REF. STAT. ANN. § 355.2-725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **No**<br><br>*Mullins v. Wyatt*, 887 S.W.2d 356, 358 (Ky. 1994) (noting that failure to give pre-litigation notice is not fatal to a civil action for breach of warranty). |
| Louisiana | **No**<br><br>"A buyer may bring an action against all sellers in the chain of sales back to the primary manufacturer to rescind the sale for breach of implied warranty." *Walton Const. Co. v. G.M. Home & Co.*, 984 So.2d 827, 834 (La. App. 2008). | N/A | **Ten Years**<br><br>LA. CIV. CODE ANN. Art. 3499 ("Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.") | **Notice required; unclear as to whether pre-litigation notice required**<br><br>*David v Thibodeaux*, 916 So. 2d 214, 219 (La. App. 2005) (noting that under Louisiana law, the buyer must give the seller notice of the existence of a redhibitory defect within sufficient time to allow the seller the opportunity to make the required repairs, but notice not required if the seller has knowledge of the defect). |
| Maine | **No**<br><br>"Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller or supplier of goods for breach of warranty, express or implied, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods." ME. REV. STAT. ANN. Tit. 11, §2-318. | N/A | **Four Years**<br><br>ME. REV. STAT. ANN. tit. 11 § 2-725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required**<br><br>ME. REV. STAT. ANN. tit. 11 § 2-607. |

SWANHOLT EXH. 25- 389

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| Maryland | No<br><br>"Any previous requirement of privity is abolished as between the buyer and the seller in any action brought by the buyer." MD. CODE ANN. §2-314(l)(b). | N/A for third-party beneficiary<br><br>**Yes for dangerous instrumentality as an exception to economic loss rule in tort**<br><br>"[I]n order to assert a cognizable products liability theory of recovery, an action sounding in tort, but one premised on economic loss alone, the plaintiff must allege facts that demonstrate that the product at issue creates a *dangerous condition*, one that gives rise to a *clear danger of death or personal injury.*" *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 124, 916 A.2d 257 (2007) (emphasis in original). | **Four Years**<br>MD. CODE ANN. COMM. LAW § 2-725.<br><br>**But:**<br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required.**<br>MD. CODE ANN. COMM. LAW. § 2-607(3)(a). |
| Massachusetts | No<br><br>"Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods. The manufacturer, seller, lessor or supplier may not exclude or limit the operation of this section." MASS. GEN. LAWS ANN. ch. 106 §2-318. | N/A | **Three Years**<br>MASS. GEN. LAWS ANN. ch. 106 §2-318. | **Notice required, but failure to give notice will not bar recovery unless defendant proves prejudice**<br>"Failure to give notice shall not bar recovery under this section unless the defendant proves that he was prejudiced thereby." MASS. GEN. LAWS ANN. ch. 106 § 2-318. |
| Michigan | No<br><br>*Piercefield v. Remington Ars Co.*, 375 Mich. 85, 98, 133 N.W.2d 129 (1965) (citing cases that "have put an end in Michigan to | N/A | **Four Years**<br>MICH. COMP. LAWS § 440.2725.<br><br>**But:** | **Notice required; unclear as to whether pre-litigation notice required**<br>MICH. COMP. LAWS ANN. § 440.2607(3)(a); *see also Am. Bumper & Mfg. Co. v. Transtechnology Corp.*, 652 N.W.2d 252 (Mich. Ct. App. 2002) |

**SWANHOLT EXH. 25- 390**

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | the defense of no privity, certainly so far as concerns an innocent bystander injured as this plaintiff pleads, and that a person thus injured should have a right of action against the manufacturer on the theory of breach of warranty as well as upon the theory of negligence"); *Cova v. Harley Davidson Motor Co.*, 26 Mich. App. 602, 609, 182 N.W.2d 800, 804 (1970) (recognizing that privity is no longer required even in cases where plaintiffs purely allege economic loss). | | By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | ("The purposes of the UCC's notice requirements are (1) to prevent surprise and allow the seller the opportunity to make recommendations how to cure the nonconformance; (2) to allow the seller the fair opportunity to investigate and prepare for litigation; (3) to open the way for settlement of claims through negotiation; and (4) to protect the seller from stale claims and provide certainty in contractual arrangements."). |
| Minnesota | **No**<br><br>"The Minnesota legislature abrogated its privity requirement in 1969." *Church of the Nativity of Our Lord v. WatPro, Inc.*, 474 N.W.2d 605,609 (Minn. Ct. App. 1991).<br><br>"A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section." MINN. STAT. ANN. §336.2-318. | N/A | **Four Years**<br>MINN. STAT. § 336.2-725.<br>**But:**<br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **No**<br><br>MINN. STAT. § 336.2-607; *see also George v. Uponor Corp.*, 2013 BL 354014, at *13 (D. Minn. Dec. 23, 2013) ("By itself, the statute requires a buyer to provide notice 'within a reasonable time after the buyer discovers or should have discovered' any breach. It does not require the buyer to provide the notice a reasonable time before filing suit.") (internal citations and emphasis omitted). |
| Mississippi | **No**<br><br>"In all causes of action for personal injury or property damage or economic loss brought on account of negligence, strict liability or breach of warranty, including actions brought under | N/A | **Six Years**<br>MISS. CODE ANN. § 75-2-725. | **Notice required; unclear as to whether pre-litigation notice required**<br><br>MISS. CODE ANN. § 75-2-607; *see also Miss. Chem. Corp. v. Dressler-Rand Co.*, 287 F.3d 359, 368 (5th Cir. 2002) (noting that the MS statute requires that the buyer provide the seller notice, but that it need not be a specific claim for damages or an |

SWANHOLT EXH. 25- 391

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action." MISS. CODE ANN. § 11-7-20. | | | assertion of legal rights). |
| Missouri | **No** <br><br> Under Missouri law, a remote purchaser may bring suit against the. manufacturer for breach of implied warranties. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 129 (Mo. 2010). | N/A | **Four Years** <br><br> MO. REV. STAT. § 400.2-725. <br><br> **But:** <br><br> By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required** <br><br> MO. REV. STAT. § 400.2-607; *see also Ragland Mills, Inc. v. Gen. Motors Corp.*, 763 S.W.2d 357, 361 (Ct. App. Miss. 1989) (notice generally only required to immediate seller). |
| Montana | **No** <br><br> "The privity requirement was abolished in Montana and a remote manufacturer may be liable for breach of implied warranties." *Streich v. Hilton Davis*, 214 Mont. 44, 60, 692 P.2d 440, 448 (1984). | N/A | **Four Years** <br><br> MONT. CODE ANN. § 30-2-725. <br><br> **But:** <br><br> By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required** <br><br> MONT. CODE ANN. § 30-2-607; *see also Fire Supply & Service, Inc. v. Chico Hot Springs*, 639 P.2d 1160 (Mont. 1982) ("To recover damages for breach of warranty, the buyer must plead and prove that he gave the seller notice of the breach within a reasonable time after it was discovered or be barred from any remedy."). |
| Nebraska | **No** <br><br> *Peterson v. N. Am. Plant Breeders*, 218 Neb. 258, 354 N.W.2d 625 (Neb. 1984) (holding that a product placed in the chain of distribution carries an implied warranty of merchantability which protects the ultimate purchaser, and privity is not required for recovery on a claim | N/A | **Four Years** <br><br> NEB. REV. STAT. U.C.C. § 2-725 <br><br> **But:** <br><br> By the original agreement the parties may reduce the period of limitation to not less | **Notice required; unclear as to whether pre-litigation notice required** <br><br> NEB. REV. STAT. U.C.C. § 2-607; *see also Fitl v. Strek*, 690 N.W.2d 605, 608 (Neb. 2005) (noting that the buyer must give the seller notice); *Moore v. Puget Sound Plywood, Inc.*, 332 N.W.2d 212 (Neb. 1983) ("A purchaser must plead and prove that he gave timely notice of a breach of warranty."). |

SWANHOLT EXH. 25- 392

DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | for breach of an implied warranty of merchantability). | | not extend it. | |
| Nevada | No<br><br>Nevada does not require privity in implied warranty claims, even if the claim is just for economic loss. *Hiles Co. v. Johnston Pump Co. of Pasadena, Cal.*, 93 Nev. 73, 78-79, 560 P.2d 154, 157(1977). | N/A | Four Years<br><br>NEV. REV. STAT. § 104.2725.<br><br>But:<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | Notice required; unclear as to whether pre-litigation notice required<br><br>NEV. REV. STAT. § 104.2607. |
| New Hampshire | No<br><br>"With the enactment of RSA 382-A:2-318 (Supp. 1992), the New Hampshire Legislature removed both horizontal and vertical privity as defenses to implied warranty claims." *Dalton v. Stanley Solar & Stove, Inc.*, 137 N.H. 467,470, 629 A.2d 794, 797 (1993). | N/A | Four Years<br><br>N.H. REV. STAT. ANN. § 382-A:2-725.<br><br>But:<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | Yes<br><br>*ACE Am. Ins. Co. v. Fountain Powerboats, Inc.*, 2007 WL 2438338, at *3 (D.N.H. 2007) ("If that notice requirement is to have any meaning at all, a civil complaint cannot serve the dual purpose of providing the defendant(s) with notice of potential warranty claims and actually initiate legal action based on those warranty claims"). |
| New Jersey | No<br><br>"Under the U.C.C. as construed by this Court, moreover, the absence of privity no longer bars a buyer from reaching through the chain of distribution to the manufacturer." *Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620, 642-23, 695 A.2d 264, 275 (1997). | N/A | Four Years (or Six Years)<br><br>N.J. STAT. ANN. § 12A:2-725; *Dilorio v. Structural Stone & Brick Co., Inc.*, 368 N.J. Super. 134, 845 A.2d 658 (Super. Ct. App. Div. 2004) (applying six year statute of limitations in claim for economic losses based on tortuous injury to | No<br><br>*Taylor v. JVC Americas Corp.*, 2008 WL 2242451, at *6 (D.N.J. May 30, 2008) (noting that under New Jersey law, a defendant does not need to provide pre-litigation notice and that the filing of a complaint can satisfy the notice requirement). |

SWANHOLT EXH. 25- 393

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | | | property).<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | |
| New Mexico | **No**<br><br>In New Mexico, a manufacturer can be held liable to the buyer without regard to privity. *Perfetti v. McGhan Med.*, 99 N.M. 645, 654, 662 P.2d 646, 655 (N.M. Ct. App. 1983). | **N/A** | **Four Years**<br><br>N.M. STAT. ANN. § 55-2-725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required**<br><br>N.M. STAT. ANN. § 55-2-607; *see also State ex rel Concrete sales & Equip. Rental Co., Inc. v. Kent Nowlin Constru., Inc.*, 746 P.2d 645, 649 (N.M. 1987) ("For a buyer to recover for breach of warranty, he must prove the existence of a defect caused by the seller, that the buyer notified the seller and sought repairs, and that the seller failed or refused to make repairs.") (internal citation omitted). |
| New York | **Yes**<br><br>*Adirondack Combustion Techs., Inc. v. Unicontrol, Inc.*, 17 A.D.3d 825, 827, 793 N.Y.S.2d 576, 579 (N.Y. App. Div. 2005) ("A claim based upon a breach of an implied warranty requires a showing of privity between the manufacturer and the plaintiff when there is no claim for personal injuries."). | **No for third-party beneficiary**<br><br>"The question thus presented is whether the implied warranties of merchantability and fitness run from a manufacturer to a remote purchaser, not in privity with the manufacturer, who has sustained no personal injury but only economic loss. Our interpretation of the [UCC § 2-318] leads us to conclude that it does not permit a plaintiff, not in privity, to recover upon the breach of an implied warranty of merchantability unless the claim of the remote user is for personal injuries." *Hole v. Gen. Motors Corp.*, 83 A.D.2d 715, 716,442 N.Y.S.2d 638, 640 (N.Y. App. Div. 1981).<br><br>**Maybe for inherently dangerous products**<br><br>In *MacPherson v. Buick Motor Co.*, the court held that there was a privity exception for inherently dangerous products. 217 N.Y. 382, | **Four Years**<br><br>N.Y U.C.C. § 2-725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required**<br><br>N.Y. LAW U.C.C. § 2-607. |

