UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | | | |
|---|---|---|---|
| Case No. | CV 13-306 DSF (SSx) | Date | 2/24/14 |
| Title | Brandon Butler v. Mattel, Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | DALE S. FISCHER, United States District Judge |

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order DENYING Motion for Class Certification (Dkt. No. 52)

Plaintiffs move to certify a nationwide class of individuals who "acquired" a Fisher-Price Rock 'N Play Sleeper (Sleeper) prior to January 8, 2013. The motion is denied as Plaintiffs have not demonstrated that the questions of law and fact common to all class members predominate over individual questions.

The predominance inquiry under Rule 23(b) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997) (citation omitted). The thrust of Plaintiffs' case is that the Sleeper is defective because it has a "dangerous propensity" to grow mold. From that proposition, Plaintiffs raise several claims for product defects and misrepresentations about the quality of the Sleeper. But Plaintiffs' bid to have the case handled on a class basis fails because they fail to establish that any actual defect was common to the entire class. There is ample evidence in the record that the vast majority of the proposed class did not experience mold growth on the Sleeper to a degree that they saw fit to complain to Defendants[1] or to the Consumer Product Safety Commission (CPSC).[2] While it

---

[1] The Court understands that there is a separate issue of Defendant Mattel, Inc.'s involvement in any of the events at issue. As the Court need not and does not resolve those issues, it will use "Defendants" for convenience.

[2] Defendants claim that, as of the end of the proposed class period, they had received 600 reports of mold on total sales of more than 800,000 Sleepers. (Greene Decl. ¶ 14.) Even after

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

appears that the Sleeper may develop mold under certain circumstances, there is no evidence that those circumstances were common across the class or even frequently experienced among the class. The only apparent attempts to grow mold on the Sleeper were done by a Fisher-Price engineer and an outside expert retained by Defendants. These attempts do not suggest that mold growth would occur under normal circumstances as they subject the Sleeper to what, on their face, appear to be extreme levels and duration of dampness. (See generally Pls.' Ex. L, M, N, O, PP, RR, SS.) Plaintiffs have not provided the Court with any independent attempt to demonstrate that the Sleeper grows mold with normal use. (See generally Pls.' Ex. MMM (expert report of Chin S. Yang).)[3]

      Plaintiffs highlight this Court's class certification opinion in Montanez v. Gerber Childrenswear, LLC, CV 09-7420 DSF (DTBx), but the Court is not convinced at this point, especially in light of more recent appellate decisions, that it made the correct decision in Montanez. In any event, the case is distinguishable. In Montanez, the class was defined such that all class members had purchased an item of children's clothing that contained what the plaintiffs contended to be an unacceptably high level of a known skin irritant. That is, high levels of the irritant was believed to be *actually present* in each piece of clothing at issue. The question in Montanez then became whether a class could be certified even though not all of the children who wore the clothing had an actual skin reaction to the irritant. The Montanez class still had the problem that for most class members it appeared that the "defect" of the chemical levels did not affect them at all.

---

the CPSC recall, only 6,234 consumers claimed to have encountered mold on the product. (Id. ¶ 22.) While 6,234 is a large number in isolation, it is only about 0.75% of the total Sleepers sold prior to the recall. And these numbers are *claims* of mold, rather than confirmed cases of mold. Further, Defendants provided over 3,700 replacements, refunds, and vouchers in response to mold claims where the consumer was not satisfied with the CPSC ordered recall. (Id. ¶ 23.)

[3] There is a dispute whether Plaintiffs' expert, Chin S. Yang, is qualified to opine on the "propensity" of the Sleeper to grow mold. For whatever reason, the parties have set a hearing on the admissibility of Yang's testimony for over a month after the hearing on class certification. The Court has considered Yang's testimony for the purposes of this motion, but finds it generally unhelpful and unpersuasive. Yang did not attempt to test the Sleeper for mold growth under typical use conditions. Instead, he only reviewed the Sleeper's design, determined that it could retain water under some conditions, and from that concluded that the Sleeper could grow mold. This is not particularly helpful to determining if class members would likely experience mold growth on the Sleeper under normal use.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

The Court resolved that issue in favor of the plaintiffs, but would not likely have made that decision today. Class certification is even less appropriate here as Plaintiffs' alleged defect is another step removed from the one in Montanez. For this case to be analogous to Montanez all of the Sleepers would have grown mold, but the class members' children would have had differing reactions to the mold. The Sleeper is only alleged to have a "propensity" for mold growth – separate and apart from the issue of an actual reaction to whatever mold may be present. There is no evidence that every Sleeper developed notable levels of mold and ample evidence that most of them did not. Based on the record before the Court, it appears that the vast majority of the proposed class, for whatever reason, was in no way affected by the alleged increased propensity of the Sleeper to grow mold. Of course, some members of the class *were* affected by mold on the Sleeper, though it is not clear whether any child suffered a reaction or injury. They complained to Defendants or to the CPSC and, in response, a limited "recall" was issued by which Defendants provided additional care instructions for cleaning any mold that may occur on the Sleeper.[4]

In legal terms, the problem for Plaintiffs is that many of the proposed class members likely do not have standing to raise the class claims, and whether or not a particular class member has standing is an individual issue that is not amenable to class treatment. Class members who actually experienced mold or who can show that their particular circumstances made it likely that they would actually experience a mold issue would likely have standing. Other class members would likely not have standing for the reasons explained in Birdsong v. Apple, Inc., 590 F.3d 955 (9th Cir. 2009). The plaintiffs in Birdsong brought consumer protection claims against Apple asserting that the Apple iPod was capable of causing hearing damage when used in certain ways by the end user. There was no claim that all users of an iPod would suffer hearing damage through normal use of the product. The Ninth Circuit found that this alleged injury was too "conjectural and hypothetical" to allow standing. Id. at 960-62 ("The plaintiffs simply do not plead facts showing that hearing loss from iPod use is actual or imminent, as required."). Similarly here, the Sleeper is only claimed to have a "propensity" for mold growth and there is no evidence that the mold growth is "actual or imminent" in all cases, a majority of cases, or even in a significant percentage of cases. Even if the Sleeper may be likely to grow mold under certain circumstances, this would not provide standing to consumers who have not or will not subject the Sleeper to those conditions.

---

[4] And, as noted in footnote 2, a number of refunds and replacements were provided by Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

The dispositive issue of standing is not common to all class members and must be addressed on an individual basis. The overarching importance of this question predominates over any common questions that may exist as it is impossible to award class wide relief without consideration of standing. For this and other reasons set forth in Defendants' opposition, the motion for class certification is DENIED.

IT IS SO ORDERED.