SWANHOLT EXH. 25- 394

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | | 111 N.E. 1050 (1916). But the landscape of privity law has been greatly altered since the amendments leading to the current versions of UCC § 2-314 and § 2-318. *See Heller v. U.S. Suzuki Motor Corp.*, 64 N.Y.2d 407, 477 N.E.2d 434 (N.Y. 1985). The exception has not been relied upon after the amendments. | | |
| North Carolina | **Yes, when only economic loss alleged** <br><br> *Sharrard, McGee & Co., P.A. v. Suz's Software, Inc.*, 100 N.C.App. 428, 432, 396 S.E.2d 815,817-18 (1990) ("[O]utside the exceptions created by [N.C. Gen. Stat. § 99B], the general rule is that privity is required to assert a claim for breach of an implied warranty involving only economic loss."). | **No for third-party beneficiary** <br><br> A North Carolina statute circumvents the privity rule only for those third-party beneficiaries who are members of the household of the buyer. And the plain wording of the statute requires "injury." N.C. GEN. STAT. ANN. § 25-2-318. <br><br> **For dangerous instrumentality, only when there is injury in tort** <br><br> *Jones v. Otis Elevator Co.*, 231 N.C. 285, 56 S.E.2d 684 (N.C. 1949) ("Ordinarily an action in tort, founded upon a breach of contract, cannot be maintained by one who is not a party or privy to the contract. 12 Am.Jur. 818. But the general rule is subject to certain well recognized exceptions. And among the exceptions is where a dangerous instrumentality is involved, or where the act complained of is imminently dangerous to the lives and property of others. In such case the injured party, whether a party or privy to the contract or not, may maintain an action against the party whose breach of the contract resulted in his injury."). | **Four Years** <br><br> N.C. GEN. STAT. § 25-2-725. <br><br> **But:** <br><br> By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required** <br><br> *Maybank v. S.S. Kresge Co.*, 273 S.E.2d 681 (1981) ("When the plaintiff is a lay consumer and the notification is given to the defendant by the filing of an action within the period of the statute of limitations, and where the applicable policies behind the notice have been fulfilled, we hold that the plaintiff is entitled to go to the jury on the issue of seasonable notice."). |
| North Dakota | **No** <br><br> When a manufacturer puts a new product into the stream of trade and promotes sale to the public, an implied warranty that it is reasonably fit and suitable for use accompanies the new product into hands of ultimate buyer and | **N/A** | **Four Years** <br><br> N.D. CENT. CODE § 41-02-104. <br><br> **But:** <br><br> By the original agreement the parties | **Probably** <br><br> *Stamper Black Hills Gold Jewelry, Inc. v. Souther*, 414 N.W.2d 601,604 (N.D. 1987) ("Failure to provide notice of breach under this section is not an affirmative defense which must be raised by the seller. Rather, notice is a condition precedent to the buyer's cause of action which must be pleaded and proved by the buyer in order to recover."). |

SWANHOLT EXH. 25- 395

### DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | absence of privity between manufacturer and buyer is immaterial. *Lang v. General Motors Corp.,* 136 N.W.2d 805,810 (N.D. 1965). | | may reduce the period of limitation to not less than one year but may not extend it. | |
| **Ohio** | **Yes**<br><br>*Curl v. Volkswagen of Am., Inc.,* 114 Ohio St.3d 266, 871 N.E.2d 1141, 1147 (Ohio 2007) ("[L]ongstanding Ohio jurisprudence provides that purchasers of automobiles may assert a contract claim for breach of implied warranty only against parties with whom they are in privity. Having reviewed the authority in Ohio, as well as that of other jurisdictions, we see no compelling reason to stray from precedent.") | **No for third-party beneficiary**<br><br>While there is a third-party beneficiary exception in Ohio, it only applies in cases with personal injuries. *See Lonzrick v. Republic Steel Corp,* 218 N.E.2d 185 (Ohio 1966) (privity not required in tort action founded upon implied warranty when personal injuries occurs).<br><br>**Yes for dangerous instrumentality, but appears to require personal injury**<br><br>*Gilbride v. James Leffel & Co.,* 47 N.E.2d 1015, 1017 (Ohio App. 1942) (holding that because product was a dangerous instrumentality, privity was not required). | **Four Years**<br><br>OHIO REV. CODE ANN § 1302.98.<br><br>**But**:<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Yes**<br><br>*Lincoln Elec. Co. v. Technitrol, Inc.,* 718 F.Supp.2d 876, 883 (N.D. Ohio 2010) ("Ohio courts and federal courts applying Ohio law have continued to hold that a plaintiff must notify a defendant of the alleged breach prior to the complaint."). |
| **Oklahoma** | **No**<br><br>*See Old Albany Estates, Ltd. v. Highland Carpet Mills, Inc.,* 604 P.2d 849, 852 (Okla. 1979) (holding that manufacturer may be held liable for breach of an implied warranty of merchantability under the UCC without regard to privity of contract between manufacturer and ultimate buyer). | N/A | **Five Years**<br><br>OKLA.STAT. ANN. Tit. 12A,§ 2 -725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required**<br><br>OKLA.STAT. ANN.tit. 12A § 2-607; *see also Am. Fertilizer Specialists, Inc. v. Wood,* 635 P.2d 592, 596 (Okla. 1981) ("In order for the buyer to avoid liability for the payment of goods accepted, he must notify the seller within a reasonable time after he discovers or should have discovered the breach of warranty."). |
| **Oregon** | **Yes**<br><br>*Davis v. Homasote Co.,* 281 Or. 383, 574 P.2d 1116 (Or. 1978) (holding that privity of contract is essential before a purchaser can recover economic loss from a manufacturer for breach of | **No for third-party beneficiary**<br><br>The relevant Oregon statute only extends the third-party exception to the privity rule to family or household members in personal injury cases. OR. REV. STAT. § 72.3180 ("A seller's warranty whether express or implied extends to any natural person who is in the family or | **Four Years**<br><br>ORE.REV.STAT.§ 72.7250.<br><br>**But:**<br><br>By the original | **Yes**<br><br>*Allen v. G.D. Searle & Co.,* 708 F. Supp. 1142, 1160 (D. Or. 1989) ("In the absence of any authority for abolishing the notice requirement, and in the absence of any evidence that Allen gave notice of her express or implied warranty claims, this court must rule that Allen has not established |

SWANHOLT EXH. 25- 396

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | implied warranty). | household of the buyer or who is a guest in the home of the buyer if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty."). | agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | an essential element of her warranty claims."). |
| Pennsylvania | **No**<br><br>"For cases involving a breach of the implied warranty of merchantability, any party injured by the defective product may sue any party in the distributive chain." *French v. Commonwealth Assocs., Inc.*, 980 A.2d 623, 633 (Pa. Super. Ct. 2009). | N/A | **Four Years**<br><br>PA. STAT. ANN. tit. 13 § 2725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **No**<br><br>*Bednarski v. Hideout Homes & Realty, Inc.*, 709 F. Supp. 90, 94 (M.D. Pa. 1988) ("[T]his court concludes that the filing of a civil complaint satisfies the requirement of providing breach of warranty notice under section 2607."). |
| Puerto Rico | **No**<br><br>Although not yet addressed by the Puerto Rican Supreme Court, lower courts have held that under Puerto Rico law, a breach of implied warranty claim based solely on economic losses is not barred because of a lack of privity. *Simonet v. SmithKline Beecharm Corp.*, 506 F. Supp. 2d 77 (D.P.R. 2007). | N/A | **Six months**<br><br>P.R. LAWS ANN. tit. 31 § 3847; *see also Ramos Santiago v. Wellcraft Marine Corp.*, 93 F. Supp. 2d 112, 115 (D.P. R. 2000). | **Notice required; unclear as to whether pre-litigation notice required**<br><br>P.R. LAWS ANN. tit. 31 § 3838. |
| Rhode Island | **Yes**<br><br>In Rhode Island, where the plaintiff claims only economic loss, there generally can be "no recovery based upon a breach of implied warranty ... without first alleging and establishing privity of contract." *Lombardi v. Ca. Packing Sales Co.*, 83 R.I. 51, 112 A.2d 701, 702 (1955). | **No for third-party beneficiary**<br><br>Rhode Island has not extended warranty liability to third parties for the warranty of merchantability, though it has for the warranty of fitness for a particular purpose. *See* R.I. GEN. LAWS § 6A-2-318 (specifically excluding the warranty of merchantability from a third-party beneficiary exception); *see also Ace Am. Ins. Co. v. Grand Banks Yachts. Ltd* ., 587 F. Supp. 2d 697, 708 n.11 (D. Md. 2008) (recognizing that there is no third-party beneficiary exception to the privity requirement under | **Four Years**<br><br>R.I. GEN. LAWS § 6A-2-725.<br><br>**But:**<br><br>By the original agreement the parties limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required.**<br><br>R.I. GEN. LAWS§ 6A-2-607. |

SWANHOLT EXH. 25- 397

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | | Rhode Island law). **No for dangerous instrumentality** In *McCaffrey v. Mossville & Granville Mfg. Co.*, 23 R.I. 381,50 A.2d 651 (1901), the court held that there was an "imminently dangerous" exception to privity for negligence actions. But this has never been explicitly extended to warranty claims. | | |
| **South Carolina** | **Yes, but it is consumed by the third-party exception** "The general rule is that privity of contract is required in an action for breach of an implied warranty and that there is no such privity between a manufacturer and one who has purchased the manufactured article from a dealer or is otherwise a remote vendee." *Odom v. Ford Motor Co.*, 230 S.C. 320, 325-26, 95 S.E.2d 601, 603-04 (1956). | **Yes** "A seller's warranty whether express or implied extends to any natural person who may be expected to use, consume or be affected by the goods and whose person or property is damaged by breach of the warranty. A seller may not exclude or limit the operation of this section." S.C. CODE ANN. § 36-2-318; *see also Gasque v. Eagle Mach. Co.*, 270 S.C. 499, 243 S.E.2d 831 (1978) (holding that the third-party beneficiary exception for implied warranties extends to economic loss claims). | **Six Years** S.C. CODE ANN. § 36-2-725. | **Notice required; unclear as to whether pre-litigation notice required.** S.C. CODE ANN. § 36-2-607; *see also Cox House Moving, Inc. v. Ford Motor Co.*, 2006 WL 23031982 (D.S.C. Aug. 8, 2006) ("any good faith communication that reasonably notifies the seller that the buyer is troubled by the transaction should suffice to preserve the buyer's right to pursue UCC remedies in the event it suffers damages from the defect"). |
| **South Dakota** | **No** Privity is no defense in South Dakota in a breach of implied warranty action by a remote buyer against a manufacturer even though the buyer is only seeking economic losses. *Cundy v. Int'l Trencher Serv., Inc.*, 358 N.W.2d 233, 239-40 (S.D. 1984). | N/A | **Four Years** S.D. CODIFIED LAWS § 57 A-2-725. | **Yes** S.D. CODIFIED LAWS § 57 A-2-607; *see also Hepper v. Triple U Entm't Inc.*, 388 N.W.2d 525, 527 (S.D. 1986) ("Notice is an element that must be specifically proven; it is not an affirmative defense."). |
| **Tennessee** | **Yes** "[T]he rule requiring privity of contract between the parties as an essential element of implied warranty still exists in Tennessee, except in cases where the product involved is 'in a defective | **No for third-party beneficiary** TENN. CODE ANN. § 47-2-318, the provision concerning third-party beneficiaries and implied warranties, only applies to personal injury cases. **Yes for dangerous instrumentality** | **Four Years** TENN. CODE ANN § 47-2-725. **But:** By the original | **No** *Smith v. Pfizer Inc.* 688 F.Supp.2d 735, 750 (M.D. Tenn. 2010) (although a personal injury case, the district court held that section 47-2-607(3)(a) simply requires that a plaintiff "notify the seller of breach within a reasonable time.' Nothing in the plain text of the statute indicates that a lawsuit |

**SWANHOLT EXH. 25- 398**

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | condition unreasonably dangerous to the user or to his property.'" *Leach v. Wiles*, 58 Tenn. App. 286, 303,429 S.W.2d 823,831 (1968). | *Leach*, 429 S.W.2d at 831 (recognizing exception where the product involved is in a defective condition unreasonably dangerous to the user or to his property). | agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | cannot serve as this notification."). |
| Texas | **No** "[W]e hold that privity is not a requirement for a Uniform Commercial Code implied warranty action for economic loss." *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 80-81 (Tex. 1977). | N/A | **Four Years** TEX. BUS. & C. CODE ANN.§ 2.725. **But:** By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Yes** *Ibarra v. Nat 'l Constr. Rentals, Inc.*, 199 S.W.3d 32, 37 (Tex. Ct. App. 2006) (Plaintiff was required to prove that she provided presuit notice to fencing rental company about breach of warranty and implied warranty claims.). |
| Utah | **Probably** *See Leininger v. Stearns- Roger Mfg. Co.*, 17 Utah 2d 37, 404 P.2d 33 (Utah 1965) (holding that contractor was not liable for breach of implied warranty of merchantability). | **Yes for third-party beneficiary** UTAH CODE ANN. § 70A-2-318 (1953) ("A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty."). | **Four Years** UTAH CODE § 70A-2-725. **But:** By the original agreement the parties may reduce the period of limitation to not less than one but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required** UTAH CODE § 70A -2-607; *see also Salt Lake City Corp. v. Kasler Corp.*, 855 F. Supp. 1560, 1567 (D. Utah 1994) (granting motion to dismiss because notice of breach of express warranty six years after acceptance was, as a matter of law, unreasonable). |
| Vermont | **Probably** While Vermont courts have not directly addressed whether privity is required for consumers alleging purely economic losses, federal courts applying Vermont law have interpreted Vermont's version of the UCC to require privity unless a consumer has suffered personal injury or | **Yes for personal injury** "A seller's warranty whether express or implied extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section." VT. STAT. ANN. tit. 9A § 2-318. | **Four Years** VT. STAT. ANN 9A § 2-725. **But:** By the original agreement the parties may reduce the period of limitation to not less | **Notice required; unclear as to whether pre-litigation notice required.** VT. STAT. ANN. tit. 9A § 2-607 ; *see also Agway, Inc. Teitscheid*, 472 A.2d 1250, 1252 (Vt. 1984) (affirming trial court's dismissal of breach of warranty claims where buyer failed to provide seller timely notice of breach). |

SWANHOLT EXH. 25- 399

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | property damage. *See Mainline Tractor & Equipment v. Nutrite Corp.*, 937 F. Supp. 1095, 1105-1106 (D. Vt. 1996). | | than one year but may not extend it. | |
| Virginia | **Yes, but only applies to consequential damages claims** There is a requirement of privity in Virginia to claim consequential, as opposed to direct, economic loss damages. *Beard Plumbing and Heating, Inc. v. Thomvson Plastics, Inc.*, 254 Va. 240,246,491 S.E.2d 731,734 (1997). | **Yes for third-party beneficiary** "Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods; however, this section shall not be construed to affect any litigation pending on June 29, 1962." VA. CODE ANN.§ 8.2-318. | **Four Years** VA. CODE ANN. § 8.2-725(1). **But:** By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Probably** *Aqualon Co. v. Mac Equip., Inc.* 149 F.3d 262, 269 (4th Cir. 1998) (applying Virginia law) (stating that "the notice requirement is intended to give the seller a fair chance to prepare for litigation ..."). |
| Washington | **Yes** "[C]ontractual privity is a requirement in Washington for recovery under the implied warranties of the Uniform Commercial Code." *Chance v. Richards Mfg. Ca.*, 499 F. Supp. 102, 105 (D. Wash. 1980). | **Yes for third-party beneficiary** "[I]n cases where a commercial purchaser seeks to recover economic damages from a remote manufacturer, implied warranties do not arise absent privity or an underlying contract to which the remote commercial purchaser is a third party beneficiary." *Tex Enters., Inc. v. Brockway Standard, Inc.*, 149 Wash.2d 204, 210, 66 P.3d 625, 628 (Wash. 2003). **Yes for dangerous instrumentality** "The exception to the privity of contract doctrine has been extended in our state to so-called inherently dangerous instrumentalities." *Freeman v. Navarre*, 47 Wash.2d 760, 766, 289 P.2d 1015, 1018 (Wash. 1955). | **Four Years** WASH. REV. CODE § 2A.2-725. **But:** By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required** WASH. REV. CODE § 62A.2-607. |

SWANHOLT EXH. 25- 400

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| West Virginia | **No**<br><br>A lack of privity is no longer a defense to an implied warranty claim in West Virginia. *Louk v. Isuzu Motors, Inc.*, 198 W. Va. 250, 259,479 S.E.2d 911, 920 (1996). | N/A | **Four Years**<br>W.VA. CODE § 46-2-725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required**<br><br>W.VA. CODE. § 42-2- 607*; see also Hill v. Joseph T Ryerson & Son*, 268 S.E.2d 296, 302-03 (W.Va. 1980) ("We believe that the notice of requirement of W.Va. Code, 46-2- 607(3)(a), is applicable to the ordinary commercial transaction where the buyer is seeking to avoid the contract price because the goods are not acceptable, and this Code section should not be extended to the product liability field."). |
| Wisconsin | **Yes**<br><br>Wisconsin has retained the privity requirement in implied warranty cases. *Ball v. Sony Elecs. Inc.*, No. 05-C-307-S, 2005 WL 2406145, at *4 (W.D. Wis. Sept. 28, 2005); *see also Paulson v. Olson Implement Co.*, 107 Wis.2d 510,319 N.W.2d 855 (1982). | **No case law directly on point on either exception**<br><br>**But:**<br><br>The Wisconsin Supreme Court has held that there is an imminently dangerous exception to privity in the strict liability context, though it has not addressed it in the warranty context. *Dippel v. Sciano*, 37 Wis.2d 443,459, 155 N.W.2d 55, 63 (1967). | **Four Years**<br>WIS. STAT. § 402.725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not or extend it. | **Yes**<br><br>*Carl v. Spickler Enters., Ltd*, 165 Wis. 2d 611, 624 (Ct. App. Wis. 1991) (holding that notice must be "sufficient to enable the seller to attempt to repair the defect. Furthermore, the buyer must provide this notice before commencing an action.") (internal citations omitted). |
| Wyoming | **No**<br><br>"We therefore hold that a remote purchaser such as Western is not foreclosed from bringing an action to recover an economic loss, as heretofore defined, from a manufacturer such as Sheridan because of lack of privity." *W. Equip. Co. v. Sheridan Iron Works, Inc.*, 605 P.2d 806, 810 (Wyo. 1980); WYO. STAT. ANN.§ 34.1-2-318 ("A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by | N/A | **Four Years**<br>WYO. STAT. ANN. § 34.1-2-725.<br><br>**But:**<br><br>By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. | **Notice required; unclear as to whether pre-litigation notice required**<br><br>WYO. STAT. ANN.§ 34.1-2- 607; *see also Western Equip. Co. v. Sheridan Iron Works, Inc.,* 605 P.2d 806, 810 (Wyo. 1980) ("[W]e point out that furnishing notice under the statute is an obligation imposed upon one who asserts a right to relief as a buyer."). |

**SWANHOLT EXH. 25- 401**

**DIFFERENCES IN STATE IMPLIED WARRANTY OF MERCHANTABILITY LAWS**

| Jurisdiction | Privity Required for Claims Alleging Economic Loss? | Third-Party Beneficiary and Unsafe Products/Dangerous Instrumentality Exceptions to Privity Rule for Economic Loss Claims?[1] | Statute of Limitations[2] | Is Pre-Litigation Notice Required?[3] |
|---|---|---|---|---|
| | breach of the warranty. A seller may not exclude or limit the operation of this section."). | | | |

LAI-3205890

SWANHOLT EXH. 25- 402

# EXHIBIT 26

**DIFFERENCES IN STATE EXPRESS WARRANTY LAWS**

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| **Alabama** | Yes, in cases alleging only economic harm. *Barr v. Gulf Shores Turf Supply, Inc.*, 547 So. 2d 503, 504 (Ala. 1989) ("The plaintiff must prove privity of contract in an action on an express warranty where no injuries to natural persons are involved."). | No. *See Winston Indus., Inc. v. Stuyvesant Ins. Co.*, 55 Ala.App. 525, 317 So.2d 493, 496-97 (1975) (where the bill of sale for a mobile home stated that "[n]ew trailers bear usual factory guarantee," the manufacturer's express warranty was the basis of the bargain even though the purchaser failed to receive a copy of the warranty and was assertedly unaware of the warranty). | 4 Years ALA. CODE § 7-2¬725 | Yes. (unless personal injury) *Parker v. Bell Ford, Inc.*, 425 So. 2d 1101, 1102 (Ala. 1983) (prelitigation notice, is a "condition precedent to recovery" for a breach of warranty action."); *see also Hobbs v. Gen. Motors Corp*, 134 F. Supp. 2d 1277, 1285 (M.D. Ala. 2001) ("in the context of economic harm rather than personal injury, the filing of a lawsuit is not considered to be sufficient notice under Alabama law"). |
| **Alaska** | No. *Shooshanian v. Wagner*, 672 P.2d 455, 462 (Alaska 1983) ("There is no longer any requirement in Alaska that privity exist between the buyer and seller for recovery of property damage or economic loss under a breach of warranty theory."). | Unclear. *See Shooshanian*, 672 P.2d at 462-63 (allegation that plaintiff relied on representation stated claim for breach of express warranty). | 4 Years ALASKA STAT. § 45.02.275 | No. *Shooshanian*, 672 P.2d at 462-63 (stating that the filing of a complaint can constitute notice). |
| **Arizona** | Yes, in cases alleging only economic harm. *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 24, 126 P.3d 165, 171 (App. Div. 1 2006) ("[T]he privity requirement extends to both implied and express warranties. One narrow exception exists. No privity is required for certain | Unclear. *See Flory v. Silvercrest Industries, Inc.*, 633 P.2d 383, 390 (Ariz. 1981) (statements made to "owner" of mobile home were not made to plaintiff-buyers, and thus did not form part of basis of their bargain); *but see Murphy v. Nat'l Iron & Metal Co.*, 227 P.2d 219 (Ariz. 1951) | 4 Years ARIZ. REV. STAT. ANN. § 47-2725 | Notice required; pre-litigation notice may not be required if complaint filed within reasonable time. ARIZ. REV. STAT. ANN. § 47-2607; *see also Mountain-Aire Refrig. & Air Cond. Co. v. Gen. Elec. Co.*, 703 P.2d 577, 579 (Ariz. 1995) (noting that the UCC requires the |

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | personally injured plaintiffs to sue. This exception does not apply to [plaintiff's] economic loss claim."). | (stating that reliance upon a warranty is a prerequisite to recover for a breach of warranty). | | buyer, within a reasonable time, to notify the seller of the breach of be barred from any remedy); *see also, Burge v. Freelife Intern, Inc.*, Case No. CV 09-1159-PHX-JAT, 2009 WL 3872343, *6 (D. Ariz. Nov. 18, 2009) (dismissing express and implied warranty claims because complaint was not filed within reasonable time of discovery of breach, but noting that "the requirement of providing notice may be fulfilled by the filing of a complaint."). |
| **Arkansas** | No. *Suneson v. Holloway Constr. Co.*, 337 Ark. 571, 581, 992 S.W.2d 79, 84 (1999) (noting that the "General Assembly statutorily provided that the lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied . . . ."). | Yes. *Ciba-Geigy Corp. v. Alter*, 834 S.W.2d 136, 147 (Ark. 1992) ("[W]hen a buyer is not influenced by statement in making his or her purchase, statement is not basis of bargain and thus not express warranty."). | 4 Years ARK. CODE ANN. § 4-2-725 | Yes. *Adams v. Wacaster Oil Co., Inc.*, 81 Ark. App. 150, 155 (2003) ("notice must be more than a complaint") (citing *Williams v. Mozark Fire Extinguisher Co.*, 888 S.W.2d 303, 306 (Ark. 1994)). |
| **California** | Yes, absent reliance. *See Coleman v. Boston Scientific Corp.*, No. 1:10-CV-01968-OWW, 2011 WL 3813173, at *4 (E.D. Cal. Aug. 29, 2011); *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695-96, 268 P.2d 1041, 1048-49 (1954) ("The general rule is that privity of contract is required in an | Yes, unless the parties are in privity. *See Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986) (to plead a breach of an express warranty, a plaintiff must allege the plaintiff's reasonable reliance thereon); *see also Coleman*, 2011 WL 3813173, at *4 (if privity is absent, reliance is required to bring an | 4 Years CAL. COM. CODE § 2725 | Yes. CAL. COM. CODE § 2607; *see Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011) ("the notice requirement means pre-suit notice," which cannot be satisfied by sending a notice letter simultaneously with the complaint); *Cardinal Health 301,* |

SWANHOLT EXH. 26- 404

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale. . . . [A] possible exception to the general rule is found in a few cases where the purchaser of a product relied on representations made by the manufacturer in labels or advertising material, and recovery from the manufacturer was allowed on the theory of express warranty without a showing of privity."). | express warranty claim); *Fieldstone Co. v. Briggs Plumbing Prod., Inc.,* 54 Cal. App. 4th 357 (1997) (privity of contract is a required element of an express breach of warranty cause of action . . . [h]owever , there is an exception where plaintiff's decision to purchase the product was made in reliance on the manufacturers' written representations"); *cf. Weinstat v. Dentsply Intern., Inc.* 180 Cal. App. 4th 1213, 1227 (2010) (in case where the parties were in privity, holding that a breach of express warranty claim does not require proof of reliance on specific promises made by the seller);. | | *Inc. v. Tyco Elecs. Corp.,* 169 Cal. App. 4th 116, 135-37 (notice provided via lawsuit "did not comply with the statutory requirement" because it did not fulfill the important underlying purpose of "afford[ing] the seller an opportunity to engage in settlement discussions and prepare for the litigation."). |
| **Colorado** | No.<br><br>*Am. Safety Equip. Corp. v. Winkler,* 640 P.2d 216, 221 (Colo. 1982) ("An action based upon an express warranty, while not requiring contractual privity in this state . . . ."). | Unclear.<br><br>*See Assoc. of San Lazaro v. San Lazaro Park Properties,* 864 P.2d 111, 116 (Colo. 1993) (buyer waived right to rely on express warranty because did not rely on information provided by seller); *Anderson v. Heron Eng'g Co., Inc.,* 604 P.2d 674, 676 (Colo. 1979) (plaintiff required to prove that he saw or otherwise relied on sales brochure. *But see Lutz Farms v. Asgrow Seed Co.,* 948 F.2d 638, 645 (10th Cir. 1991) (applying Colorado law) ( "as a general rule no evidence of reliance by the buyer is necessary other than the seller's statements were of a kind which naturally would induce the buyer to purchase..."). | 3 Years<br><br>*See* COLO. REV. STAT. ANN. § 4-2-725 (providing that an action for breach of any contract for sale must be commenced within the time period prescribed in section 13-80-101, C.R.S.). | Probably.<br><br>*See Fiberglass Component. Prod, Inc. v. Reichhold Chem., Inc.,* 983 F. Supp. 948 (D. Colo. 1997) ("[D]etermination of what is reasonable time for a buyer to give seller notice of breach of express warranty depends on circumstances of each case . . . purposes of notice requirement are to allow seller to: 1) correct any defect; 2) *prepare for negotiation and litigation*; and 3) protect itself against stale claims asserted after it is too late for seller to investigate them.") (emphasis added). |

SWANHOLT EXH. 26- 405

**DIFFERENCES IN STATE EXPRESS WARRANTY LAWS**

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| **Connecticut** | No, if there is a showing of reliance and injury. *Hamon v. Digliani*, 148 Conn. 710, 718, 174 A.2d 294, 298 (1961) ("Where the manufacturer or producer makes representations in his advertisements or by the labels on his products as an inducement to the ultimate purchaser, the manufacturer or producer should be held to strict accountability to any person who buys the product in reliance on the representations and later suffers injury because the product fails to conform to them."). | Yes. *Criteria II v. Co-Op. Precision Wood Prods.*, Case No. CV000803309S, 2001 WL 1178333, at *1 (Conn. Sup. Ct. Aug. 31, 2001) ("Although reliance is not a factor in the determination of whether an express warranty has been made ... it is a necessary element of a cause of action to recover on a breach of express warranty."). | 4 Years CONN. GEN. STAT. ANN. § 42a-2-725 | Probably.   Notice required; unclear as to whether pre-litigation notice required. CONN. GEN. STAT. ANN. § 42a-2-607; *see Zeigler v. Sony Corp. of Am.*, 849 A.2d 19, 24 (Conn. Sup. Ct. 2004) (plaintiffs must give notice prior to suit to bring breach of implied warranty claim); *Benchmark Bldg. Corp. v. United Builders Supply Co.*, Case No. 62896, 1992 WL 124139 , at *2 (Sup. Ct. Conn. May 29, 1992) ("The plaintiff's amended complaint fails to allege notice as required by General Statutues § 42a–2–607(3), and the breach of warranty claims . . . are therefore legally insufficient and are stricken."). |
| **Delaware** | *Cline v. Prowler Indus., Inc.*, 418 A.2d 968, 985 (Del. 1980) (Delaware "has abolished the privity requirement . . . as to natural persons"). | Yes. *Dilenno v. Libbey Glass Div.*, 668 F. Supp. 373, 376 (D. Del. 1987) (applying Delaware law) (dismissing claim where no proof that plaintiff ever saw catalog, explaining "[i]t is clear that a successful action for breach of an expressed warranty may not be maintained in Delaware absent some reliance by the buyer on the warranty."). | 4 Years DEL. CODE ANN. tit. 6 § 2-725 | Yes. DEL. CODE ANN. tit. 6 § 2-607; *see Rottner v. AVG Technologies USA, Inc.*, 943 F. Supp.2d 222, 231 (D. Mass. 2013) (applying Delaware law) (claim for express warranty breach fails because plaintiff "failed to provide adequate pre-suit notice of the defects as required by Del. Code tit. 6 § 2-607(3)(a))."); |
| **District of Columbia** | Probably not. *See Picker X-Ray Corp. v. Gen. Motors Corp.*, 185 A.2d 919, 920 (D.C. 1962) (addressing implied | No. *See Rock Creek Ginger Ale Co. v. Thermice Corp.*, 352 F.Supp. 522, 526-27 (D.D.C. 1971) (a representa- | 4 Years  D.C. CODE ANN. § 28:2-725 | Notice required; unclear as to whether pre-litigation notice required. *See* D.C. CODE ANN. § 28:2-607; |

SWANHOLT EXH. 26- 406

**DIFFERENCES IN STATE EXPRESS WARRANTY LAWS**

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | warranties) | tion made by a reputable brewer of beer to a distributor of carbon dioxide that the surplus carbon dioxide the brewer was willing to sell to the distributor was from time to time used by the brewer in the manufacture of its own beer was a representation on which the distributor was entitled to rely as a matter of fact, regardless of actual reliance). | | *see also Witherspoon v. Phillip Morris Inc.*, 964 F, Supp. 455, 464-65 (D.D.C. 1997) (notice required, but constructive notice may occur when seller receives "'numerous inquiries'"; additionally, notice cannot be raised as a defense where seller "'willfully fails to disclose a defect'");*Wesley Theological Seminary of United Methodist Church v. U.S. Gympsum Co.*, Case No. 85-166, 1988 WL 288978, *5 (Sup. Ct. Conn. Aug. 30, 2001) (D.C. law requires notice separate from filing of suit), *rev'd on other grounds by* 876 F.2d 119 (D.C. Cir. May 19, 1989). |
| **Florida** | Yes.<br><br>*Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1266 (N.D. Fla. 2012) ("The law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant."); *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. Dist. Ct. App. 2005) ("[I]n order to recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant"). | Yes.<br><br>*Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1101 (11th Cir. 1983) (applying Florida law) ("The requirement that a statement be part of the basis of the bargain 'is essentially a reliance requirement and is inextricably intertwined with the initial determination as to whether given language may constitute an express warranty....'"); *Thursby v. Reynolds Metals Co.*, 466 So.2d 245, 250 (Fla. Dist. Ct. App. 1984) (manufacturer not liable where there was no reliance by buyer on any affirmations of particular facts on the part of manufacturer regarding safety | 5 Years<br><br>FLA. STAT. ANN. § 95.11 | Probably.<br><br>*See Dunham-Bush, Inc. v. Thermo-Air Service, Inc.*, 351 So.2d 351 (Fla. Dist Ct. App. 4th 1977) (to properly plead a cause of action for breach of warranty under Uniform Commercial Code, complaint must contain allegations showing notice to seller of breach). |

SWANHOLT EXH. 26- 407

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | | features). | | |
| **Georgia** | Yes. *Cobb County Sch. Dist. v. MAT Factory, Inc.*, 215 Ga. App. 697, 702, 452 S.E.2d 140, 146 (Ct. App. 1994) (granting summary judgment on express warranty claim where privity did not exist between plaintiff and defendant). | Yes. *Servais v. Philbrick*, 380 S.E.2d 496, 497 (Ga. App. 1989) ("'To recover for an express warranty it is necessary to show that the statement was intended to be an express warranty and that it was relied upon as such.'"). | 4 Years GA. CODE ANN. § 11-2-725 | No. *Hudson v. Gaines*, 403 S.E.2d 852, 854 (Ga. Ct. App. 1991) (holding that service of a suit was reasonable notice). |
| **Hawaii** | No. *Torres v. Northwest Eng'g Co.*, 86 Haw. 383, 405, 949 P.2d 1004, 1026 (Ct. App. 1997) | No. *Torres*, 949 P.2d at 1013 ("[R]eliance is not an essential element of a breach of express warranty claim under the UCC."). | 4 Years HAW. REV. STAT. § 490:2-725 | Notice required; unclear as to whether pre-litigation notice required. *See* HAW. REV. STAT. § 490:2-607(3)(a). |
| **Idaho** | Unclear. *State v. Mitchell Constr. Co.*, 108 Idaho 335, 337, 699 P.2d 1349, 1351 (1984) (declining to address whether privity is required for express warranty claims). | Unclear. *See Jensen v. Seigel Mobile Homes Group*, 668 P.2d 65, 71 (Idaho 1983) ("the buyer of goods need not rely on an 'affirmation of fact or promise' or 'description' for the same to become 'part of the basis of the bargain' and hence an express warranty."); *but see Williams v. Dow Chemical Co.*, 255 F. Supp. 2d 219, 230 (S.D.N.Y 2003) (discussing, in part, Idaho law that a cause of action for breach of express warranty failed because plaintiffs did not allege that they "heard, saw or relied upon any representation by Defendants"). | 4 Years ID. CODE §28-2-725 | Notice required; unclear as to whether pre-litigation notice required. *See* ID. CODE ANN. § 28-2-607; *see also Reser's Fine Foods, Inc. v. Walker Produce Co.*, Case No. CIV. 07-336-S-WBS, 2008 WL 1882671, at *5 (D. Idaho Apr. 24, 2008) (notice must be within reasonable time, and "does not require 'any particular form of communication'"). |
| **Illinois** | No. | No. | 4 Years | Yes (unless personal injury) |

SWANHOLT EXH. 26- 408

**DIFFERENCES IN STATE EXPRESS WARRANTY LAWS**

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | *Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 294, 518 N.E.2d 1028 (1988) ("[W]e [have] recognized . . . the privity of contract which exists between a manufacturer and consumer when the manufacturer makes a contractual promise (express warranty) directly to the consumer."). | *Felley v. Singleton*, 705 N.E.2d 930, 934 (1999) (holding that that representations that form part of "basis of the bargain" create express warranties even in the absence of reliance); *Weng v. Allison*, 678 N.E.2d 1254, 1256 (1997) ("It is not necessary ... for the buyer to show reasonable reliance upon the seller's affirmations in order to make the affirmations part of the basis of the bargain"). | 810 ILCS § 5/2-725 | *See Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584 (Ill. 1996) (buyers must in general notify seller of troublesome nature of transaction or be barred from recovery for breach of warranty unless buyer sustained personal injury). |
| **Indiana** | No.<br><br>*Prairie Production, Inc. v. Agchem Div.-Pennwalt Corp.*, 514 N.E.2d 1299, 1302 (Ind. Ct. App. 1987) ("the authority in favor of discarding the privity requirement in express warranty cases is overwhelming"). | Yes.<br><br>*Royal Business Machines, Inc. v. Lorraine Corp.*, 633 F.2d 34, 44 n.7 (Ind. App. 1980) (the "basis of the bargain" requirement "'is essentially a reliance requirement and is inextricably intertwined with the initial determination as to whether given language may constitute an express warranty . . . It was the intention of the drafters of the U.C.C. not to require a strong showing of reliance. In fact, they envisioned that all statements of the seller become part of the basis of the bargain unless clear affirmative proof is shown to the contrary.'"). | 4 Years<br><br>IND. CODE ANN. § 26-1-2-725 | Probably.<br><br>*See Thompson Farms, Inc. v. Corno Feed Products, Div. of Nat. Oats Co., Inc.* 366 N.E.2d 3 (Ind. Ct. App. 1977) (holding that notice of breach of warranties, as required under Uniform Commercial Code provision, is a substantive condition precedent to recovery and party claiming breach of warranty must allege that notice was given in accordance with such provision). |
| **Iowa** | Yes.<br><br>*Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 108 (Iowa 1995) ("Because [plaintiff] is at best a non-privity buyer and because he seeks to recover only consequential | Yes.<br><br>*Moore v. Vanderloo*, 386 N.W.2d 108, 112 (Iowa 1986) (no express warranty where no evidence that plaintiff read or relied on informational materials; thus, no | 10 years<br><br>IOWA CODE § 614.1; *see also id.* § 554.2725 | Yes.<br><br>*Wright v. Brooke Group Ltd.*, 114 F. Supp. 2d 797, 828 (N.D. Iowa 2000) (noting that notice is a condition precedent to recovery, and under Iowa law, the notice |

**SWANHOLT EXH. 26- 409**

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | economic loss damages, he may not rely on a theory of breach of express warranty."). | basis of the bargain); *Sharp v. Tamko Roofing Products, Inc.*, Case No. 02-0728, 2004 WL 2579638, at * 2 (Iowa App. Nov. 15, 2004) (dismissing claim where no evidence that plaintiff relied on warranty). | | ordinarily must be more than "a mere complaint"); *Dailey v. Holiday Dist. Grp.*, 260 Iowa 859, 873 (1967). |
| Kansas | No.<br><br>*Scheuler v. Aamco Transmissions, Inc.*, 1 Kan. App. 2d 525, 528, 571 P.2d 48, 51 (Ct. App. 1977) ("Advertising may be the basis of or form a part of an express warranty. Lack of privity between a buyer and a manufacturer who advertises is no hurdle."). | No.<br><br>*Unified School Dist. No. 500 v. U.S. Gypsum Co.*, 788 F.Supp. 1173, 1177 (D. Kan. 1992) (reliance is not an element of an action for breach of express warranty under the Kansas UCC); *Young & Cooper, Inc. v. Vestring*, 521 P.2d 281, 291 (Kan. 1974) ("particular reliance upon the express warranty need not be shown."). | 4 Years<br><br>KAN. STAT. ANN. § 84-2-725 | Probably.<br><br>*See Smith v. Stewart* 667 P.2d 358 (Kan. 1983) (holding that giving notice of defect within reasonable time is condition precedent to filing action by buyer against seller based on breach of express warranty, but failure to provide statutory notice not necessarily fatal where purpose of notice provision is served); *see also Carson v. Chevron Chem. Co.*, 635 P.2d 1248, 1256 (Kan. 1981) (finding that in the ordinary buyer-seller relationship, notice is only required to the immediate seller, but where "other parties to the manufacture, distribution and sale of the product are closely related, or where the other parties actively participate in the consummation of the actual sale of the product, the reason for the exclusion of such other parties from the ... notice provision cease to exist [and they must be provided notice as well]"). |
| Kentucky | Yes.<br><br>*Bridgefield Casualty Ins. Co. v. Yamaha Motor Mfg. Corp. of* | Yes.<br><br>*Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286, 1289 (6th Cir. 1982) | 4 Years<br><br>KY. REV. STAT. ANN. | No.<br><br>*See Mullins v.* Wyatt, 887 S.W.2d 356, 358 (Ky. 1994) (failure to |

SWANHOLT EXH. 26- 410

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | *America*, 385 S.W.3d 430, 434 (Ky. Ct. App. 2012) ("A claim of breach of warranty . . . is only viable when privity of contract exists between the commercial seller and the injured party or if the injured party is [in the family or household of the buyer or who is a guest in his home].'"). | ("reliance is an element of a breach of an expressed warranty action under Kentucky law). | § 355.2-725 | give pre-litigation notice is not fatal to a civil action for breach of warranty); *accord Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286, 1288 (6th Cir. 1982). |
| Louisiana | No. *Media Prod. Consultants, Inc. v. Mercedes-Benz, Inc.*, 262 La. 80, 91, 262 So. 2d 377, 381 (1972) ("The pecuniary loss resulting from an unusable vehicle is recoverable when there is an express warranty without privity."). | Yes. *Evans v. Ford Motor Co.*, 484 F.3d 329, 336 (5th Cir. 2007) ("To prevail on an express warranty claim under Louisiana law, someone injured by using a product must adduce evidence that he or she had read or was aware of the express warranty and was induced to use the product because of it."); *Brown v. Hudson*, 700 So.2d 932, 940 (La.App. 1997) (rejecting an express warranty claim because there was "no evidence that Mrs. Brown read the owner's manual or, more importantly, that provisions in question induced her to use the restraint system."). | 10 years  LA. CIV. CODE ANN. Art. 3499 | Yes if suit is to rescind sale, unless seller has actual knowledge of defect. However, failure to give notice is not fatal to seeking reduction in price. *See David v Thibodeaux*, 916 So. 2d 214, 219 (La. App. 2005) (noting that under Louisiana law, the buyer must give the seller notice of the existence of a redhibitory defect within sufficient time to allow the seller the opportunity to make the required repairs; "notice must be given *before* rescission is sought, in other words, *before* suit is filed." However, notice not required if the seller has actual knowledge of the defect). |
| Maine | No. *Ouellette v. Sturm, Ruger & Co.*, 466 A.2d 478, 482 (Me. 1983) ("In a series of enactments the legislature eliminated the requirement of privity and extended warranty protection to | Probably. *See* ME. REV. STAT. ANN. tit. 11§ 2¬313 (representation must form part of "basis of the bargain"); *Maine Farmers Exch. v. McGillicuddy*, 697 A.2d 1266, 1268 (Me. 1997) (noting that comments to the code suggest | 4 Years  ME. REV. STAT. ANN., tit. 11 §2-725 | Probably not; unclear as to whether pre-litigation notice required. *See* ME. REV. STAT. ANN. tit. 11 § 2-607; *M.K. Assoc. v. Stowell Prods. Inc.*, 697 F. Supp. 20, 22 (D. Me. 1988) ("waiting until the |

SWANHOLT EXH. 26- 411

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | those persons who might reasonably be expected to use, consume or be affected by the goods."). | that the requirement that the affirmation become part of the "basis of the bargain" is meant to continue the "reliance" requirement in bringing a breach of warranty cause of action). | | seller sues for the purchase price to claim a breach of contract does not satisfy the requirement of timely notice."). *But see Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 857 (N.D. Ill. 2006) (applying Maine law) (stating that no Maine court "has held that notice is an element of a breach of warranty claim, as opposed to an affirmative defense" and that the court did "not think that Maine courts would require [pre-litigation] notice" as an element of such a claim). |
| Maryland | Yes. *Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 773 n.14 (2007) (Maryland "'does not recognize [an] exception to the privity requirement when the claim of breach of express warranty does not involve a claim of personal injury.'" | Unclear. *Rite Aid Corp. v. Levy-Gray*, 391 Md. 608, 625 (Md. 2006) (in a personal injury action, holding that to become part of the "basis of the bargain" the affirmation need not be a negotiated term of the agreement and the consumer need not be "aware of its existence prior to the consum-mation of the deal" and that "a jury reasonably could infer that [plaintiff] relied on the instruction "take with food or milk if upset stomach occurs" which was contained inside the product package). | 4 Years MD. CODE ANN. COMM. LAW § 2-725 | Yes (unless third party beneficiary) *See* MD. CODE ANN. COMM. LAW. § 2-607(3)(a); *Lynx, Inc. v. Ordnance Prods., Inc.*, 327 A.2d 502, 514 (Md. Ct. App. 1974) (under § 2-607, "existence of a right of action is conditioned upon whether notification has been given . . . [and] where no notice has been given prior to the institution of the action an essential condition precedent to the right to bring the action does not exist and the buyer-plaintiff has lost the right of his 'remedy.' Thus the institution of an action by the buyer to recover damages cannot by itself be regarded as a notice of the breach contemplated under either § 2-607(3) or 2-608(2)."); *Frericks v. General Motors Corp.*, |

SWANHOLT EXH. 26- 412

**DIFFERENCES IN STATE EXPRESS WARRANTY LAWS**

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | | | | 278 Md. 304, 314, 363 A.2d 460, 465 (1976) ("Section 2-607 requires only the 'buyer' to notify the seller of a breach, and 2-103 clearly defines 'buyer' so as to exclude third party beneficiaries."). |
| Massachusetts | No.<br><br>*Theos & Sons, Inc. v. Mack Trucks, Inc.*, 431 Mass. 736, 740, 729 N.E.2d 1113, 1117 (2000) ("General Laws c. 106, § 2-318, extends all warranties, express or implied, to third parties who may reasonably be expected to use the warranted product."). | Yes.<br><br>*Hiller v. Daimler Chrysler Corp.*, Case No. 02681, 2007 WL 3260199, at *4(Mass. Sup. Ct. Sept. 25, 2007) (plaintiff must show reliance on defendant's representations to successfully state a claim for breach of express warranty). | 3 Years<br><br>MASS. GEN. LAWS ANN. ch. 106, §2-318 | No, unless defendant proves prejudice.<br><br>MASS. GEN. LAWS ANN. ch. 106 § 2-318 (failure to give notice does not bar claim unless defendant shows prejudiced by failure to give notice); *id.* § 2-607; *see also Sacramona v. Bridgestone/ Firestone, Inc.*, 106 F.3d 444, 448-49 (1st Cir. 1997) (notice is required under Massachusetts law if defendant shows prejudice). |
| Michigan | Unclear.<br><br>*Heritage Resources, Inc. v. Caterpillar Financial Servs. Corp.*, 284 Mich. App. 617, 643 (Ct. App. 2009) ("Our research has revealed no modern case in which the Supreme Court has ever held that privity of contract is unnecessary to enforce an *express* warranty."). | No.<br><br>*Fire Ins. Exchange v. Electrolux Home Prods.*, Case No. 05-70965, 2006 WL 2925286, at *6 (E.D. Mich. Oct. 11, 2006) ("the Court finds that the Michigan statute does not expressly require reliance," thus, plaintiffs failure to read manual did not bar claim). | 4 Years<br><br>MICH. COMP. LAWS § 440.2725 | No.<br><br>MICH. COMP. LAWS ANN. § 440.2607(3)(a); *In re Bridgestone/ Firestone Inc. Tires Prods. Liability Litigation*, 155 F. Supp. 2d 1059, 1110-111 (N.D. Ind. 2001) (discussing, in part, Michigan law and holding that under "certain circumstances" filing suit can be sufficient notice); *In re Morweld Steel Prods. Corp.*, 8 B.R. 946, 950-54 (W.D. Mich. 1981) (to be sufficient notice, lawsuit must be filed within reasonable time). |

**SWANHOLT EXH. 26- 413**

**DIFFERENCES IN STATE EXPRESS WARRANTY LAWS**

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| **Minnesota** | No.<br><br>*Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 357 (Minn. 1977) ("If plaintiff had sued Saab-Scania for breach of either express warranty or implied warranty, the absence of privity would not bar the suit despite the language of the pertinent Code sections."). | Probably not.<br><br>*See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 267 F.R.D. 549, 564 (D. Minn. 2010) (noting that under Minnesota law, reliance is not required); *Drobnak v. Andersen Corp.*, Case No. 07-2249 (PAM/JSM), 2008 WL 80632, *7 (D. Minn. Jan. 8, 2008) (stating that under Minnesota's version of the UCC no reliance is required).   *But see Wurm v. John Deere Leasing Co.*, 405 N.W.2d 484, 489 (Minn. Ct. App. 1987) (summary judgment for defendants granted on claim for breach of express warranty because plaintiff did not rely on seller's representations). | 4 Years<br><br>MINN. STAT. § 336.2-725 | Yes.<br><br>MINN. STAT. § 336.2-607; *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 827 (D. Minn 2010) (plaintiffs claims barred because no notice given to manufacturer prior to filing suit); *Goerge v. Uponor Corp.*, Case No. 12-249 ADM/JJK, 2013 WL 6801219 (D. Minn. Dec. 23, 2013) (pre-suit notice required under Minnesota Statute § 336.2-607). |
| **Mississippi** | No.<br><br>*May v. Ralph L. Dickerson Constr. Corp.*, 560 So. 2d 729, 731 (Miss. 1990) (privity not required to maintain any warranty action). | Yes.<br><br>*Global Truck & Equip. Co. Inc. v. Palmer Machine Works, Inc.*, 628 F. Supp. 641, 652 (N.D. Miss. 1986) (concluding that the buyer must be knowledgeable of and rely on the affirmation of fact before an express warranty is created). | 6 Years<br><br>MISS. CODE ANN. § 75-2-725 | Probably.<br><br>*See* MISS. CODE ANN. § 75-2-607; *In re Ford Motor Co. Vehicle Paint Litigation*, Case No. MDL 1063, 1996 WL 426548, *22 (E.D. La July 30, 1996) (applying Mississippi law) (claim for breach of express warranty dismissed because plaintiff did not plead notice given to manufacturer); s*ee also Miss. Chem. Corp. v. Dressier-Rand Co.*, 287 F.3d 359, 368 (5th Cir. 2002) (Mississippi law requires that the buyer provide the seller notice, but it need not be a specific claim for damages or an assertion of legal rights). |

SWANHOLT EXH. 26- 414

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| Missouri | No.<br><br>*Summer Chase Second Addition Subdivision Homeowners Ass'n v. Taylor-Morley, Inc.*, 146 S.W.3d 411, 416 n. 4 (Mo. Ct. App. 2004) ("Some recognized exceptions to the rule of privity are . . . express warranty"). | No.<br><br>*Walker v. Woolbright Motors, Inc.*, 620 S.W.2d 451, 453 (Mo. Ct. App. 1981) (noting that since Missouri's adoption of the UCC, "no particular reliance on an express warranty is required."). | 4 Years<br><br>MO. REV. STAT. § 400.2-725 | Notice required; unclear as to whether pre-litigation notice required.<br><br>*See* MO. REV. STAT. § 400.2-607; *see also R.W. Murray, Co. v. Shatterproof Glass Corp.*, 785 F.2d 266, 273 (8th Cir. 1985) (applying Missouri law) (finding that plaintiff gave defendant adequate "notice of breach prior to filing this suit"); *see also Ragland Mills, Inc. v. General Motors Corp.*, 763 S.W.2d 357, 361 (Ct. App. Miss. 1989) (notice generally only required to immediate seller). |
| Montana | Probably not.<br><br>*See* MONT. CODE ANN. § 30-2-318; *Whitaker v. Farmhand, Inc.*, 567 P.2d 916, 921 (Mont. 1977) ("The law appears to be well settled that a remote manufacturer without privity with the purchaser is liable for breach of warranty by advertising on radio and television, in newspapers and magazines, and in brochures made available to prospective purchasers, if the purchaser relies on them to his detriment.") (citations omitted). | Yes.<br><br>*Woodahl v. Matthews*, 639 P.2d 1165, 1168 (Mont. 1982) ("There can be no express warranty without reliance."). | 4 Years<br><br>MONT. CODE ANN. § 30-2-725 | Probably.<br><br>*See* MONT. CODE ANN. § 30-2-607; *see also Fire Supply & Service, Inc. v. Chico Hot Springs*, 639 P.2d 1160 (Mont. 1982) ("To recover damages for breach of warranty, the buyer must plead and prove that he gave the seller notice of the breach within a reasonable time after it was discovered or be barred from any remedy."). |
| Nebraska | Probably not.<br><br>*Hawkins Constr. Co. v.* | Yes.<br><br>*Hillcrest Country Club v. N.D. Judds* | 4 Years<br><br>NEB. REV. STAT. | Probably.<br><br>*See* NEB. REV. STAT. U.C.C. § 2- |

**SWANHOLT EXH. 26- 415**

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | *Matthews Co.*, 209 N.W.2d 643, 654 (Neb. 1973) ("A manufacturer or seller may be held liable under [advertising constituting an express warranty] even though he is not in privity of contract with the purchaser."), *overruled on other grounds by Nat'l Crane Corp. v. Ohio Steel Tube Co.*, 332 N.W.2d 39 (1983). | *Co.*, 461 N.W.2d 55, 61 (Neb. 1990) ("[S]ince an express warranty must have been 'made part of the basis of the bargain,' it is essential that the plaintiffs prove reliance upon the warranty."). | U.C.C. § 2-725 | 607; *see also Fitl v. Strek*, 690 N.W.2d 605, 608 (Neb. 2005) (noting that the buyer must give the seller notice within a reasonable time); *Moore v. Puget Sound Plywood, Inc.*, 332 N.W.2d 212 (Neb. 1983) ("a purchaser must plead that he gave timely notice of the breach"). |
| **Nevada** | Unclear. *See Newmar Corp v. McCrary*, 309 P.2d 1021, 1025-026 (Nev. 2013) ( "[the Nevada] Legislature thus far has been silent on the issue of privity. As a result, we are hesitant to completely eliminate any requirement of privity, particularly because doing so may result in too broad an application of the revocation of acceptance cause of action."). | No. *Allied Fidelity Ins. Co. v. Pico*, 656 P.2d 849, 850 (Nev. 1983) (noting that "actual reliance" not required, as long as the express warranty involved became a part of the bargain; if resulting bargain does not rest at all on representations of seller, they were not part of basis of the bargain). | 4 Years NEV. REV. STAT. § 104.2725 | Notice required; unclear as to whether pre-litigation notice required. *See* NEV. REV. STAT. § 104.2607 |
| **New Hampshire** | No. N.H. REV. STAT. § 382-A:2-318 ("Lack of privity shall not be a defense in any action brought against the manufacturer, seller or supplier of goods to recover damages for breach of warranty, express or implies . . . even though the plaintiff did not purchase the goods from the defendant, if | Yes. *Kelleher v. Marvin Lumber & Cedar Co.*, 891 A.2d 477, 502 (N.H. 2005) ("In order to become part of the basis of the bargain, the buyer must have been aware of the affirmation of fact or promise at some point in the bargaining process . . . [t]o satisfy this requirement, a plaintiff claiming breach of express warranty . . . would have to prove, at a minimum that he | 4 Years N.H. REV. STAT. ANN. § 382-A:2-725 | Yes. *ACE Am. Ins. Co. v. Fountain Powerboats, Inc.*, Case No. 06-cv-66-SM, 2007 WL 2438338, at *3 (D.N.H. Aug. 24, 2007) ("If that notice requirement is to have any meaning at all, a civil complaint cannot serve the dual purpose of providing the defendant(s) with notice of potential warranty claims *and* actually initiating legal action |

SWANHOLT EXH. 26- 416

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | the plaintiff was a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume, or be affected by the goods."). | or she read, heard, saw or was otherwise aware of the representation" made). | | based on those warranty claims") (emphasis in original). |
| New Jersey | Probably not.<br><br>*See Spring Motors Dist., Inc. v. Ford Motor Co.*, 489 A.2d 660, 663 (N.J. 1985) ("We hold that a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for breach of warranty under the U.C.C."); *accord, Francis E. Parker Memorial Homes, Inc. v. Georgia-Pacific, LLC*, 945 F.Supp. 2d 543, (D.N.J. 2013). | No.<br><br>N.J. STAT. ANN. § 12A:2-313, cmt. 3; *Gladden v. Cadillac Motor Car Div., General Motor Corp.*, 416 A.2d 394 (N.J. 1980) ("Particular reliance on such statements of description or quality need not be shown and the warranty issue will normally be a factual one."). | 4 Years<br><br>N.J. STAT. ANN. § 12A:2-725 | No.<br><br>*Taylor v. JVC Americas Corp.*, Case No. 07-4059 (FSH), 2008 WL 2242451, at *6 (D.N.J. May 30, 2008) (noting that under New Jersey law, a plaintiff does not need to provide pre-litigation notice and that the filing of a complaint can satisfy the notice requirement). |
| New Mexico | Unclear; horizontal privity required.<br><br>*See* N.M. STAT. ANN. § 55-2-318 (extending express warranties to "any natural person who is in the family or household of his buyer or who is a guest in his home if it its reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty."); *Armijo v. Ed Black's Chevrolet Ctr., Inc.*, | No.<br><br>*C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238, 246 (N.M. 1991) ("reliance is not an element of a breach of an express warranty reduced to writing"); *Porcell v. Lincoln Wood Products, Inc,*, 713 F.Supp.2d 1305, 1319 (D.N.M. 2010) ("if there is an affirmation of fact which is a part of the basis of the bargain, there is no independent 'reliance' requirement as to that affirmation of fact."). | 4 Years<br><br>N.M. STAT. ANN. § 55-2-725 | Probably.<br><br>*See* N.M. STAT. ANN. § 55-2-607; *see also State ex rel. Concrete Sales & Equip. Rental Co., Inc. v. Kent Nowlin Constr., Inc.*, 746 P.2d 645, 649 (N.M. 1987) ("For a buyer to recover for breach of warranty, he must prove the existence of a defect caused by the seller, that the buyer notified the seller and sought repairs, and that the seller failed or refused to make repairs."). |

SWANHOLT EXH. 26- 417

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | 733 P.2d 870, 871-72 (N.M. Ct. App. 1987) (dismissing plaintiff's warranty claims for lack of horizontal privity under section 55-2-318). | | | |
| New York | Yes, unless reliance shown.<br><br>*Carcone v. Gordon Heating & A.C. Co.*, 212 A.D.2d 1017, 1018 (N.Y. App. Div. 1995) ("Privity is also an essential element of a cause of action for express warranty."). | Unclear.<br><br>*See CBS Inc. v, Ziff-Davis Publ'g Co.*, 553 N.E.2d 997, 1001 (N.Y. 1990) ("Once the express warranty is shown to have been relied on as part of the contract, the right to be indemnified in damages for its breach does not depend on proof that the buyer thereafter believed that the assurances of fact made in the warranty would be fulfilled. The right to indemnification depends only on establishing that the warranty was breached."); *but see, Meyer v. Alex Lyon & Son Sales Managers & Auctioneers, Inc.*, 889 N.Y.S.2d 166, 166 (N.Y. App. Div. 2009) ("[t]he breach of express warranty cause of action was correctly dismissed because plaintiff's actions belie any reliance"). | 4 Years<br><br>N.Y. U.C.C. § 2-725 | Probably.<br><br>*See* N.Y. LAW U.C.C. § 2-607(3)(a); *Cliffstar Corp. v. Elmar Indus. Inc.*, 678 N.Y.S.2d 222, 223 (N.Y. App. Div. 1998) ("The right of plaintiff to recover damages is preserved as long as it notified defendant 'within a reasonable time after [it] discover[ed] or should have discovered any breach."). |
| North Carolina | No.<br><br>*Sharrard, McGee & CO. v. Suz's Software, Inc.*, 396 S.E.2d 815, 817-18 (N.C. Ct. App. 1990) ("Privity is not required when the theory is breach of an express warranty."); *see also, Crews v. W.A. Brown & Son, Inc.*, 416 | Yes.<br><br>*Harbor Point Homeowners' Ass'n, Inc. ex rel Bd. of Directors v. DJF Enterprises, Inc.*, 697 S.E.2d 439, 447 (N.C.App. 2010) ("[A] claim for breach of express warranty requires proof of … a fact or promise relating to the goods ... which was relied upon by the plaintiff in making his | 4 Years<br><br>N.C. GEN. STAT. § 25-2-725 | Probably.<br><br>*See Maybank v. S.S. Kresge Co.*, 273 S.E.2d 681 (1981) ("When the plaintiff is a lay consumer and the notification is given to the defendant by the filing of an action within the period of the statute of limitations, and where the applicable policies behind the |

SWANHOLT EXH. 26- 418

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | S.E.2d 924 (N.C. Ct. App. 1992) (privity not required for breach of express warranty claims brought against manufacturers when a claim "'is based on breach of *express* warranty, directed by the *manufacturer* to the *ultimate purchaser*."). | decision to purchase..."); *see also Bernick v. Jurden*, 293 S.E.2d 405, 448 (N.C. 1982) (the "[e]lement of reliance on express warranty can often be inferred from the allegations of mere purchase or use if the natural tendency of representations made is such to induce such purchase or use."). | | notice have been fulfilled, we hold that the plaintiff is entitled to go to the jury on the issue of seasonable notice[;]" however, complaint must allege that "adequate notice was given."). |
| **North Dakota** | Unclear; vertical privity required. *Falcon for Import and Trade Co. v. North Cent. Commodities, Inc.*, Case No. A2-01-138, 2004 WL 224676, *2 (D.N.D. Jan. 30, 2004) (plaintiff lacking vertical privity and without third beneficiary status cannot "recover direct economic damages under a theory of breach of express warranty"). | Unclear. *See* N.D. CENT. CODE § 41-02-30 | 4 Years N.D. CENT. CODE § 41-02-104 | Probably. *See Stamper Black Hills Gold Jewelry, Inc. v. Souther*, 414 N.W.2d 601, 604 (N.D. 1987) ("Failure to provide notice of a breach under this section is not an affirmative defense which must be raised by the seller. Rather, notice is a condition precedent to the buyer's cause of action which must be pleaded and proved by the buyer in order to recover:"). |
| **Ohio** | No. *Chic Promotion, Inc. v. Middletown Sec. Sys., Inc.*, 688 N.E.2d 278, 282 (Ohio Ct. App. 1996) (noting that the ultimate consumer may recover even with an absence of direct privity). | No. *Norcold, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618, 623-24 (Ohio Ct. App. 2003)"[R]eliance is not an element in a claim for breach of an express written warranty."). | 4 Years OHIO REV. CODE ANN. § 1302.98 | Yes. *Lincoln Elec. Co. v. Technitrol*, Inc. 718 F.Supp.2d 876, 883 (N.D. Ohio 2010) (stating that "Ohio courts and federal courts applying Ohio law have continued to hold that a plaintiff must notify a defendant of the alleged breach prior to the complaint."). |
| **Oklahoma** | Horizontal privity required; vertical privity not required. | Yes. *Scovil v. Chilcoat*, 424 P.2d 87, 91 | 5 Years OKLA. STAT. ANN. tit. | No. OKLA. STAT. ANN. tit. 12A § 2- |

**SWANHOLT EXH. 26- 419**

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | OKLA. STAT. ANN. tit. 12A, § 2-318 (horizontal privity); *Old Albany Estates, Ltd. v. Highland Carpet Mills, Inc.*, 604 P.2d 849, 851-52 (Okla. 1979) (vertical privity not required to recover for breach of warranty); *accord, Elden v. Simmons*, 631 P.2d 739, 742 (Okla. 1981). | (Okla. 1967) (to constitute express warranty, any affirmation of quality or condition of article sold made by seller at time of to induce buyer to make purchase, if so received and relied on by buyer, is an express warranty); *see also Speed Fastners, Inc. v. Newsom*, 382 F.2d 395, 397 (10th Cir. 1967) (applying Oklahoma law) (where plaintiff did not rely on any statement, promise, or description of product, express warranty not established); *Alexander v. Smit & Nephew, P.L.C.*, 98 F. Supp.2d 1310, 1321(N.D. Okla. 2000) ("Plaintiff's claim for beach of express warranty fails, because Plaintiff has submitted no evidence that [he] relied on any of Defendant's representations."). | 12A, § 2-725 | 607; *Buzadzhi v. Bexco Enterprises, Inc.*, Case No. 10-CV-247-GKF-PJC, 2011 WL 43086, *2-*3 (N.D. Okla. Jan. 4, 2011) (finding that suit filed two and a half years after breach was reasonably timely notice where plaintiff was lay consumer); *see also Am. Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592, 596 (Okla. 1981) ("In order for the buyer to avoid liability for the payment of goods accepted, he must notify the seller within a reasonable time after he discovers or should have discovered the breach of warranty."). |
| Oregon | No. *Dravo Equip. Co. v. German*, 698 P.2d 63, 64 (Or. 1985) ("privity is not required to recover economic loss on an express warranty"). | Probably. *Newman v. Tualatin Dev. Co.*, 597 P.2d 800, 803-04 (Or. 1979) (holding that the trial court did not err in denying class certification because "reliance upon the express warranty is not proved merely by evidence that the warranty was contained in a sales brochure given to all class members" and "would have to be individually determined" because the "alleged warranty is such a small part of the item purchased and the representation [was] interspersed with many other descriptive statements"). | 4 Years OR. REV. STAT. § 72.7250 | Notice required; unclear if pre-litigation notice is required. OR. REV. STAT. § 72.6070(5); *Acushnet Co v. G.I. Joe's Inc.*, Case No. CV 05-764-HU, 2006 WL 2729555 *5 (D. Or. Sept. 22, 2006) (such notice to original seller is permissive); *Allen v. G.D. Searle & Co.*, 708 F. Supp. 1142, 1160 (D. Or. 1989) ("in the absence of any evidence that Allen gave notice of her express or implied warranty claims, this court must rule that Allen has not established an essential element of her warranty claims"); *In re* |

SWANHOLT EXH. 26- 420

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | | | | *ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1109 (C.D. Cal. 2012) (applying, in part, Oregon law) (stating that notice need not be given before suit is commenced). |
| Pennsylvania | Yes.<br><br>*Gavula v. ARA Svcs., Inc.*, 756 A.2d 17, 21-22 (Pa. Super. Ct. 2000) (dismissing breach of warranty claim for lack of privity); *accord, Pritchard v. Liggett & Myers Tobacco Co.*, 350 F.2d 479 (3d Cir. 1965) (applying Pennsylvania law). | Only if there is an issue as to whether the warranty was part of the bargain.<br><br>*Samuel-Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 428 n/21 (2011) ("[A] plaintiff in a breach of warranty claim is required to prove 'reliance' only if there is a disputed issue regarding whether the promise allegedly breached was part of the basis of the bargain or a term of the contract."). | 4 Years<br><br>PA. STAT. ANN. tit. 13 § 2725 | Unclear.<br><br>*Compare Kee v. Zimmer, Inc.*, 871 F. Supp. 2d 405, 410 (E.D. Pa. 2012) (dismissing claims of breach of implied and express warranties because plaintiff did not plead that she gave notice to seller prior to filing suit) *with Bednarski v. Hideout Homes & Realty, Inc.*, 709 F. Supp. 90, 94 (M.D. Pa. 1988) (in addressing a claim for breach of implied warranty, holding that "the filing of a civil complaint satisfies the requirement of providing breach of warranty notice under section 2607"). |
| Rhode Island | Yes.<br><br>*Klimas v. Int'l Tel. & Tel. Corp.*, 297 F. Supp. 937, 940-41(D.R.I. 1969) (dismissing plaintiff's breach of express and implied warranties because plaintiff was not in privity of contract with manufacturer and thus beyond § 6A-2-318's statutory protection). | Yes.<br><br>*Thomas v. Arnway Corp.*, 488 A.2d 716, 720 (R.I. 1999) ("The plaintiff who claims breach of express warranty has the burden of proving that the statements or representations made by the seller induced her to purchase that product and that she relied upon such statements or representations."). | 4 Years<br><br>R.I. GEN. LAWS § 6A-2-725 | Notice required; unclear as to whether pre-litigation notice required.<br><br>R.I. GEN. LAWS § 6A-2-607; *Lariviere v. Dayton Safety Ladder Co.*, 525 A.2d 892, 897-98 (R.I. 1987) (letter to seller that buyer had retained counsel to represent buyer in action for personal injuries satisfied required notice that is condition precedent to bringing a breach of warranty claim). |

SWANHOLT EXH. 26- 421

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| **South Carolina** | No.<br><br>*Gasque v. Eagle Mach.Co.*, 243 S.E.2d 831, 832 (S.C. 1978) (allowing suit for "breach of warranty, 'whether express or implied,' notwithstanding any lack of privity"); *see also Campus Sweater and Sportswear Co. v. M.B. Kahn Const. Co.*, 515 F. Supp. 64, 80 (D.S.C. 1979) (a plaintiff who relies on express representations by a manufacturer will be allowed to recover absent privity."). | Unclear.<br><br>*See Campus Sweater and Sportswear Co. v. M.B. Kahn Const. Co.*, 515 F. Supp. 64, 96-7 (D.S.C. 1979) (noting that whether "reliance is required in South Carolina for recovery on express warranty" is "an open question . . . [and that] this court has no desire to usurp the function of the South Carolina Supreme Court to interpret South Carolina statutes."); *see also Triple E, Inc. v. Hendrix and Dail, Inc.*. 543 S.E.2d 245, 247 (S.C. App. 2001) ("'There are cases where recovery has been allowed on the theory of express warranty ... where the purchaser of an article relied on representations made by the manufacturer in advertising material.'"). | 6 Years<br><br>S.C. CODE ANN. § 36-2-725 | Probably; unclear as to whether pre-litigation notice required.<br><br>*See* S.C. CODE ANN. § 36-2-607; *Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1285 (S.D. Ga. 2010) (applying, in part, South Carolina law) (noting that no liability arose in plaintiffs claim for breach of express warranty under South Carolina law because plaintiff did not give pre-suit notice); *Cox House Moving, Inc. v. Ford Motor Co.*, Case No. 7:06-1218-HMH, 2006 WL 2303182 (D.S.C. Aug. 8, 2006) ("'any good faith communication that reasonably notifies the seller that the buyer is troubled by the transaction should suffice to preserve the buyer's right to pursue UCC remedies in the event it suffers damages from the defect'"). |
| **South Dakota** | Unclear.<br><br>S.D. CODIFIED LAWS § 57A-2-318; *compare Cundy v. Int'l Trencher Svc., Inc.*, 358 N.W.2d 233, 240 (S.D. 1984) ("'lack of privity is not defense in South Dakota in a breach of implied warranty action by a remote buyer against a manufacturer even though the buyer seeks only the recovery of damages for economic | Probably.<br><br>*See Virchow v. University Homes, Inc.*, 699 N.W.2d 499, 505 (S.D. 2005) (stating that to recover money damages for breach of express warranty a party must show reliance on the representations, affirmations of fact or promises); *Schmaltz v. Nissen*, 431 N.W.2d 657, 661 (S.D. 1988) ("Without having read or even known of [the language of the express warranty], it is impossible to | 4 Years<br><br>S.D. CODIFIED LAWS § 57A-2-725 | Yes.<br><br>*See* S.D. CODIFIED LAWS § 57A-2-607; *Hepper v. Triple U Entertainment, Inc.*, 388 N.W.2d 525, (S.D. 1986) *see also Hepper v. Triple U Entm't Inc.*, 388 N.W.2d 525, 527 (S.D. 1986) (express warranty claim barred because "[n]otice of breach by summons and complaint is obviously insufficient;" it must be specifically plead and is not an |

SWANHOLT EXH. 26- 422

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | losses.'") *with Jandreau v. Sheesley Plumbing & Heating Co.*, 324 N.W.2d 266, 272 (S.D. 1982) (stating in dicta "a non-privity buyer, whether commercial or consumer, cannot recover for direct economic loss on either an express or an implied warranty theory"). | say this language was part of the basis of the bargain."). | | affirmative defense); *accord* Jorgensen *Farms, Inc. Country Pride Corp., Inc.*, 824 N.W.2d 410, 418 (S.D. 2012). |
| **Tennessee** | Yes, unless there is a showing of personal injury or property damage. TENN. CODE ANN. 29-34-104; *Memphis-Shelby Cnty. Airport Auth. V. Ill. Valley Paving Co.*, Case No. 01-2041B, 2006 WL 3041492, at *3(W.D. Tenn. Oct. 26, 2006) (plaintiff's breach of express warranty claims barred by economic loss doctrine, which requires privity for recovery of purely economic damages). | Probably. *See Masters v. Rishton*, 863 S.W.2d 702, 706 (Tenn. Ct. App. 1992) (breach of express warranty was not available to a plaintiff who had never heard of the manufacturer or seen any advertisements for or heard any representations about the safety of a product). | 4 Years TENN. CODE ANN. 47-2-725 | Probably not. *See Smith v. Pfizer Inc.*, 688 F.Supp.2d 735, 750 (M.D. Tenn. 2010) (although a personal injury case, the district court provided that "section 47-2-607(3)(a) simply requires that a plaintiff 'notify the seller of breach within a reasonable time.' Nothing in the plain text of the statute indicates that a lawsuit cannot serve as this notification."). |
| **Texas** | No. *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 99 (Tex. 2004) ("[o]f course, if manufacturers make representations or warranties directly to consumers, the latter may sue directly (despite the absence of privity) for breach | Yes, to a certain extent. *See PPG Indus., Inc.*, 146 S.W.3d at 99 ("Before any extra-contractual statement becomes a warranty, it must become 'part of the basis of the bargain.' Thus, for example, a statement cannot be a basis of the bargain if one of the parties does not know about it."; "While 'particular' reliance may not be necessary, we have held several times that | 4 Years TEX. BUS. & COM. CODE ANN. § 2.725 | Yes. *Ibarra v. Nat'l Constr. Rentals, Inc.*, 199 S.W.3d 32, 37 (Tex. Ct. App. 2006) (Plaintiff was required to prove that she provided presuit notice to fencing rental company about breach of warranty and implied warranty claims). |

SWANHOLT EXH. 26- 423

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | of express warranty"). | something rather like it is."; "'[r]eliance is also not only relevant to, but an element of proof, of, plaintiffs' claims of breach of express warranty (to a certain extent)."). | | |
| Utah | No.<br><br>*State By and Through Div. of Consumer Prot. V. GAF Corp.*, 760 P.2d 310, 315 (Utah 1988) ("'the great weight of authority and the better view is that a consumer can recover for a breach of an express warranty despite a lack of privity."). | Yes.<br><br>*Mgmt. Comm. of Graystone Pines Homeowners Ass'n v. Graystone Pines, Inc,.* 652 P.2d 896, 900 (Utah 1982) ("It is generally true that reliance is necessary to establish a cause of action for express warranty."). | 4 Years<br><br>UTAH CODE § 70A-2-725 | Notice required within reasonable time; unclear as to whether pre-litigation notice required.<br><br>*See* UTAH CODE ANN. 70A-2-607; *see also Salt Lake City Corp. v. Kasler Corp.*, 855 F. Supp. 1560, 1567 (D. Utah 1994) (granting motion to dismiss because notice of breach of express warranty six years after acceptance was, as a matter of law, unreasonable). |
| Vermont | No.<br><br>*Vermont Plastics, Inc. v. Brine,m Inc.*, 824 F. Supp. 444, 453 (D. Vt. 1993) ("the Vermont Supreme Court has dispensed with privity when personal injury, property damage, or an express warranty made directly from the defendant to the plaintiff is present."); *Gochey v. Bombardier, Inc.*, 572 A.2d 921, 924 (Vt. 1990) (consumer can recover under an express warranty from the manufacturer absent privity because "when a manufacturer expressly warrants its goods, it, in effect, creates a direct | Probably.<br><br>*See Mainline Tractor & Equipment Co., Inc. v. Nutrite Corp.*, 937 F.Supp. 1095 (D. Vt. 1996) (fact issue as to whether farmer who used herbicides had relied on express warranties created by label and label booklets provided with herbicide precluded summary judgment in breach of warranty action brought under Vermont version of UCC). | 4 Years<br><br>VT. STAT. ANN. tit. 9A § 2-725 | Notice required; unclear as to whether pre-litigation notice required.<br><br>*See* VT. STAT. ANN. tit. 9A § 2-607; *see also Agway, Inc. v. Teitscheid*, 472 A.2d 1250, 1252-253 (Vt. 1984) (affirming trial court's dismissal of breach of warranty claims where buyer failed to provide seller timely notice of breach but noting that filing of affirmative defense was "arguably sufficient notice of a breach"). |

SWANHOLT EXH. 26- 424

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | contract with the ultimate buyer."). | | | |
| **Virginia** | No.<br><br>VA. CODE ANN. § 8.2-318 ("Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods"). | No.<br><br>*Daughtrey v. Ashe*, 413 S.E.2d 336, 338-39 (Va. 1992) (a buyer's reliance on express warranties by a seller relating to goods was not a necessary element of the buyer's breach of express warranty claim).. | 4 Years<br><br>VA. CODE ANN. § 8.2-725 | Unclear.<br><br>*See Aqualon Co. v. Mac Equipment, Inc.*, 149 F.3d 262, 269 (4th Cir. 1998) (applying Virginia law) (stating that "the notice requirement is intended to give the seller a fair chance to prepare for litigation ..."). *Compare Bindra v. Michael Bowman & Assocs., Inc.*, 58 Va. Cir. 47, *5 (Va. Cir. Ct. 2002) ("failure to give notice is a bar to recovery" such that "notice must be pleaded in order to properly state a cause of action for . . . breach of implied warranty"), *with Providence Village Townhouse Co Ass'n v. Amurcon-Loudon Corp.*, 33 Va. Cir. 165, *6 (Va. Cir. Ct. 1994) (stating that in an action for breach of express and implied warranties, "[t]his court does not believe that notice of breach of warranty must be specifically pled."). |
| **Washington** | Privity requirement is relaxed where the plaintiff was aware of the manufacturer's representations.<br><br>*Baughn v, Honda Motor Co., Ltd.*, 727 P.2d 655, 669 (Wash. 1986) (plaintiff could not "recover for breach of express | Probably.<br><br>*Thongchoom v. Graco Children's Prods., Inc.*, 71 P. 3d 214, 219 (Wash. App. Div. 2003) ("'Recovery for breach of an express warranty is contingent on a plaintiffs knowledge of the representation.'"); *Reece v. Good Samaritan Hosp.*, 90 Wash. | 4 Years<br><br>WASH. REV. CODE § 62A.2-725 | Notice required; unclear as to whether pre-litigation notice required.<br><br>*See* WASH. REV. CODE § 62A.2-607; *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (C.D. Cal. 2012) (applying, in part, Washington law) (noting that there |

**SWANHOLT EXH. 26- 425**

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | or implied warranty under the [UCC]" without contractual privity, but "[t]he privity requirement is relaxed . . . when a manufacturer makes express representations, in advertising or otherwise, to a plaintiff . . . [and plaintiff is] at least . . . aware of such representations"). | App. 574, 585 (1998) (summary judgment for defendants proper on breach of express warranty claim where plaintiff failed to introduce any evidence she relied on the express warranty). | | is "no authority considering whether Washington law requires pre-suit notice of an alleged breach"). |
| West Virginia | No.<br><br>W. VA. CODE § 46-6-108; *Dawson v. Canteen Corp.*, 212 S.E.2d 82, 82-3 (W. Va. 1975) ("the requirement of privity of contract in actions grounded in breach of express or implied warranty is abolished in West Virginia"). | Probably.<br><br>*See Mountaineer Contractors, Inc. v. Mountain State Mack, Inc*, 268 S.E.2d 886, 892 (W. Va. 1980) ("Where a seller promises to pay for repairs to goods delivered to the buyer in a defective condition and the buyer accepts the defective goods in reliance upon the promise to repair, such promises of the seller constitute express warranties."); *Sylvia Coal Co. v. Mercury Coal & Coke Co.*, 156 S.E.2d 1, 7 (W. Va. 1967) (stating that express warranty claim could be excluded "if [plaintiff] relie[d] upon his examination rather than affirmations, descriptions and samples"). | 4 Years<br><br>W. VA. CODE § 46-2-725 | Notice required; unclear as to whether pre-litigation notice required.<br><br>*See* W. VA. CODE ANN. § 42-2-607; *see also Hill v. Joseph T. Ryerson & Son*, 268 S.E.2d 296, 302-03 (W. Va. 1980) ("We believe that the notice requirement of W. Va.Code, 46-2-607(3)(a), is applicable to the ordinary commercial transaction where the buyer is seeking to avoid the contract price because the goods are not acceptable, and this Code section should not be extended to the product liability field"). |
| Wisconsin | Yes.<br><br>*Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 582 F. Supp. 208, 215 (E.D. Wis. 1984) ("Wisconsin law requires privity of contract between the parties before liability can be | Yes.<br><br>*Selzer v. Brunsell Bros., Ltd.*, 652 N.W.2d 806 (Wis. Ct. App. 2002) (stating that "[t]he elements of an express warranty are: (1) an affirmation of fact; (2) inducement to the buyer; and (3) reliance thereon by | 4 Years<br><br>Wis. STAT. § 402.725 | Yes (unless personal injury)<br><br>*See Carl v. Spickler Enterprises, Ltd.*, 165 Wis. 2d 611, 624 (Wis. Ct. App. 1991) (holding that notice of breach of implied warranty must be "sufficient to enable the seller to attempt to repair the defect" and |

SWANHOLT EXH. 26- 426

DIFFERENCES IN STATE EXPRESS WARRANTY LAWS

| Jurisdiction | Is Privity Required for Economic Damages Claims? | Is Reliance Required For Economic Damages Claims? | Statute of Limitations | Is Pre-Litigation Notice Required? |
|---|---|---|---|---|
| | founded on breach of express or implied warranty."); *accord, Paulson v. Olson Implement Co.*, 319 N.W.2d 855 (Wis. 1982). | the buyer"). | | that "[f]urthermore, the buyer must provide this notice before commencing an action").   *But see, Wojcluk v. U.S. Rubber Co.*, 122 N.W.2d 737, 739 n.8 (Wis. 1963) (no notice required where seeking damages for personal injury). |
| **Wyoming** | No.   WYO. STAT. ANN. § 34.1-2-318; *Western Equip. Co. v. Sheridan Iron Works, Inc.*, 605 P.2d 806, 808 (Wyo. 1980) ("privity is not required in an action by a remote purchaser against a manufacturer based upon an express warranty."). | Yes.   *Tribe v. Peterson*, 964 P.2d 1238, 1241 (Wyo. 1998) ("'In order for an express warranty to exist, there must be some positive and unequivocal statement concerning the thing sold which is relied on by the buyer and which is understood to be an assertion concerning the items sold and not an opinion.'") (quoting *Gariffa v. Taylor*, 675 P.2d 1284, 1286 (Wyo. 1984)). | 4 Years   WYO. STAT. ANN. § 34.1-2-725 | Probably.   *See* WYO. STAT. ANN. § 34.1-2-607; *Petro-Chem, Inc. v. A.E. Staley Mfg. Co.*, 686 P.2d 589, 591 (Wyo. 1984) ("notice is required to be furnished by one who asserts a right of relief against the seller. . . [and] [a] failure to give notice is a defense to an action for breach of warranty"); *Western Equip. Co. v. Sheridan Iron Works, Inc.*, 605 P.2d 806, 810 (Wyo. 1980) ("we point out that furnishing notice under the statute is an obligation imposed upon one who asserts a right to relief as a buyer"). |

LAI-3206577

SWANHOLT EXH. 26- 427

# EXHIBIT 27

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION


BRANDON BUTLER, individually and
on behalf of all others similarly situated,
                                    Plaintiffs,

                                    Case No.
        -vs-                        2-13-cv-306-DSF-SS
                                    Case No.
                                    2:13-cv-1700-DSF-SS
                                    (Consolidated)


MATTEL, INC., a Delaware corporation,
and FISHER-PRICE INC., a Delaware corporation,
                                    Defendant.


            Examination before trial of MARK JAMES

EFSTATION, taken pursuant to the Federal Rules of

Civil Procedure, in the law offices of GOLDBERG

SEGALLA LLP, 665 Main Street, Suite 400, Buffalo,

New York, on October 29, 2013, commencing at 1:26 p.m.,


before MARY E. BLACK, Notary Public.

SWANHOLT EXH. 27- 428

ORAL DEPOSITION OF MARK JAMES EFSTATION, 10/29/2013

1   are one-year bumper-to-bumper.  That is

2   the warranty.  That is the only warranty

3   Fisher-Price has.

4     Q.     Okay.  Are you aware that the

5   -- on Walmart's Web site it claimed that

6   the Rock 'n Play Sleeper came with a

7   two-year limited warranty?

8         MR. SWANHOLT:  Vague as to

9   time.  You can answer.

10         THE WITNESS:  I was only aware

11   that there was an error made when they

12   showed me the document.

13   BY MR. PARKER:

14     Q.     Okay.  When you say they showed

15   you the document, you mean the document

16   that was provided by counsel?

17     A.     Yes.

18     Q.     How do you know there was an

19   error made?

20     A.     Because there is no warranty

21   for that product.  The only warranty

22   Fisher-Price has is just on Power Wheels.

23     Q.     What do you know about the

24   error?

**SWANHOLT EXH. 27- 429**

ORAL DEPOSITION OF MARK JAMES EFSTATION, 10/29/2013

 1   A.      What I know about the error is

 2   that it was produced by somebody in

 3   Arkansas and they loaded it on to

 4   Walmart's computer.

 5   Q.      How did you come to have this

 6   information about the warranty on

 7   Walmart's Web site?

 8   A.      They showed me the document and

 9   the warranty is an error because it

10   states Mattel.  It doesn't apply to

11   Fisher-Price products.

12   Q.      Do you know anything about how

13   that warranty came to appear on the

14   Walmart Web site?

15   A.      I only know what --

16   Q.      It's a yes or no question.

17   A.      Can you rephrase the question?

18   Q.      Do you know anything about how

19   that warranty for Rock 'n Play -- the

20   Rock 'n Play came to appear on the

21   Walmart Web site?

22          MR. SWANHOLT:  I'll object.  It

23   calls for speculation.

24          THE WITNESS:  The only thing I

**SWANHOLT EXH. 27- 430**